IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| LIZELLE GONZALEZ | § | |
|     Plaintiff | § | |
| | § | |
| Vs. | § | CIVIL ACTION 7: 24-CV-00132 |
| | § | |
| GOCHA ALLEN RAMIREZ, et al. | § | |
|     Defendants | § | |

**RULE 12 MOTION TO DISMISS OF SHERIFF RENE FUENTES
IN HIS OFFICIAL CAPACITY AND INDIVIDUAL CAPACITY
AND ASSERTION OF QUALIFIED IMMUNITY**

========================================================================

MAY IT PLEASE THE COURT:

NOW COMES DEFENDANT RENE FUENTES in his official capacity and individual capacity and files this Rule 12(b)(6) Motion to Dismiss and would show the court as follows:

### I.    INTRODUCTION

This is a civil rights case brought under 42 U.S.C. § 1983 against Starr County,[1] District Attorney Gocha Ramirez, Assistant District Attorney Alexandria Barrera,[2] and Sheriff Rene Fuentes for the alleged false arrest and malicious prosecution of Plaintiff Lizelle Gonzalez. Plaintiff's claims are based on her indictment and arrest for the murder of her unborn child on or about March 30, 2022, and April 7, 2022, respectively. FAC ¶¶ 4.9., 4.13. The indictment was dismissed by DA Ramirez on or about April 11, 2022, due to a limitations provision in the Texas Penal Code that precludes the application of the Criminal Homicide chapter to a mother whose conduct causes the death of her own unborn child. FAC ¶ 4.14.

Plaintiff's claim against the Sheriff in his official capacity is tantamount to a claim against Starr County, for which Plaintiff must allege facts showing an official County policy was the moving force behind her alleged Constitutional deprivation. Plaintiff fails to make this showing. Plaintiff's claim against the Sheriff individually is woefully deficient in its lack of facts

---

[1] Starr County filed a Rule 12(b)(1) Motion to Dismiss on May 1, 2024, based on the conduct alleged against District Attorney Gochar Ramirez, which Plaintiff attributed to Starr County. Doc. 16.
[2] Gocha Ramirez and Alexandria Barrera filed Motions to Dismiss and asserted prosecutorial immunity on May 1, 2024.

demonstrating that the Sheriff himself took any actions related to the investigation, grand jury presentation, or post-indictment arrest. And even if she had pleaded factual content related to the Sheriff, he is entitled to qualified immunity. Finally, Plaintiff failed to issue a summons for Sheriff Fuentes within the applicable statute of limitations and all claims against him are time-barred.

## II.     BACKGROUND

**Plaintiff Attempts A Self-Induced Abortion At 19 Weeks Pregnant**

According to Plaintiff's pleadings, on or about January 7, 2022, she attempted to self-induce an abortion nearly halfway through her pregnancy using "Cytotec Icetrogen 400." FAC ¶ 4.1; *see also* Pl.'s Orig. Compl. ¶ 4.1 ("Plaintiff Lizelle Gonzalez presented to the Starr County Memorial Hospital Emergency Department at 19 weeks gestational age 'with abortion attempt' after using Cytotec Icetrogen 400 mcg purportedly to induce an abortion.").

Cytotec is another name for the generic drug misoprostol. *See Planned Parenthood of Greater Tex. Surgical Health Svcs. v. Abbott*, 951 F. Supp. 891, 902 (W.D.T.X. 2013) (discussing Cytotec) (reversed on other grounds by *Planned Parenthood of Greater Tex. v. Abbott,* 748 F.3d 583 (5th Cir. 2014)). "Misoprostol causes uterine contractions that expel the contents of the uterus." *Am. Coll. Of Obstetricians and Gynecologists v. United States Food and Drug Administration*, 472 F.Supp. 3d 183, 190 (D. Maryland 2020); *see also Planned Parenthood Sw. Ohio Reg. v. DeWine*, 696 F.3d 490, 494 (6th Cir. 2012) ("misoprostol, which is 'a prostaglandin which induces the contractions necessary to expel the fetus and other products of conception from the uterus.'"). The Fifth Circuit has explained that misoprostol in combination with another drug has been approved to induce abortions in the first 49 days of pregnancy and sometimes doctors have used the combination of drugs for abortions "as late as seventy days" into the pregnancy. *Abbott*, 748 F.3d at 601.

After using misoprostol approximately 133 days into her pregnancy to self-induce an abortion, Plaintiff was eventually taken to Starr County Memorial Hospital via EMS "with complaints of abdominal pain and vaginal bleeding. Examination in the emergency department revealed no fetal cardiac activity and "incomplete spontaneous abortion," which required a cesarian section surgery to deliver "her stillborn child." FAC ¶ 4.2. According to Plaintiff, "employees, agents and/or representatives" of the hospital reported Plaintiff to the Sheriff's Office[3]

---
[3] Notably, Plaintiff self-induced her abortion just months after the passage of Texas' S.B. 8. *See* Tex. Health & Safety Code Ann. § 171.204(a). "Referred to as the Heartbeat Act, SB 8 prohibits abortions after fetal cardiac activity is

"and/or" the District Attorney's Office and the Sheriff "in connection with and/or under the joint supervision" of the District Attorney's office conducted an investigation. *Id*. ¶ 4.4. Plaintiff alleges that *investigators* were in communication with the District Attorney's Office and that Plaintiff was interviewed by Sheriff Fuentes' *investigators* but was not immediately arrested. *Id*. ¶ 4.7.

**Plaintiff Was Indicted by The Starr County Grand Jury and Subsequently Arrested**

Plaintiff pleads that on or about March 30, 2022, "the charge of murder against Plaintiff was presented to the Grand Jury of Starr County, Texas by Defendants Ramirez and Barrera." *Id*. ¶ 4.9. Under the Texas Penal Code, a person can be charged with murder if the person:

(1) intentionally or knowingly causes the death of an individual; or

(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual.

*Tex. Penal C. § 19.02*. An "individual" under the Texas Penal Code includes "an unborn child at every stage of gestation from fertilization until birth." Tex. Penal C. 1.07(a)(26).

Plaintiff pleads that on April 7, 2022, she was arrested following the indictment by someone in the Sheriff's office. *Id*. ¶ 4.13. Plaintiff points out that the arrest was picked up by the local and national media, including the Associated Press, because it was related to the "hot button" topic of abortion: "Within hours national headlines read 'Woman in Texas Charged with Murder in Connection with 'Self-Induced Abortion.'" *Id*. ¶ 4.16.

Following the media frenzy, District Attorney Ramirez analyzed the case and indictment—likely because of the visceral reactions and media hype—and on April 11, 2022, he dismissed the murder indictment, stating that "[i]n reviewing the applicable Texas law, it is clear that Ms. Herrera cannot and should not be prosecuted for the allegation against her." *Id*. ¶ 4.14. Specifically, Texas Penal Code's Criminal Homicide chapter has a provision that limits the application of the chapter from being applied in the "death of an unborn child if the conduct charged is conduct committed by the mother of the unborn child," as was the case here. Tex. Penal C. § 19.06.

**Plaintiff's lawsuit**

Plaintiff filed her Original Complaint against District Attorney Ramirez and Assistant District Attorney Barrera, along with Starr County, on March 28, 2024. Plaintiff alleged that

---

detected within the gestational sac, effectively banning abortions roughly six weeks following a human's conception." *Weldon v. Lilith Fund for Reproductive Equity*, 2024 WL976890 (Tex. App.—Fort Worth March 7, 2024) (citing Tex. Health & Safety Code Ann. § 171.204(a)). Senate Bill 8 has a private enforcement component that incentivizes the reporting of prohibited abortions by individuals.

"neither the Starr County Sheriffs Department nor the Rio Grande City Police Department were involved in the investigation phase of the charges against the Plaintiff." [sic] Doc. 1, ¶ 6.4. On April 11, 2024, Plaintiff filed the live complaint, adding the Sheriff as a defendant and claiming that the Sheriff *was* involved in the investigation and is liable for Fourth and Fourteenth Amendment violations and for conspiracy. *See generally* Doc. 7.

## III. SUMMARY OF ARGUMENTS

Plaintiff has failed to state a claim against Sheriff Fuentes in his individual or official capacity, and her claims against him should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). With regard to the individual claims, the question is whether Plaintiff has pleaded facts showing that Sheriff Fuentes personally took any actions to cause a false arrest or malicious prosecution; and, if so, was his conduct in violation of a clearly established right. Plaintiff's allegations do not reach this threshold. Instead, she makes sweeping accusations about the Sheriff's office generally, failing, however, to identify any specific conduct of the Sheriff himself.

Plaintiff's claim against the Sheriff in his official capacity—which are essentially claims against the County—fail because Plaintiff does not plead facts sufficient to state a Monell claim; that is, Plaintiff does not allege facts showing an official County policy was the moving force behind her alleged Constitutional violations.

## IV. ARGUMENTS AND AUTHORITIES

**Rule 12(b)(6) Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss for failure to state a claim upon which relief may be granted. To withstand a motion to dismiss, a pleading does not require detailed factual allegations, but "demands more than labels and conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Put differently, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Firefighters' Ret. Sys. v. Grant Thornton, L.L.P*., 894 F.3d 665, 669 (5th Cir. 2018) (citation omitted).

In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept the plaintiff's factual allegations as true and view those allegations in the light most favorable to the plaintiff. *White v. U.S. Corrections, L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021). The court must evaluate whether

"a complaint contains sufficient factual matter to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). "Dismissal ... is appropriate where the plaintiff fails to allege 'enough facts to state a claim that is plausible on its face' and thus does not 'raise a right to relief above the speculative level.'" *Montoya v. FedEx Ground Package Sys., Inc*., 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

These standards are the same when a motion to dismiss is based on the assertion of immunity. *Terwilliger v. Reyna*, 4 F.4th 270, 279 (5th Cir. 2021) (citing *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020)). The crucial question is "whether the complaint pleads facts that, if true, would permit the inference that Defendants are liable under § 1983 ... and would overcome their qualified immunity defense." *Hinojosa v. Livingston*, 807 F.3d 657, 664 (5th Cir. 2015).

**The Court May Legitimately Consider Documents Referred to In the Complaint and Central To Plaintiff's Claims.**

In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Walker v. Beaumont Indep. Sch. Dist*., 938 F.3d 724, 735 (5th Cir. 2019). Judicial notice may be taken of matters of public record. *Firefighters' Retirement Sys., v. Eisner Amper*, 898 F.3d 553, 558 n.2 (5th Cir. 2018).

Where, as here, documents are "referred to in the complaint and are central to the plaintiff's claims, the court may also properly consider those documents." *Walker*, 938 F.3d at 735; *Olivia Sligh v. City of Conroe, Texas, et al*., Cause No. 22-40518, 2023 WL 8074256 (5th Cir. Nov. 21, 2023) (quoting *Villarreal v. Wells Fargo Bank, N.A*., 814 F.3d 763, 766 (5th Cir. 2016) (alteration in original). '"In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated."' *Id*. (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000).

In her Amended Complaint, Plaintiff has put the Sheriff's investigative file squarely at issue in this case and references it throughout her pleading. For instance, Plaintiff pleads that:

> "Fuentes, and his office, in connection with and/or under the joint supervision of Defendants Barrera and Ramirez of the Starr County district Attorney's Office, **performed an investigation** into the facts or circumstances surrounding the charge of Murder against Plaintiff, knowing that Plaintiff's conduct was exempt from homicide…the Starr County District Attorney's Office had its own policy of initiating and **performing it's own investigations** before involving the police or working in conjunction with the sheriff's office…Barrera and/or Ramirez were in **direct communication with Starr County**

> **Sheriff's Office investigators** providing legal advice and coordinating and/or **directing the 'murder' investigation**…Plaintiff was interviewed by Sheriff Fuentes' investigators…Plaintiff's arrest came after **Sheriff Fuentes and/or his investigators received direction from Defendants Ramires and Barrera**…Defendants Ramirez, Barrera and Fuentes commenced and **continued an unfounded investigation**…"

FAC ¶¶ 4.4-4.11.

Plaintiff's live Complaint is riddled with argumentative and conclusory assertions, like those above, that the Sheriff's investigation was directed by the District Attorney's office and that both offices and individuals were aware of the statutory exception but pursued the investigation, nonetheless. The investigative file shows no such thing; nor does it reflect any actual involvement by the Sheriff. Rather, the Sheriff's Office file reflects that the investigation originated at the local hospital by Plaintiff's own treating medical staff (who thought a crime had been committed under Texas' newly-enacted Senate Bill 8) and that the complaint was directed to the local law enforcements authorities.

The objective evidence, shorn of labels, conclusions, and formulaic recitations, shows that the Sheriff's Office investigators, not the Sheriff himself, investigated the complaint based on a perceived violation of law. These reports are (1) SCSO Incident Report by Inv. RR; (2) SCSO Investigative Report by Inv. EM; (3) SCSO Investigative Report by Inv. RA; and (4) SCSO Investigative Report by Inv. JRG. These documents have been made available to Plaintiff's counsel under a Joint Agreed Protective Order (Doc. # 18) and are available to the Court under seal as well (Doc. #20).

The documents under seal contain the most relevant factual information pertaining to how the criminal complaint got started and how it was processed. They are directly relevant to the factual averments against Defendants, both the prosecution defendants and the Sheriff and his Office and are at odds with the sensationalized conclusory averments contained in Plaintiff's live complaint. Now that Plaintiff's counsel has access to these documents, access which Plaintiff's counsel presumably did not have before, Plaintiff should at a minimum be required to replead the Complaint under a *Schultea v Wood* standard. *See Schultea,* 47 F.3d 1427 (5th Cir. 1995). Absent that, or possibly even in spite of that, the Defendants' Rule 12 Motions to Dismiss should be granted and the case dismissed.

A.  **The Fourteenth Amendment claims and Conspiracy claims fail against all Defendants.**

   1.  **Plaintiff's claims must be brought under the Fourth Amendment, not Fourteenth Amendment.**

Plaintiff alleges unlawful arrest and malicious prosecution claims against the Sheriff under both the Fourth and Fourteenth Amendments. As an initial matter, Plaintiff incorrectly avers that the protection against malicious prosecution sounds in the Fourteenth Amendment. The Fifth Circuit has explained, however, "the Supreme Court did not approve a substantive due process claim arising from malicious prosecution, *Albright v. Oliver*, 510 U.S. 266 (1994), and no subsequent decision of that Court or this court has rendered such a claim cognizable…." *Winfrey v. Johnson*, 766 F. App'x 66, 72 (5th Cir. 2019). The same is true of Plaintiff's unlawful arrest claim. *See Zimmerman v. Cutler*, 657 F. App'x 340, 345 (5th Cir. 2016) ("Zimmerman's unlawful arrest claim must be analyzed under the Fourth Amendment, not the Fourteenth Amendment."). Accordingly, Plaintiff's Fourteenth Amendment claims for false arrest and malicious prosecution should be dismissed.

   2.  **The County cannot Conspire with Itself.**

"The elements of civil conspiracy are (1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right." *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1990). A plaintiff claiming conspiracy under section 1983 must prove an actual deprivation of a constitutional right. *Salvin v. Curry*, 574 F.2d 1256, 1261 (5th Cir. 1978); *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir. 1984); *see also Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990). The Fifth Circuit has observed that " 'mere conclusory allegations of conspiracy cannot, absent reference to material facts, state a substantial claim of federal conspiracy.'" Powell v. Martinez, 579 F. App'x 250, 252 (5th Cir. 2014) (unpublished op.) (quoting McAfee v. 5th Circuit Judges, 884 F.2d 221, 222 (5th Cir. 1989) ).

Further, the Fifth Circuit reiterated recently that a conspiracy claim, like the one brought here, "is barred by the 'intra-corporate-conspiracy doctrine, which precludes plaintiffs from bringing conspiracy claims [] against multiple defendants employed by the same governmental entity.'" *Konan v. U.S.P.S*, 96 F.4th 799, 805 (5th Cir. 2024) (quoting *Thornton v. Merchant*, 526 F. App'x 385, 388 (5th Cir. 2013) (quoting *Benningfield v. City of Hous.*, 157 F.3d 369, 378 (5th Cir. 1998)). The Fifth Circuit has "consistently held that an agency and its employees are a 'single

Defendants' Rule 12 Motion
to Dismiss & Assertion of Immunity                                                                                                           -7-

legal entity which is incapable of conspiring with itself.'" *Id.*; *see also Tex. Democratic Party v. Abbott*, 961 F.3d 389, 410 (5th Cir. 2020) (holding "a corporation cannot conspire with itself any more than a private individual can" quoting *Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994)).

Plaintiff alleges that all of her claims are against Starr County and its employees. Pl.'s FAC ¶¶ 2.1-2.5 ("Defendant Gocha Allen Ramirez … is employed by the County of Starr… Defendant Alexandria Lynn Barrera is employed as an Assistant District Attorney for Starr County, Texas… Defendant Rene Fuentes … is employed by the County of Starr."). Thus, her claims are barred by the intracorporate-conspiracy doctrine and must be dismissed.

**B.    The Fourth Amendment claims against Sheriff Fuentes in his individual capacity fail.**

**1.    False Arrest.**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "Because arrests are 'seizures' of 'persons,' they must be reasonable under the circumstances." *District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018).

A "fair probability" that the suspect has committed a crime is enough to establish probable cause, which makes an arrest reasonable. *Espinal v. City of Houston*, 96 F.4th 741, 745 (5th Cir. 2024) (citing *United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999)). Thus, a false arrest claim under Section 1983 requires a showing that a plaintiff was arrested without probable cause. *Haggerty v. Texas Southern Univ.*, 391 F.3d 653, 655 (5th Cir. 2004) (citing *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir.2001) ("The 'constitutional torts' of false arrest ... and false imprisonment ... require a showing of no probable cause.")).

However, even when an officer arrests a suspect without probable cause, the independent intermediary doctrine shields him from liability if a magistrate issues a warrant or a grand jury subsequently indicts the suspect. *Espinal*, 96 F.4th at 745 (citing *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (per curiam); *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 554 (5th Cir. 2016)).

The independent-intermediary-doctrine exception to a false arrest claim, itself, has two exceptions. That is, there are two circumstances under which the liability shield normally afforded by the independent intermediary doctrine is inapplicable and a false arrest claim may lie despite

the existence of an independent intermediary. These are *Malley* and *Frank* claims, which the Fifth Circuit succinctly described in *Wilson v. Stroman*:

> "In *Malley*, the Supreme Court described that an officer can be held liable for a false arrest despite the issuance of an arrest warrant by a magistrate if the affidavit the officer presented to the magistrate was "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." 475 U.S. at 344-45, 106 S.Ct. 1092 (citation omitted). "The *Malley* wrong is not the presentment of false evidence, but the obvious failure of accurately presented evidence to support the probable cause required for the issuance of a warrant." *Melton v. Phillips*, 875 F.3d 256, 264 (5th Cir. 2017) (*en banc*).
>
> In other words, an officer can avoid liability under *Malley* if he presents a warrant affidavit that facially supplies probable cause to arrest the subject of the warrant. *See Blake v. Lambert*, 921 F.3d 215, 221-22 (5th Cir. 2019). But even if a warrant affidavit supplies probable cause on its face, an officer can still be liable under *Franks* if the apparent probable cause is the result of "material misstatements or material omissions." *Terwilliger*, 4 F.4th at 281 (citations omitted). Specifically, an officer is liable under *Franks* if he "deliberately or recklessly provides false, material information for use in an affidavit in support of [a warrant]" or "makes knowing and intentional omissions that result in a warrant being issued without probable cause" *Melton*, 875 F.3d at 264 (alteration in original) (emphasis removed) (first quoting *Hart v. O'Brien*, 127 F.3d 424, 448 (5th Cir. 1997); and then quoting *Michalik v. Hermann*, 422 F.3d 252, 258 n.5 (5th Cir. 2005))."

*Wilson v. Stroman*, 33 F.4th 202 (5th Cir. 2022).

Importantly, liability for a *Franks* or *Malley* claim is only cognizable against a law enforcement officer who "assisted in the preparation of, or otherwise presented or signed a warrant application." *See Terwilliger v. Reyna*, 4 F.4th 270, 284 (5th Cir. 2021) (citing *Melton*, 875 F.3d at 263). If an officer does not present or sign the affidavit, liability attaches only if "he helped prepare the complaint by providing information for use in it." *Terwilliger*, 4 F.4th at 284. Further, awareness of an investigation for which a warrant is issued is not tantamount to "assisting" in the preparation of the warrant, much less the same as preparing or signing the warrant affidavit. *Id.* (citing *Melton*, 875 F.3d at 263). The analysis must consider the role played by each defendant.

Where, as here, the arrest affidavit followed the grand jury's indictment—a secret proceeding—liability can only attach if the plaintiff sufficiently alleges "other facts supporting the inference" that the defendant tainted the grand jury room. *Wilson*, 33 F.4th at 212 (citing *McLin*, 866 F.3d at 690). "Merely invoking the taint exception is not enough." *Espinal v. City of Houston*, F.4th 741, 748 (5th Cir. 2024) (citing *Shaw v. Villanueva*, 918 F.3d 414, 418 (5th Cir. 2019) (explaining "all broth and no beans" will not suffice to establish the exception)). To survive a motion to dismiss, a plaintiff must at least allege "facts supporting [an] inference" of such

wrongdoing. *McLin*, 866 F.3d at 690. That is, a plaintiff must "affirmatively show[ ]" that the defendant tainted the intermediary's (grand jury's) decision. *Id*. (quoting *Craig v. Dall. Area Rapid Transit Auth.*, 504 F. App'x 328, 332 (5th Cir. 2012); *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004)). For example, where a factually sufficient complaint details how an officer's conduct may subject him to *Franks* liability for putting material misrepresentations in a warrant *and* the plaintiff alleges that the same information was supplied to the grand jury during its secret deliberations, the plaintiff may escape dismissal at the Rule 12 stage. *Wilson*, 33 F.4th at 212-13; *see also McLin*, 866 F.3d at 690.

Such allegations are missing here. There are no factual allegations about what the Sheriff did or said that could have tainted the grand jury. Plaintiff does not plead that the Sheriff prepared or signed a probable cause affidavit and does not plead any other factual content that would allow the Court to draw the inference that he took some specific action that actually tainted the grand jury. Instead, Plaintiff makes vague allegations that do not identify any specific conduct. For instance, she complains that "Sheriff Fuentes, and his office, in connection with and/or under the joint supervision of Defendants Barrera and Ramirez of the Starr County District Attorney's Office, performed an investigation into the facts or circumstances surrounding the charge of Murder against Plaintiff." Pl.'s FAC ¶ 4.4. She also pleads that "Defendant Fuentes, while acting under the color of law and within the scope of his employment, knowingly and intentionally, or with reckless disregard for the truth, caused the arrest of Plaintiff based on a facially deficient indictment with no legal basis as Section 19.06 of the Texas Penal Code is clear and unambiguous." Pl.'s FAC ¶ 7.27. These conclusory allegations are void of the factual content necessary to show that the Sheriff personally took some action to influence the grand jury. As a result, the Fourth Amendment claim against the Sheriff must be dismissed. *See, e.g.*, *Torns v. City of Jackson*, 622 F. App'x 414, 417 (5th Cir. 2015) (dismissal appropriate in false arrest case against Police Chief and other high-ranking City officials where plaintiff failed to state how they took any action against plaintiffs); *Granger v. Slade*, 361 F.Supp. 2d 588, 596 (S.D. Miss. 2005)("Moreover, there is no allegation or proof that Chief Slade had any involvement in the decision to arrest and/or detain Mr. Granger and thus there is no basis for holding him liable, nor is there any basis for holding the City liable for the alleged false arrest and imprisonment of Mr. Granger.").

### 2. Malicious Prosecution.

The Fourth Amendment also guards against malicious prosecution. *Armstrong v. Ashley*, 60 F.4th 262, 278 (5th Cir. 2023). To state a claim, a plaintiff must show "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; [] (6) damages" and an unlawful Fourth Amendment seizure." *Id*. at 279.

Here, as with the false arrest claim, Plaintiff has failed to allege any facts about the Sheriff's direct involvement in the investigation or presentation to the grand jury. And, in fact, the investigatory documents incorporated by reference in Plaintiff's complaint, reflect that the Sheriff played no role whatsoever in initiating the investigation. Certainly, there are no alleged facts illustrating malice. The complete lack of factual support tying the Sheriff to Plaintiff's criminal proceeding forecloses her claim.

### 3. The Sheriff is entitled to Qualified Immunity.

Even if Plaintiff had pleaded facts showing that the Sheriff himself took some sort of action related to the investigation or grand jury presentation related to the death of her unborn child, he is shielded by qualified immunity. "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011). The qualified immunity defense is intended to provide protection to "all but the plainly incompetent or those who knowingly violate the law." *Id*. (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Courts should not deny immunity unless "existing precedent...placed the statutory or constitutional question beyond debate." *Id*. (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731 (2011)).

"To overcome an official's qualified immunity defense, a plaintiff must establish: (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Ford v. Anderson Cnty., Tex*. –F.4th--, 2024 WL 2313713, at *5 (5th Cir. May 22, 2024) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Ford*, F.4th--, 2024 WL 2313713, at *5 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Although this does not mean that 'a case

directly on point' is required, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Ford*, F.4th--, 2024 WL 2313713, at *5 (quoting *Ashcroft*, 563 U.S. at 741). "The salient question is whether the state of the law gives the official "fair warning" that his or her conduct is unconstitutional." *Ford*, F.4th--, 2024 WL 2313713, at *5 (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

The malicious prosecution claim against Sheriff Fuentes is easily disposed of under the qualified immunity rubric because malicious prosecution was not recognized in the Fifth Circuit as a cognizable Section 1983 claim until after April 4, 2022—much less a clearly established right. *Espinal v. City of Houston*, F.4th 741, 748 (5th Cir. 2024). Plaintiff was indicted by the grand jury on March 30, 2022. Thus, all other arguments aside, the Sheriff could not have violated a clearly established right on March 30, 2022, where the right was not established in the Fifth Circuit at all until April 4, 2022. *Id* ("Espinal was arrested and indicted in 2020, when the constitutional malicious prosecution tort did not exist in our circuit. So, the officers could not possibly have violated clearly established law at the time. Accordingly, the officers are entitled to qualified immunity as to Espinal's malicious prosecution claim.") (citations omitted). The Sheriff is entitled to qualified immunity on the malicious prosecution claim.

The false arrest claim is also barred by qualified immunity. As stated *supra*, there are no pleaded facts showing any conduct of the Sheriff that caused her arrest. But even if she had pleaded those facts, she fails to acknowledge that the conduct she engaged in—using a drug with the intent to cause the death of her unborn son—does, in fact, meet the elements for murder under the Texas Penal Code: "A person commits an offense if the person: (1) intentionally or knowingly causes the death of an individual; [or] (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." Tex. Penal Code § 19.02(b). But for the carveout for a mother's conduct found elsewhere in Chapter 19 of the Texas Penal Code,"[t]his chapter does not apply to the death of an unborn child if the conduct charged is: (1) conduct committed by the mother of the unborn child," there is no question that Plaintiff's conduct would have fallen within Texas' homicide statute.

The qualified immunity question here, then, is whether a law enforcement officer violates the Fourth Amendment by not raising a defense to prosecution before the grand jury. Plaintiff cites no caselaw in furtherance of her conclusion that it was the Sheriff's duty to raise the exception or

that he violated her rights by not presenting her defense to the grand jury. As such, she has not and cannot overcome the Sheriff's entitlement to qualified immunity.

C. **The claims against Sheriff Fuentes in His Official Capacity Fail.**

1. **Plaintiff's Official Capacity claims against Sheriff Fuentes are duplicative of the claims against the County and must be dismissed.**

Plaintiff makes indistinguishable claims against the Sheriff in both his individual and official capacities and Starr County. *See* Pf.'s FAC ¶¶ 7.20-7.45. In individual or personal-capacity suits, plaintiffs "seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "Official-capacity suits," on the other hand, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id*. (quoting *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)). If "the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id*. at 166. Courts, moreover, may dismiss official-capacity claims as duplicative when the "allegations duplicate claims against the respective governmental entities themselves." *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001).

Plaintiff brings all of her Section 1983 claims against "all defendants." Pl.'s FAC ¶ 41. Thus, the claims against the Sheriff in his official-capacity claims are duplicative of those against the County. In these circumstances, the Court should dismiss the official-capacity claims against the Sheriff because they are effectively claims against Starr County who has also been sued. *See Forster v. Bexar Cnty.,* Case No. 5:21-cv-00765-JKP-RBF2022 WL 2820857, at *9 (W.D. Tex. July 19, 2022); *Ule v. Bexar Cnty. Hosp. Dist.*, No. 5:19-CV-01459-JKP-ESC, 2020 WL 5644930, at *5 (W.D. Tex. Sept. 22, 2020) (dismissing official capacity claims as duplicative and permitting the claims to proceed against Bexar County only).

2. **Plaintiff fails to plead facts showing that an official County policy was the moving force behind her alleged Fourth Amendment violations.**

The claims against the County based on the alleged actions of the Sheriff in his official capacity are analyzed under the familiar *Monell* standard because they are, in essence, claims against Starr County. To assert a Section 1983 claim against Starr County, Plaintiff must sufficiently allege "(1) that an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of the municipality; (2) that the allegedly unconstitutional action constitutes a custom or policy; and (3) that there was a violation of constitutional rights

whose moving force is the policy or custom." *Brown v. Tarrant County*, 985 F.3d 489, 497 (5th Cir. 2021) (internal quotations omitted). It is well-settled law that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 694 (1978).

Thus, Plaintiff must allege specific facts showing that an official County policy was the moving force behind initiating criminal proceedings without a lawful basis and making arrests without probable cause. She can show the policy in one of two ways. Either by showing:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984). Plaintiff fails to meet this standard.

Plaintiff claims that the County's official policy is to "investigate women following an abortion for potential prosecution despite knowing that this was not criminal conduct." Pl.'s FAC ¶ 7.44. She claims that the "District Attorney's Office and/or the Star County Sheriff's Office, along with the Starr County Memorial Hospital" initiated said policy. *Id.*

As Starr County asserted in its Motion to Dismiss, District Attorneys do not set local policy when acting in their role as prosecutors for the State. *Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir. 1995); *see also Zinter v. Salvaggio*, Case No. SA-18-CV-00680-JKP, 2021 WL 1381231 (W.D.T.X. April 12, 2021) ("Further, actions of a Texas district attorney within the scope of his prosecutorial function during a criminal proceeding do not constitute official policy for which a county can be held liable [under Monell].") (citing *Krueger*, 66 F.3d at 77; *Esteves*, 106 F.3d at 678.)). That leaves the Sheriff. But a Sheriff cannot set prosecutorial policies for the County. Again, that area is reserved for the State. Plaintiff simply cannot point to a Starr County policy adopted by the proper policymaker.

Further, Plaintiff cannot establish that the policy has been created by a widespread pattern or practice that fairly represents the County's policy. Indeed, Plaintiff pleads that she is the *only* person to have been investigated and indicted in Starr County for causing the death of her unborn

child. Pl.'s FAC ¶ 7.6. Accordingly, Plaintiff's claims against Starr County arising from the official capacity claims against the Sheriff fail because Plaintiff has failed to state a proper *Monell* claim.

## CONCLUSION AND PRAYER

Therefore, Defendant Sheriff Fuentes, in his Individual and Official Capacity, respectfully requests that the Court find that Plaintiff has failed to plead facts showing that he violated her Constitutional rights and that he is entitled to qualified immunity. Defendant also asks the Court to find that Plaintiff has failed to properly allege facts showing an official County policy caused the deprivation of a Constitutional right and that the claims against the Sheriff in his official capacity—which are claims against the County—should be dismissed.

Further, to the extent necessary, Sheriff Fuentes hereby requests that the Court order a reply under *Shultea v Wood,* 47 F.3d 1427 (5th Cir. 1995) so that Defendants know what factual basis Plaintiff contends deprives them of immunity.

Finally, Defendants respectfully ask that the Court stay discover pending the determination of immunity for the reasons stated by the Fifth Circuit in *Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022). Defendants pray for any other relief to which they are justly entitled.

SIGNED on the 29th day of MAY 2024.

Respectfully submitted,

By: *Ricardo J. Navarro*
RICARDO J. NAVARRO
Lead Attorney
State Bar No. 14829100
So. Dist. Id No. 5953
rjnavarro@rampagelaw.com

*Kelly R. Albin*
Kelly R. Albin
State Bar No. 24086079
So. Dist. ID No. 3792304
kralbin@rampagelaw.com

**DENTON NAVARRO RODRIGUEZ**
  **BERNAL SANTEE & ZECH, P.C.**
549 N. Egret Bay, Suite 200
League City, Texas 77573
832- 632-2102
832-632-2132 (fax)

**ATTORNEYS FOR DEFENDANTS**
**SHERIFF RENE FUENTES, GOCHA ALLEN RAMIREZ, ALEXANDRIA BARRERA AND STARR COUNTY, TEXAS**

**CERTIFICATE OF SERVICE**

I certify that a true copy of this document has been served in accordance with one or more of the authorized methods for service of process contained in the Federal Rules of Civil Procedure on the persons or parties identified below on this the 29th day of MAY 2024.

| | |
|---|---|
| Ida Cecilia Garza | **Via E-Filing Notification** |
| Veronica Sepulveda Martinez | **Via E-Filing Notification** |
| GARZA MARTINEZ, PLLC | |
| 202 E. Sprague Street | |
| Edinburg, TX 78539 | |
| COUNSEL FOR PLAINTIFFS | |

*Ricardo J. Navarro*
RICARDO J. NAVARRO
KELLY R. ALBIN

Defendants' Rule 12 Motion
to Dismiss & Assertion of Immunity                                                              -16-