**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| **LIZELLE GONZALEZ,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 7:24-cv-00132** |
| | § | |
| **GOCHA ALLEN RAMIREZ,** | § | **JURY DEMANDED** |
| **ALEXANDRIA LYNN BARRERA,** | § | |
| **STARR COUNTY, and** | § | |
| **RENE FUENTES,** | § | |
| *Defendants* | § | |

## PLAINTIFF'S OMNIBUS RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Cecilia Garza
State Bar No. 24041627
SDTX Bar No. 578825
202 E. Sprague Street
Edinburg, Texas 78539
Telephone No.: (956) 335-4900
Telecopier No.: (956) 338-5700
cecilia@garzamartinezlaw.com
***Attorney in charge for Plaintiff***

Lauren Alicia Johnson
American Civil Liberties Union
Foundation
915 15th Street NW
Washington DC 20005
Telephone No.: (202) 731-5567
ljohnson@aclu.org

David A. Donatti
State Bar No. 24097612
SDTX Bar No. 3371067
Adriana Piñon
State Bar No. 24089768
SDTX Bar No.1829959
American Civil Liberties Union of Texas
P.O. Box 12905 Austin, TX 78711-2905
Telephone No.: (713) 942-8146
Facsimile: (713) 942-8966
ddonatti@aclutx.org
apinon@aclutx.org

*Counsel for Plaintiff Lizelle Gonzalez*
June 18, 2024

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

STATEMENT OF FACTS ...................................................................................... 2

    I.  Texas Law Does Not Criminalize Women for Terminating their Pregnancies. ............ 2

    II.  In Clear Violation of the Law, Defendants Investigated, Prosecuted, Arrested, and Jailed Plaintiff, Violating her Constitutional Rights. ............................................. 3

LEGAL STANDARD ............................................................................................. 7

SUMMARY OF THE ARGUMENT ..................................................................... 9

ARGUMENT ......................................................................................................... 10

    I.  Defendants' Extra-Record Submissions are Improper. ............................................. 10

    II.  Plaintiff Has Adequately Pled Claims to Survive a Motion to Dismiss Under Rule 12(b)(6). .......................................................................................................... 11

        A.  Plaintiff Has Stated a Claim for False Arrest. .................................................. 11

            1.  The Independent Intermediary Doctrine Does Not Apply. ................. 11

            2.  Plaintiff Has Adequately Pled that Defendant Fuentes Is Personally Liable. ................................................................................. 16

        B.  Plaintiff Has Stated a Claim for Malicious Prosecution. ................................ 18

            1.  Plaintiff Has Properly Stated a Claim of Malicious Prosecution Under the Fourth Amendment. .......................................................... 19

            2.  Plaintiff Has Also Stated a Claim for a Violation of Due Process Based on the Same Conduct. ................................................. 21

            3.  Plaintiff Has Properly Alleged Sheriff Fuentes's Direct Involvement in Her Investigation, Prosecution, and Arrest. .............. 23

        C.  Plaintiff Has Stated a Claim of Conspiracy Between District Attorney Ramirez, Assistant District Attorney Barrera, and Sheriff Fuentes. .............. 24

    III.  The Prosecutors are Not Entitled to Absolute Immunity. ........................................ 26

    IV.  Defendants Are Not Entitled to Qualified Immunity. .............................................. 27

    V.  Starr County is Liable for the Conduct of the Prosecutors and Sheriff. ..................... 31

A.  Defendant Ramirez is a final policymaker for whose actions the
    County is appropriately liable. ........................................................ 33

B.  Defendant Fuentes is a final policymaker for whose actions the County
    is appropriately liable. ..................................................................... 34

C.  Plaintiff has also plausibly alleged a basis for *Monell* liability based on
    the District Attorney and Sheriff's actions in conspiracy. ............................. 34

D.  Plaintiff Has Properly Stated a Claim Against Sheriff Fuentes in Both
    His Individual and Official Capacity. ............................................. 36

VI. Eleventh Amendment Does Not Present a Bar to This Court's Jurisdiction.............. 37

VII. The Claims Against Defendant Sheriff Are Not Time-Barred. ................................ 38

CONCLUSION AND PRAYER ........................................................................ 39

## TABLE OF AUTHORITIES

**Cases**

*Albright v. Oliver,*
 510 U.S. 266 (1994)..................................................................................... 23

*Armstrong v. Ashely,*
 60 F.4th 262 (5th Cir. 2023) ....................................................................... 19

*Arnold v. Williams,*
 979 F.3d 262 (5th Cir. 2020) ....................................................................... 11

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009)................................................................................... 2, 8

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007)....................................................................................... 8

*Benningfield v. City of Houston,*
 157 F.3d 369 (5th Cir. 1998) ....................................................................... 25

*Benton v. United States,*
 960 F.2d 19 (5th Cir. 1992) ........................................................................... 8

*Bevill v. Fletcher,*
 26 F.4th 270 (5th Cir. 2022).................................................................... 24, 25

*Bonin v. Sabine River Auth.,*
 65 F.4th 249 (5th Cir. 2023) ......................................................................... 8

*Brown v. Bryan Cty., OK,*
 219 F.3d 450 (5th Cir. 2000) ....................................................................... 32

*Brown v. Lyford,*
 243 F.3d 185 (5th Cir. 2001) ....................................................................... 20

*Buckley v. Fitzsimmons,*
 509 U.S. 259 (1993)................................................................................... 9, 26

*Burge v. St. Tammany Parish,*
 336 F.3d 363 (5th Cir. 2003) ....................................................................... 32

*Burns v. Reed,*
 500 U.S. 478 (1991)................................................................................... 8, 26

*Carswell v. Camp,*
 54 F.4th 307 (5th Cir. 2022) ....................................................................... 39

*Castellano v. Fragozo*,
    352 F.3d 939 (5th Cir. 2003) ........................................................................ 18, 22

*Cole v. Carson*,
    802 F.3d 752 (5th Cir. 2015) ............................................................ 21, 22, 29, 39

*Colle v. Brazos County, Tex.*
    981 F.2d 237 (5th Cir. 1993) ................................................................................ 34

*Cooper v. Brown*,
    844 F.3d 517 (5th Cir. 2016) ................................................................................ 29

*Cornett v. Ward*,
    No. 3:18-CV-1395-S, 2020 WL 906290 (N.D. Tex. Feb. 25, 2020) ...................... 25

*County of Sacramento v. Lewis*,
    523 U.S. 833 (1998) .............................................................................................. 21

*Craig v. Dall. Area Rapid Transit Auth.*,
    504 F. App'x 328 (5th Cir. 2012) .......................................................................... 15

*Crane v. Texas*,
    766 F.2d 193 (5th Cir. 1985) ................................................................................ 34

*Cuadra v. Hous. Indep. Sch. Dist.*,
    626 F.3d 808 (5th Cir. 2010) ................................................................................ 12

*Deville v. Marcantel*,
    567 F.3d 156 (5th Cir. 2009) ........................................................................ 12, 16

*Eguia v. State*,
    288 S.W.3d 1 (Tex. Ct. App. 2008) ........................................................................ 2

*Espinal v. City of Houston*,
    96 F.4th 741 (5th Cir. 2024) .......................................................................... 14, 19

*Esteves v. Brock*,
    106 F.3d 674 (5th Cir. 1997) ........................................................................ 33, 34

*Familias Unidas v. Briscoe*,
    619 F.2d 391 (5th Cir. 1980) ................................................................................ 34

*Garza v. Guerra*,
    No. CIV. A. B-08-084, 2009 WL 136022 (S.D. Tex. Jan. 20, 2009) ...................... 23

*George v. SI Grp., Inc.*,
    36 F.4th 611 (5th Cir. 2022) ................................................................................ 10

*Granger v. Slade*,
  361 F.Supp. 2d 588 (S.D. Miss. 2005) ................................................................. 17

*Green v. Thomas*,
  ___ F. Supp.3d ___, 2024 WL 2269133 (S.D. Miss. 2024) .................................... 30

*Groden v. City of Dallas*, Texas
  826 F.3d 280 (5th Cir. 2016) ............................................................................. 35

*Guerra v. Castillo*,
  82 F.4th 278 (5th Cir. 2023) .............................................................................. 17

*Hand v Gary*,
  838 F.2d 1420 (5th Cir. 1988) ............................................................................ 16

*Harrington v. State Farm Fire & Cas. Co.*,
  563 F.3d 141 (5th Cir. 2009) ............................................................................... 8

*Hayter v. City of Mount Vernon*,
  154 F.3d 269 (5th Cir. 1998) ...................................................................... 20, 24

*Heien v. North Carolina*,
  574 U.S. 54 (2014) ............................................................................................ 11

*Home Builders Assn' of Mississippi, Inc. v. City of Madison, Miss.*,
  143 F.3d 1006 (5th Cir. 1998) ............................................................................. 8

*Hoog-Watson v. Guadalupe Cty.*,
  591 F.3d 431 (5th Cir. 2009) ............................................................................. 26

*Hope v. Pelzer*,
  536 U.S. 730 (2002) ......................................................................................... 29

*Hudson v. City of New Orleans*,
  174 F.3d 677 (5th Cir. 1999) ............................................................................. 38

*Imbler v. Pachtman*,
  24 U.S. 409 (1976) ..................................................................................... 26, 27

*In re Terra Int'l, Inc.*,
  134 F.3d 302 (5th Cir. 1998) ............................................................................. 39

*James v. Tex. Collin Cnty.*,
  535 F.3d 365 (5th Cir. 2008) ............................................................................. 17

*Jennings v. Patton*,
  644 F.3d 297 (5th Cir. 2011) ............................................................................. 12

*Johnson v. City of Shelby, Miss.*,
    574 U.S. 10 (2014) ................................................................................................. 23

*Kisela v. Hughes*,
    138 S. Ct. 1148 (2018) ........................................................................................... 29

*Konan v. U.S.P.S*,
    96 F.4th 799 (5th Cir. 2024) ................................................................................. 25

*Krueger v. Reimer*,
    66 F.3d 75 (5th Cir. 1995) ............................................................................... 33, 38

*Lampton v. Diaz*,
    639 F.3d 223 (5th Cir. 2011) ................................................................................... 9

Limone v. Condon,
    372 F.3d 39 (1st Cir. 2004) ............................................................................. 30, 39

*Loupe v. O'Bannon*,
    824 F.3d 534 (5th Cir. 2016) ........................................................................... 26, 27

*McClelland v. Katy Indep. Sch. Dist.*,
    63 F.4th 996 (5th Cir. 2023) ................................................................................... 8

*Mcdonald v. 81st Jud. Dist. Off.*,
    No. SA-22-CV-01380-XR, 2023 WL 7289395 (W.D. Tex. Nov. 2, 2023) ............................ 34

*McLin v. Ard,*
    866 F.3d 682 (5th Cir. 2017) ....................................................................... 12, 13, 15

*Melton v. Phillips*,
    875 F.3d 256 (5th Cir. 2017) ................................................................................. 14

*Monell v. New York City Dept. of Social Serv.*,
    436 U.S. 658 (1978) ........................................................................................ passim

*Morales v. Carrillo*,
    625 F. Supp. 3d 587 (W.D. Tex. 2022) ................................................................. 25

*Morgan v. Chapman*,
    629 F.Supp.3d 616 (S.D. Tex. 2022) ..................................................................... 22

*Nat'l Press Photographers Ass'n v. McCraw*,
    90 F.4th 770 (5th Cir. 2024) ................................................................................. 38

*Olibas v. Gomez*,
    481 F. Supp. 2d 721 (W.D. Tex. 2006) ................................................................. 36

*Owen v. City of Independence, Mo.*,
    445 U.S. 622 (1980)..................................................................................................... 37

*Pembaur v. City of Cincinnati*,
    475 U.S. 469 (1986)..................................................................................................... 33

*Pierson v. Ray*,
    386 U.S. 547 (1967)..................................................................................................... 31

*Piotrowski v. City of Houston*,
    237 F.3d 567 (5th Cir. 2001)....................................................................................... 32

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001)......................................................................................... 8

*Reyes v. Greer*,
    686 F. Supp. 3d 524 (W.D. Tex. 2023)...................................................................... 24

*Reyna v. Wilson*,
    143 S. Ct. 425 (2022)................................................................................................. 12

*Rochin v. California*,
    342 U.S. 165 (1952)..................................................................................................... 21

*Rogers v. Jarrett*,
    63 4th 871 (5th Cir. 2023)........................................................................................... 32

*Sanders v. English*,
    950 F.2d 1152 (5th Cir. 1992)..................................................................................... 18

*Shaw v. Villanueva*,
    918 F.3d 414 (5th Cir. 2019)....................................................................................... 17

*Shields v. Twiss*,
    389 F.3d 142 (5th Cir. 2004)....................................................................................... 13

*Skelton v. Camp*,
    234 F.3d 292 (5th Cir. 2000)......................................................................................... 8

*Soldal v. Cook Cty.*,
    506 U.S. 56 (1992)...................................................................................................... 18

*State v. Hunter*,
    606 S.W.3d 836 (Tex. Ct. App. 2020)................................................................... 2, 28

State v. Hunter,
    624 S.W.3d 589 (Tex. Crim. App. 2021)..................................................................... 2

*Stem v. Gomez*,
   813 F.3d 205 (5th Cir. 2016) ........................................................................... 17

*Taylor v. Riojas*,
   592 U.S. 7 (2020) ........................................................................................... 29

*Tenney v. Brandhove*,
   341 U.S. 367 (1951) ....................................................................................... 31

*Terrell v. City of El Paso*,
   481 F.Supp.2d 757 (W.D. Tex. 2007) .............................................................. 6

*Terwilliger v. Reyna*,
   4 F.4th 270 (5th Cir. 2021) ........................................................................... 27

*Thomas v. City of Galveston, Texas*,
   800 F. Supp. 2d 826 (S.D. Tex. 2011) ............................................... 28, 32, 36

*Thomas v. Kiperman*,
   846 F.2d 1009 (5th Cir. 1988) ...................................................................... 18

*Thompson v. Clark*,
   596 U.S. 36 (2022) .................................................................................. 19, 30

*Torns v. City of Jackson*,
   622 F. App'x 414 (5th Cir. 2015) .................................................................. 17

*Turner v. Upton County*,
   915 F.2d 133 (5th Cir. 1990) ................................................................. passim

*Villarreal v. City of Laredo, Tex.*,
   94 F.4th 374 (5th Cir. 2024) ......................................................................... 11

*Webster v. City of Houston*,
   735 F.2d 838 (5th Cir. 1984) ........................................................................ 32

*White v. Pauly*,
   580 U.S. 73 (2017) ........................................................................................ 29

*White v. U.S. Corr., L.L.C.*,
   996 F.3d 302 (5th Cir. 2021) .......................................................................... 8

*Whole Women's Health v. Jackson*,
   595 U.S. 30 (2021) .......................................................................................... 3

*Will v. Michigan Dept. of State Police*,
   491 U.S. 58 (1989) ........................................................................................ 37

*Wilson v. Stroman*,
    33 F.4th 202 (5th Cir. 2022) ................................................................. 12, 13, 14, 15

*Zinter v. Salvaggio*,
    Case No. SA-18-CV-00680-JKP, 2021 WL 1381231 (W.D. Tex. Apr. 12, 2021) ............ 33, 34

**Statutes and Legislation**

U.S. Const. Amend. IV .......................................................................................... passim

U.S. Const. Amend. XIV ........................................................................................ passim

42 U.S.C. § 1983 ................................................................................................... passim

Tex. Health & Safety Code § 170A.003 ...................................................................... 2

Tex. Health & Safety Code § 171.065 ........................................................................ 2

Tex. Health & Safety Code § 171.206(b)(1) ............................................................... 3

Tex. Health & Safety Code § 171.207 ........................................................................ 3

Tex. Penal Code § 19.06 ..................................................................................... passim

Tex. Penal Code § 2.03 ............................................................................................. 29

Tex. Penal Code § 22.12 ............................................................................................. 2

Texas Senate Bill 8 (87 (R)) .................................................................................. 3, 15

**Other Authorities**

Alexander A. Reinert, Qualified Immunity's Flawed Foundation, 111 Cal. L. Rev. 201
    (2023) ................................................................................................................. 31

Misoprostol, Medscape. ............................................................................................... 4

Press Release, 229th District Attorney Gocha Allen Ramirez, Announcing Dismissal of
    Indictment Against Ms. Gonzalez (April 10, 2022) ..................................................... 6

**Rules**

Fed. R. Civ. Pro. 26(c) ............................................................................................. 39

Fed. R. Civ. Pro. 26(d) ............................................................................................. 40

Fed. R. Civ. Pro. 26(f) .............................................................................................. 40

Fed. R. Civ. Pro. 12(d) ............................................................................................. 10

Fed. R. Civ. Pro. 3 ................................................................................................ 39

Fed. R. Civ. Pro. 56(d) ......................................................................................... 10

Fed. R. Civ. Pro.12(b)(1) .............................................................................. 1, 7, 8

Fed. R. Civ. Pro. 12(b)(6) ..................................................................... 1, 7, 8, 37

Tex. Disciplinary R. of  Pro. Conduct 3.09(a) ....................................................... 7

Tex. Disciplinary R. of  Pro. Conduct 5.01(a) ....................................................... 7

Tex. Disciplinary R. of  Pro. Conduct 5.01(b) ....................................................... 7

Tex. Disciplinary R. of  Pro. Conduct 8.01(a) ....................................................... 7

Tex. Disciplinary R. of Pro. Conduct, R. 3.09, Comment 2 (2022) ..................... 14

## INTRODUCTION

Defendants conspired to investigate, indict, arrest, and jail Plaintiff Lizelle Gonzalez[1] for murder even though they knew her conduct could not amount to a criminal offense under Texas law. Although our legal system gives prosecutors and law enforcement expansive authority, this blatant abuse of power was unlawful and violated Ms. Gonzalez's constitutional rights. Where prosecutors and law enforcement aim the resources and might of the criminal legal apparatus against someone who they know did not commit a crime, the fundamental agreement between the people and their government is broken. This harm is irreparable unless the responsible state actors are held accountable for their wrongdoing. Here, due to Defendants' egregious misconduct, Ms. Gonzalez was wrongly accused and jailed for a serious crime she categorically could not commit. She now seeks damages for the violations of her Fourth and Fourteenth Amendment rights. In response, Defendants filed motions to dismiss that assert a myriad of arguments to obfuscate their roles in this scheme and shift the blame. But the law does not permit government officials who are entrusted with the ability to deprive citizens of their fundamental right to liberty to knowingly violate constitutional rights with impunity. As detailed below, Ms. Gonzalez has more than adequately met the liberal pleading requirements necessary to survive a Rule 12(b)(6) motion for each claim. The Eleventh Amendment presents no bar under Rule 12(b)(1) to this Court's jurisdiction, and the Defendants are not entitled to absolute or qualified immunity. Defendants' motions should be denied.

---

[1] During the relevant time, Ms. Gonzalez used her then-married name, Lizelle Herrera. This brief uses her current legal name, Lizelle Gonzalez.

## STATEMENT OF FACTS

For purposes of a motion to dismiss, the Court must take the plaintiff's allegations as true and make reasonable factual inferences in her favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff's extensive, well-supported factual allegations establish the following:

**I.      Texas Law Does Not Criminalize Women for Terminating their Pregnancies.**

The authority of District Attorneys and County Sheriffs is limited to investigating and prosecuting behavior defined as a crime by the Texas Legislature. Although the Texas Penal Code criminalizes causing death or injury to a fetus, the Code specifically prohibits the state from prosecuting women for terminating their pregnancies. Tex. Penal Code § 19.06 (stating that criminal homicide chapter "does not apply" to "conduct committed by the mother of the unborn child"); Tex. Penal Code § 22.12 (stating that the assaultive offenses chapter "does not apply" to conduct "committed by the mother of the unborn child"). *See also State v. Hunter*, 606 S.W.3d 836, 847 (Tex. Ct. App. 2020) (holding that indictment "on its face" did not state a crime because Tex. Penal Code § 19.06 is clear that the pregnant woman cannot commit a crime by terminating her pregnancy), *rev. denied*, 624 S.W.3d 589 (Tex. Crim. App. 2021); *Eguia v. State*, 288 S.W.3d 1, 13 (Tex. Ct. App. 2008) (explaining that, in enacting Section 19.06, the legislature "narrowed the class" of people "who may be charged" with homicide). Likewise, although Texas's latest abortion ban criminalizes most abortions, it also exempts the pregnant woman from prosecution. Tex. Health & Safety Code § 170A.003 ("This chapter may not be construed to authorize the imposition of criminal, civil, or administrative liability or penalties on a pregnant female on whom an abortion is performed, induced, or attempted."). *See also, e.g.*, Tex. Health & Safety Code § 171.065 (medication abortion ban) ("A pregnant woman on whom a drug-induced abortion is attempted, induced, or performed in violation of this subchapter is not criminally liable for the

violation."). In short, no statute authorizes law enforcement to investigate or prosecute a woman for terminating her pregnancy.

Indeed, while Texas Senate Bill 8 (87 (R)) creates civil liability for an abortion performed after about six weeks of pregnancy, the statute explicitly provides that it "shall be enforced exclusively" through private suits, and that "no enforcement . . . may be taken or threatened by this state, a political subdivision, a district or county attorney, or an executive or administrative officer or employee of this state or a political subdivision against any person[.]" Tex. Health & Safety Code § 171.207. Limits on public enforcement were intentional and widely publicized. Indeed, before the Defendants began investigating Ms. Gonzalez, the United States Supreme Court agreed with the Texas Attorney General that he and other state officers lacked "any enforcement authority" under the law. *Whole Women's Health v. Jackson*, 595 U.S. 30, 43 (2021). Additionally, S.B. 8 *reiterates* Texas's serial prohibitions on the enforcement of abortion bans, both civil and criminal, against pregnant people, providing unequivocally that "[S.B. 8] may not be construed to . . . authorize the initiation of a cause of action against or the prosecution of a woman on whom an abortion is performed or induced or attempted to be performed or induced. . . ." Tex. Health & Safety Code § 171.206(b)(1). In sum, Texas law explicitly and uniformly forbids criminal liability for a woman who terminates her pregnancy.

II.     **In Clear Violation of the Law, Defendants Investigated, Prosecuted, Arrested, and Jailed Plaintiff, Violating her Constitutional Rights.**

Despite the fact that Texas law specifically prohibits the prosecution of pregnant women, the Starr County District Attorney's Office and Starr County Sheriff's Office had an established coordinated policy with Starr County Memorial Hospital to investigate women who terminate their pregnancies. First Am. Compl. ("FAC") ¶ 4.6, ECF No. 7. As part of this agreement, the hospital

3

would report cases of suspected self-managed abortions to law enforcement and share protected health information in furtherance of a criminal investigation. *Id.*

Unaware of this agreement, on January 7, 2022, Plaintiff Lizelle Gonzalez went to the Starr County Memorial Hospital Emergency Department with abdominal pain after using Cytotec[2] to terminate her pregnancy. FAC ¶ 4.1. Ms. Gonzalez was treated by Dr. Rodolfo Lozano, M.D., and Norma Aguirre, R.N., and discharged on January 8, 2022, at approximately 12 p.m. after an obstetrical examination showed no contractions and a positive fetal heart rate. *Id.* Just forty minutes later, however, Ms. Gonzalez returned to the same ER by ambulance with vaginal bleeding and more abdominal pain. *Id.* ¶ 4.2. At this time, the fetus no longer had any cardiac activity, and it was determined that Ms. Gonzalez had an "incomplete spontaneous abortion." *Id.*

Employees from the hospital reported Ms. Gonzalez's pregnancy termination to the Sheriff's Office in violation of Ms. Gonzalez's privacy rights and even though there was no evidence of any crime. *Id.* ¶ 4.3.  Upon being notified by hospital staff, from January 7, 2022, through April 11, 2022, Starr County employees Sheriff Rene Fuentes, District Attorney Gocha Allen Ramirez, and Assistant District Attorney Alexandria Lynn Barrera, along with an unknown number of other Starr County employees, jointly conducted an unlawful investigation into Ms. Gonzalez's termination of her pregnancy despite having no authority to do so. *Id.* ¶¶ 4.3-4.12. For example, Defendants coordinated to obtain Ms. Gonzalez's confidential medical records from the hospital, knowing that the facts did not and could not support any allegation of criminal wrongdoing. *Id.* ¶¶ 4.3-4.4. Defendants Barrera and/or Ramirez provided legal advice to the Starr County Sheriff's Office investigators and coordinated and directed the baseless "murder"

---

[2] Cytotec is the brand name for the drug misoprostol, which has several uses, including the treatment of ulcers, miscarriage management, and abortion care. Misoprostol, Medscape, https://reference.medscape.com/drug/cytotec-misoprostol-341995.

investigation targeting Ms. Gonzalez. *Id.* ¶ 4.7. Defendant Barrera consulted with Defendant Ramirez about the investigation and whether to present unsupported murder charges to the Grand Jury. *Id.* ¶¶ 4.5, 4.17; *see also In the Matter of Gocha A. Ramirez, Bar No. 16501800*, Agreed Judgment of Probated Suspension at 2 (Jan. 25, 2024) ("Suspension") (referenced in FAC ¶ 4.17). Thereafter, Defendant Ramirez knowingly permitted Defendant Barrera to pursue criminal homicide charges against Ms. Gonzalez for acts [that were] not criminal and where Defendant Ramirez knew the charges could categorically never be supported by probable cause. FAC ¶¶ 4.5, 4.17; Suspension at 2. Defendant Ramirez knew that doing so violated the Texas Disciplinary Rules of Professional Conduct, yet knowingly failed to take reasonable remedial action to avoid or mitigate the consequences of the Assistant District Attorneys under his control. FAC ¶¶ 4.5, 4.17; Suspension at 2.

With approval from Defendant Ramirez, and the assistance of Defendant Fuentes, on March 30, 2022, Defendant Barrera presented the murder charge to the Grand Jury and secured a one-count indictment charging Ms. Gonzalez with "causing the death of an individual J.A.H. by a self-induced abortion." FAC ¶¶ 4.9-4.12. According to the plain text of the criminal statute, the language of the charge itself negated the possibility of criminal conduct. *Id.* ¶ 4.10. To secure this knowingly baseless indictment, the prosecutors and Sheriff necessarily would have had to intentionally mislead the Grand Jury about the elements of the offense (which excepted pregnant people from prosecution) or deliberately omit Ms. Gonzalez's identity as the woman whose pregnancy was terminated (which foreclosed any criminal liability therefore). *Id.* ¶ 4.11. Following return of the indictment, and at the direction of Defendants Fuentes, Ramirez and Barrera, Ms. Gonzalez was arrested and jailed on Thursday, April 7, 2022. *Id.* ¶¶ 4.7, 4.13, 7.23. While in custody, Ms. Gonzalez was taken to the hospital after suffering anxiety-induced dyspnea caused

by the stress of the unconstitutional indictment and arrest. *Id.* ¶ 4.13. She spent three days in jail before posting a $500,000 bond[3] to secure her release. *Id.*

Defendant Ramirez finally dismissed the baseless charge against Ms. Gonzalez on Monday, April 11, 2022. *Id.* ¶ 4.14. In the Press Release announcing the dismissal of the indictment, Defendant Ramirez conceded that Ms. Gonzalez "cannot and should not be prosecuted for the allegation against her" and that she "did not commit a criminal act under the laws of the State of Texas." *Id.*; *see also* Press Release, 229th District Attorney Gocha Allen Ramirez, Announcing Dismissal of Indictment Against Ms. Gonzalez (April 10, 2022), https://www.facebook.com/229thDA/posts/387792870018463 ("Press Release") (referenced in FAC ¶ 4.14).[4]

Although the charge was dismissed, Ms. Gonzalez's mugshot, news of her arrest, and the accusation by County officials that she committed murder was widely disseminated on television, in print, and throughout social media. FAC ¶ 4.16. For example, immediately following her arrest, a local social media site posted details of the allegations and identified her by name, sparking rumors in her close-knit community. *Id.* National headlines read: "Woman in Texas Charged with Murder in Connection with 'Self-Induced Abortion.'" *Id.* These articles will forever exist on the internet even though the charge was completely unfounded. *Id.* Due to being falsely arrested and wrongly accused, Ms. Gonzalez suffered reputational harm, public humiliation, and mental and emotional distress. *Id.* at ¶ 8.1.

---

[3] In Texas, the amount of bond may be initially set by a district attorney rather than a magistrate. *See, e.g.*, *Terrell v. City of El Paso*, 481 F.Supp.2d 757, 767 (W.D. Tex. 2007).

[4] Because the press release was explicitly referenced in the Complaint, FAC ¶ 4.14, its contents can be considered by this Court concerning a motion to dismiss under Rule 12(b)(6).

On January 25, 2024, the Grievance Committee of the Texas State Bar found that Defendant Ramirez violated several Texas Disciplinary Rules of Professional Conduct by knowingly making a false statement of material fact in connection with the Texas Bar's disciplinary matter investigating his conduct in Ms. Gonzalez's case, R. 8.01(a); prosecuting a charge of murder that he knew was unsupported by probable cause, R. 3.09(a); ordering, encouraging, or knowingly permitting a supervisee to violate the rules of professional conduct, R. 5.01(a); and knowingly failing to take reasonable remedial action to avoid or mitigate the consequences of a supervisee's violation of the rules of professional conduct, R. 5.01(b). FAC ¶ 4.17; Suspension at 2. As punishment for this misconduct, Defendant Ramirez was sanctioned with a one-year suspension from the practice of law. Suspension 1-2. This suspension, however, was fully probated. *Id.* Thus, Defendant Ramirez can continue practicing law and serving as the chief prosecutor for the County with essentially no repercussions besides having to pay $1,250 in attorneys' fees. *Id.* at 3-4.

On March 28, 2024, Plaintiff filed this action under 42 U.S.C. § 1983, alleging that Defendants violated her constitutional rights under the Fourth and Fourteenth Amendments. She filed the First Amended Complaint on April 11, 2024.

## **LEGAL STANDARD**

Defendant Starr County has moved to dismiss Plaintiff's First Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Individual defendants have moved to dismiss Plaintiff's First Amended Complaint under Rule 12(b)(6).

A motion to dismiss under 12(b)(1) "should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders Assn' of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir.

1998). In making this determination, the court is not limited to only those facts that are undisputed by the parties; instead, the court is "empowered to consider matters of fact which may be in dispute," *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), and considers the facts alleged by the plaintiff as true for the purposes of a Rule 12(b)(1) challenge, *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992). Although the burden of proof for a Rule 12(b)(1) motion is usually on the party asserting jurisdiction, "an entity asserting sovereign immunity bears the burden of demonstrating that it is an 'arm of the state.'" *Bonin v. Sabine River Auth.*, 65 F.4th 249, 253 (5th Cir. 2023) (quoting *Skelton v. Camp*, 234 F.3d 292, 297 (5th Cir. 2000)).

A motion to dismiss under 12(b)(6) "is viewed with disfavor and is rarely granted." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (quotations and citations omitted). To survive a motion to dismiss, a complaint need only "contain sufficient factual matter, [which is] accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All well-pled facts are construed with "all reasonable inferences in the complaint in the light most favorable to the plaintiff." *White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 306-07 (5th Cir. 2021). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

If a defense of qualified immunity has been raised, the plaintiff bears the burden of establishing that defendants are not entitled to it. *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1005 (5th Cir. 2023). Unlike qualified immunity, however, "the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed,* 500 U.S. 478, 486–87 (1991). Courts, therefore, look to whether defendants have "carried their burden of establishing that they were functioning as 'advocates'" for them to be

8

protected by absolute immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 (1993). *See also Lampton v. Diaz*, 639 F.3d 223, 228 (5th Cir. 2011) (finding the defendant prosecutor failed to meet the burden to establish he was protected by absolute immunity where he could cite no case in support of his position that his conduct could be considered that of an advocate).

<u>SUMMARY OF THE ARGUMENT</u>

Despite explicit and clear law prohibiting Defendants from prosecuting women for terminating their pregnancies, Defendants investigated, indicted, arrested, and incarcerated Ms. Gonzalez on that basis alone. She suffered substantial personal and familial harm as a result. In an effort to evade responsibility for knowingly subjecting Ms. Gonzales to arrest and prosecution on baseless charges, Defendants make several arguments, each of which fails.

First, Defendants rely on extra-record submissions that cannot be relied on at the motion to dismiss stage. Second, Defendants' various arguments alleging that the complaint fails to properly state a claim are factually and legally unsupported. Ms. Gonzalez has more than adequately alleged facts to plausibly state the claims contained in her complaint, and Defendants' argument that Ms. Gonzalez cannot legally bring a malicious prosecution claim under the Fourteenth Amendment is contrary to Fifth Circuit precedent recognizing that such claims can be brought under both the Fourth and Fourteenth Amendments. Third, the Defendants' argument that the Prosecutors and Sheriff are entitled to absolute and/or qualified immunity ignores settled law that these doctrines do not shield prosecutors when acting outside their prosecutorial function and cannot protect state actors from violating well-known rights. Fourth, Defendant County's argument that it is not liable for the conduct of its employees misunderstands the role of Defendants Ramirez and Fuentes as policymakers for the County. Fifth, the County's challenge to this Court's jurisdiction misunderstands Eleventh Amendment immunity. Lastly, Defendant Fuentes

9

incorrectly relies on the summons date as controlling for purposes of the statute of limitations. Because each of the Defendants' arguments lack merit, their motions should be denied.

**ARGUMENT**

### I.      Defendants' Extra-Record Submissions are Improper.

As explained in Ms. Gonzalez's simultaneously filed Motion to Strike, ECF No. 27, which she incorporates by reference, the seven (7) sealed exhibits purportedly referenced in the prosecutors' and Sheriff's motions to dismiss are improperly before this Court at the motion to dismiss stage.[5] Not only does Ms. Gonzalez's complaint not reference these documents, but the Defendants admit that Ms. Gonzalez was unlikely to have seen them before Defendants filed them, *see* ECF No. 15, and provided them to Ms. Gonzalez, according to a protective order. *See* ECF No. 18. Far from being "central to" Ms. Gonzalez's claims, these documents are prejudicial, created by the Defendants, rife with hearsay, and undermine Ms. Gonzalez's entitlement to the presumptive truth of her allegations at this stage. Moreover, these documents cannot be considered without converting the Defendants' motions to dismiss into motions for summary judgment. *See* Fed. R. Civ. Pro. 12(d). Thus, if the Court chooses to consider them and thereby construe Defendants' motions as summary judgment motions, it should defer consideration of them to permit discovery under Federal Rule of Civil Procedure 56(d). *George v. SI Grp., Inc.*, 36 F.4th 611, 619 n.4 (5th Cir. 2022).

---

[5] Defendant Starr County does not claim to attach these documents to its motion to dismiss or state a basis for doing so.

II.      **Plaintiff Has Adequately Pled Claims to Survive a Motion to Dismiss Under Rule 12(b)(6).**

   A.  **Plaintiff Has Stated a Claim for False Arrest.**

Ms. Gonzalez's First Amended Complaint adequately alleges a false arrest claim under the Fourth Amendment against Defendants. To state a claim for false arrest, Ms. Gonzalez must plausibly allege that she was arrested without probable cause. *Arnold v. Williams*, 979 F.3d 262, 269 (5th Cir. 2020). Probable cause requires a "reasonable belief that [a suspect's] conduct matched the elements of a" criminal violation. *Villarreal v. City of Laredo, Tex.*, 94 F.4th 374, 387 (5th Cir. 2024). This inquiry does not examine "the subjective understanding of the particular officer involved. . . . Thus, an officer can gain no Fourth Amendment advantage through a sloppy-study of the laws he is duty-bound to enforce." *Heien v. North Carolina*, 574 U.S. 54, 66–67 (2014).

Ms. Gonzalez's First Amended Complaint easily satisfies these elements. Ms. Gonzalez was arrested on April 7, 2022, at the direction of Defendants Fuentes, Ramirez, and Barrera. FAC ¶¶ 4.13, 7.21. This arrest was the culmination of Defendants' conspiracy to investigate and bring charges against Ms. Gonzalez for a crime they knew she did not commit and could not apply to her actions. *See id.* ¶¶ 4.12, 7.26, 7.28, 7.32-7.36.  There was no probable cause for the arrest; given that the plain language of Section 19.06 of the homicide statutes exempted her, as "the mother of the unborn child" from any criminal liability, Defendants could not have reasonably believed that her conduct constituted the charged crime. *Id.* ¶ 4.11. Any doubt about the lack of probable cause is confirmed by Defendant Ramirez's admission that "it is clear" that Ms. Gonzalez "cannot and should not be prosecuted for the allegations against her." *Id.* ¶ 4.14.

   1.  **The Independent Intermediary Doctrine Does Not Apply.**

Tellingly, none of the Defendants have argued that probable cause existed to arrest Ms. Gonzalez for murder. Rather, Defendant Fuentes argues that he is shielded from liability for

11

arresting Ms. Gonzalez because the grand jury indicted her beforehand. *See* Fuentes Br. at 8, ECF No. 23. Because the grand jury process was tainted, however, the independent intermediary doctrine does not apply to insulate Defendant Fuentes (or any other Defendant) from liability for Ms. Gonzalez's false arrest.

"'[I]f facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation' for the Fourth Amendment violation." *Jennings v. Patton*, 644 F.3d 297, 300–01 (5th Cir. 2011) (quoting *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010)). But a grand jury indictment will not "shield a defendant who has committed or initiated a false arrest," if "the plaintiff shows that 'the deliberations of that intermediary were in some way tainted by the actions of the defendant.'" *Wilson v. Stroman*, 33 F.4th 202, 208 (5th Cir. 2022), *cert. denied sub nom. Reyna v. Wilson*, 143 S. Ct. 425 (2022), *and cert. denied*, 143 S. Ct. 426 (2022) (quoting *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009)). Thus, the independent intermediary doctrine does not apply where an arrest warrant or indictment was obtained based on knowingly false or misleading information. *See, e.g.*, *McLin v. Ard,* 866 F.3d 682, 690-91 (5th Cir. 2017) (at the motion to dismiss stage, arrest warrants for criminal defamation obtained through a magistrate would not insulate defendants from liability where the plaintiff alleged that defendants knew his comments criticizing official conduct did not constitute criminal defamation, never possessed any information which would be sufficient to swear out affidavits claiming a violation of the criminal defamation statute, yet "met for the purpose of conspiring to create false and misleading affidavits in order to obtain warrants for McLin's arrest").

A plaintiff's "mere allegations of 'taint' . . . may be adequate to survive a motion to dismiss where the complaint alleges other facts supporting the inference." *Id.* at 689–90; *id.* at 690 fn.3

(collecting cases). This rule applies in force concerning grand jury proceedings given the "'general rule of secrecy [that] shrouds the proceedings of grand juries,'" which makes it "understandably difficult for a plaintiff to know what was said—or wasn't said—to the grand jury absent any form of discovery" and means "that allegations about what was presented or omitted in the grand jury room will in some sense be speculative." *Wilson*, 33 F.4th at 212 (quoting *Shields v. Twiss*, 389 F.3d 142, 147 (5th Cir. 2004)). The court is therefore empowered to synthesize all the information in the complaint to assess the plausibility of those claims that have not had any opportunity to be fleshed out by discovery. *See McLin*, 866 F.3d at 690.

Because Ms. Gonzalez's First Amended Complaint sufficiently alleges that Defendant Fuentes's actions tainted the grand jury's indictment, the independent intermediary doctrine does not apply. Ms. Gonzalez alleges that Defendants Ramirez, Barrera, and Fuentes conspired with the Starr County Memorial Hospital to criminally investigate women for their own abortions despite knowing that such conduct was not criminal. FAC ¶¶ 2.2, 2.5, 4.6, 7.44. After receiving information about Ms. Gonzalez from the hospital, Sheriff Fuentes and his office, in connection with and/or under the joint supervision of Defendants Barrera and Ramirez, commenced a murder investigation against Ms. Gonzalez despite knowing that her conduct was not a crime under Texas law. *Id.* ¶ 4.4.  Defendants Fuentes, Ramirez, and Barrera were each involved in the "murder" investigation, consulting with each other about the investigation, directly communicating with investigators working for Defendant Fuentes, and on the part of Defendants Ramirez and Barrera, directing and providing legal advice to the investigation. *Id.* ¶¶ 4.5, 4.7.

Defendants Barrera, Ramirez, and Fuentes continued this investigation for months, gathering evidence against Ms. Gonzalez that they knew could not establish the elements of a crime. *Id.* ¶¶ 4.3, 4.4, 4.5, 4.9, 4.11. Defendants Ramirez, Barrera, and Fuentes then conspired to

introduce evidence of acts that were clearly not criminal, and which had been gathered by them or at their direction in their baseless investigation, to a grand jury for the purpose of securing an indictment that they knew had no legal basis. *Id.* ¶¶ 4.11, 4.12. It is evident that no probable cause for Ms. Gonzalez's arrest could have been established before the grand jury, absent either some misrepresentation or falsification, because Ms. Gonzalez is explicitly exempted from criminal liability by the Texas Penal Code. In such a situation, "the evidence presented to the grand jury 'obvious[ly] fail[ed]' to establish the probable cause necessary for an indictment," and the independent intermediary doctrine does not apply to shield Defendants from liability. *Espinal v. City of Houston*, 96 F.4th 741, 746 (5th Cir. 2024) (citing *Melton v. Phillips*, 875 F.3d 256, 264 (5th Cir. 2017)).

While the secrecy that shrouds a grand jury proceeding makes it impossible for Ms. Gonzalez to know exactly what transpired, several facts support the inference that to secure such an indictment Defendants would have had to introduce misleading or false evidence and/or make misrepresentations to the grand jury about the facts or the law. *See* FAC ¶¶ 4.8, 4.11; *see also Wilson*, 33 F.4th at 212. As described in the First Amended Complaint and above, Defendant Ramirez was disciplined by the Grievance Committee of the State Bar of Texas for his conduct around this investigation and indictment, and for specifically engaging in a prosecution for which he knew there was no probable cause. FAC ¶ 4.17. In particular, for the Grievance Committee to substantiate the Rule 3.09(a) violation against Defendant Ramirez, the Committee would have had to find that he "believe[d] that material inculpatory information presented to the grand jury was false." Texas Disciplinary Rules of Professional Conduct, R. 3.09, Comment 2 (2022). Further, with the heightened state of public discourse around the passing and litigation surrounding S.B. 8, as well as the Supreme Court's consideration of *Dobbs* ongoing at the time, it is more than plausible

that the Prosecutor Defendants would have been intimately involved with the instigation and investigation of Ms. Gonzalez. Here, "the Defendants could not have believed they had probable cause to arrest" Ms. Gonzalez, nor that any grand jury could lawfully indict her on any evidence. *McLin*, 866 F.3d at 695. Under such circumstances, and at the motion to dismiss stage, Defendants cannot be shielded by a grand jury indictment that they conspired to taint.

Defendant Fuentes also incorrectly characterizes *McLin* as stating that "a plaintiff must 'affirmatively show[]' that the defendant tainted the intermediary's (grand jury's) decision," *See* Fuentes Br. at 10 (citing *McLin*, 866 F.3d at 690 as quoting *Craig v. Dall. Area Rapid Transit Auth.*, 504 F. App'x 328 (5th Cir. 2012)). *McLin*, however, says nothing about an affirmative showing. Nor does *McLin* quote *Craig*. Furthermore, in *Craig*, the Court found that the plaintiff's false arrest claim failed *at the summary judgment stage*, because he "ha[d] not affirmatively shown, or attempted to show, what evidence the grand jury relied upon to return an indictment." *Craig*, 504 F. App'x at 332. Defendant's reliance on these cases is misplaced.

Finally, Defendant Fuentes argues that because Ms. Gonzalez does not allege that he prepared or signed a probable cause affidavit, the independent intermediary doctrine absolves him of liability for the baseless arrest of Ms. Gonzalez. *See* Fuentes Br. at 9. Yet this argument relies on a misunderstanding of Ms. Gonzalez's claim as based on *Franks* or *Malley* and mischaracterizes the Fifth Circuit's opinion in *Wilson.* 33 F.4th at 213. *Wilson* explained that *Franks* and *Malley* are separate causes of action where arrests are secured through warrant affidavits that either contain material misstatements or omissions or do not facially supply probable cause, while the taint exception "is an exception to [the independent intermediary] doctrine that insulates an official who would otherwise be liable for a false arrest." *Id.* at 202, 209. *Wilson* made clear that *Franks* and *Malley* claims are two "functional exceptions to the independent intermediary doctrine," but did

not hold that they are the only exceptions. *Id.* at 208. *Wilson* therefore in no way limited the animating principle behind the "taint exception"—that "the intermediary must be truly independent" for the doctrine to apply. *Id.* at 208.

Where, as here, Ms. Gonzalez has not alleged *Franks* or *Malley* standalone claims, the relevant inquiry is not whether the Sheriff signed or contributed to a probable cause affidavit, but, rather, whether the deliberations of the grand jury "'were in some way tainted by the actions of the defendant.'" *Id.* at 208 (citing *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009)). *See also Hand v Gary*, 838 F.2d 1420, 1427-28 (5th Cir. 1988) (explaining that "[a]ny misdirection of the magistrate or the grand jury by omission or commission perpetuates the taint of the original official behavior" and makes the independent intermediary doctrine inapplicable). For the same reasons, Defendant Fuentes's arguments about the proper defendants for *Franks* or *Malley* claims involving warrant affidavits are inapposite. *See* Fuentes Br. at 9. Accordingly, Defendant Fuentes's arguments concerning *Franks* and *Malley* are misplaced.

### 2.   Plaintiff Has Adequately Pled that Defendant Fuentes Is Personally Liable.

Contrary to Defendant Fuentes's assertions, Ms. Gonzalez's First Amended Complaint adequately alleges that *his* actions "could have tainted the grand jury." *See* Fuentes Br. at 10. Ms. Gonzalez alleges that "Sheriff Fuentes, and his office, . . . performed an investigation into the facts or circumstances surrounding the charge of Murder against Plaintiff," FAC ¶ 4.4, including using his office's investigators to interview Ms. Gonzalez, *id.* ¶ 4.7. He then conspired with Defendants Ramirez and Barrera to "present false information, recklessly misrepresenting facts in order to pursue a bogus murder charge." *Id.* ¶ 4.12. Had Defendant Fuentes "been truthful" and disclosed the exculpatory information he knew about Ms. Gonzalez (i.e. that she was categorically exempt from murder charges), "there would not have been any legal basis for the indictment and ensuing

arrest." *Id.* Taken together, the allegations in the First Amended Complaint set out a series of collective action in furtherance of an unfounded investigation, and a conspiracy to pursue bogus criminal charges, like that found in *McLin*, to adequately show that Sheriff Fuentes "misdirected the intermediary." *Shaw v. Villanueva*, 918 F.3d 414, 417–18 (5th Cir. 2019).

These allegations differ greatly from *Torns v. City of Jackson*, 622 F. App'x 414, 417 (5th Cir. 2015), and *Granger v. Slade*, 361 F.Supp. 2d 588, 596 (S.D. Miss. 2005), which were cited by Defendant Fuentes when arguing that the complaint is "void of the factual content necessary" to show that he personally acted to deprive her of her constitutional rights. *See* Fuentes Br. at 10. In *Torns*, the court found allegations that "the plaintiffs arrived during an active police search, were stopped by police officers, and were eventually arrested" insufficient to state a false arrest claim against the arresting officers and high-ranking city officials who were not alleged to have personally taken any action against them. 622 F. App'x at 417. Similarly, in *Granger*, the court dismissed false arrest claims against the police chief and city where not only was there no allegation of their involvement in the actual arrest or decision to arrest, but they were not even named as defendants on that claim. 361 F.Supp. 2d at 596.

Unlike in *Torns* and *Granger*, Ms. Gonzalez alleges that Defendant Fuentes personally investigated her and conspired with the prosecutors to charge her with a crime they knew she did not commit. He was therefore personally involved in and causally connected to her false arrest. *See Stem v. Gomez*, 813 F.3d 205, 210 (5th Cir. 2016) ("When a government official is sued under Section 1983, the plaintiff must allege that the official 'was either personally involved in the deprivation or that his wrongful actions were causally connected' to it." (citing *James v. Tex. Collin Cnty*., 535 F.3d 365, 373 (5th Cir. 2008)). These allegations more than plausibly allege a claim against Defendant Fuentes. *See Guerra v. Castillo*, 82 F.4th 278, 287–88 (5th Cir. 2023) (denying

17

motion to dismiss false arrest claim against police chief where plaintiff alleged he conspired with district attorney to charge plaintiff with a crime they knew he did not commit).

Defendant Fuentes's motion, at most, *denies* the Plaintiff's allegations. But as discussed in the accompanying Motion to Strike, Defendant Fuentes's reliance on cherry-picked investigatory documents that are not referenced anywhere in Plaintiff's complaint is improper and cannot defeat Plaintiff's well-pled allegations at the motion to dismiss stage. Because Ms. Gonzalez has plausibly alleged a false arrest claim against Defendant Fuentes, his arguments fail.

### B.  Plaintiff Has Stated a Claim for Malicious Prosecution.

Ms. Gonzalez has also plausibly alleged a malicious prosecution claim against Defendants Ramirez, Barerra, and Fuentes. Malicious prosecution claims can be brought under 42 U.S.C. § 1983 as a violation of the Fourth and/or Fourteenth Amendments. *Thomas v. Kiperman*, 846 F.2d 1009, 1011 (5th Cir. 1988) ("Claims of false arrest, false imprisonment, and malicious prosecution involve the guarantees of the fourth and fourteenth amendments when the individual complains of an arrest, detention, and prosecution without probable cause."). *See also Soldal v. Cook Cty.,* 506 U.S. 56, 70 (1992) ("Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands."). Where the malicious prosecution claim concerns a seizure caused by a prosecution without probable cause, the claim may be brought as a violation under the Fourth Amendment. *Thompson v. Clark*, 596 U.S. 36, 39 (2022). Where the claim concerns government conduct and harm outside the search and seizure context and that conduct violates due process, it may also be brought as a violation of the due process clause of the Fourteenth Amendment. *Sanders v. English*, 950 F.2d 1152, 1163 (5th Cir. 1992) (explaining that the Fourteenth Amendment protects people against "bad faith or malicious prosecution"). *See also Castellano v. Fragozo*, 352 F.3d 939, 955, 958 (5th Cir. 2003) (finding "contention that the

18

manufacturing of evidence and knowing use of perjured testimony" was cognizable as a violation of due process under the Fourteenth Amendment).

### 1.   Plaintiff Has Properly Stated a Claim of Malicious Prosecution Under the Fourth Amendment.

The "gravamen" of a malicious prosecution claim under the Fourth Amendment "is the wrongful initiation of charges without probable cause." *Thompson*, 596 U.S. at 43. This is precisely what Defendants did here. To state a claim for malicious prosecution, a plaintiff must show:

> (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages.

*Espinal v. City of Houston*, 96 F.4th 741, 748 (5th Cir. 2024) (citing *Armstrong v. Ashely*, 60 F.4th 262, 279 (5th Cir. 2023)).

Plaintiff's well-pled allegations satisfy each required element. It is undisputed that criminal proceedings were commenced when Plaintiff was investigated, charged, and indicted for murder, *see* FAC ¶¶ 4.4 – 4.13, and that the proceedings terminated in her favor when Defendant Ramirez dismissed the indictment. FAC ¶ 4.14. Plaintiff's allegations also demonstrate that Defendants Ramirez, Barerra, and Fuentes caused her unlawful prosecution. They solicited information about self-managed abortions through "agreements with the Starr County Memorial Hospital," despite knowing this was not criminal conduct. *Id.* ¶¶ 2.2, 2.5, 4.6, 7.44. Once they received information from the hospital about Ms. Gonzalez, they "performed an investigation into the facts or circumstances surrounding the charge of Murder," i*d.* ¶ 4.4, consistent with the Starr County District Attorney's Office "policy of initiating and performing its own investigation" either before or in conjunction with the Sheriff's Office, i*d.* ¶ 4.5. Defendants Ramirez and Barrera were in "direct communication with Starr County Sheriff's Office investigators providing legal advice in

coordinating and/or directing the 'murder' investigation." *Id.* ¶¶ 4.5, 4.7. Defendant Fuentes also coordinated and participated in the investigation for months, gathering evidence against Ms. Gonzalez that he knew could never add up to a crime. *Id.* ¶¶ 4.3, 4.4, 4.5, 4.7, 4.9, 4.11. Defendants then conspired to introduce facially insufficient evidence, fabricate evidence, and/or misrepresent the facts and the law to the Grand Jury to "pursue a bogus murder charge" and obtain a high-profile indictment for a self-managed abortion, which is not an offense under Texas law. *Id.* ¶¶ 4.11, 4.12.

Ms. Gonzalez has also adequately pled an absence of probable cause and an intentional violation of Ms. Gonzalez's constitutional rights as the basis for an inference of malice. "[M]alice may be inferred from the lack of probable cause or from a finding that the defendant acted in reckless disregard of the other person's rights." *Hayter v. City of Mount Vernon*, 154 F.3d 269, 275 (5th Cir. 1998). "For purposes of malicious prosecution, probable cause means 'the existence of such facts and circumstances as would excite the belief, in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted." *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001) (cleaned up). Because Section 19.06 states that the homicide statutes do not apply to the conduct of a pregnant woman related to the death of her own unborn child, there was no probable cause to investigate, charge, or arrest Ms. Gonzalez. FAC ¶¶ 4.10-4.11. At every point, Defendants knew that Texas law exempted Ms. Gonzalez from prosecution for murder. *Id.* ¶ 4.10. Nevertheless, Defendants knowingly disregarded the absence of probable cause to maliciously pursue a prosecution they knew was unlawful, intentionally violating her constitutional rights. *Id.* ¶ 4.11. Such allegations are sufficient to demonstrate malice.

Finally, Plaintiff's complaint adequately alleges that she incurred significant damages from the unlawful investigation, prosecution, and arrest that Defendants initiated, directed and pursued.

Defendants' unlawful conduct forever changed her life, causing personal distress and damaging her reputation and standing in her community. *Id.* at ¶¶ 4.15-4.19. Thus, Ms. Gonzalez has adequately pled each element of the malicious prosecution claim.

### 2. Plaintiff Has Also Stated a Claim for a Violation of Due Process Based on the Same Conduct.

For decades, courts have recognized that the due process clause of the Fourteenth Amendment imposes "restrictions upon the manner in which the States may enforce their penal codes." *Rochin v. California*, 342 U.S. 165, 168 (1952). The due process clause of the Fourteenth Amendment is violated by executive action "when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (internal quotation omitted). Government conduct that "intended to injure" but was "unjustifiable by any government interest is the sort of official action [that] most likely [rises] to the conscience-shocking level" to violate due process. *Id.* at 849. The harm caused by a due process violation is distinct from that caused by a seizure following false arrest since "being framed and falsely charged brings inevitable damage to the person's reputation, especially where, as here, the crime is a felony involving the threat of violence." *Cole v. Carson*, 802 F.3d 752, 772 (5th Cir. 2015) (declining to dismiss malicious prosecution claim under the Fourteenth Amendment where officers framed plaintiff by intentionally lying to investigators), *cert. granted, judgment vacated sub nom. Hunter v. Cole*, (2016), *and opinion reinstated in part*, 935 F.3d 444 (5th Cir. 2019) (en banc).

To state a claim for a violation of the due process clause, a plaintiff must allege that a defendant's conduct "shock[s] the conscience," defined as: "conduct that violates the decencies of civilized conduct; conduct that is so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency; conduct that interferes with rights implicit in the concept of ordered

21

liberty; and conduct that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at 771-72 (internal quotations omitted). Consistent with this definition, the "[d]eliberate framing of a person by the state offends the most strongly held values of our nation" and therefore amounts to a Fourteenth Amendment due process violation. *Id.*

Ms. Gonzalez has adequately stated such a claim. The complaint alleges that Defendants Ramirez, Barrera, and Fuentes all knew that Ms. Gonzalez did not and could not commit murder for the termination of her pregnancy, yet pursued and obtained a false charge of murder against her anyway. FAC ¶¶ 4.10-4.11. As detailed above, Defendants conspired to punish Ms. Gonzalez for a crime they knew she did not commit, based on behavior that is not criminalized. *Cole*, 802 F.3d at 774 (finding complaint sufficiently pled Fourteenth Amendment violation akin to malicious prosecution where it was alleged that officer "conspired with others and intentionally lied," which "led directly to the decision to [falsely] charge [another] with aggravated assault"). *See also Morgan v. Chapman*, 629 F.Supp.3d 616, 638-39 (S.D. Tex. 2022) (denying motion to dismiss Fourteenth Amendment due process claim noting, "If [the officer] would have included in her report certain information that was in her possession, it would have been clear that [the Plaintiff's] family medicine practices were exempt from the statutory requirement to obtain certification for a pain management clinic. As [the Plaintiff] puts it, there would not have been a criminal prosecution but for [the officer's] fabricated evidence.").

Defendants Sheriff and prosecutors' reliance on *Albright* to argue that a malicious prosecution claim cannot be brought under the Fourteenth Amendment is misplaced because "*Albright* did not speak to the Fourteenth Amendment beyond eschewing reliance upon substantive due process to create a requirement of probable cause to initiate a prosecution." *Castellano*, 352 F.3d at 948. Contrary to Defendants' argument, none of the five opinions that

make up *Albright*'s plurality rejected the principle that "the Due Process Clause of the Fourteenth Amendment constrains the power of state governments to accuse a citizen of an infamous crime." *Albright v. Oliver*, 510 U.S. 266, 316 (1994) (Stevens, J., dissenting). Nor did *Albright* reject the ability to bring a malicious prosecution claim based on the Fourth Amendment as incorporated by the Fourteenth. *Id.* at 274, 276. Whether under the Fourth or Fourteenth Amendments, or both, Ms. Gonzalez has properly asserted a malicious prosecution claim.

In any event, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (holding that plaintiffs need not even cite Section 1983 in their complaint to survive a motion to dismiss). A complaint is required to "do no more" than state "simply concisely, and directly" the "events" that would "entitle[] them to damages[.]" *Id.* at 12. *See also Garza v. Guerra*, No. CIV. A. B-08-084, 2009 WL 136022, at *4 (S.D. Tex. Jan. 20, 2009) ("[T]he form of the complaint is not significant so long as it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim."). As discussed above, Ms. Gonzalez has clearly alleged facts amounting to violations of her Fourth and Fourteenth Amendment rights. That is all that is required at this early stage of litigation.

### 3. Plaintiff Has Properly Alleged Sheriff Fuentes's Direct Involvement in Her Investigation, Prosecution, and Arrest.

Defendant Fuentes argues that Ms. Gonzalez's malicious prosecution claim against him should be dismissed because she "failed to allege any facts about the Sheriff's direct involvement in the investigation or presentation to the grand jury." Fuentes Br. at 11. As discussed above, this is false. Ms. Gonzalez adequately alleges that Defendant Fuentes conspired with the other defendants to investigate Ms. Gonzalez to secure a murder indictment, including directly communicating with Defendants Ramirez and Barrera about the investigation and coordinating the

investigation alongside them, and that he conspired with the prosecutors to introduce misleading or false evidence to the grand jury. At most, Sheriff Fuentes's argument *denies* Ms. Gonzalez's allegations. But as discussed in the accompanying Motion to Strike, Defendant Fuentes's reliance on cherry-picked investigatory documents that are not referenced anywhere in Ms. Gonzalez's complaint is improper and cannot defeat her well-pled allegations at the motion to dismiss stage.

Defendant Fuentes also incorrectly says that Ms. Gonzalez has not alleged facts showing malice. Fuentes Br. at 11. The First Amended Complaint alleges that, at all times, Defendant Fuentes knew there was no probable cause to arrest or prosecute Ms. Gonzalez for murder, but, despite this, he and his office investigated her for months, conspired with the DAs to use the fruits of this investigation in misleading ways to obtain a grand jury indictment, and then arrested her for murder, knowing that the indictment was improperly secured and facially deficient. *See supra.* This is more than sufficient to show malice. *See Reyes v. Greer*, 686 F. Supp. 3d 524, 539 (W.D. Tex. 2023) (explaining that "malice can be inferred from the absence of probable cause" or failure to disclose exculpatory evidence); *Hayter*, 154 F.3d at 275 (explaining that malice can be inferred from "the lack of probable cause" or a "reckless disregard of the other person's rights).

### C.  Plaintiff Has Stated a Claim of Conspiracy Between District Attorney Ramirez, Assistant District Attorney Barrera, and Sheriff Fuentes.

Defendant Fuentes contends that a conspiracy claim, like the one brought here, is barred by the "intra-corporate-conspiracy doctrine," which "precludes plaintiffs from bringing conspiracy claims [] against multiple defendants employed by the same governmental entity." Fuentes Br. at 7 (quoting *Konan v. U.S.P.S*, 96 F.4th 799, 805 (5th Cir. 2024)). However, in *Bevill v. Fletcher,* 26 F.4th 270 (5th Cir. 2022), and *Turner v. Upton County*, 915 F.2d 133 (5th Cir. 1990), the Fifth Circuit found that the respective plaintiffs brought valid Section 1983 civil conspiracy claims against multiple employees of a single county. *See Bevill*, 26 F.4th at 283 (finding that the plaintiff

24

properly stated a claim for conspiracy against the county sheriff, district attorney, and judge); *Turner*, 915 F.2d at 137–38 (finding that the county could be held liable based on an alleged conspiracy between the sheriff and district attorney to violate the plaintiff's constitutional rights).

Furthermore, the Fifth Circuit has recognized exceptions to the intracorporate conspiracy doctrine, including "where corporate employees act for their own personal purposes." *Benningfield v. City of Houston*, 157 F.3d 369, 379 (5th Cir. 1998). Another recognized exception includes when agents of a single entity engage in acts outside the scope of their employment. *See Morales v. Carrillo*, 625 F. Supp. 3d 587, 608 (W.D. Tex. 2022) (finding the intra-corporate-conspiracy doctrine did not apply where the defendant officer's actions were "in the officers' personal interest—not the interest of the EPPD"); *Cornett v. Ward*, No. 3:18-CV-1395-S, 2020 WL 906290, at *4 (N.D. Tex. Feb. 25, 2020) (noting that the doctrine did not apply where agents "engage in acts that exceed the bounds of their authority" and finding that "[t]he allegations of evidence tampering and other misconduct contained within the Second Amended Complaint are sufficient to deny the application of the intracorporate conspiracy doctrine at the motion to dismiss stage").

Here, as in *Turner* and *Bevill*, Ms. Gonzalez has properly alleged that the prosecutors and Sheriff conspired to deprive her of her Fourth and Fourteenth Amendment rights. Such acts are *per se* outside the scope of their authority. The intra-corporate conspiracy doctrine thus does not apply as the District Attorneys and Sheriff engaged in unauthorized, unlawful conduct at odds with any government interest. (Indeed, due to the high-profile and politically charged nature of the prosecution, it is reasonable to infer that Defendants may have hoped to gain from Ms. Gonzalez's prosecution personally.)

**III.     The Prosecutors are Not Entitled to Absolute Immunity.**

Absolute immunity is not automatically bestowed upon all prosecutors sued for civil rights violations under Section 1983. *Loupe v. O'Bannon*, 824 F.3d 534, 538-39 (5th Cir. 2016) (quoting *Buckley*, 509 U.S. at 273). Rather, courts must conduct an analysis of the facts of each case to determine if the specific prosecutor's actions are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). A prosecutor seeking the protection of absolute immunity "bears the burden of showing that such immunity is justified for the function in question." *Burns,* 500 U.S. at 486.

Courts have recognized several prosecutorial actions distant enough from the "judicial phase" that they lose the protection of absolute immunity. For instance, immunity does not apply when a prosecutor is acting in an investigative capacity. *See Hoog-Watson v. Guadalupe Cty.*, 591 F.3d 431, 438 (5th Cir. 2009) (holding that prosecutor's participation in a search and seizure was investigative and hence not absolutely immune). Where prosecutors take a leading role in instigating a criminal investigation or directing law enforcement while an investigation is playing out, they only receive qualified, not absolute, immunity. *See Terwilliger v. Reyna*, 4 F.4th 270, 281 (5th Cir. 2021) (finding the defendant district attorney was "constantly in touch as the investigation proceeded and had access to allegedly exculpatory … evidence"). It is also well-established that a "prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Buckley*, 509 U.S. at 274. Additionally, "prosecutors are not entitled to absolute immunity for their actions in giving legal advice to the police." *Id.* at 271. These exceptions are congruent with the original policy considerations the Supreme Court articulated when introducing this immunity into Section 1983 cases: "protecting the judicial process" from "vexatious litigation." *Burns*, 500 U.S. at 492 (citing *Imbler*, 414 U.S. at 422-23). Hence, just like participation in the investigative phase of a criminal prosecution, "[t]he mere rendering of legal

26

advice [to law enforcement] is not so closely connected to the judicial process that litigation concerning that advice would interfere with it." *Loupe*, 824 F.3d at 540.

Here, Ms. Gonzalez has pled sufficient facts to show that Defendants Ramirez and Barrera were so involved in the investigation preceding her indictment as to lose the benefit of absolute immunity. FAC ¶¶ 4.4-4.7. They discussed her case with each other and with individuals at the Starr County Sheriff's Office. *Id.* ¶ 4.5. They had agreements with Starr County Memorial Hospital staff to "report these types of cases." *Id.* ¶ 4.6. They provided legal advice to the investigators. *Id.* ¶ 4.7. And not once did the prosecutors ever develop probable cause throughout the months-long conspiracy. Their actions, as described in the First Amended Complaint, "exceeded [the] prosecutorial function," *Terwilliger* 4 F.4th at 281, are distinct from the "judicial phase" of a criminal case, and are thus exempt from absolute immunity. *See Imbler*, 424 U.S. at 430. Because defendant prosecutors have failed to meet their burden to prove they were acting in an adversarial function, they are not entitled to absolute immunity.

## IV.     Defendants Are Not Entitled to Qualified Immunity.

All the individually named Defendants argue that they should receive the protection of qualified immunity for arresting and charging Ms. Gonzalez with a crime she was categorically incapable of committing. In support of this argument, Defendants Ramirez and Barrera state that "Plaintiff has not pleaded anything to demonstrate that it is clearly established right not to be investigated for conduct that would otherwise be a crime if a statutory legal defense to prosecution might apply." Ramirez & Barerra Br. at 12, ECF 13. Sheriff Fuentes goes further, stating that Ms. Gonzalez's "conduct would have fallen within Texas' homicide statute" but for the "carveout" of

Section 19.06. Fuentes Br. at 12. He argues that he should not have been responsible for "raising a defense to [the] prosecution" before the grand jury. *Id.* at 12-13.

This argument fails to identify the correct right at issue and misstates the law. Section 19.06 is not a "defense" to be raised in a murder prosecution. A defense is an issue to be raised by a defendant after being charged that acknowledges criminal conduct but provides either a justification or excuse. Tex. Penal Code § 2.03. Under Texas law, a "defense" must be labeled as such. *Id.* ("A defense to prosecution for an offense in this code is so labeled by the phrase: 'It is a defense to prosecution . . . .'"). Section 19.06, on the other hand, states that an entire chapter of the Code – all of the homicide statutes – "does not apply" to the conduct at issue. Tex. Penal Code § 19.06. Instead of creating a defense, Section 19.06 makes the homicide statutes wholly inapplicable to the alleged conduct and therefore bars prosecution. Accordingly, in *State v. Hunter*, the Texas Court of Appeals dismissed an indictment as facially invalid based on Section 19.06. 606 S.W.3d at 843. Moreover, as another court in this District held, "[t]he Fourth Amendment does not permit police officers to arrest individuals whom they know have done nothing wrong, based solely on the formalistic distinction between 'elements of a crime' and 'affirmative defenses.'" *Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 836 (S.D. Tex. 2011). Indeed, here, the statutory exemption is so clear that no reasonable law enforcement officer or prosecutor could have believed that charging and arresting Ms. Gonzalez was consistent with Texas law. The right to not be investigated, arrested, and prosecuted for conduct that is not criminalized is clearly established, and it is basic common sense to any law enforcement personnel who faithfully discharges their oath of office.

At its core, a qualified immunity analysis is meant to determine whether the defendants in civil rights cases had "fair warning" that their actions violated the plaintiff's rights. *See Cooper v.*

*Brown*, 844 F.3d 517, 524 (5th Cir. 2016) (cleaned up). The Supreme Court created the "clearly established" test, in which courts look to previous court decisions on point to help determine whether a particular defendant would have been on notice that their actions violated someone's civil rights. See, e.g., *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (summarizing doctrine). Thus, "[q]ualified immunity attaches when an official's conduct does not violate clearly established *statutory* or constitutional rights of which a reasonable person would have known." *White v. Pauly,* 580 U.S. 73, 78–79 (2017) (cleaned up; emphasis added). Furthermore, some acts are so obviously wrong that *no* reasonable actor would have thought them lawful even where there is no decisional law directly prohibiting such conduct. *Hope v. Pelzer*, 536 U.S. 730, 741–44 (2002) (holding that qualified immunity was inappropriate where the plaintiff was tied to a hitching post for hours and denied access to water). *See also Taylor v. Riojas*, 592 U.S. 7, 9 (2020) (per curiam) (citing *Hope* and holding that qualified immunity was unavailable on "the particularly egregious facts of this case"). Here, the text of the relevant statute is crystal clear: Ms. Gonzalez was exempt from this prosecution, and she should not have been investigated, charged, or arrested. Doing so is obviously a violation of one's constitutional rights.

Sheriff Fuentes further argues that he should receive qualified immunity on any malicious prosecution claim because Ms. Gonzalez was indicted on March 30, 2022, and the Supreme Court recognized a constitutional claim of malicious prosecution five days later in *Thompson v. Clark*. 596 U.S. 36 (2022); *see* Fuentes Br. at 12. First, regardless of the timing of *Thompson*, Defendants' conduct was so obviously wrong, it cannot be shielded by qualified immunity. *See Hope,* 536 U.S. at 741–44. And, as outlined above, courts within the Fifth Circuit recognized free-standing Fourteenth Amendment claims akin to malicious prosecution before *Thompson* was decided. *See, e.g., Cole*, 802 F.3d at 773 (denying qualified immunity for alleged facts akin to malicious

prosecution explaining that "[b]y 2010, no 'reasonable law enforcement officer would have thought it permissible to frame somebody for a crime he or she did not commit'") (quoting *Limone v. Condon,* 372 F.3d 39, 50 (1st Cir. 2004)). Thus, courts have denied qualified immunity for due process violations even where the wrongful conduct is analogous to malicious prosecution and where the conduct took place before the Supreme Court's *Thompson* decision.

Second, even if this Court declines to construe the allegations to be cognizable like those in *Cole*, Ms. Gonzalez was arrested on the indictment on April 7, 2022, and her criminal charges were not dismissed until April 11. FAC ¶¶ 4.13-14. At most, Sheriff Fuentes should only be granted qualified immunity for conduct before April 4, 2022, when the decision in *Thompson v. Clark* was issued. Because the claim of malicious prosecution includes continuance of a criminal proceeding against a plaintiff and accrues when that proceeding is dismissed, Sheriff Fuentes should not be granted qualified immunity for the entirety of the malicious prosecution claim. At a minimum, Ms. Gonzalez should be permitted to amend her complaint to include state malicious prosecution claims, which would have been recognized under Fifth Circuit precedent before April 4, 2022.

Third, that Defendants could escape accountability for such brazenly unlawful conduct behind the shields of absolute and/or qualified immunity epitomizes why these doctrines should be re-evaluated, if not eliminated. Qualified and absolute immunity are judge-created doctrines invented by the Supreme Court in 1967. *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (relying on *Tenney v. Brandhove*, 341 U.S. 367 (1951), to hold that Section 1983 did not abolish common-law immunities). Qualified immunity has been subject to criticism from jurists, academics, and advocates from across the political spectrum because it has no textual basis in either Section 1983 or the Constitution, subverts the purpose of Section 1983, undermines public policy, and is not deserving of *stare decisis. See Green v. Thomas*, ___ F. Supp.3d ___, 2024 WL 2269133 at *17-

23 (S.D. Miss. 2024) (summarizing the "compelling critiques" of qualified immunity). Applying the doctrine to the facts of this case would mean that law enforcement could investigate, charge, and arrest *anyone* for *any* crime, whether there is a criminal statute or, as here, a statute that *prohibits* liability, knowing full well that the person did not engage in any criminal offense, with no way to hold those state actors accountable for their intentional wrongdoing.

Remarkably, recent scholarship has discovered that due to a drafting error the basis for the doctrine of qualified immunity is fundamentally flawed. The original text of the Civil Rights Act of 1871 created a cause of action for a violation of federal law by state actors and included a clause that such a claim "would be viable notwithstanding 'any such law, statute, ordinance, regulation, custom, or usage of the State to the contrary.'" Alexander A. Reinert, Qualified Immunity's Flawed Foundation, 111 Cal. L. Rev. 201, 207 (2023). This clause, however, was inexplicably omitted in 1874 when the Reviser of the Federal Statutes published the first compilation of federal law, and then again when it was republished in the United States Code. *Id.* Contrary to the United States Supreme Court's logic in *Pierson*, the omitted clause establishes the intent of the original drafters to exclude state law immunity defenses from Section 1983 claims. *Id.* This revelation has created "game-changing arguments, particularly in this text-centric judicial era" that "modern immunity jurisprudence is not just *a*textual but *countertextual*" and that the "doctrine does not merely complement the text – it brazenly contradicts it." *Rogers v. Jarrett*, 63 4th 871, 980-81 (5th Cir. 2023) (Willett, J., concurring). This new scholarship thus opens the door for a re-evaluation of qualified and absolute immunity for Section 1983 claims, if not their outright elimination.

**V.       Starr County is Liable for the Conduct of the Prosecutors and Sheriff.**

Local governing bodies such as Starr County can be directly liable under Section 1983 for violations of constitutional rights. *Monell v. New York City Dept. of Social Serv.*, 436 U.S. 658, 659 (1978). A claim of *Monell* liability under §1983 requires plaintiff to allege facts showing a policymaker; an official policy; and a violation of constitutional rights where the "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell*, 436 U.S. at 694). Even a facially innocuous policy can be the basis for liability where it is carried out with "deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Id.* at 579 *(internal citations omitted).*

A policy's existence can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority. *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003). Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority. *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984). In some circumstances, a single decision by a policy maker can constitute a policy for which the municipality can be liable. *Brown v. Bryan Cty., OK*, 219 F.3d 450, 462 (5th Cir. 2000). At the motion to dismiss stage, plaintiffs need only plausibly allege the existence of such a policy to state a *Monell* claim. *Thomas,* 800 F. Supp. 2d at 843.

County liability under Section 1983 is appropriate based on the actions of a final policymaker under two configurations: 1) where the County's final policymakers have effectively made policy or condoned creation of a practice by ratifying the unconstitutional or illegal acts of subordinate or 2) where the final policymakers engage in illegal or unconstitutional actions themselves in the setting of goals and determining how those goals will be achieved. *See Turner*, 915 F.2d at 136; *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). Ms. Gonzalez has brought a

32

claim against Starr County based on the actions of Defendant District Attorney Ramirez and Defendant Assistant District Attorney Barerra, as well as Defendant Sheriff Fuentes. Starr County is liable under both formulations above.

### A. Defendant Ramirez is a final policymaker for whose actions the County is appropriately liable.

Defendant Starr County's motion wrongly argues that District Attorney Ramirez is an agent of the state and thus, his policies are not attributable to Starr County for *Monell* liability under Section 1983. Though Courts have found that Texas district attorneys can be state actors in performing their prosecutorial duties, the rule is not a categorical one. Indeed, the cases the Defendant relies on all make clear that where a district attorney exceeds his prosecutorial duties, a county can be held liable. *Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir. 1995), *Esteves v. Brock*, 106 F.3d 674, 677–78 (5th Cir. 1997); *Zinter v. Salvaggio*, Case No. SA-18-CV-00680-JKP, 2021 WL 1381231, at *4 (W.D. Tex. Apr. 12, 2021). As Ms. Gonzalez has pled in her First Amended Complaint, such is the case before this Court.

District Attorney Ramirez acted as final policymaker when exceeding his prosecutorial capacity by ratifying the unconstitutional acts of his subordinate, District Attorney Barrera, and conspired with her to drive an investigation and, ultimately, the unlawful indictment and arrest of Ms. Gonzalez. FAC ¶¶ 4.4-4.8. Ms. Gonzalez has appropriately pled that the District Attorney's Office and/or the Starr County Sheriff's office initiated a policy with Starr County Memorial Hospital to investigate women, including Lizelle Gonzalez, who had abortions for potential homicide prosecution, in knowing violation of Texas Penal code which explicitly exempts the pregnant woman from being prosecuted for her own abortion. *Id.* ¶ 7.44. By securing an agreement with the hospital to investigate terminations of pregnancies, and then investigating and driving the indictment and arrest of Ms. Gonzalez for homicide, all with knowledge that the law did not permit

33

her—or any other pregnant woman's—prosecution, District Attorney Ramirez and his subordinate implemented a policy in violation of Texas state law and Ms. Gonzalez's constitutional rights. This abuse of power exceeded his prosecutorial duties. Therefore, the district attorney functioned as a county official for whose actions Starr County may be held liable. *Crane v. Texas*, 766 F.2d 193, 195 (5th Cir. 1985). *See also Mcdonald v. 81st Jud. Dist. Off.,* No. SA-22-CV-01380-XR, 2023 WL 7289395, at *4 (W.D. Tex. Nov. 2, 2023); *Zinter*, No. SA-18-CV-00680-JKP, 2021 WL 1381231, at *4; *Esteves*, 106 F.3d at 678.

### B.  Defendant Fuentes is a final policymaker for whose actions the County is appropriately liable.

Ms. Gonzalez has also appropriately pled facts that support *Monell* liability based on Defendant County Sheriff Fuentes's actions according to the policy of investigating women for prosecution based on their abortion despite knowledge that Texas law clearly prohibits such prosecution. FAC ¶¶ 2.5, 4.4, 4.6-7. It is well settled that the County Sheriff is the final policymaker in law enforcement. *See Colle v. Brazos County*, Tex., 981 F.2d 237, 244 (5th Cir. 1993); *Turner*, 915 F.2d at 136 (citing *Familias Unidas v. Briscoe,* 619 F.2d 391, 404 (5th Cir. 1980)). Sheriff Fuentes acted within his law enforcement function and is also a final policymaker whose actions are a basis for County liability.

### C.  Plaintiff has also plausibly alleged a basis for *Monell* liability based on the District Attorney and Sheriff's actions in conspiracy.

Ms. Gonzalez has also appropriately pled that Defendant Ramirez, Defendant Barrera and Defendant Fuentes conspired to investigate Ms. Gonzalez without legal basis and misled the grand jury, resulting in her unlawful indictment, arrest, and detention. FAC ¶¶ 4.12, 7.41-43. The actions of the Defendants in conspiracy are a separate basis for County liability under *Monell*. *See Turner,* 915 F.2d at 137–38.

34

In noting examples of circumstances under which a district attorney's actions could expose the County to liability, the *Krueger* Court cited *Turner*. In *Turner*, the plaintiff brought Section 1983 claims against the District Attorney and the Sheriff, alleging that they conspired to subject her to trial on false charges in reliance on false evidence, ultimately leading to her plea of guilty to an offense which they knew she had not committed. *Id.* at 135. In addition to holding that the sheriff was a final policymaker concerning the investigation of crimes and presentation of evidence to the district attorney for prosecution, the Fifth Circuit held that liability could be imposed on the county based on the acts of the district attorney who conspired with the county sheriff to deprive the petitioner of her Constitutional rights. *Id.* at 137-138. Moreover, *Turner* noted that liability can attach to parties to a conspiracy even if one of the co-conspirators is immune from liability for his own actions. *Id.* at 137 n. 6. Here, as in *Turner*, the District Attorneys and Sheriff conspired, making deliberate decisions to abuse their law enforcement power to deprive Ms. Gonzalez of her Constitutional rights. Based on this conspiracy alone, county liability under Section 1983 is appropriate. *Id.* at 138.

Despite Ms. Gonzalez having alleged facts that support county liability on three independent grounds, even if the Court were to agree with Defendants that Ms. Gonzalez has failed to plead the specific identity of the policymaker at this stage, dismissal of her *Monell* claims would not be justified. The Fifth Circuit has made clear that the specific identity of the policy holder is a matter of law that need not be pled. *Groden v. City of Dallas*, Texas, 826 F.3d 280, 283–84 (5th Cir. 2016). By alleging facts that show an official policy, promulgated or ratified by the policymaker, for which the municipality is alleged to be liable, Ms. Gonzalez has sufficiently stated a claim of *Monell* liability here. *Id*.

35

### D.  Plaintiff Has Properly Stated a Claim Against Sheriff Fuentes in Both His Individual and Official Capacity.

Ms. Gonzalez has properly brought claims against Sheriff Fuentes in his individual and official capacity. Her Section 1983 claim against Defendant Fuentes in his official capacity is appropriate because Sheriff Fuentes is a final policymaker whose actions furthered a policy that was the moving force behind violations of her Fourth and Fourteenth Amendment rights. The cases Defendant County cites do not mandate dismissal of the official-capacity claim against the Sheriff as redundant with the County claim; "when a plaintiff sues an actor in both his individual and official capacities, in addition to the entity, courts are not obligated to dismiss the suit against the actor in his official capacity." *Olibas v. Gomez*, 481 F. Supp. 2d 721, 724–25 (W.D. Tex. 2006). Rather, the appropriate remedy is to consider the County and official capacity claims together, and the individual capacity claim separately. *Id.* at 725.

In any event, Ms. Gonzalez has sufficiently pled facts to support County liability based on Defendant Fuentes's actions. Courts have recognized that, in municipal liability claims, "it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery." *Thomas,* 800 F. Supp. 2d at 842–43. Considering this, "only minimal factual allegations should be required at the motion to dismiss stage. Moreover, those allegations need not specifically state what the policy is, as the plaintiff will generally not have access to it, but may be more general." *Id*. at 843. Ms. Gonzalez has pled with sufficient specificity that Sheriff Fuentes was a final policymaker who conspired with Defendants Ramirez and Barrera, in furtherance of the policy to criminally investigate women alleged to have had abortions, including Ms. Gonzalez. FAC ¶ 7.44. That policy, and Defendants' actions in furtherance of it, were the "moving force" behind the legally baseless arrest and charge against Ms. Gonzalez. Accordingly, Ms. Gonzalez has provided

more than the minimum factual allegations for the official capacity and County liability claims to proceed.

**VI.        Eleventh Amendment Does Not Present a Bar to This Court's Jurisdiction.**

Defendant Starr County argues that Ms. Gonzalez's claims against it are barred by sovereign immunity. Fundamentally, they claim sovereign immunity where none exists. Although states are afforded sovereign immunity against Section 1983 in limited exceptions, *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64 (1989), counties are "persons" under Section 1983 and are liable for the constitutional violations they cause. *See Monell,* 436 U.S. at 690. Indeed, controlling precedent does not afford the County sovereign immunity. *See Owen v. City of Independence, Mo.*, 445 U.S. 622, 638 (1980); *id.* at 647–48 ("By including municipalities within the class of 'persons' subject to liability for violations of the Federal Constitution and laws, Congress—the supreme sovereign on matters of federal law—abolished whatever vestige of the State's sovereign immunity the municipality possessed."). Whatever the merits of the County's defenses, they should be considered under Federal Rule of Civil Procedure 12(b)(6) rather than behind the veil of sovereign immunity.

To claim sovereign immunity, the County argues that Ms. Gonzalez's claims against it "turn[] on" the prosecutors' conduct implicating their "official capacities" and, therefore, reflect state, rather than county, policy. Starr Co. Br. At 4, 8, ECF No. 16. The County's argument, however, confuses the issue of sovereign immunity with whether Ms. Gonzalez has properly alleged a claim for *Monell* liability. As discussed above, Ms. Gonzalez has adequately pled a *Monell* claim, alleging that Starr County policy and the conduct and practice of County policymakers were the moving force that violated her constitutional rights. Moreover, the Fifth Circuit has repeatedly held "'that Texas district attorneys [are] not protected by the Eleventh

Amendment' precisely because they are county officials, not state officials." *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 787 (5th Cir. 2024) (quoting *Hudson v. City of New Orleans*, 174 F.3d 677, 682 (5th Cir. 1999)). Fifth Circuit cases, including the Defendant's citations, reiterate that prosecutors can be municipal policymakers for purposes of Section 1983, including when, as here, their "conduct exceeds the scope of [their] prosecutorial duties." *Krueger*, 66 F.3d at 77. *See also Turner*, 915 F.2d at 137 n.3 ("Where a *final* policymaker abuses the powers vested in his position to the detriment of a citizen, that abuse can be the basis for suit being brought under section 1983 [against the County.]").  Notably, Ms. Gonzalez has identified more than one policymaker in demonstrating the county policy that was the moving force of her constitutional injury.

Defendant's claim to sovereign immunity therefore fails. The Eleventh Amendment does not apply to county actors and Ms. Gonzalez identifies more than one County policymaker, each of whom performed multiple functions in furtherance of a county policy of criminalizing abortion care in ways that are expressly prohibited by multiple Texas laws. The Eleventh Amendment therefore does not provide a bar to this court's jurisdiction.

## VII.    The Claims Against Defendant Sheriff Are Not Time-Barred.

Defendant Sheriff argues that all claims against him are time-barred because the summons was not served until after the statute of limitations had run. The date of the summons, however, does not determine when a federal civil action commences. Federal Rule of Civil Procedure 3 states plainly that "A civil action is commenced by filing a complaint with the court." Defendant Sheriff does not allege that the complaint was not timely filed. His argument that the claims against him are time-barred is therefore misplaced.

**CONCLUSION AND PRAYER**

"'[S]ome truths are self-evident. This is one such: if any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit. Actions taken in contravention of this prohibition necessarily violate due process (indeed, we are unsure what due process entails if not protection against deliberate framing under color of official sanction).'" *Cole*, 802 F.3d at 770 (quoting *Limone*, 372 F.3d at 44–45). Because Defendants have manifestly deprived Ms. Gonzalez of her rights, and for all the foregoing reasons, Plaintiff requests that this Court deny Defendants' Motions to Dismiss.

Plaintiff requests oral argument on Defendants' Motions.

Plaintiff also requests that this Court deny Defendants' request to "stay discover [sic] pending the determination of immunity for the reasons stated by the Fifth Circuit in *Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022)." Ramirez & Barrera Br. at 13; Fuentes Br. at 15. Defendants' request is substantively and procedurally improper. Generally, a district court may stay discovery "for good cause shown." Fed. R. Civ. P. 26(c). The movant must be one "from whom discovery is sought," *id.*, and the burden is on them to show "the necessity of [the order's] issuance, which contemplates a particular and specific demonstration of facts as distinguished from stereotyped and conclusory statements," *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (cleaned up). Defendants have not sustained their burden. Ms. Gonzalez has not sought discovery from them. Far from showing necessity beyond "stereotyped and conclusory statements," they do not identify "the reasons stated" in *Carswell* or even offer a pin citation. They do not indicate the scope of their proposed "stay," and Defendant Starr County does not make such a request. Further, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule

39

26(f)[.]" Fed. R. Civ. P. 26(d). The parties have not conferred about, among other things, the scope of discovery, but they have discussed arranging a Rule 26(f) conference before this Court's initial pretrial conference. Defendants lack standing for their motion, and it is not ripe. The parties can discuss Defendants' particular concerns at the Rule 26(f) conference, potentially averting any dispute that would require this Court's action.

Lastly, this Court should deny Defendant's request for further briefing on the questions of immunity, as Plaintiff's Omnibus Response to Defendants' Rule 12 Motions fulfills any need for additional briefing on this issue.

Respectfully Submitted,

Cecilia Garza
State Bar No. 24041627; SDTX No.: 578825
202 E. Sprague Street
Edinburg, Texas 78539
Telephone No.: (956) 335-4900
Telecopier No.: (956) 338-5700
cecilia@garzamartinezlaw.com
***Attorney in charge for Plaintiff***

Lauren Alicia Johnson
American Civil Liberties Union Foundation
915 15th Street NW Washington DC 20005
Telephone No.: (202) 731-5567
ljohnson@aclu.org

David A. Donatti
State Bar No. 24097612; SDTX Bar No. 3371067
Adriana Piñon
State Bar No. 24089768; SDTX Bar No. 1829959
American Civil Liberties Union of Texas
P.O. Box 12905 Austin, TX 78711-2905
Telephone No.: (713) 942-8146
Facsimile: (713) 942-8966
ddonatti@aclutx.org
apinon@aclutx.org

Veronica Sepulveda Martinez
State Bar No. 24081144; SDTX No.: 3048499
202 E. Sprague Street
Edinburg, Texas 78539
Telephone No.: (956) 335-4900
Telecopier No.: (956) 338-5700
veronica@garzamartinezlaw.com


**GARZA MARTINEZ, PLLC**

202 E. Sprague Street
Edinburg, Texas 78539
Telephone No.: 956/335-4900
Telecopier No.: 956/338-5700
office@garzamartinezlaw.com

41

## **<u>CERTIFICATE OF WORD COUNT</u>**

I hereby certify that this brief contains 12,648 and therefore satisfies the word count requirements set forth in this Court's order dated June 11, 2024.

_____
Adriana Pinon

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 18th day of June 2024, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, and that service will be provided through the CM/ECF system.

_____
Adriana Pinon

42