IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| LIZELLE GONZALEZ<br>    Plaintiff | §<br>§<br>§ | |
| Vs. | § | CIVIL ACTION 7:24-CV-00132 |
| GOCHA ALLEN RAMIREZ, et al.<br>    Defendants | §<br>§<br>§<br>§ | |

### DEFENDANTS' CONSOLIDATED RESPONSE
### TO PLAINTIFF'S MOTION TO STRIKE
### AND REPLY IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS

Plaintiff has pleaded her case to be wholly dependent on the Sheriff's Office's investigation. Yet, she desperately urges the Court to blind itself to the contents of that investigation. Her request is unsurprising given what the files reveal about her claims—not only that they are baseless, but, that Plaintiff must know her "factual contentions" lack "evidentiary support." *See* F.R.C.P. § 11(b)(3).

But no matter.

Plaintiff cannot get around the pleading deficiencies either. She has failed to plead more than conclusory allegations to show that Sheriff Fuentes tainted the grand jury. She has failed to plead more than conclusory allegations to show that District Attorney Ramirez and Assistant District Attorney Barrera participated in the criminal investigation. And all other matters aside, these two failures foreclose her false arrest and malicious prosecution claims and Defendants' Motion to Dismiss should be granted.

### I.     DEFENDANTS' RESPONSE TO MOTION TO STRIKE

Plaintiff pleads with the Court in both her Motion to Strike [Doc. 27] and in her Response to Defendants' Motion to Dismiss [Doc. 28] for the Court not to consider the Sheriff's Office's

("SO") investigation. Plaintiff's Motion to Strike should be denied. It is perfectly appropriate for the Court to consider the investigative documents that Plaintiff incorporated in her First Amended Complaint in considering Defendants' Motions to Dismiss for the reasons set forth below.

A.  **The Custodian of Records Authenticates the Documents.**

Plaintiff opens her motion to strike with a technical complaint that Defendants did not authenticate the records from the Sheriff's Office. To assuage Plaintiff's concern "that the documents are what Defendants claim them to be," Defendants attach hereto an affidavit from the Sheriff's Office custodian of records authenticating the pages. **Defendants Ex. A**. Major Carlos Delgado has sworn that the records are exact copies of the same records from the SO's file. Accordingly, the "low burden" for authentication that Plaintiff points out in her Motion is met and that red-herring issue is, hopefully, rendered moot.

B.  **The Sheriff's Office's Investigation Is Referred To In The First Amended Complaint And Central To Plaintiff's Claim.**

Substantively, Plaintiff's Motion to Strike is based on two misunderstandings of what it means for the documents to be "central to her claim." First, Plaintiff asserts that the SO's investigation is not referred to in her complaint and therefore not central to her claim. Second, Plaintiff avers that the documents must support her claims, rather than contradict them, to be considered by the Court. Neither of her propositions are consistent with the case law.

But before turning to her granular arguments about centrality, Defendants note that Plaintiff's *entire case* turns on whether the Sheriff and District Attorney defendants were direct participants in the murder investigation. Consequently, Plaintiff's averment that the investigative file is not central to her claim is disingenuous, at best.

For instance, if Sheriff Fuentes did not participate in the investigation or direct his subordinates to investigate or conspire with the District Attorney defendants, there is absolutely

no basis on which Plaintiff's false arrest claim against him can rest. This is a point she highlights in her Response to Defendants' Motions to Dismiss when she recognizes that to state a claim against the Sheriff she must identify what actions he took in the investigation. *See* Doc. 28, pp. 16-17 (Ms. Gonzalez alleges that "Sheriff Fuentes, and his office, . . . performed an investigation into the facts or circumstances surrounding the charge of Murder against Plaintiff," FAC ¶ 4.4, including using his office's investigators to interview Ms. Gonzalez, id. ¶ 4.7. He then conspired with Defendants Ramirez and Barrera to "present false information, recklessly misrepresenting facts in order to pursue a bogus murder charge." Id. ¶ 4.12.).

Likewise, if the District Attorney defendants did not participate in the investigation or conspire with the Sheriff in conducting the murder investigation then Plaintiff has no path around absolute immunity, which she admits in her Response to Defendants Motion to Dismiss. Rather than simply confront the gross disparity between her description of the investigation in her First Amended Complaint and what the documents of same actually show, Plaintiff makes a tortured argument that records of the murder investigation are not central to her claim while simultaneously arguing that she has stated a viable claim against the Defendants based on her (inaccurate) contentions *about the murder investigation*.[1]

Turning to Plaintiff's argument about referencing the investigation in her First Amended Complaint, Plaintiff admits that "Defendants are correct that the Amended Complaint refers to their investigating Ms. Gonzalez…." But she goes on to argue over semantics, claiming that "an 'investigation' is not the same as a specific 'investigative file.'" In other words, Plaintiff wants the Court to draw a distinction between her references to the investigation and the file of the

---

[1] Plaintiff complains that Defendant Fuentes relies on "cherry-picked investigatory documents." Doc. 28, pp. 18, 24. If it is Plaintiff's concern that the entire SO file must be made available, including recordings of the medical providers' witness statements and Plaintiff's medical records, Defendants are happy to tender those records to the Court.

Defendants' Consolidated Reply / Response in
Support of Rule 12 Motions                                                                               -3-

investigation. Plaintiff, therefore, seems to believe that only when a plaintiff calls out a specific document in the complaint is the Court permitted to consider the document in reviewing a Rule 12 Motion. That is not the rule. None of the cases cited by Plaintiff suggest that a document is incorporated by reference only when the document is described with particularity.

Plaintiff's second argument in her motion to strike is essentially that the Court cannot consider documents if they are not helpful to Plaintiff's claim. See Doc. 27, p. 7 ("In other words, the Defendants offer them not to support Plaintiff's claims but to contradict them."). This flatly misunderstands the rule in the Fifth Circuit.

In *Allen v. Hays*, the Fifth Circuit explained that

> In ruling on a Rule 12(b)(6) motion, the court is required to consider facts alleged in the operative complaint and "written instruments" attached to it. Fed. R. Civ. P. 10(c); *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citations omitted). In addition, the court may "rely on documents incorporated into the complaint by reference, and matters of which a court may take judicial notice". *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (internal quotation marks and citation omitted). The court may further consider documents attached to the Rule 12(b)(6) motion "that are referred to in the plaintiff's complaint and are central to the plaintiff's claim". *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (internal quotation marks and citation omitted).

*Allen v. Hays*, 812 F. App'x 185, 189 (5th Cir. 2020).

Nowhere does the Fifth Circuit state that a reviewing court is limited to documents that are *helpful* to the plaintiff—a sensible rule, given that the ability of a Court to consider certain limited matters beyond a complaint itself is for the benefit of the Court—not the plaintiff. To be sure, in reviewing a Rule 12 Motion where documents are incorporated into the complaint, a court is permitted not just to consider documents irrespective of whether they support a plaintiff's claim, but the court may favor evidence that "utterly discredit[s]" a plaintiff's allegations when considering a Rule 12 Motion to Dismiss. *See Hartman v. Walker*, 685 F. App'x 366, 368-69 (5th

Cir. 2017). This allowance makes clear that a Court is not bound to review documents attached to a motion to dismiss only when they are favorable to the plaintiff's claim, as Plaintiff suggests.

Here, Plaintiff repeatedly references the murder investigation in the operative pleading and, in fact, constructs her entire theory of liability around her conclusory assertions that the Sheriff and District Attorneys conspired for the purpose investigating her for murder with conscious disregard for the murder defense contained in the Texas Penal Code. *See, e.g.*, FAC ¶¶ 4.4-4.11. Her claims depend on her description of the SO's investigation. She should not be permitted to hide the investigation from the Court—even at the Rule 12 stage. Plaintiff referenced the investigation and the investigation is central to her claims. The Court can and should consider the investigation in deciding in the Rule 12 motion.

However, should the Court decide that the investigation should not be considered at this time, Defendants respectfully request that the Court simply strike the confidential exhibits, rather than convert Defendants' Rule 12 Motions to summary judgment motions.

## II. REPLY IN SUPPORT OF MOTION TO DISMISS

Plaintiff fails to address Defendants' argument that the SO's investigation dooms her claim. The documents demonstrate that the Sheriff had no participation in the investigation and that the District Attorney's office was not directing the investigation, as Plaintiff claims. Rather than explain how her claims can survive on such baseless allegations, she insists that the Court just ignore the investigation. In other words, she does not contest that if the documents are considered, dismissal is required—she just wants to deny the Court the benefit of the information.

Even if the Court were not to consider the investigation that is referred to in Plaintiff's First Amended Complaint and central to her claims, Defendants' Motions to Dismiss should still be granted. The pleadings contain nothing more than conclusory allegations regarding the actions of

Sheriff Fuentes, District Attorney Ramirez and Assistant District Attorney Barrera, which is not meaningfully developed in her Response. That is, there is no factual content that nudges her claims into plausibility. Further, Plaintiff's invitation for the Court to simply eliminate the doctrine of qualified immunity because, she claims, it was birthed from a "drafting error" in the Civil Rights Act should be rejected. The Sheriff is entitled to qualified immunity. The prosecutors are entitled to absolute immunity. All of Plaintiff's claims should be dismissed.

A.     **There Are No Pleaded Facts Showing That Fuentes Initiated The Investigation, Arrested Plaintiff, Or Tainted The Grand Jury.**

First, Plaintiff argues that she has sufficiently stated a claim for false arrest against the Sheriff. But the glaring omission in her pleading is that *she does not allege that Sheriff Fuentes actually arrested her*. Rather, she contends that "Plaintiff was arrested on April 7, 2022, by the *Starr County Sheriff's Office*." FAC ¶ 4.13 (emphasis added). This vague allegation that some unnamed person in the Sheriff's Office arrested her is insufficient to show that Sheriff Fuentes arrested her without probable cause. On this basis alone, Plaintiff's false arrest claim against the Sheriff must be dismissed.

To the extent Plaintiff's theory is that the Sheriff caused Plaintiff to be falsely arrested by some other unidentified officer, Plaintiff has failed to plead factual allegations showing what actions the Sheriff took to supposedly drive the arrest.[2] In Response, Plaintiff recites nothing more than the same conclusory statements in the First Amended Complaint and seemingly conflates the elements of the claim with the facts necessary to support those elements.

Plaintiff argues that:

> Ms. Gonzalez's First Amended Complaint adequately alleges a false arrest claim under the Fourth Amendment against Defendants. To state a claim for false arrest, Ms. Gonzalez must plausibly allege that she was arrested without probable cause. Arnold v. Williams,

---

[2] Of course, she cannot allege such facts because the investigation shows that the Sheriff was not involved in the murder investigation.

> 979 F.3d 262, 269 (5th Cir. 2020) .… Ms. Gonzalez's First Amended Complaint easily satisfies these elements. Ms. Gonzalez was arrested on April 7, 2022, at the direction of Defendants Fuentes, Ramirez, and Barrera. FAC ¶¶ 4.13, 7.21. This arrest was the culmination of Defendants' conspiracy to investigate and bring charges against Ms. Gonzalez for a crime they knew she did not commit and could not apply to her actions. *See* id. ¶¶ 4.12, 7.26, 7.28, 7.32-7.36.

Doc. 28, p. 11.

But the Sheriff's Rule 12 challenge was not about whether she stated the elements of a false arrest claim correctly, but that she lacks any factual averments that show a false arrest occurred—much less that he took some action to cause same. To this, she pays no attention. Where a plaintiff fails to plead that the defendant actually arrested her, or took some specific action to cause her to be falsely arrested, the plaintiff has not met the pleading standard.

Plaintiff's argument about the intermediary doctrine suffers from the same factual paucity. This is particularly true given that Sheriff Fuentes has asserted qualified immunity. *See McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017) ("When the motion to dismiss raises the defense of qualified immunity, the plaintiff 'must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm ... alleged and that defeat a qualified immunity defense with equal specificity.'")(quoting *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014) (additional citations omitted).

Plaintiff correctly cites the *McLin* holding that the allegation of taint coupled with other facts supporting the inference of taint is sufficient to survive a Rule 12 motion to dismiss. Doc. 28, pp. 12-13. But, again, it is the missing facts that prevent the Court from coming to the same conclusion here as the Fifth Circuit did in *McLin*. Here, there is no factual content about what actions the Sheriff took to taint the grand jury who, here, is the independent intermediary at issue.

Plaintiff makes absolutely no mention of what acts the Sheriff supposedly took to present misleading information to the grand jury. Instead, she substitutes the conclusory allegation that

"Defendants Ramirez, Barrera, and Fuentes then conspired to introduce evidence of acts that were clearly not criminal, and which had been gathered by them or at their direction in their baseless investigation, to a grand jury for the purpose of securing an indictment that they knew had no legal basis." Doc. 28, pp. 13-14. This is a legal theory that Plaintiff attempts to dress as a factual contention. *See also id.*, pp. 16-17 (restating the elements related to the exception to the intermediary doctrine rather than stating facts about what actions Sheriff Fuentes took).

Plaintiff takes the same approach in trying to salvage the malicious prosecution claim against Sheriff Fuentes. She claims that all Defendants solicited information about "self-managed abortions" from the hospital and then conducted an investigation. Even if true, there is nothing impermissible about investigating the death of an unborn child under Texas law. From there, the factual contentions stop and Plaintiff just repeats the same allegation that the Defendants somehow conspired to obtain a grand jury indictment.

When stripped of Plaintiff's self-serving characterization, what lies is a bare assertion of the elements of the cause of action, and not the specific *facts* required to be pleaded under the Rules; especially where, as here, the claim is against an immunity asserting defendant. Plaintiff has failed to state a claim against Sheriff Fuentes that defeats qualified immunity and her claims against him must be dismissed.

**B.  There Are No Facts Showing That The DA Or ADA Participated In The Investigation or "Conspired" with the Sheriff or the Sheriff's Investigators.**

The District Attorney and Assistant District Attorney are absolutely immune from Plaintiff's claims and as with her claims against Sheriff Fuentes, the deficit of facts as to the prosecutor's actions closes the door on Plaintiff's claims against them.

The parties agree that a prosecutor is absolutely immune when the prosecutor's actions are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424

U.S. 409, 430 (1976); see Doc. 28, p. 26 (Plaintiff quotes approvingly the standard from *Imbler*.). Plaintiff attempts to maneuver around *Imbler* by claiming that three of her allegations show the prosecutors actions were *not* intimately associated with the judicial phase of the process: that District Attorney Gocha and Assistant District Attorney Barrera "discussed her case with each other and with individuals at the Sherrif's office;" had "agreements with Starr County Memorial Hospital staff to 'report these types of cases;'" and "provided legal advice to investigators." Doc. 28, p. 27.

Plaintiff's failure, here, is that she cites no facts demonstrating what actions either District Attorney Ramirez or Assistant District Attorney Barrera actually took that constitutes "investigative work" depriving the prosecutors of absolute immunity. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 276 (1993). For example, in *Buckley*, a case cited by Plaintiff, the plaintiff alleged that the prosecutor sought out an anthropologist to provide a positive identification of a boot print left at a crime scene, after submitting it to three other experts who were unable to make a match. *Id*. at 262. In this way, the Court noted, the prosecutor and the police officers "were performing essentially the same investigatory functions." *Id*. at 262-63. There is no such factual averment here. Plaintiff merely claims that the prosecutors were participating in the investigation, without any supporting allegations, or descriptions of what that means.

The same threadbare accusation is made with regard to Plaintiff's contention that the prosecutors provided legal advice. Unquestionably, the courts have recognized that providing legal advice to police may not be covered by absolute immunity. But, again, that is an element of the exception to absolute immunity that must be developed with factual allegations to satisfy the Plaintiff's pleading burden. For instance, in *Burns*, also cited by Plaintiff, officers contacted the Chief Deputy Prosecutor to ask whether they could proceed with the investigative technique of

hypnotizing a suspect believed to have shot her sons. *Burns v. Reed*, 500 U.S. 478, 482 (1991). Based on the prosecutor's legal advice that they could move forward with the hypnosis, the officers interviewed the suspect in a hypnotic state and she gave a statement that implicated her in the shooting. The prosecutor then advised the officers that they "probably had probable cause to arrest her. *Id*. at 483.The prosecutor then appeared before a judge to present that evidence in support of a search warrant of the suspect's house and car. On these facts, the Supreme Court found that *Imbler* did not apply.

Here, Plaintiff does not offer a single fact showing what it is District Attorney Ramierz or Assistant District Attorney Barrera actually did that amounts to giving legal advice to officers. Did they opine on a specific investigative technique? Did they advise about whether Plaintiff should be arrested following the indictment? The truth is that they did nothing of the sort, which is why Plaintiff is so concerned with the Court reviewing the investigative file. But Plaintiff makes no effort to even state an allegation that describes the prosecutor's supposed investigatory conduct. Again, Plaintiff has not met the pleading standard to support her conclusion with factual content that survives Defendants' Motion to Dismiss.

Because Plaintiff has not pointed to any facts—only the legal framework that she characterizes as facts—her First Amended Complaint fails to state a claim that overcomes absolute prosecutorial immunity against Defendants Ramirez and Barrera. Her claims against them must be dismissed.

**C.      Claims Against The District Attorney For The 229th Judicial District Of Texas Are Barred By Eleventh Amendment Immunity.**

Defendant Ramirez is the elected District Attorney, not of Starr County alone, but of the 229th Judicial District of Texas. Therefore, he is an extension of the State of Texas in enacting any policies that are implemented in furtherance of his role as the prosecutor. There can be no question

that a policy, for example, of investigating the death of unborn children and overseeing Assistant District Attorneys in the prosecution of same is one undertaken in that prosecutorial capacity.

Plaintiff makes a half-hearted attempt to argue that Ramirez exceeded his prosecutorial capacity by "ratifying the unconstitutional acts of his subordinate" and that that oversight necessitates a finding that District Attorney Ramirez shed his prosecutorial functions. But what Plaintiff is really alleging is *respondeat superior* liability; not a policy decision made outside of Ramirez's duty as a prosecutor. That there was apparently an oversight in applying a defense to prosecution does not mean that District Attorney Ramirez implemented a policy that was beyond the authority bestowed on him as the head prosecutor for the 229th Judicial District of Texas.

Plaintiff's claims against Starr County, which are tethered to a supposed policy of District Attorney Ramirez fail. Further, Plaintiff makes no effort to describe a policy of any other policymaker on which County liability can be established under *Monell*. Plaintiff's claims against Starr County should be dismissed.

D.  **Defendants Acted Within The Scope Of Their Respective Positions, Barring Any Exception To The Intra-Agency Conspiracy Exception.**

Finally, Plaintiff argues that the general bar to intra-agency conspiracies is inapplicable here because Defendants were acting for personal gain. Here, too, Plaintiff makes nothing but a naked assertion that has no factual support. There are no pleaded facts to suggest what personal advantage the Sheriff, District Attorney, or Assistant District Attorney would obtain by Plaintiff's indictment—much less that they took steps to obtain the (non-existent) advantage.

Plaintiff also cites *Bevill v. Flether* for the proposition that employees of the same agency can, in fact, conspire with each other. Doc. 28, p. 24-25. But in *Bevill*, the allegation was that the Wood County defendants had conspired with the City of Quitman officials to violate the plaintiff's rights. *Bevill v. Fletcher*, 26 F.4th 270, 273-274 (5th Cir. 2022). Though only the County employees

were Defendants, the conspiracy was alleged to have involved employees of multiple agencies. That is not the case here. Here, Plaintiff alleges that the supposed conspiracy was made exclusively within the County itself. Plaintiff's misplaced reliance on *Bevill* does not alter Defendants' entitlement to dismissal of her conspiracy claim.

## CONCLUSION AND PRAYER

For the reasons stated herein, Defendants request that the Court DENY Plaintiff's Motion to Strike and Grant Defendants' Motions to Dismiss brought under Rule 12. Defendants also urge the Court stay discovery pending the determination of immunity—both absolute immunity and qualified immunity—for the reasons stated by the Fifth Circuit in *Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022). Defendants pray for any other relief to which they are justly entitled.

SIGNED on the 1st day of JULY 2024.

Respectfully submitted,

By: *Ricardo J. Navarro*
RICARDO J. NAVARRO
Lead Attorney
State Bar No. 14829100
So. Dist. Id No. 5953
rjnavarro@rampagelaw.com

*Kelly R. Albin*
Kelly R. Albin
State Bar No. 24086079
So. Dist. ID No. 3792304
kralbin@rampagelaw.com

**DENTON NAVARRO RODRIGUEZ
  BERNAL SANTEE & ZECH, P.C.**
549 N. Egret Bay, Suite 200
League City, Texas 77573
832- 632-2102
832-632-2132 (fax)

**ATTORNEYS FOR DEFENDANTS
SHERIFF RENE FUENTES, GOCHA ALLEN
RAMIREZ, ALEXANDRIA BARRERA AND
STARR COUNTY, TEXAS**

## CERTIFICATE OF WORD COUNT

I hereby certify that the Response to the Motion to Strike contains 1,252 words and therefore satisfies the word count requirement. I hereby certify that the Consolidated Reply in support of Defendants' Motion to Dismiss contains 2,177 words and therefore satisfies the word count requirement.

## CERTIFICATE OF SERVICE

I certify that a true copy of this document has been served in accordance with one or more of the authorized methods for service of process contained in the Federal Rules of Civil Procedure on the persons or parties identified below on this the 1st day of JULY 2024.

Ida Cecilia Garza **Via E-Filing Notification**
Veronica Sepulveda Martinez
GARZA MARTINEZ, PLLC
202 E. Sprague Street
Edinburg, TX 78539

Adriana Piñon
State Bar No. 24089768
USDTX No.
American Civil Liberties Union of Texas
P.O. Box 12905
Austin, TX 78711-2905
Telephone No.: (713) 942-8146

David A. Donatti
State Bar No. 24097612
USDTX No.
American Civil Liberties Union of Texas
P.O. Box 12905
Austin, TX 78711-2905
Telephone No.: (713) 942-8146

Lauren Alicia Johnson
American Civil Liberties Union Foundation
915 15th Street NW
Washington DC 20005
Telephone No.: (202) 731-5567
**COUNSEL FOR PLAINTIFF**

*Ricardo J. Navarro*
RICARDO J. NAVARRO
KELLY R. ALBIN