1                     IN THE UNITED STATES DISTRICT COURT

2                     FOR THE SOUTHERN DISTRICT OF TEXAS

3                               MCALLEN DIVISION

4    LIZELLE GONZALEZ                §     CASE NO. 7:24-cv-00132
                                     §     MCALLEN, TX
5    VERSUS                          §     WEDNESDAY,
                                     §     JULY 24, 2024
6    GOCHA ALLEN RAMIREZ, et al.     §     1:00 p.m. TO 1:56 p.m.

7                               MOTION HEARING

8                BEFORE THE HONORABLE DREW B. TIPTON
                      UNITED STATES MAGISTRATE JUDGE

9                               APPEARANCES:

10

11       FOR THE PARTIES:                SEE NEXT PAGE

12       ELECTRONIC RECORDING OFFICER: RICK RODRIGUEZ

13       COURT CLERK:                    UNKNOWN

14

15

16

17

18

19

20

21                     TRANSCRIPTION SERVICE BY:

22                     Veritext Legal Solutions
                     330 Old Country Road, Suite 300
23                       Mineola, NY 11501
                 Tel: 800-727-6396 ▼ www.veritext.com

24

25       Proceedings recorded by electronic sound recording; transcript
                   produced by transcription service.

```
1                              APPEARANCES:

2    FOR THE PLAINTIFF:           GARZA MARTINEZ, PLLC
                                  Ida Cecelia Garza
3                                 202 E Sprague Street
                                  Edinburg, TX 78539
4                                 956.335.4900

5
     FOR THE DEFENDANTS:          DENTON NAVARRO RODRIGUEZ BERNAL
6                                 BERNAL SANTEE & ZECH, PC
                                  Ricardo Navarro
7                                 549 N Egret Bay Boulevard
                                  Suite 200
8                                 League City, TX 77573
                                  956.341.6552
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | <u>MCALLEN, TEXAS; WEDNESDAY, JULY 24, 2024; 1:00 p.m.</u> |
| 2 | CLERK:  The Court calls Civil action 724-132, |
| 3 | Gonzalez v. Ramirez, et al.  May I have appearances by counsel? |
| 4 | MS. GARZA:  Good afternoon, Your Honor.  Cecilia |
| 5 | Garza, Lauren Johnson, and David Donatti for the Plaintiff. |
| 6 | THE COURT:  Okay. |
| 7 | MR. NAVARRO:  Good afternoon, Your Honor.  Ricardo J. |
| 8 | Navarro for the Starr County defendants.  And at my table are |
| 9 | my two clients, District Attorney Mr. Ramirez and Alexandria |
| 10 | Barrera. |
| 11 | THE COURT:  All right.  Okay.  So we are here for a |
| 12 | couple of things.  One is to figure out what we're doing for |
| 13 | scheduling on the case.  And I know that the parties had wanted |
| 14 | argument on the motions.  So I guess it makes sense maybe to |
| 15 | start with the motions.  I've read them, obviously.  How do you |
| 16 | all want to proceed?  Kind of what process? |
| 17 | MR. NAVARRO:  Well, I think the responsive motion |
| 18 | that we had and of course our Rule 12 -- |
| 19 | THE COURT:  Right. |
| 20 | MR. NAVARRO:  -- and assertion of immunity on behalf |
| 21 | of the individuals. |
| 22 | THE COURT:  So are you wanting to do argument and |
| 23 | then just kind of go back and forth until we're done with that? |
| 24 | MS. GARZA:  I think that makes sense.  He can go |
| 25 | ahead and start with his motion and then we'll respond, Your |

1   Honor.

2              THE COURT:  Okay.  That's what I expected.  Do you

3   agree?

4              MR. NAVARRO:  Yes.

5              THE COURT:  All right.  Go ahead.

6              MR. NAVARRO:  If I may, Your Honor.

7              THE COURT:  You bet.

8              MR. NAVARRO:  When we were first retained in the

9   case, I think that not all of the defendants had been served

10  and we had communicated with opposing counsel and agreed to

11  some waivers of service and agreed to the first amended

12  complaint, which is the live complaint in the case.  That's the

13  complaint against which we filed our Rule 12 motion.

14             So at this point we represent the two individuals who

15  are from the prosecution office, the District Attorney's

16  Office, Mr. Ramirez and Ms. Barrera.  That office, the case

17  arises out of Starr County, Your Honor, but I would ask the

18  Court to take judicial notice that this is a judicial district

19  that covers three counties.  So Starr County is in it because

20  the incident involved, and it happened in Starr County.  But

21  the judicial district in which Mr. Ramirez and Ms. Barrera

22  worked is actually at the Reeves County District --

23             THE COURT:  You're talking about the state judicial

24  district?

25             MR. NAVARRO:  Yes, it's the state judicial district.

```
 1              THE COURT:  All right.  I thought you were talking

 2    about the federal.  Okay.  Go ahead.

 3              MR. NAVARRO:  So if Starr County is in it just

 4    because the incident happened in Starr County.  But they

 5    actually exercised their judicial prosecutorial functions in

 6    two other counties as well.

 7              We filed our Rule 12 motion to dismiss and then we

 8    also filed, and I confirmed with Counsel we invoked this

 9    doctrine, this limited doctrine that allows some limited review

10    or use of documents in the context of a Rule 12.  That doctrine

11    is in my view is a more recent vintage.  It wasn't really in

12    play when I first started doing 1983 work.  But is now in play

13    and can be used on limited circumstances to (indiscernible).

14              The point of the Rule 12 is that -- and the documents

15    that were submitted in support of it which we asked to be put

16    under seal and which we ultimately agreed to be put under seal,

17    was that the allegations contained in the complaint have a lot

18    of conclusory jury arguments about the case involving a

19    conspiracy between the Sheriff's Office and the District

20    Attorney's Office.

21              And the bald facts of the case are that the

22    complaint, the criminal complaint that originally came -- and

23    this is pleaded in the first amended complaint, I don't think

24    I'm saying anything that's not in there -- originated in the

25    hospital with Ms. Lizelle Gonzalez own doctor.  It was against
```

1  the backdrop of the Texas Heartbeat Act which had been passed

2  just the year before.  That's Senate Bill 8.  We think that the

3  existing documentation reveals that Ms. Lizelle's own doctor

4  was quite confused about how that law worked and appears to

5  have been the reason why there was a criminal case referral

6  made to the local authorities.

7         The pleadings themselves say it was directed to the

8  cities, police, as well as to the Sheriff's Office.  And the

9  Sheriff's Office did ultimately investigate the matter.  That

10  case was -- later when an investigation was complete, the court

11  has in the sealed documents some of the more critical

12  investigative documents that were generated by the

13  investigators.

14         There was also a couple of grand jury subpoenas that

15  were issued in order to get the medical records from the

16  doctors and hospital.

17         MS. GARZA:  Your Honor, if I may.  I apologize, Mr.

18  Navarro.  But he is referencing some information that is in the

19  sealed documents, and this is not a sealed, closed courtroom.

20  So we would just --

21         THE COURT:  What did he reference that was -- that

22  shouldn't -

23         MS. GARZA:  He referenced the police department; he

24  also referenced information that is only in the sealed

25  documents that's not in the pleadings and not in the public

1 | record.  So I would just to be careful about that, how we --.
2 |          THE COURT:  So the fact that the police department
3 | was involved is not something that needs to be sealed.  Right?
4 | Just information that will be in the reports.  I didn't hear
5 | him talk about anything that was in the reports.
6 |          MS. GARZA:  That's correct.  But it's only found in
7 | the sealed documents.
8 |          THE COURT:  What is?
9 |          MS. GARZA:  The fact that it was reported to the
10 | police department.
11 |          THE COURT:  All right.  So let's be careful about
12 | what we think that is in the sealed documents.
13 |          MR. NAVARRO:  And I'm trying to -- and I'm going to
14 | limit my references to the description of the sealed documents
15 | that was part of the motion.  Okay?
16 |          THE COURT:  Okay.
17 |          MR. NAVARRO:  But we think that the Court ought to
18 | take those into consideration in evaluating the Rule 12.  And
19 | this is an area where I think that even the Plaintiff's own
20 | pleadings reveal that this was in terms of Mr. Ramirez and Mr.
21 | Barrera that they were reviewing this investigative file in
22 | their prosecutorial capacity, but the file was actually
23 | presented by Ms. Barrera to the grand jury and the grand jury
24 | issued an indictment.  That's -- that did happen.
25 |          We can't really get into the specifics about what

1    happened there because of the grand jury's secrecy laws and

2    we're somewhat constrained there.  And it clearly was done and

3    within their scope of their authority as judicial officers.

4         Mr. Ramirez was in fact himself not there at that

5    time.  Later on after the indictment had been issued as pleaded

6    there and the defense attorney was -- came to visit him as

7    pleaded, it was brought to his attention that there was an

8    additional section to the Code, 1906, that created an exemption

9    to what otherwise appeared to qualify as a murder charge.  And

10   at that point Mr. Ramirez did dismiss the indictment.

11        That's really the case.  At worst, at worst it's a

12   failure to understand or to a negligence understanding that

13   there was an additional exemption to that statute, the 1906.

14   It's a question of not looking far enough down the statute to

15   see that it was there and that it applied.  If one reads just

16   the beginning portions of it, the facts presented in the

17   investigation do look here to present a proper charge.  But it

18   would have fallen to the DA's office to at that point look at

19   that last section.  And that's what was overlooked.

20        This is at best or at worst a negligence case.  It's

21   not a Section 1983 civil rights case.  They're trying to make

22   it into something much more than what it is.  And we think that

23   as far as the immunity protections available to judicial

24   officers and to likely district attorneys, that those apply

25   with equal force to the elected district attorney as they do to

1    his assistant.

2              THE COURT:  So are you doing qualified immunity,

3    absolute immunity, or both?

4              MR. NAVARRO:  Both.

5              THE COURT:  Okay.

6              MR. NAVARRO:  We think the absolute immunity is to

7    the extent that there's a prosecutorial decision in the

8    presentation of the case to the grand jury.  And then the

9    qualified immunity on anything other than that would fall

10   outside of that, which is very narrow.  I think it's primarily

11   an absolute immunity prosecutorial defense.

12             THE COURT:  And I was calling it absolute.  That's

13   what I was referring to, prosecutorial.

14             MR. NAVARRO:  And so it's not exactly the same as the

15   immunity of a judge, but it's pretty close.  Because to the

16   extent that the elected official, the district attorney and his

17   staff are working in the courts, it's a judicial function that

18   they're exercising --

19             THE COURT:  What about malicious prosecution?

20             MR. NAVARRO:  I'm sorry?

21             THE COURT:  What about a malicious prosecution

22   charge?

23             MR. NAVARRO:  Well, the malicious prosecution charge,

24   I mean, you're going to have to show intent.  And I think that

25   at the pleading stage I will acknowledge to the Court candidly

1    that that's a more difficult area.  And that's why we invoked

2    this doctrine as we're looking at some of these investigations

3    that were put under seal.  Because I think the issue of the

4    malicious prosecution, we've got to get the intent.  I

5    understand that's why it's pleaded the way it is.  But --

6            THE COURT:  How can you get into intent without

7    allowing depositions on what was going through people's minds

8    as opposed to just what the papers have to say?

9            MR. NAVARRO:  Well, I mean, that's where I think we

10   are going to need to decide, how are we going to resolve that.

11   Because it's not only -- the law is that on the assertion of

12   immunity, whether it's qualified immunity or absolute immunity,

13   the defendant is also entitled to be free of the burdens of

14   discovery.

15           THE COURT:  Well, but there is limited discovery, for

16   example on qualified immunity.  You normally have a dual track.

17   And what I'm trying to do is put this more like an excessive

18   use of force from a police officer or somebody who is a prison

19   guard.  And so typically what will happen is they get two bites

20   at the apple at summary judgment, not a motion to dismiss.

21           MR. NAVARRO:  Right.

22           THE COURT:  And it's normally on 1983 grounds.  You

23   do some limited discovery that is dedicated to the qualified

24   immunity exclusively.  And then once that's resolved, then we

25   open it up to full discovery for the case to go forward.  Is

1    that not the proper process for this?

2            MR. NAVARRO:  That would be -- if the Court

3    determines that the issue of intent is sufficiently central to

4    the case.

5            THE COURT:  Well, I mean, the only reason I brought

6    it up was you brought it up.  You were saying that the only way

7    to get there is with intent.

8            MR. NAVARRO:  Well, on the malicious prosecution.

9            THE COURT:  Right.

10           MR. NAVARRO:  But they are still -- they are still in

11   their judicial function as far as presentation of the case.

12           THE COURT:  But even if they're in a judicial -- and

13   I guess that was my original question.  Can a prosecutor still

14   be sued under 1983 for malicious prosecution if they're just

15   doing their job, presenting stuff to a grand jury under certain

16   circumstances?

17           MR. NAVARRO:  And the caselaw says no.

18           THE COURT:  Okay.  Ever?

19           MR. NAVARRO:  The caselaw that we have says that if

20   they're acting within the scope of their prosecutorial

21   function, even improper or intent or malicious intent, does not

22   penetrate the absolute immunity bar.

23           THE COURT:  Okay.  All right.

24           MR. NAVARRO:  And we've cited those cases to the

25   Court.

1          THE COURT:  Okay.

2          MR. NAVARRO:  So we would ask that as to the

3     prosecutors, that the Rule 12 be granted.  As to the Sheriff

4     Fuentes, that is a qualified immunity case as we're not

5     asserting absolute immunity as to Fuentes.

6          And with him, again, the pleadings are based on these

7     allegations that there was some coordination of effort or

8     conspiracy with the prosecutors, with the investigators.  And

9     the facts on that really are not going to bare out that there

10    was -- he is the elected sheriff.  This came over as a criminal

11    complaint from the hospital.  It was investigated as a criminal

12    complaint by the sheriff's investigators.  The sheriff himself

13    was not involved in those investigative efforts.

14         The pleadings are that he coordinated and conspired

15    with the prosecutors and that he did the same with his own

16    staff.  But there's no -- I don't know where they're getting

17    those facts.

18         THE COURT:  So again at the Rule 12 stage, the only

19    way that you can establish that is by submitting evidence.

20         MR. NAVARRO:  I think with the sheriff it may take

21    that.  It may take that.  Or we may need more pleadings as to

22    what exactly the sheriff -- the pleadings are fairly conclusory

23    as to the sheriff.

24         THE COURT:  But, I mean, they say what they say,

25    which is you're supposed to take everything that's in the

1    pleading as true.  So are you making a distinction between the

2    prosecutors and the sheriff as far as --

3              MR. NAVARRO:  I am.

4              THE COURT:  Okay, all right.

5              MR. NAVARRO:  I am.  I think the sheriff is in a

6    different place than the prosecutors.  Because the protections

7    for the prosecutors are functional in terms of them acting

8    within their prosecutorial office regardless of their intent,

9    whereas with the sheriff, he does not have that.  So with the

10   sheriff, he's more on a qualified immunity.  And I think that's

11   where the more blended approach on qualified immunity could

12   come into play.

13             THE COURT:  Okay.

14             MR. NAVARRO:  So the part where they deny the --

15   that's why we filed a separate Rule 12 as to the sheriff.  So

16   if the Court were to say, well, as to the sheriff I think they

17   get there, we would probably at that point answer for the

18   sheriff and then come back with an MSJ-based qualified immunity

19   to flesh out that case.  But the sheriff's case and the

20   prosecutor's cases are two different sets of facts.

21             THE COURT:  Okay.  All right.  Okay.  Hear from the

22   Plaintiffs?

23             MS. GARZA:  Your Honor, with your permission, both

24   Ms. Johnson and I will be addressing separate things with the

25   Court.

1          THE COURT:  Fine.  Sure.

2          MS. JOHNSON:  Good afternoon, Your Honor.  Lauren

3   Johnson and I will begin.  May it please the Court.

4          Your Honor, in our justice system it is a violation

5   of the highest order when those we entrust to uphold the law

6   deliberately charge a person when they know that person did not

7   commit a crime.

8          Lizelle Gonzalez' case is even more egregious than

9   that.  It's not a case where law enforcement simply ignored

10   evidence that undermined probable cause, nor is it a case of

11   mere negligence as alleged by defense counsel.  This is a case

12   in which Ms. Gonzalez has alleged that the sheriff and the

13   district attorneys understood that Lizelle Gonzalez' conduct

14   was not a crime under state law.

15          THE COURT:  So what evidence do you have of that?

16   Because that's really what we get down to is that you're going

17   to have to prove intent.  So how are you going to -- if they

18   say we didn't know, we just missed that, how are you going to

19   disprove that?

20          MS. JOHNSON:  Well, Your Honor, I think that there's

21   a very basic expectation that law enforcement who are upholding

22   and enforcing laws have an obligation to know what those laws

23   are and what the limitations of them are.  And here --

24          THE COURT:  Well, I think people get charged all the

25   time and they go oh, well, I though that fit that statute, or I

1    didn't think that exception applies.  I think people get

2    charged that way all the time.  Maybe if they -- like I said,

3    this is a really new law.  If there is something that's further

4    down in the statute they didn't read, this hasn't been applied

5    very much, this is new, how is that not just them -- for

6    example, like I said, it may have been negligence for them not

7    to see it.  But aren't you going to have to prove, well, we saw

8    it and we chose to ignore it and go after her anyway?

9              MS. JOHNSON:  Your Honor, the statute is so clear

10   that that is the only reasonable inference in this case.  Here

11   it's not an example of a newly passed law.  And we put in our

12   pleadings to how not only is the way the statute is written

13   very clear that this statute, Section 19 does not apply.

14   That's the entire homicide portion of the statute.  Does not

15   apply to the mother of the unborn child with regard to the

16   death of that child.

17             There are also cases where the Courts have looked at

18   this question and found that the pregnant person, the pregnant

19   woman could not be prosecuted, that there was no crime where

20   the allegation was based on the demise of the child at the

21   expense or the cost of the actions of the mother.

22             So this is something that is not new, has been very

23   clear.  And even where defense counsel points --

24             THE COURT:  But the statute is new.  You would agree

25   the statute is new.

```
 1              MS. GARZA:  No, Your Honor.

 2              MS. JOHNSON:  No, Your Honor.

 3              THE COURT:  Well, I'm talking about this particular

 4   part.  He was just talking about something just got passed.

 5              MS. JOHNSON:  No, Your Honor.  And I can actually

 6   speak to that specifically.

 7              THE COURT:  Okay.

 8              MS. JOHNSON:  First of all, homicide statute itself

 9   and that extension is not new.

10              THE COURT:  I understand that.

11              MS. JOHNSON:  But with regard to the Heartbeat Act,

12   Your Honor --

13              THE COURT:  Right.

14              MS. JOHNSON:  -- I think that case -- that example is

15   even more -- even more evidence of how the government knew that

16   there was no criminal enforcement power.

17              First of all, SB-8, that only applied to civil

18   enforcement.  And the attorney general was very clear and the

19   language of the statute itself is very clear that it does not

20   grant any authority by the government to criminally prosecute.

21   And it also explicitly says that the civil statute, the civil

22   penalties cannot even be enforced against the pregnant woman.

23              And so in all instances Texas law has been and has

24   continued to be clear the pregnant woman cannot be prosecuted

25   in the way that these defendants chose to do so.
```

1          And I would also note that the Court can consider

2     whether or not this was a snap decision, a snap judgment that

3     was made very quickly without the opportunity to really

4     deliberate and better inform the course of action.  But here

5     the Court has an entirely different picture.  It has an

6     investigation that took place over the course of not weeks, but

7     months and that after there was indictment, after there was

8     even an investigation, there was an indictment.  And then later

9     an arrest.  This was a deliberative process at which time those

10    actors had every opportunity to correct their behavior.  But

11    rather the fact that this time passed and that they continued

12    with that goal suggest that they were aware of it and were

13    trying to build a case in spite of it.  So that's --

14          THE COURT:  Was there ever a time when the defense

15    attorneys or the attorneys representing your client informed

16    the prosecutors, hey, you can't even criminally charge them,

17    and they chose to ignore that?

18          MS. JOHNSON:  That is not something that we have

19    pled, Your Honor, as far as --

20          THE COURT:  Well, I don't care what you pled.  I'm

21    asking if that happened.

22          MS. GARZA:  Actually the information that we have,

23    Your Honor, is that she did not have a criminal defense

24    attorney until after she was arrested and shortly before

25    dismissal.  Within a day.

1          THE COURT:  Okay.  So when that happened, when was

2     the first time that you think that the prosecutors at least

3     were put on notice that they couldn't go after her criminally?

4          MS. JOHNSON:  At the beginning of the case when they

5     decided to investigate.

6          THE COURT:  And how did they know that?

7          MS. JOHNSON:  Because they decided at the outset to

8     call this a criminal homicide investigation.

9          THE COURT:  No, I'm saying when did they find out --

10    because at some point the charges were dismissed, right?

11         MS. JOHNSON:  Yes, Your Honor.

12         THE COURT:  At some point they figured out, oh, we

13    can't proceed criminally.  At what point -- as opposed to

14    should have figured out, at what point do we know that they

15    were informed?  For example, that's why I was asking about the

16    defense attorneys.  Did the defense attorneys or did somebody

17    call them up and go you can't go after them criminally under

18    this statute.  As opposed to you should have figured it out on

19    your own.  That's different.

20         MS. GARZA:  Your Honor, at this point without

21    evidence, it's hard to say what --

22         THE COURT:  But that's your client.

23         MS. GARZA:  Excuse me?

24         THE COURT:  That's your client.  Your client would

25    have made that phone call.  Your client or her representatives

1    or some attorney.

2            MS. GARZA:  Right.  And we don't know what was

3    discussed between our client's defense attorney and the

4    district attorney.  We do know that at all times they knew what

5    the statute said.

6            THE COURT:  How do you know that?  I mean, what if

7    they just blew it?  What if they just -- you know, I blow it

8    every now and then.  I go oh, you know, my staff says, Judge,

9    you completely forgot to do this.  Happened today.  I had to

10   call some defendants back in because I just blew it.  I forgot

11   something.  Brought them back in, and I read the client their

12   rights.  I didn't do that intentionally.  I just missed it.

13           MS. GARZA:  I think that we can infer, Judge, on the

14   fact that the investigation did take four months.  This is

15   Starr County, a small county where there are not a lot of

16   murder indictments that come out of Starr County.  So this was

17   a case that was investigated and looked at.

18           So you're right, I can't say right now what they did

19   or did not know or when they learned it.  But you can infer

20   that based on this type of murder indictment, the fact that

21   there are so few murder indictments in Starr County, that this

22   is knowledge that they had.

23           THE COURT:  Do you agree that knowledge is required

24   as opposed to reckless disregard?

25           MS. JOHNSON:  No, Your Honor, we disagree.  It can be

1   that it's wanton disregard that is the basis.  But here --

2           THE COURT:  What's the difference between reckless

3   disregard and wanton disregard?  I don't know that I've heard

4   that.

5           MS. JOHNSON:  I maybe --

6           THE COURT:  Okay.  Well, I wasn't trying to get

7   snarky.  I've not heard wanton disregard.  Okay.

8           MS. JOHNSON:  Your Honor, I guess what I want to

9   bring the Court back to or highlight is I think at this point

10  the Court is asking questions that certainly could inform, but

11  that Ms. Gonzalez has not yet had the benefit of discovery to

12  fully probe.  And at this point --

13          THE COURT:  But you pled it.  You pled that they

14  knew.

15          MS. JOHNSON:  Yes, Your Honor.  And at this point

16  intent can be pled generally based on reasonable inferences,

17  which are the nature of the investigation, the amount of time

18  that it took, and the level of coordination that it required

19  over the course of four months as opposed to a snap judgement.

20          Also given that this is the kind of case that was a -

21  - it was a big deal to bring this kind of case.  And certainly

22  the Court can also take into consideration that there's an

23  expectation that when DAs are working together, when the

24  district attorney is supervising his ADAs, that he would know

25  the law and its limitations and that that would be --

1           THE COURT:  But again, I'm a federal judge.  I don't

2    know all federal law.  I have to prepare for stuff.  I had to

3    prepare for this hearing.  You can't just presume that I know

4    all federal law.  So I don't think that you can assume that a

5    DA knows all laws off the top of their heads.

6           MS. GARZA:  Your Honor, it is also in our petition

7    that DA Ramirez was sanctioned by the Texas Bar for knowingly

8    going forward with a criminal prosecution that he should not

9    have gone forward with.  So that is pled in our petition, that

10   there is at least some finding somewhere, that there is

11   evidence out there that there was knowing, that this was a

12   knowing act.

13          THE COURT:  What do you think about the difference

14   between the prosecutors and the sheriff, the qualified immunity

15   versus the prosecutorial immunity?

16          MS. JOHNSON:  Well, Your Honor, we agree with the

17   defense counsel that there is a different consideration with

18   regard to prosecutors when they're acting within their quasi-

19   judicial function and that the cases have lined out that

20   distinction.

21          However, where we disagree is that the actions of the

22   DAs in this case fell within that function.  And so we've pled

23   --

24          THE COURT:  Fell within the function?

25          MS. JOHNSON:  Yes, Your Honor.

```
 1          THE COURT:  Within the function of their
 2   prosecutorial --
 3          MS. JOHNSON:  We have pled that they were outside the
 4   scope of their prosecutorial function.
 5          THE COURT:  You said within.
 6          MS. JOHNSON:  I apologize, Your Honor.
 7          THE COURT:  Okay, all right.
 8          MS. JOHNSON:  And so we are in agreement that there
 9   are certain kinds of actions that would be entitled to absolute
10   immunity.  But that's not the case here --
11          THE COURT:  What are the allegations that are outside
12   the judicial function or the prosecutorial function?
13          MS. JOHNSON:  The allegations are that in advance
14   before there was an investigation of prosecution of Lizelle
15   Gonzalez specifically, that there was an agreement between the
16   hospital and the district attorney's office and/or the
17   sheriff's office to gather information about these types of
18   cases, these types of cases being women who were suspected to
19   have had abortions, for the purpose of criminal prosecution
20   despite Texas Penal Code 19.06 clearly prohibiting that kind of
21   prosecution against that kind of individual.
22          THE COURT:  So how do you know that?  And who is it
23   with, the sheriff or the prosecutors?
24          MS. JOHNSON:  Your Honor, at this point we have pled,
25   based on information and belief that there was an agreement
```

1    that may have included both.  We certainly have with regard to

2    Lizelle specifically pled that there was collaboration about

3    her specific case based on information that was provided by the

4    hospital.

5              THE COURT:  But, I mean, you can say anything on

6    information and belief.  So I am trying to figure out -- at

7    some point your expectation is that there's evidence showing

8    that, for example the DA or the DA's office knew, or they had

9    this agreement.  But is that your suspicion or is -- what

10   evidence do you expect is going to show?

11             MS. JOHNSON:  Admittedly, Your Honor, we have not had

12   the opportunity to have fulsome discovery or any discovery at

13   this point.  But we do expect that there will bear out that

14   there were additional investigations with regard to other women

15   besides Lizelle Gonzalez for the purpose of criminal

16   prosecution.

17             THE COURT:  Okay.  All right, go ahead.  I'm sorry.

18             MS. JOHNSON:  If the Court would just bear with me

19   briefly.

20             THE COURT:  Yeah.  I threw you all over the place,

21   didn't I?  Sorry.

22             MS. JOHNSON:  No, that's fine.  That's fine.  I want

23   to address Your Honor's questions.

24             Your Honor, so as I said, this is a case where we

25   don't agree that this is a case of negligence.  We do believe

1    that the case will ultimately bear out that there was an

2    understanding of the limitations of the law and that the

3    district attorneys and sheriffs acted in spite of it.

4            THE COURT:  So I'm going to ask you again.  Because

5    now that you set an understanding, that kind of gets into me

6    back into the mind that -- are you going to have to prove that

7    they knowingly did this or do you think reckless disregard?

8    Because that's not knowing.  So those are different standards.

9    What is the standard?

10           MS. JOHNSON:  Your Honor, and I will look to the case

11   exactly.  But I believe that the law draws with regard to

12   absolute immunity doctrine that it covers -- it doesn't cover

13   intentional -- basically knowing violations, but also

14   violations that are so kind of glaringly obvious or reckless.

15   And so I don't want to misstate exactly the language.  I can

16   find that to give Your Honor.

17           THE COURT:  So you think it could be something other

18   than knowing?

19           MS. JOHNSON:  Yes.

20           THE COURT:  In other words, so if they deny it and

21   you say, well, it was so obvious you should have known?

22           MS. JOHNSON:  Yes, Your Honor.  And also, Your Honor,

23   I think that what's most important about the discovery process

24   is it will allow more information to inform the Court to make

25   that assessment.  But here, as the Court is taking the

1    allegations as pled as true, we have shown that there was

2    sufficient understanding of the law and that Ms. Gonzalez is --

3    it not being applicable to her conduct.

4             THE COURT:  Okay.

5             MS. JOHNSON:  Your Honor, I would just note that

6    obviously Ms. Gonzalez' prosecution and arrest had a hugely

7    devastating impact in addition to her being publicly branded as

8    a murderer.  Her case received national attention.  And her

9    life and the life of her family has been severely impacted.

10            And so, Your Honor, we submit that the motions that

11   the Court has before it from the defendants are attempts to not

12   be held to account.  We ask the Court to deny the motions to

13   dismiss as not founded and at odds with existing precedent and

14   also as a request to extend absolute immunity and qualified

15   immunity doctrine to extraordinary lengths to prohibit conduct.

16   First --

17            THE COURT:  Well, qualified immunity is easy.  We do

18   discovery on qualified immunity.  What I'm trying to figure out

19   is what to do with the prosecutorial immunity.

20            MS. JOHNSON:  Well, with regard to the prosecutorial

21   immunity, Your Honor, there are a number of cases that talk

22   about what's outside the scope.  And one of the lines of cases

23   talks about investigatory functions or the DA's involvement in

24   investigatory functions.  And what Ms. Gonzalez has pled is

25   that the DAs were involved in an investigatory plan prior to

1    Lizelle's specific case and that in her specific case they were

2    providing legal advice and directly involved in that process

3    over the course of the four months for when Ms. Gonzalez first

4    received care at the hospital to when she was ultimately

5    indicted on March 30th.  And so that -- I'm sorry -- and

6    arrested after that on April 4th.

7              And so as the Court is aware, that kind of conduct

8    where the DAs are acting more like the detectives or police

9    officers than as advocates is not protected by absolute

10   immunity.

11             Similarly, Buckley v. Fitzsimmons and its progeny

12   talk about how when the DA is acting before probable cause or

13   without the existence of probable cause, that kind of action is

14   not given the same kind of protections as absolute immunity.

15   And in part it's because we don't have the same safeguards that

16   a person has in the criminal system where the Court can look at

17   the courtroom conduct of the DA, for example, or the

18   presentation of evidence in the grand jury and make a decision

19   as to whether or not that conduct was violative.

20             And so where we had investigation action happening

21   beforehand and the process of how to build a case for the grand

22   jury happening with the collaboration of the DA and the

23   sheriff, that is outside of the quasi-judicial function, and

24   it's not entitled to absolute immunity.

25             THE COURT:  Okay.

1          MS. JOHNSON:  Additionally, Your Honor, I would just

2     also raise Ms. Garza will speak specifically to the exhibits

3     that the Court has raised.  But I would ask the Court to really

4     think about the implication that the defendants are drawing

5     here.  They're asking the Court to hold against Ms. Gonzalez

6     that she hasn't had discovery, that she has not -- that she

7     does not have access to information that is uniquely in the

8     possession of the defendants and subject to heightened secrecy

9     because of the investigative and grand jury process.  And at

10    the same time they're submitting these documents that they

11    claim support their arguments or their allegations without

12    giving her the opportunity to probe it.  And Ms. Garza will

13    speak more specifically to why the Court should not do that

14    without first giving her the opportunity to inform the Court

15    with discovery.

16          And finally, we'll speak -- I'll speak to the county

17    liability claim, Your Honor.  As the Court is aware, Ms.

18    Gonzalez has also brought a claim against the County because

19    the DA and the sheriff's office acted as final policymakers

20    together and acted in violation of Texas law to further an

21    unconstitutional policy of investigating women who had

22    abortions with the goal of prosecuting them criminally.

23          So we will ask Your Honor to reject these attempts by

24    the Defendants to avoid liability and we ask that Your Honor

25    give Ms. Gonzalez' claims the opportunity to have informed and

1   reasoned consideration.  And Ms. Garza will speak first with

2   regard to the facts.

3           THE COURT:  Okay.

4           MS. GARZA:  Yes, Your Honor.  Defendants rely heavily

5   on the sealed exhibits that were filed with the Court.

6   However, the caselaw is very clear in that area and --

7           THE COURT:  So we keep talking about sealed exhibits.

8   Let me just make sure I understand it.  Is your objection to

9   the fact that they were sealed or is your objection to me

10  considering whether or not they're sealed or not?

11          MS. GARZA:  The objection is considering them as part

12  of the 12(b)(6) motion.

13          THE COURT:  Okay.  So the fact that they're sealed is

14  not part of your complaint --

15          MS. GARZA:  No.  I'm just referring to them because

16  that's how they're characterized within the record.  Yes.

17          THE COURT:  All right.

18          MS. GARZA:  Yes.  It has nothing to do with -- we

19  agree that they should be sealed at this point.

20          THE COURT:  Okay.

21          MS. GARZA:  Your Honor, the caselaw is quite clear

22  that you -- when determining a 12(b)(6) motion, you're limited

23  to four corners of the pleading itself.  There is a very rare

24  exception when you can take into account other documents.

25  However, that exception does not exist in this case.  The

1    exception is you can consider documents outside of the

2    pleadings if they are specifically referred to in Plaintiff's

3    original complaint.  In this case, we are not.

4        Defendants are trying to make a stretch, saying

5    because we are alleging that the DA and the sheriff were acting

6    in coordination with regard to an investigation.  And over and

7    over again admittedly we say that there was an investigation.

8    Obviously the investigation is part of our claims.  But they're

9    making a leap to say that by us referencing an investigation,

10   that we are specifically referring to specific documents within

11   the investigation.  That's clearly, that's outside of the case

12   law.  Scanlan v. Texas A&M University specifically considered

13   even when a report was mentioned within the complaint.  Fifth

14   Circuit says no, you can't rely on bits and pieces of the

15   report just because the report in its entirety was referred to

16   in the complaint.

17       There is no doubt, and I think that Defendants would

18   have to concede that at no point in Plaintiff's amended

19   complaint do we refer to any investigative reports, any grand

20   jury subpoenas, anything that they have produced, and they are

21   asking the Court to consider.  I think everybody would agree,

22   we did not specifically request those -- refer to those

23   documents.

24       In fact, defendants concede that we were -- Plaintiff

25   Gonzalez was not even aware of the documents or the contents of

1    the documents until they were provided after they were filed

2    under seal.  So there's no way that Plaintiffs could have been

3    referring to documents that we didn't even know existed, Your

4    Honor.  So I don't believe they meet that burden.  And I think

5    the caselaw is quite clear that those documents don't come in

6    for your consideration under 12(b)(6) motion.

7            Normally when that is -- the documents have to be

8    central to the claim.  And what the courts usually allow

9    documents to come in is in the contract, sales agreement, a

10   lease.  Something where the document itself is central to the

11   claim that's being made.  That's not the case here, Your Honor.

12           And if the Court does consider those initial

13   documents, then this motion, pursuant to Rule 12, would be

14   considered a Rule 56 motion at that point.  Like the Court was

15   alluding to earlier, it would be a motion for summary judgment.

16   And that comes later in the proceeding, or at the very least

17   would give Plaintiff the opportunity to conduct discovery and

18   to offer evidence of our own.

19           In this particular case, they are cherry-picking

20   certain documents that they feel, according to Defendant's own

21   argument, rebut our allegations.  This is not an evidentiary

22   proceeding.  This is just a simple hurdle.  Did the Plaintiffs

23   plead with sufficient factual allegation as to whether there is

24   a claim that may go forward?  This is not the evidence part of

25   the proceeding, Your Honor.  And so this is -- it would be

1    inappropriate for the judge to consider such documents at this

2    time.  So we're asking that the documents be stricken, and the

3    Court not consider these seven exhibits with regard to the

4    12(b)(6) motion.

5            THE COURT:  All right.  Yes, sir.  Do you have

6    anything further?  I'm not suggesting you should.  I'm just

7    looking --

8            MR. NAVARRO:  Yeah, I do actually have some rebuttal,

9    Your Honor, if I may.

10           THE COURT:  Go ahead.  Sure.  I'll let both of you go

11   back and forth.

12           MR. NAVARRO:  So under federal practice when lawyers

13   plead a case, we are bound by Rule 11 in terms of having a

14   factual basis to make the kinds of pleadings that we make.

15   When we read these pleadings and there were allegations about

16   these conspiracy and knowing and having agreements between the

17   DA and the hospital and we were looking at that, it just struck

18   us that the pleadings reference information that was not

19   apparent to us.  We really wonder where that came from.

20           I talked to counsel.  The reason I wanted them to

21   have some documents in addition to (indiscernible), I said I

22   have some documents I would like to share with you.  I would

23   like to do it under a confidentiality order, which they agreed.

24   And I would like to do it under seal because I think that -- I

25   don't know where you're getting what you're getting.  What I

```
 1    have doesn't match this.  I would like for you to consider this
 2    and look at that and to see if it makes a difference.  Because
 3    we think that they go against the kinds of allegations that
 4    you're making --
 5              THE COURT:  But does that mean I can't consider them?
 6    So the point of a Rule 12 --
 7              MR. NAVARRO:  I think you can consider them, Your
 8    Honor.
 9              THE COURT:  Okay.  When in a 12(b)(6) motion can I
10    consider evidence that is not the complaint?
11              MR. NAVARRO:  When the complaint makes actual
12    allegations like this one does here at 4.3 saying that the
13    hospital shared protected medical information.  And then it
14    jumps to --
15              THE COURT:  I don't think that's right.  I think that
16    you think you have evidence that controverts that.  But I think
17    at the 12(b)(6) stage I have to take the pleadings that are in
18    the complaint as pleaded as true even if you're going that's
19    just flat wrong and I'm going to even get sanctions and money
20    for this.  But I don't think I can consider something that was
21    not pled or attached to or referenced in the complaint.
22              You are doing what I think is basically what you
23    would do after you've done some discovery, which is this is so
24    wrong, I get to attach this.  I don't think that that is a
25    12(b)(6) exception.  This is so wrong, I get to attach
```

1    extraneous evidence.  I don't think that exists.  And I'm not

2    doing that for any reason other than in if I do that, I'll just

3    get reversed and we'll be back here again if I consider things

4    that I'm not permitted under the rules to consider.

5         Now, I thought that the rules were fairly clear.  I

6    have to take the statements that the complaint as true and I

7    can't consider any other documents that weren't either exhibits

8    to the complaint or that weren't specifically referenced in the

9    complaint.  Do you think that there's a different rule?

10        MR. NAVARRO:  I'm saying that there's evidence that

11   the allegations made in the complaint have no --

12        THE COURT:  But that's a different -- but you

13   answered a different question.  I'm telling you that I think

14   that the rule at 12(b)(6) -- and I'm not saying that I have an

15   opinion one way or the other on the merits of the case.  I'm

16   talking about what am I allowed to look at at this stage.  I

17   think at a 12(b)(6) stage I can only look at what's in the

18   complaint, what's attached to the complaint, and what is

19   specifically referenced in the complaint.  Do you think there

20   is something that allows me to do more than that?  If so, I

21   need to see it.

22        MR. NAVARRO:  Well, I think we've referenced what we

23   think would apply, which is the limited caselaw that talks

24   about what can be put before the Court in a Rule 12 to rebut

25   some of the allegations made in the complaint.

```
 1              THE COURT:  And what is that other than the three
 2   things that I've just delineated?
 3              MR. NAVARRO:  Well, it would be the primary
 4   components of the investigative file that --
 5              THE COURT:  No, no, no.  I'm saying why do you -- so
 6   were the primary components of the investigative file attached
 7   to the complaint?
 8              MR. NAVARRO:  The complaint has only the first
 9   amended complaint and it has no attachments.
10              THE COURT:  Right.  Were they attached -- okay.  Were
11   they attached to any complaint?
12              MR. NAVARRO:  They were not attached.  There's no
13   exhibits attached to any of the live complaints.
14              THE COURT:  I knew the answer to that, but I just
15   want to make sure that I didn't miss it.
16              MR. NAVARRO:  I know.
17              THE COURT:  And so were they referenced in the
18   complaint?  Was the investigative -- the components, primary
19   components of the investigative file referenced in the
20   complaint?
21              MR. NAVARRO:  I mean, not directly, Your Honor.
22   They're not referenced in that the -- I mean, this was why they
23   were -- the content was shared with counsel.  Okay?
24              THE COURT:  Right.  And I think that's just kind of
25   pre-suit negotiations.  Or even post-suit.  We're going, hey,
```

1   this is going to end poorly for you, take a look at this.  I

2   used to do that when I was a defense lawyer.  But I will say as

3   a plaintiff's employment lawyer, I pled things -- you know, for

4   example, that my client was discriminated against because of

5   race.  I may not have had a smoking gun at that point, but you

6   take what is in the complaint as true.  The employer wouldn't

7   then be able to respond to that saying on no, it wasn't because

8   of that, it was because of all these other reasons in response

9   to a 12(b)(6).  You can do that in a motion for summary

10  judgment.

11          MR. NAVARRO:  Yeah.

12          THE COURT:  So that's why I'm trying to figure out if

13  I can only consider what's specifically said in the complaint,

14  what is attached to the complaint, and what is specifically

15  referenced, documents that are not in the complaint but that

16  are referenced by them -- like the investigative files.  That's

17  what I'm trying to find out.  Are those exhibits referenced in

18  the complaint?

19          MR. NAVARRO:  No, the complaint is very artful in

20  terms of avoiding exactly doing any of that.

21          THE COURT:  So how can I consider --

22          MR. NAVARRO:  Because -- because, you know, Your

23  Honor, but the Rule 11 standards for pleadings mean something.

24  Okay?

25          THE COURT:  Well, no.  So that's a different motion.

1   That doesn't mean that you get around 12(b)(6) by attaching

2   things that I can't consider at the 12(b)(6).  That may be a

3   motion for sanctions.  And I get those, right?  You've pled

4   things that were not in good faith or that you as attorney

5   didn't meet the Rule 11 standard.  That's a different motion.

6   That doesn't mean the sanction is I get to consider your

7   evidence, right?  Because again, that's just going to get me

8   reversed.  Right?

9          MR. NAVARRO:  I think you're correct about that.

10          THE COURT:  Okay.  So then my other question is, is

11   there a way for prosecutors to be sued that -- outside of

12   prosecutorial immunity?  The knowing standard, right?  All

13   right.  And so they say that they knew.  Now, you may be able

14   to disprove that, and you may be able to have -- you know, make

15   some hay with that and you may be able to file motions with

16   that.  But how can they -- how can you get that dismissed if I

17   have to take what's in the complaint as true and I can't

18   consider your exhibits because they weren't referenced without

19   them being able to do some discovery of it?

20          MR. NAVARRO:  Well, because of the prosecutorial

21   immunity.

22          THE COURT:  Okay.  But we just said that there is a

23   knowing exception to that, right?

24          MR. NAVARRO:  Well, there's a knowing exception.  But

25   if they are within the scope of the prosecutorial function, it

1    doesn't matter.  They can be malicious in their intent and

2    still be entitled to absolute immunity.

3              THE COURT:  Right.  So if they're in the grand jury

4    room presenting it.  But what about before that when they are

5    still in the investigative things?

6              MR. NAVARRO:  Well, I guess that's where we get into

7    that there is no investigative phase as pleaded --

8              THE COURT:  Well, they allege that there was.  I

9    mean, it's --

10             MR. NAVARRO:  Well, they say that they're going on

11   information and belief.

12             THE COURT:  But they pled it --

13             MR. NAVARRO:  They're spinning it.  They're -- you

14   know.

15             THE COURT:  And I get your frustration.  I can sense

16   that you feel like they're making stuff up in their complaint.

17   I get that.  But if the rules say I have to take their

18   complaint at face value, no matter how badly you disagree with

19   it, how can I ignore it?  And if they say that they knew --

20   like I said, there may be a different motion coming.  If they

21   pled that they knew and you put them on notice ahead of time,

22   that may be a whole different motion hearing.  But if I have to

23   take their complaint at face value and they say that they knew,

24   there is a knowing exception and/or at least the investigative

25   -- they were alleging --

```
 1              MR. NAVARRO:  That would have to be outside of the
 2    scope.
 3              THE COURT:  Right.
 4              MR. NAVARRO:  They would have participated in the
 5    investigative component of --
 6              THE COURT:  Which is what they -- they have alleged
 7    that.  How can I ignore that?
 8              MR. NAVARRO:  I mean, if the Court is -- it's a
 9    conclusory allegation.  But if the Court feels like, okay,
10    well, they say it's --
11              THE COURT:  This is your opportunity to disabuse me
12    if I'm wrong.  And like I said, I'm not trying to get snarky
13    with you now, either.  Just like I wasn't with her.
14              MR. NAVARRO:  Yeah.
15              THE COURT:  If the standard is if they put it in the
16    complaint I have to take it as true, then how can I get around
17    that?  Like I said, if you say, well, they knew it wasn't true,
18    they shouldn't have put it in the complaint, that's a different
19    motion.  You understand what I'm saying.
20              MR. NAVARRO:  Yes.
21              THE COURT:  But if I have to take it as true, that's
22    why I wanted to nail down what I can consider at the 12(b)(6)
23    early stage.
24              So if there are circumstances where a prosecutor
25    could be -- have a 1983 claim against them, just like the
```

1    sheriff could -- and we talked about the possible different

2    standards for that.  And I'm not saying how I would -- I really

3    don't know what the evidence is going to show.  But at this

4    phase, I just don't know how I can get around the fact that the

5    complaint says what it says, I have to take it as true, and I

6    can't consider your exhibits because they weren't referenced in

7    the complaint.

8                MR. NAVARRO:  Well, if the mere allegation of that

9    there was a conspiracy outside of the prosecutorial function, I

10   mean, is enough to defeat the Rule 12 on it.  But, I mean --

11               THE COURT:  Like I said, you said that you've had

12   communications with them that you think should have disabused

13   them of that, that's a different motion.  But we're not here on

14   that motion.  We're here on does the case get dismissed.

15               And so to me if the complaint would support an

16   allegation that there was conduct by the prosecutors and the

17   sheriff that would possibly fall outside of immunity, how can I

18   not let them do discovery on that, at least on the bifurcated

19   stage, the limited stage of addressing immunity first.

20               MR. NAVARRO:  Well, they would be limited if there is

21   -- what I'm seeing these days on that --

22               THE COURT:  Right, yes.

23               MR. NAVARRO:  -- the discovery is a very limited

24   discovery on the issue of the immunity.

25               THE COURT:  Correct.

1              MR. NAVARRO:  And it's not a full-bore discovery on

2    everything.

3              THE COURT:  Right.

4              MR. NAVARRO:  It's a limited discovery option.  And

5    that seems to be the answer in some of these cases where --

6              THE COURT:  So it seems to me sometimes -- for

7    example, the counties get sued.  They say you know what, we're

8    going to file a qualified immunity motion, but we don't want to

9    go through the hassle of having the two stages, so we'll just

10   do all at once.  Because we want to take two depositions, one

11   limited to immunity and one that's wide open.  Sometimes they

12   do that.  But that's -- the Defendant has the right to limit

13   discovery to just the immunity question.  And so we can do that

14   in the bifurcated way.  What I'm trying to do is, like I said,

15   figure out how if prosecutorial immunity -- if the complaint is

16   true, which I know you disagree with.  But if the complaint is

17   taken as true, how do you get around the fact that they should

18   at least get discovery on that?

19             MR. NAVARRO:  Well, what kind of a discovery are we

20   talking about?

21             THE COURT:  Limited to immunity.

22             MR. NAVARRO:  Are we talking about a written

23   discovery, deposition discovery against the individuals?  I

24   mean, what are we talking about?

25             THE COURT:  I mean, I don't have to micromanage the

 1   case.  We're professionals.  And so I try not to micromanage

 2   the case.  I really try to stay out of the cases.  It's not my

 3   case, it's y'all's case.  It's your party's case.  So it seems

 4   like to me you've said that you've done Section 1983 work.  And

 5   I assume you've done the bifurcated discovery, right?

 6            MR. NAVARRO:  Yes, we've done it.  I mean, inevitably

 7   you get into this agreement is about the edges of --

 8            THE COURT:  I'm calling the judge.  Yeah, sorry.  No,

 9   I get that.

10            MR. NAVARRO:  But yes, we've done that.  And most of

11   that stuff does get worked out.  And I think that what we would

12   want to know is what is the source of some of these

13   allegations.

14            THE COURT:  I understand.

15            MR. NAVARRO:  You know?  Like where are you getting

16   this.

17            THE COURT:  And I'm not commenting one way or the

18   other.  I'm not suggesting that you all have done anything

19   sanctionable.  I'm not suggesting that your clients have done

20   what they're accused of.  What I'm telling you is that at the

21   12(b)(6) stage my options are very limited.  And that is that I

22   have to take the complaint as true even though you don't like

23   what it says, and I can't consider stuff that is outside of the

24   complaint.  And so I just think that that's the standard.

25            So what I would -- I think it makes sense for me to

```
 1   deny the three motions to dismiss moot, the motion to strike
 2   the sealed exhibits as a result.  All of them are without
 3   prejudice.  Although I don't know that a motion to dismiss is
 4   going to be the proper vehicle.  And then for the parties to
 5   confer about a discovery schedule that is limited to just
 6   immunity and have that limited discovery and then brief that.
 7   And then we'll stay the case pending our resolution of that.
 8   That is my proposal.
 9           MR. NAVARRO:  And we'll confer about that.  If you're
10   going to deny their motions, then that triggers our answer date
11   I would imagine.
12           THE COURT:  I mean, nobody is going to default you.
13   I mean, you have appeared.
14           MR. NAVARRO:  Well, but we make admissions and
15   denials in that answer.  So if we're going to do that, we might
16   as well do that so that you have admissions and denials.  Okay?
17           THE COURT:  Sure.  Yeah.
18           MR. NAVARRO:  And that way I think it helps define
19   the scope of the issues.
20           THE COURT:  Right.  Then you want your affirmative
21   defenses and stuff like that.
22           MR. NAVARRO:  One thorning issue here is of course
23   how do you deal with attorney (indiscernible) presentation of
24   the grand jury.  You know?  I mean, I really am wrestling with
25   exactly -- I mean, I myself don't even get into the details --
```

```
1            THE COURT:  Let me just ask the plaintiffs how could

2   that even remotely be a part of a case?  That has got to be

3   within prosecutorial immunity, doesn't it?

4            MS. GARZA:  Yes, Your Honor.  We would agree --

5            THE COURT:  So you're not going to ask anything about

6   what happened in the grand jury room?

7            MS. GARZA:  Absolutely not.

8            THE COURT:  Because that's not going to happen.

9            MS. GARZA:  That's correct, Judge.

10           THE COURT:  Does that deal with your -- Ms. Barerra,

11  I don't want (indiscernible) deal with any concerns that you

12  all have that -- and I'm sorry, I shouldn't talk to Ms.

13  Barrera.  If you want to go visit with them, do you want to

14  find out so we can nail down anything that you think might

15  because a problematic --

16           MR. NAVARRO:  As long as no adverse inferences can be

17  drawn from that, that we're not going to allow discovery about

18  what happened in the grand jury room.

19           THE COURT:  Well, I'm not going to draw any.  And

20  we're not at the jury phase as well.  And I would definitely

21  tell the jury, just like happens in criminal cases, you can't

22  talk about what happens in grand jury.  It's one of the most

23  important secrecies that we have.

24           MR. NAVARRO:  Exactly.

25           MS. GARZA:  And we understand the distinction, Your
```

1    Honor, between the prosecutorial function and the investigative

2    function.

3            THE COURT:  Right.  So do you all need to figure out

4    when the prosecutorial function kicked in?  Is there I guess

5    caselaw on when that clock started?

6            MS. JOHNSON:  We submit it's at the point of the

7    grand jury presentation, Your Honor.

8            THE COURT:  All right.  So if you disagree with that

9    -- so that's on the record.  You need to figure out when you

10   think the prosecutorial function kicks in.  I don't know the

11   answer to that.

12           MR. NAVARRO:  I didn't catch --

13           MS. JOHNSON:  I'm sorry.  At the point of the

14   presentation to the grand jury.  So actions that -- with regard

15   to --

16           THE COURT:  So a lot of times there's --

17           MR. NAVARRO:  Okay, but there's allegations that says

18   there's pre-agreements about how to deal with references from

19   the hospital.

20           MS. JOHNSON:  Right.

21           MR. NAVARRO:  Okay.  So --

22           MS. JOHNSON:  Our position is that that is not a part

23   of the quasi-judicial function.

24           THE COURT:  All right.  Well, you all can hash that

25   out.  But that is something I think you need to hash out.  And

1   if you can't get that hashed out, then I can probably set that.

2   And that will make the discovery process a lot more efficient.

3          For example, I can tell you a grand jury indictment

4   happens at docket entry number 20 in a federal case.  And there

5   has been an information or a complaint, there's been all kinds

6   of stuff that has happened weeks and months before that sure

7   looks like a prosecutorial function.  Because they're in there

8   and they're charging.  And so I think you all need to put some

9   thought as to when the prosecutorial function would kick off.

10  And it's not the grand jury.  It's before that.

11         MS. GARZA:  Your Honor, and I think that it's also

12  not necessarily a timeline, but there may have been some

13  investigative functions that were occurring -- that's what the

14  evidence will bear out.  I mean, there may be some stuff that

15  was done in furtherance of obtaining the indictment and the

16  grand jury presentation.  But if there was some investigation

17  by the DA's office of witnesses or conversations, that -- you

18  know, so it's not really a need timeline, it's just the actions

19  itself.

20         THE COURT:  Like I said, the biggest fight that I see

21  on this kind of first phase is figuring out when and where the

22  prosecutorial function kicks in.  If it is during the

23  prosecutorial function, there's no discovery because it doesn't

24  make any sense.  And I think everybody would agree.

25         MS. GARZA:  Yes, Your Honor.

```
1              THE COURT:  The sheriff I think is fairly
2    straightforward.  I mean, you often run on the sheriff --
3              MR. NAVARRO:  The sheriff we can work out.
4              THE COURT:  Yeah.
5              MR. NAVARRO:  I think here the -- I mean from my --
6    the prosecutorial function is when the casefile is referred to
7    the DA for review.
8              THE COURT:  And so really the time that I see these
9    cases against prosecutors is when it's a malicious prosecution
10   case.  And, you know, those are fairly few and far between and
11   fairly specific.  And you've got some smoking guns out there.
12   It's not necessarily linked to they just misread a statute or -
13   - I mean, if you've got evidence that say they saw that and
14   they chose to ignore it, you know, maybe that's one thing.  But
15   if they should have seen it, you understand some of the
16   concerns, you're going to have to persuade me that that is
17   going to be enough.
18             MS. GARZA:  Understood.
19             MR. NAVARRO:  So if you want an agreed order from us
20   on the scope of --
21             THE COURT:  Right.  No, not on the --
22             MR. NAVARRO:  Scope of the discovery?
23             THE COURT:  No.  What I would like is an agreed
24   schedule.  So you all get together, figure out what you want as
25   far as -- you guys can send whatever discovery you want out,
```

1    whether it's written depositions or whatever.  I'm not going to

2    micromanage that.  You all figure that out.  The only thing I

3    want from you is a timeline.  Like, do you want -- whatever it

4    is.  Two months, three months for discovery.  And then motions

5    filed 30 days after that.  You know, I'm just making numbers

6    up.  So it's not uncommon to have three months of discovery,

7    limited discovery to immunity.  Then you've got the motion for

8    summary judgement.  They don't have any evidence of knowing or

9    -- outside of the prosecutorial whatever.  There's nothing

10   about the sheriff.  And they get to respond with whatever they

11   think they have.  I can resolve that.

12          If anything is still alive, then the case just goes

13   forward with wide-open discovery with the new scheduling order.

14          MR. NAVARRO:  With a new one, yeah.

15          THE COURT:  Right.  We do a completely new scheduling

16   order and then it's wide open with whatever is left.

17          MS. GARZA:  Your Honor, would you like us to kind of

18   revise the case management plan and work from there?  Because

19   we do have -- we kind of addressed this a little bit with Mr.

20   Navarro's associate.

21          THE COURT:  Well, I mean, so what you have here is

22   not particularly helpful.

23          MS. GARZA:  No.

24          THE COURT:  Because it says 90 days before trial.  I

25   haven't set trial.

1          MS. GARZA:  Right.  But we do have -- in the

2    management plan itself -- not the scheduling order, but in the

3    management plan itself, we do kind of have dates that run from

4    a court's ruling.  So we can probably work off of that.

5          MR. NAVARRO:  We'll file an amended one --

6          THE COURT:  You don't have to do that.  So here's the

7    way that these typically happen on the 1983 cases.  You submit

8    the I guess first phase scheduling order.  It doesn't have a

9    trial date.  All it's got is discovery and motions cutoff.

10   Okay?  Then after I rule on that, the last line is going to be

11   the parties should confer -- assuming that summary judgment

12   wasn't granted, the parties should confer and give me a full

13   scheduling order, or maybe we can have a status conference.

14   That whatever is left, we get a full-blown scheduling order

15   from it.

16          That's why I was saying the 90 days before trial

17   doesn't help very much, because that presupposes wide open

18   discovery.

19          MS. GARZA:  In all fairness, we really didn't know

20   what to do with that.

21          THE COURT:  That's okay.  That's all right.  I mean,

22   this was -- it's different.

23          The reason why I set these for these conferences is

24   sometimes the defense doesn't want to do the bifurcated

25   approach; they want to do just one global and let's get it over

 1    with.  We'll file two phases of motions along the way.  And if

 2    we need continuances because I haven't ruled because the two

 3    motions were filed too close together, then I just grant

 4    continuances.

 5            MR. NAVARRO:  I think -- I'm thinking through some of

 6    the logistical -- so obviously -- there's things pleaded in

 7    here about knowledge and all that.  I mean, I don't know who

 8    Ms. Gonzalez, the Plaintiff, is not going to know answers to

 9    those --

10            THE COURT:  We're not going to sort that out here.

11    Do your discovery.

12            MR. NAVARRO:  Yeah.  Yeah.  Okay.

13            THE COURT:  All right.  So like I said, everybody is

14    on notice of what's at issue.  You all try to work out when you

15    think the prosecutorial function kicked in.  If you think that

16    there's some overlap, you all try to have that conversation

17    ahead of time.  Really try to get it to before you're in a

18    deposition so that you don't waste your time and have to do

19    multiple depos or whatever.  Try to figure it out.  If you need

20    that resolved ahead of time, then you all can involve me, or I

21    can get a magistrate judge to handle it super-quick.  Okay?

22            MR. NAVARRO:  Very well, Judge.

23            THE COURT:  All right.  So for the record, Docket

24    entries 13, 16 and 23 are denied without prejudice, those are

25    the motions to dismiss, just based on the allegations that are

1    in the complaint, which I am required to take as true.  I

2    believe that it makes sense for us to go forward on the

3    bifurcated process to do immunity discovery only.  The parties

4    are going to confer and submit a proposed schedule for just the

5    immunity portion and then they're going to confer about the

6    scope of discovery.  Docket Entry 27, which is the motion to

7    strike sealed exhibits is denied as moot.  Okay?

8         MS. JOHNSON:  Thank you, Your Honor.

9         MR. NAVARRO:  Very good, Your Honor.

10        THE COURT:  All right, thank you.  Appreciate it.

11      (Hearing adjourned at 1:56 p.m.)

12                        * * * * *

13

14

15

16

17

18

19

20

21

22

23

24

25

1                         I N D E X

2

3                          RULINGS

4                                          Page        Line

5    Docket Entry 27 Motion to Strike

6    Sealed Exhibits, DENIED                50          7

7    Dockets 13, 16, and 23 Motions to

8    Dismiss, DENIED                        49          24

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, court-approved transcriber,

4    certify that the foregoing is a correct transcript from the

5    official electronic sound recording of the proceedings in the

6    above-entitled matter.

7

8

9

10   Sonya Ledanski Hyde

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  August 12, 2024