Page 1

```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE SOUTHERN DISTRICT OF TEXAS

 3                            MCALLEN DIVISION

 4   LIZELLE GONZALEZ              §      CASE NO. 7:24-cv-00132
                                   §      MCALLEN, TX
 5   VERSUS                        §      WEDNESDAY,
                                   §      JULY 24, 2024
 6   GOCHA ALLEN RAMIREZ, et al.   §      1:00 p.m. TO 1:56 p.m.

 7                            MOTION HEARING

 8              BEFORE THE HONORABLE DREW B. TIPTON
                   UNITED STATES MAGISTRATE JUDGE
 9
                              APPEARANCES:
10

11        FOR THE PARTIES:              SEE NEXT PAGE

12        ELECTRONIC RECORDING OFFICER: RICK RODRIGUEZ

13        COURT CLERK:                  UNKNOWN

14

15

16

17

18

19

20

21                    TRANSCRIPTION SERVICE BY:

22                    Veritext Legal Solutions
                      330 Old Country Road, Suite 300
23                        Mineola, NY 11501
                     Tel: 800-727-6396 ▼ www.veritext.com
24
          Proceedings recorded by electronic sound recording; transcript
25                produced by transcription service.
```

```
 1                              APPEARANCES:

 2    FOR THE PLAINTIFF:          GARZA MARTINEZ, PLLC
                                  Ida Cecelia Garza
 3                                202 East Sprague Street
                                  Edinburg, TX 78539
 4                                956-335-4900

 5                                ACLU
                                  Lauren A. Johnson
 6                                915 15th Street N.W.
                                  Washington, D.C. 20005
 7                                212-549-2500

 8                                ACLU OF TEXAS
                                  David Donatti
 9                                P.O. Box 8306
                                  Houston, TX 77288
10                                713-942-8146

11
      FOR THE DEFENDANTS:         DENTON NAVARRO RODRIGUEZ BERNAL
12                                BERNAL SANTEE & ZECH, PC
                                  Ricardo Navarro
13                                549 North Egret Bay Boulevard
                                  Suite 200
14                                League City, TX 77573
                                  956-341-6552
15

16

17

18

19

20

21

22

23

24

25
```

```
 1              MCALLEN, TEXAS; WEDNESDAY, JULY 24, 2024; 1:00 P.M.

 2              CLERK:  The Court calls Civil action 7:24-132,

 3   Gonzalez v. Ramirez, et al.  May I have appearances by counsel?

 4              MS. GARZA:  Good afternoon, Your Honor.  Cecilia

 5   Garza, Lauren Johnson, and David Donatti for the Plaintiff.

 6              THE COURT:  Okay.

 7              MR. NAVARRO:  Good afternoon, Your Honor.  Ricardo J.

 8   Navarro for the Starr County Defendants.  And at my table are

 9   my two clients, District Attorney Mr. Ramirez, and Alexandria

10   Barrera.

11              THE COURT:  All right.  Okay.  So, we are here for a

12   couple of things.  One is to figure out what we're doing for

13   scheduling on the case.  And I know that the parties had wanted

14   argument on the motions.  So, I guess it makes sense maybe to

15   start with the motions.  I've read them, obviously.  How do you

16   all want to proceed?  Kind of what process?

17              MR. NAVARRO:  Well, I think the first -- the

18   responsive motion that we had and of course our Rule 12 --

19              THE COURT:  Right.

20              MR. NAVARRO:  -- and assertion of immunity on behalf

21   of the individuals.

22              THE COURT:  So, are you wanting to do argument and

23   then just kind of go back and forth until we're done with that

24   or --

25              MS. GARZA:  I think that makes sense.  He can go
```

```
1    ahead and start with his motion and then we'll respond, Your
2    Honor.
3              THE COURT:  Okay.  That's what I expected.  Do you
4    agree?
5              MR. NAVARRO:  Yes.
6              THE COURT:  All right.  Go ahead.
7              MR. NAVARRO:  If I may, Your Honor.
8              THE COURT:  You bet.
9              MR. NAVARRO:  So, when we were first retained in the
10   case, I think that not all the Defendants had been served and
11   we had communicated with opposing counsel and agreed to some
12   waivers of service and agreed to the first amended complaint,
13   which is the live complaint in the case.  That's the complaint
14   against which we filed our Rule 12 motion.
15             So, at this point we represent the two individuals
16   who are from the prosecution office, the District Attorney's
17   Office, Mr. Ramirez, and Ms. Barrera.  That office, the case
18   arises out of Starr County, Your Honor, but I would ask the
19   Court to take judicial notice that this is a judicial district
20   that covers three counties.  So, Starr County is in it because
21   the incident involved, and it happened in Starr County.  But
22   the judicial district in which Mr. Ramirez and Ms. Barrera
23   worked is actually at the (indiscernible) County District --
24             THE COURT:  You're talking about the state judicial
25   district?
```

1          MR. NAVARRO:  Yes, it's the state judicial district.

2          THE COURT:  All right.  I thought you were talking

3     about the federal.  Okay.  Go ahead.

4          MR. NAVARRO:  So, if -- Starr County is in it just

5     because the incident happened in Starr County.  But they

6     actually exercised their judicial prosecutorial functions in

7     two other counties as well.

8          We filed our Rule 12 motion to dismiss and then we

9     also filed, and I confirmed with counsel, you know, we invoked

10    this doctrine, this limited doctrine that allows some limited

11    review or use of documents in the context of a Rule 12.  That

12    doctrine is in my view is a more recent vintage.  It wasn't

13    really in play when I first started doing 1983 work.  But is

14    now in play and can be used on limited circumstances to rebut

15    (indiscernible).

16         The point of the Rule 12 is that -- and the documents

17    that were submitted in support of it which we asked to be put

18    under seal and which we ultimately agreed to be put under seal,

19    was that the allegations contained in the complaint have a lot

20    of conclusory jury arguments about the case involving a

21    conspiracy between the sheriff's Office and the District

22    Attorney's Office.

23         And there is -- the bald facts of the case are that

24    the complaint, the criminal complaint that originally came --

25    and this is pleaded in the first amended complaint, I don't

```
1    think I'm saying anything that's not in there -- originated in

2    the hospital with Ms. Lizelle Gonzalez's own doctor.  It was

3    against the backdrop of the Texas Heartbeat Act, which was --

4    had been passed just the year before.  That's Senate Bill 8.

5    We think that the existing documentation reveals that Ms.

6    Lizelle's own doctor was quite confused about how that law

7    worked and appears to have been the reason why there was a

8    criminal case referral made to the local authorities.

9         The pleadings themselves say it was directed to the

10   cities, police, as well as to the sheriff's Office.  And the

11   sheriff's Office did ultimately investigate the matter.  That

12   case was -- later when the investigation was complete, the

13   court has in the sealed documents some of the more critical

14   investigative documents that were generated by the

15   investigators.

16        There was also a couple of grand jury subpoenas that

17   were issued in order to get the medical records from the

18   doctors and hospital.

19        MS. GARZA:  Your Honor, if I may just -- I apologize,

20   Mr. Navarro.  But he is referencing some information that is in

21   the sealed documents, and this is not a sealed or closed

22   courtroom.  So, we would just --

23        THE COURT:  What did he reference that was -- that

24   shouldn't -

25        MS. GARZA:  He referenced the police department; he
```

1    also referenced information that is only in the sealed

2    documents that's not in the pleadings and not in the public

3    record.  So, I would just to be careful about that, how we --

4                THE COURT:  So, the fact that the police department

5    was involved is not something that needs to be sealed.  Right?

6    Just information that will be in the reports.  I didn't hear

7    him talk about anything that was in the reports.

8                MS. GARZA:  That's correct.  But it's only found in

9    the sealed documents.

10               THE COURT:  What is?

11               MS. GARZA:  The fact that it was reported to the

12   police department.

13               THE COURT:  All right.  So, let's be careful about,

14   you know, what we think that is in the sealed documents.

15               MR. NAVARRO:  And I'm trying to -- and I'm going to

16   limit my references to the description of the sealed documents

17   that was part of the motion.

18               THE COURT:  Okay.  Okay.

19               MR. NAVARRO:  But we think that the Court ought to

20   take those into consideration in evaluating the Rule 12.  And

21   this is an area where I think that even the Plaintiff's own

22   pleadings reveal that this was, in terms of Mr. Ramirez and Mr.

23   Barrera, that they were reviewing this investigative file in

24   their prosecutorial capacity.  The file was actually presented

25   by Ms. Barrera to the grand jury and the grand jury issued an

1    indictment.  That's -- that did happen.

2          We can't really get into the specifics about what

3    happened there because of the grand jury secrecy laws and we're

4    somewhat constrained there.  But it clearly was done and within

5    their scope of their authority as judicial officers.

6          Mr. Ramirez was in fact himself not there at that

7    time.  Later on, after the indictment had been issued as

8    pleaded there, and the defense attorney was -- came to visit

9    him as pleaded, he -- it was brought to his attention that

10   there was an additional section to the Code, 1906, that created

11   an exemption to what otherwise appeared to qualify as a murder

12   charge.  And at that point Mr. Ramirez did dismiss the

13   indictment.

14         That's really the case.  At worst, at worst it's a

15   failure to understand or to a negligence understanding that

16   there was an additional exemption to that statute, the 1906.

17   It's a question of not looking far enough down the statute to

18   see that it was there and that it applied.  If one reads just

19   the beginning portions of it, the facts presented in the

20   investigation do look here to present a proper charge.  But it

21   would have fallen to the DA's office to at that point look at

22   that last section.  And that's what was overlooked.

23         This is at best or at worst a negligence case.  It's

24   not a Section 1983 civil rights case.  They're trying to make

25   it into something much more than what it is.  And we do think -

```
 1   - we think that as far as the immunity protections available to

 2   judicial officers and to likely district attorneys, that those

 3   apply with equal force to the elected district attorney as they

 4   do to his assistant.

 5            THE COURT:  So, are you doing qualified immunity,

 6   absolute immunity, or both?

 7            MR. NAVARRO:  Both.

 8            THE COURT:  Okay.

 9            MR. NAVARRO:  We think the absolute immunity is to

10   the extent that there's a judicial -- there's a prosecutorial

11   decision in the presentation of the case to the grand jury, and

12   then the qualified immunity on anything other than that would

13   fall outside of that, which is very narrow.  I think it's

14   primarily an absolute immunity prosecutorial defense.

15            THE COURT:  And I was calling it absolute.  That's

16   what I was referring to, prosecutorial.

17            MR. NAVARRO:  And so, it's not exactly the same as

18   the immunity of a judge, but it's pretty close.  Because to the

19   extent that the elected official, the district attorney, and

20   his staff are working in the courts, it's a judicial function

21   that they're exercising --

22            THE COURT:  What about malicious prosecution?

23            MR. NAVARRO:  I'm sorry?

24            THE COURT:  What about a malicious prosecution

25   charge?
```

1              MR. NAVARRO:  Well, the malicious prosecution charge,

2    I mean, you're going to have to show intent.  And I mean, I

3    think that at the pleading stage I will acknowledge to the

4    Court candidly that that's a more difficult area.  And that's

5    why we invoked the -- this doctrine as we're looking at some of

6    these investigations that were put under seal.  Because I think

7    the issue of the malicious prosecution, we've got to get the

8    intent.  I understand that's why it's pleaded the way it is.

9    But --

10             THE COURT:  So, how can you get into intent without

11   allowing depositions on what was going through people's minds

12   as opposed to just what the papers have to say?

13             MR. NAVARRO:  Well, I mean, that's where I think we

14   are going to need to decide, you know, how are we going to

15   resolve that.  Because it's not only -- the law is that on the

16   assertion of immunity, whether it's qualified immunity or

17   absolute immunity, the Defendant is also entitled to be free of

18   the burdens of discovery.

19             THE COURT:  Well, but there is limited discovery, for

20   example on qualified immunity.  You normally have a dual track.

21   And what I'm trying to do is put this more like an excessive

22   use of force from a police officer or somebody who is a prison

23   guard.  And so typically, what will happen is they get two

24   bites at the apple at summary judgment, not a motion to

25   dismiss.

```
 1              MR. NAVARRO:  Right.

 2              THE COURT:  And it's normally on 1983 grounds.  You

 3   do some limited discovery that is dedicated to what -- the

 4   qualified immunity exclusively.  And then once that's resolved,

 5   then we open it up to full discovery for the case to go

 6   forward.  Is that not the proper process for this?

 7              MR. NAVARRO:  That would be -- if the Court

 8   determines that the issue of intent is sufficiently central to

 9   the case.

10              THE COURT:  Well, I mean, the only reason I brought

11   it up was you brought it up.  You were saying that the only way

12   to get there is with intent.

13              MR. NAVARRO:  Well, on the malicious prosecution.

14              THE COURT:  Right.

15              MR. NAVARRO:  But they are still -- they are still in

16   their judicial function as far as presentation of the case.  So

17   --

18              THE COURT:  But even if they're in a judicial -- so -

19   - and I guess that was my original question.  Can a prosecutor

20   still be sued under 1983 if -- for malicious prosecution if

21   they're just doing their job, presenting stuff to a grand jury

22   under certain circumstances?

23              MR. NAVARRO:  And the case law says no.

24              THE COURT:  Okay.  Ever?

25              MR. NAVARRO:  The case law that we have says that if
```

1    they're acting within the scope of their prosecutorial

2    function, even improper or -- intent or malicious intent, does

3    not penetrate the absolute immunity bar.

4              THE COURT:  Okay.  All right.

5              MR. NAVARRO:  And we've cited those cases to the

6    Court.

7              THE COURT:  All right.  Okay.

8              MR. NAVARRO:  So, we would ask that as to the

9    prosecutors, that the Rule 12 be granted.  As to the sheriff

10   Fuentes, that is a qualified immunity case, as we're not

11   asserting absolute immunity as to Fuentes.

12             And with him, again, the pleadings are based on these

13   allegations that there was some coordination of effort or

14   conspiracy with the prosecutors, with the investigators.  And

15   the facts on that really are not going to bare out that there

16   was -- he is the elected sheriff.  This came over as a criminal

17   complaint from the hospital.  It was investigated as a criminal

18   complaint by the sheriff's investigators.  The sheriff himself

19   was not involved in those investigative efforts.

20             The pleadings are that he coordinated and conspired

21   with the prosecutors and that he did the same with his own

22   staff.  But there's no -- I don't know where they're getting

23   those facts.

24             THE COURT:  So again, at the 12(b) stage -- at the

25   Rule 12 stage, the only way that you can establish that is by

1    submitting evidence.

2         MR. NAVARRO:  Well, the sheriff -- I think with the

3    sheriff, it may take that.  It may take that.  Or we may need

4    more pleadings as to what exactly the sheriff -- the pleadings

5    are fairly conclusory as to the sheriff.

6         THE COURT:  But, I mean, they say what they say,

7    which is you're supposed to take everything that's in the

8    pleading as true.  So are you making a distinction between the

9    prosecutors and the sheriff as far as --

10        MR. NAVARRO:  I am.

11        THE COURT:  Okay, all right.

12        MR. NAVARRO:  I am.  I think the sheriff is in a

13   different place than the prosecutors.  Because the protections

14   for the prosecutors are functional in terms of them acting

15   within their prosecutorial office regardless of their intent,

16   whereas with the sheriff, he does not have that.  So, with the

17   sheriff, he's more on a qualified immunity.  And I think that's

18   where the more blended approach on qualified immunity could

19   come into play.

20        THE COURT:  Okay.

21        MR. NAVARRO:  So, the part where they deny the --

22   that's why we filed a separate Rule 12 as to the sheriff.  So,

23   if the Court were to say, well, as to the sheriff, I think they

24   get there, we would probably at that point answer for the

25   sheriff and then come back with an MSJ-based qualified immunity

1    to flesh out that case.  But the sheriff's case and the

2    prosecutors' cases are two different sets of facts.

3              THE COURT:  Okay.  All right.  Okay.  Hear from the

4    Plaintiffs?

5              MS. GARZA:  Your Honor, with your permission, both

6    Ms. Johnson and I will be addressing separate cases in with the

7    Court.

8              THE COURT:  Fine.  Sure.

9              MS. JOHNSON:  Good afternoon, Your Honor.  Lauren

10   Johnson and I will begin.  May it please the Court.

11             Your Honor, in our justice system it is a violation

12   of the highest order when those we entrust to uphold the law

13   deliberately charge a person when they know that person did not

14   commit a crime.

15             Lizelle Gonzalez' case is even more egregious than

16   that.  It's not a case where law enforcement simply ignored

17   evidence that undermined probable cause, nor is it a case of

18   mere negligence as alleged by defense counsel.  This is a case

19   in which Ms. Gonzalez has alleged that the sheriff and the

20   district attorneys understood that Lizelle Gonzalez' conduct

21   was not a crime under state law.

22             THE COURT:  So, what evidence do you have of that?

23   Because that's really what we get down to is that you're going

24   to have to prove intent.  So, how are you going to -- if they

25   say we didn't know, we just missed that, how are you going to

1    disprove that?

2          MS. JOHNSON:  Well, Your Honor, I think that there's

3    a very basic expectation that law enforcement who are upholding

4    and enforcing laws have an obligation to know what those laws

5    are and what the limitations of them are.  And here --

6          THE COURT:  Well, I think people get charged all the

7    time and they go oh, well, I thought that fit that statute, or

8    I didn't think that exception applies.  I think people get

9    charged that way all the time.  Maybe if they -- like I said,

10   this is a really new law.  If there is something that's further

11   down in the statute they didn't read, this hasn't been applied

12   very much, this is new, how is that not just them -- for

13   example, like I said, it may have been negligence for them not

14   to see it.  But aren't you going to have to prove, well, we saw

15   it and we chose to ignore it, and go after her anyway?

16         MS. JOHNSON:  Your Honor, the statute is so clear

17   that that is the only reasonable inference in this case.  Here

18   it's not an example of a newly passed law.  And we point in our

19   pleadings to how not only is the way the statute is written

20   very clear that this statute, Section 19 does not apply --

21   that's the entire homicide portion of the statute -- does not

22   apply to the mother of the unborn child with regard to the

23   death of that child.  There are also cases where the Courts

24   have looked at this question and found that the pregnant

25   person, the pregnant woman could not be prosecuted, that there

1    was no crime where the allegation was based on the demise of

2    the child at the expense or the cost of the actions of the

3    mother.

4              So, this is something that is not new, has been very

5    clear.  And even where defense counsel points --

6              THE COURT:  But the statute is new.  You would agree

7    the statute is new.

8              MS. GARZA:  No, Your Honor.

9              MS. JOHNSON:  No, Your Honor.

10             THE COURT:  Well, I'm talking about this particular

11   part.  He was just talking about something just got passed.

12             MS. JOHNSON:  No, Your Honor.  And I can actually

13   speak to that specifically.

14             THE COURT:  Okay.

15             MS. JOHNSON:  First of all, homicide statute itself

16   and that exemption is not new.

17             THE COURT:  I understand that.

18             MS. JOHNSON:  But with regard to the Heartbeat Act,

19   Your Honor --

20             THE COURT:  Right.

21             MS. JOHNSON:  -- I think that case -- that example is

22   even more -- even more evidence of how the government knew that

23   there was no criminal enforcement power.

24             First of all, SB-8, that only applied to civil

25   enforcement.  And the attorney general was very clear and the

1   language of the statute itself is very clear that it does not

2   grant any authority by the government to criminally prosecute.

3   And it also explicitly says that the civil statute, the civil

4   penalties cannot even be enforced against the pregnant woman.

5           And so, in all instances Texas law has been and has

6   continued to be clear the pregnant woman cannot be prosecuted

7   in the way that these Defendants chose to do so.

8           And I would also note that the Court can consider

9   whether or not this was a snap decision, a snap judgment was

10  made very quickly without the opportunity to really deliberate

11  and better inform the course of action.  But here the Court has

12  an entirely different picture.  It has an investigation that

13  took place over the course of not weeks, but months, and that

14  after there was indictment, after there was even an

15  investigation, there was an indictment, and then later an

16  arrest.

17          This was a deliberative process at which time those

18  actors had every opportunity to correct their behavior.  But

19  rather the fact that this time passed and that they continued

20  with that goal, suggests that they were aware of it and were

21  trying to build a case in spite of it.  So that's --

22          THE COURT:  Was there ever a time when the defense

23  attorneys or the attorneys representing your client informed

24  the prosecutors, hey, you can't even criminally charge them,

25  and they chose to ignore that?

```
 1              MS. JOHNSON:  That is not something that we have
 2    pled, Your Honor, as far as --
 3              THE COURT:  Well, I don't care if you pled, I'm
 4    asking if that happened.
 5              MS. GARZA:  Actually, the information that we have,
 6    Your Honor, is that she did not have a criminal defense
 7    attorney until after she was arrested and shortly before
 8    dismissal, within a day.
 9              THE COURT:  Okay.  So, when that happened, when was
10    the first time that you think that the prosecutors at least
11    were put on notice that they couldn't go after her criminally?
12              MS. JOHNSON:  At the beginning of the case when they
13    decided to investigate her.
14              THE COURT:  And how did they know that?
15              MS. JOHNSON:  Because they decided at the outset to
16    call this a criminal homicide investigation.
17              THE COURT:  No, I'm saying when did they find out --
18    because at some point the charges were dismissed, right?
19              MS. JOHNSON:  Yes, Your Honor.
20              THE COURT:  At some point they figured out, oh, we
21    can't proceed criminally.  At what point -- as opposed to
22    should have figured out, what point do we know that they were
23    informed?  For example, that's why I was asking about the
24    defense attorneys.  Did the defense attorneys or did somebody
25    call them up and go you can't go after them criminally under
```

1    this statute, as opposed to you should have figured it out on

2    your own.  That's different.

3                MS. GARZA:  Your Honor, I -- that's -- at this point

4    without evidence, it's hard to say what --

5                THE COURT:  But that's your client.

6                MS. GARZA:  Excuse me?

7                THE COURT:  That's your client.  Your client would

8    have made that phone call.  Your client or their -- her

9    representatives or some attorney --

10               MS. GARZA:  Right.  And we don't know what was

11   discussed between our client's defense attorney and the

12   district attorney.  We do know that it's -- they -- at all

13   times they knew what the statute said.

14               THE COURT:  How do you know that?  I mean, what if

15   they just blew it?  What if they just -- you know, I blow it

16   every now and then.  I go, oh, you know, my staff says, Judge,

17   you completely forgot to do this.  Happened today.  I had to

18   call some Defendants back in because I just blew it.  I forgot

19   something.  Brought them back in, and I read the client their

20   rights.  I didn't do that intentionally.  I just missed it.

21               MS. GARZA:  I think that we can infer, Judge, on the

22   fact that the investigation did take four months.  This is

23   Starr County, a small county where there are not a lot of

24   murder indictments that come out of Starr County.  So, this was

25   a case that was investigated and looked at.

1          So, you're right, I can't say right now what they did
2     or did not know or when they learned it.  But it's -- you can
3     infer that based on this type of murder indictment, the fact
4     that there are so few murder indictments in Starr County, that
5     this is knowledge that they had.
6          THE COURT:  Do you agree that knowledge is required
7     as opposed to reckless disregard?
8          MS. JOHNSON:  No, Your Honor, we disagree.  It can be
9     that it's wanton disregard that is the basis.  But here --
10         THE COURT:  What's the difference between reckless
11    disregard and wanton disregard?  I don't know that I've heard
12    that.
13         MS. JOHNSON:  I maybe --
14         THE COURT:  Okay.  Well, I wasn't trying to get
15    snarky.  I've not heard wanton disregard.  Okay.
16         MS. JOHNSON:  Your Honor, I guess what I want to
17    bring the Court back to or highlight is I think at this point
18    the Court is asking questions that certainly could inform, but
19    that Ms. Gonzalez has not yet had the benefit of discovery to
20    fully probe.  And at this point --
21         THE COURT:  But you pled it.  You pled that they
22    knew.
23         MS. JOHNSON:  Yes, Your Honor.  And at this point,
24    intent can be pled generally based on reasonable inferences,
25    which are the nature of the investigation, the amount of time

1   that it took, and the level of coordination that it required

2   over the course of four months as opposed to a snap judgment.

3            Also, given that this is the kind of case that was a

4   -- it was a big deal to bring this kind of case.  And

5   certainly, the Court can also take into consideration that

6   there's an expectation that when DAs are working together, when

7   the district attorney is supervising his ADAs, that he would

8   know the law and its limitations and that that would be --

9            THE COURT:  But again -- so, I'm a federal judge.  I

10   don't know all federal law.  I have to prepare for stuff.  I

11   had to prepare for this hearing.  I don't just -- you can't

12   just presume that I know all federal law.  So, I don't think

13   that you can assume that a DA knows all laws off the top of

14   their heads.

15            MS. GARZA:  Your Honor, it is also in our petition

16   that DA Ramirez was sanctioned by the Texas Bar for knowingly

17   going forward with a criminal prosecution that he should not

18   have gone forward with.  So that is pled in our petition, that

19   there was -- there is at least some finding somewhere, that

20   there is evidence out there that there was knowing -- that this

21   was a knowing act.

22            THE COURT:  What do you think about the difference

23   between the prosecutors and the sheriff, and the qualified

24   immunity versus the prosecutorial immunity?

25            MS. JOHNSON:  Well, Your Honor, we agree with the

1   defense counsel that there is a different consideration with

2   regard to prosecutors when they're acting within their quasi-

3   judicial function and that the cases have lined out that

4   distinction.

5          However, what -- where we disagree is that the

6   actions of the DAs in this case fell within that function.  And

7   so, we've pled --

8          THE COURT:  Fell within the function?

9          MS. JOHNSON:  Yes, Your Honor.

10          THE COURT:  Within the function of their

11   prosecutorial --

12          MS. JOHNSON:  We have argued -- we've pled that they

13   were outside the scope of their prosecutorial function.

14          THE COURT:  You said within.

15          MS. JOHNSON:  I apologize, Your Honor.

16          THE COURT:  Okay, all right.

17          MS. JOHNSON:  And so, we are in agreement that there

18   are certain kinds of actions that would be entitled to absolute

19   immunity.  But that's not the case here --

20          THE COURT:  What are the allegations that are outside

21   the judicial function or the prosecutorial function?

22          MS. JOHNSON:  The allegations are that in advance,

23   before there was an investigation of prosecution of Lizelle

24   Gonzalez specifically, that there was an agreement between the

25   hospital and the district attorney's office, and/or the

1   sheriff's office to gather information about these types of

2   cases, these types of cases being women who were suspected have

3   had abortions, for the purpose of criminal prosecution despite

4   Texas Penal Code 19.06 clearly prohibiting that kind of

5   prosecution against that kind of individual.

6          THE COURT:  So, how do you know that?  And who is it

7   with, the sheriff or the prosecutors?

8          MS. JOHNSON:  Your Honor, at this point we have pled,

9   based on information and belief that there was an agreement

10   that may have included both.  We certainly have with regard to

11   Lizelle -- Lizelle specifically pled that there was

12   collaboration about her specific case based on information that

13   was provided by the hospital.

14          THE COURT:  But, I mean, you can say anything on

15   information and belief.  So, I am trying to figure out -- at

16   some point your expectation is that there's evidence showing

17   that, for example the DA or the DA's office knew, or they had

18   this agreement.

19          MS. JOHNSON:  (Indiscernible) --

20          THE COURT:  But is that your suspicion or is -- what

21   evidence do you expect is going to show?

22          MS. JOHNSON:  Admittedly, Your Honor, we have not had

23   the opportunity to have fulsome discovery or any discovery at

24   this point.  But we do expect that there will bear out that

25   there were additional investigations with regard to other women

```
 1    besides Lizelle Gonzalez for the purpose of criminal

 2    prosecution.

 3              THE COURT:  Okay.  All right, go ahead.  I'm sorry.

 4              MS. JOHNSON:  If the Court would just bear with me

 5    briefly.

 6              THE COURT:  Yeah.  I threw you all over the place,

 7    didn't I?  Sorry.

 8              MS. JOHNSON:  No, that's fine.  That's fine.  I want

 9    to address Your Honor's questions.

10              Your Honor, so as I said, this is a case where we

11    don't agree that this is a case of negligence.  We do believe

12    that the case will ultimately bear out that there was an

13    understanding of the limitations of the law and that the

14    district attorneys and sheriffs acted in spite of it.

15              THE COURT:  So, I'm going to ask you again.  Because

16    now that you set an understanding, that kind of gets into me

17    back into the mind that -- are you going to have to prove that

18    they knowingly did this, or do you think reckless disregard?

19    Because that's not knowing.  So those are different standards.

20    What is the standard?

21              MS. JOHNSON:  Your Honor, and I will look to the case

22    exactly.  But I believe that the law draws with regard to

23    absolute immunity doctrine that it covers -- it doesn't cover

24    intentional -- basically knowing violations --

25              THE COURT:  Right.
```

```
 1          MS. JOHNSON:  -- but also violations that are so kind
 2   of glaringly obvious or reckless.  And so, I don't want to
 3   misstate exactly the language.  I can find that to give Your
 4   Honor.
 5          THE COURT:  So, you think it could be something other
 6   than knowing?
 7          MS. JOHNSON:  Yes.
 8          THE COURT:  In other words, so if they deny it and
 9   you say, well, it was so obvious you should have known?
10          MS. JOHNSON:  Yes, Your Honor.  And also, Your Honor,
11   I think that what's most important about the discovery process
12   is it will allow more information to inform the Court to make
13   that assessment.  But here, as the Court is taking the
14   allegations as pled as true, we have shown that there was
15   sufficient understanding at that -- of the law, and that Ms.
16   Gonzalez is -- it not being applicable to her conduct.
17          THE COURT:  Okay.
18          MS. JOHNSON:  Your Honor, I would just note that
19   obviously Ms. Gonzalez' prosecution and arrest had a hugely
20   devastating impact in addition to her being publicly branded as
21   a murderer.  Her case received national attention.  And her
22   life and the life of her family has been severely impacted.
23          And so, Your Honor, we submit that the motions that
24   the Court has before it from the Defendants are attempts to not
25   be held to account.  We ask the Court to deny the motions to
```

 1   dismiss as not founded and at odds with existing precedent, and

 2   also as a request to extend absolute immunity and qualified

 3   immunity doctrine to extraordinary lengths to prohibit conduct.

 4   First --

 5         THE COURT:  Well, qualified immunity is easy.  We do

 6   discovery on qualified immunity.  What I'm trying to figure out

 7   is what to do with the prosecutorial immunity.

 8         MS. JOHNSON:  Well, with regard to the prosecutorial

 9   immunity, Your Honor, there are a number of cases that talk

10   about what's outside the scope.  And one of the lines of cases

11   talks about investigatory functions, or the DA's involvement in

12   investigatory functions.  And what Ms. Gonzalez has pled is

13   that the DAs were involved in an investigatory plan prior to

14   Lizelle's specific case, and that in her specific case they

15   were providing legal advice and directly involved in that

16   process over the course of the four months for when Ms.

17   Gonzalez first received care at the hospital to when she was

18   ultimately indicted on March 30th.  And so that -- I'm sorry --

19   and arrested after that on April 4th.

20         And so, as the Court is aware, that kind of conduct

21   where the DAs are acting more like the detectives or police

22   officers than as advocates is not protected by absolute

23   immunity.

24         Similarly, Buckley v. Fitzsimmons and its progeny

25   talk about how when the DA is acting before probable cause or

1    without the existence of probable cause.  That kind of action

2    is not given the same kind of protections as absolute immunity.

3    And in part it's because we don't have the same safeguards that

4    a person has in the criminal system where the Court can look at

5    the courtroom conduct of the DA, for example, or the

6    presentation of evidence in the grand jury and make a decision

7    as to whether or not that conduct was violative.

8         And so, where we had investigation action happening

9    beforehand and the process of how to build a case for the grand

10   jury happening with the collaboration of the DA and the

11   sheriff, that is outside of the quasi-judicial function, and

12   it's not entitled to absolute immunity.

13        THE COURT:  Okay.

14        MS. JOHNSON:  Additionally, Your Honor, I would just

15   also raise -- Ms. Garza will speak specifically to the exhibits

16   that the Court has raised.  But I would ask the Court to really

17   think about the implication that the Defendants are drawing

18   here.  They're asking the Court to hold against Ms. Gonzalez

19   that she hasn't had discovery, that she has not -- that she

20   does not have access to information that is uniquely in the

21   possession of the Defendants and subject to heightened secrecy

22   because of the investigative and grand jury process.  And at

23   the same time, they're submitting these documents that they

24   claim support their arguments or their allegations without

25   giving her the opportunity to probe it.  And I -- and Ms. Garza

 1   will speak more specifically to why the Court should not do

 2   that without first giving her the opportunity to inform the

 3   Court with discovery.

 4          And finally, we'll speak -- I'll speak to the county

 5   liability claim, Your Honor.  As the Court is aware, Ms.

 6   Gonzalez has also brought a claim against the county because

 7   the DA and the sheriff's office acted as final policymakers

 8   together and acted in violation of Texas law to further an

 9   unconstitutional policy of investigating women who had

10   abortions with the goal of prosecuting them criminally.

11          So, we will ask Your Honor to reject these attempts

12   by the Defendants to avoid liability and we ask that Your Honor

13   give Ms. Gonzalez' claims the opportunity to have informed and

14   reasoned consideration.  And Ms. Garza will speak first with

15   regard to the facts.

16          THE COURT:  Okay.

17          MS. GARZA:  Yes, Your Honor.  Defendants rely heavily

18   on sealed exhibits that were filed with the Court.  However,

19   the case law is very clear in that area and --

20          THE COURT:  So, we keep talking about sealed

21   exhibits.  Let me just make sure I understand it.  Is your

22   objection to the fact that they were sealed or is your

23   objection to me considering whether or not they're sealed or

24   not?

25          MS. GARZA:  The objection is considering them as part

 1   of the 12(b)(6) motion.

 2            THE COURT:  Okay.  So, the fact that they're sealed

 3   is not part of your complaint --

 4            MS. GARZA:  No.  I'm just referring to them because

 5   that's how they're characterized within the record.  Yes.

 6            THE COURT:  All right.

 7            MS. GARZA:  Yes.  It has nothing to do with -- we

 8   agree that they should be sealed at this point.

 9            THE COURT:  Okay.

10            MS. GARZA:  Your Honor, the case law is quite clear

11   that you -- when determining a 12(b)(6) motion, you're limited

12   to four corners of the pleading itself.  There is a very rare

13   exception when you can take into account other documents.

14   However, that exception does not exist in this case.  The

15   exception is you can consider documents outside of the

16   pleadings if they are specifically referred to in Plaintiff's

17   original complaint.  In this case, we are not.

18            Defendants are trying to make a stretch, saying

19   because we are alleging that the DA and the sheriff were acting

20   in coordination with regard to an investigation.  And over and

21   over again admittedly we say that there was an investigation.

22   Obviously, the investigation is part of our claims.  But

23   they're making a leap to say that by us referencing an

24   investigation, that we are specifically referring to specific

25   documents within the investigation.  That's clearly, that's

1    outside of the case law.  Scanlan v. Texas A&M University

2    specifically considered even when a report was mentioned within

3    the complaint, the Fifth Circuit says no, you can't rely on

4    bits and pieces of the report just because the report in its

5    entirety was referred to in the complaint.

6         They -- there is no doubt, and I think that

7    Defendants would have to concede that at no point in

8    Plaintiff's amended complaint do we refer to any investigative

9    reports, any grand jury subpoenas, anything that they have

10   produced, and they are asking the Court to consider.  I think

11   everybody would agree, we did not specifically request those --

12   refer to those documents.

13        In fact, Defendants concede that we were -- Plaintiff

14   Gonzalez was not even aware of the documents or the contents of

15   the documents until they were provided after they were filed

16   under seal.  So, there's no way that Plaintiffs could have been

17   referring to documents that we didn't even know existed, Your

18   Honor.  So, I don't believe they meet that burden.  And I think

19   the case law is quite clear that those documents don't come in

20   for your consideration under 12(b)(6) motion.

21        Normally, when that is -- the documents have to be

22   central to the claim.  And what the courts usually allow

23   documents to come in is in the contract, sales agreement, a

24   lease, something where the document itself is central to the

25   claim that's being made.  That's not the case here, Your Honor.

1          And if the Court does consider those initial

2    documents, then this motion, pursuant to Rule 12, would be

3    considered a Rule 56 motion at that point.  Like the Court was

4    alluding to earlier, it would be a motion for summary judgment.

5    And that comes later in the proceeding, or at the very least

6    would give Plaintiff the opportunity to conduct discovery and

7    to offer evidence of our own.

8          In this particular case, they are cherry-picking

9    certain documents that they feel, according to Defendants' own

10   argument, rebut our allegations.  This is not an evidentiary

11   proceeding.  This is just a simple hurdle.  Did the Plaintiffs

12   plead with sufficient factual allegation as to whether there is

13   a claim that may go forward?  This is not the evidence part of

14   the proceeding, Your Honor.  And so, this is -- it would be

15   inappropriate for the judge to consider such documents at this

16   time.  So, we're asking that the documents be stricken, and the

17   Court not consider these seven exhibits with regard to the

18   12(b)(6) motion.

19         THE COURT:  All right.  Yes, sir.  Do you have

20   anything further?  I'm not suggesting you should.  I'm just

21   looking --

22         MR. NAVARRO:  Yeah, I do actually have some rebuttal,

23   Your Honor, if I may.

24         THE COURT:  Go ahead.  Sure.  I'll let both of you go

25   back and forth.

1          MR. NAVARRO:  So, under federal practice when lawyers

2     plead a case, we are bound by Rule 11 in terms of having a

3     factual basis to make the kinds of pleadings that we make.

4     When we read these pleadings and there were allegations about

5     these conspiracy and knowing and having agreements between the

6     DA and the hospital, and we were looking at that, it just

7     struck us that the pleadings, you know, reference information

8     that was not apparent to us.  We really wondered where that

9     came from.

10         I talked to counsel.  The reason I wanted them to

11    have some documents in addition to the (indiscernible) this, I

12    said I have some documents I would like to share with you.  I

13    would like to do it under a confidentiality order, which they

14    agreed.  And I would like to do it under seal because I think

15    that -- I don't know where you're getting what you're getting.

16    What I have doesn't match this.  I would like for you to

17    consider this and look at that and to see if it makes a

18    difference.  Because we think that they go against the kinds of

19    allegations that you're making --

20         THE COURT:  But does that mean I can't consider them?

21    So, the point of a Rule 12 --

22         MR. NAVARRO:  I think you can consider them, Your

23    Honor.

24         THE COURT:  Okay.  When in a 12(b)(6) motion can I

25    consider evidence that is not the complaint?

1          MR. NAVARRO:  When the complaint makes actual

2     allegations like this one does here at 4.3, saying that the

3     hospital shared protected medical information.  And then it

4     jumps to --

5          THE COURT:  I don't think that's right.  I think that

6     you think you have evidence that controverts that.  But I think

7     at the 12(b)(6) stage I have to take the pleadings that are in

8     the complaint as pleaded as true even if you're going that's

9     just flat wrong and I'm going to even get sanctions and money

10    for this.  But I don't think I can consider something that was

11    not pled or attached to or referenced in the complaint.

12         You are doing what I think is basically what you

13    would do after you've done some discovery, which is this is so

14    wrong, I get to attach this.  I don't think that that is a

15    12(b)(6) exception.  The I don't -- this is so wrong; I get to

16    attach extraneous evidence; I don't think that exists.  And I'm

17    not doing that for any reason other than if I do that, I'll

18    just get reversed and we'll be back here again if I consider

19    things that I'm not permitted under the rules to consider.

20         Now, I thought that the rules were fairly clear.  I

21    have to take the statements of the complaint as true, and I

22    can't consider any other documents that weren't either exhibits

23    to the complaint or that weren't specifically referenced in the

24    complaint.  Do you think that there's a different rule?

25         MR. NAVARRO:  I'm saying that there's evidence that

1    the allegations made in the complaint have no --

2         THE COURT:  But that's a different -- but you

3    answered a different question.  I'm telling you that I think

4    that the rule at 12(b)(6) -- and I'm not saying that I have an

5    opinion one way or the other on the merits of the case.  I'm

6    talking about what am I allowed to look at at this stage.  I

7    think at a 12(b)(6) stage I can only look at what's in the

8    complaint, what's attached to the complaint, and what is

9    specifically referenced in the complaint.  Do you think there

10   is something that allows me to do more than that?  If so, I

11   need to see it.

12        MR. NAVARRO:  Well, I think we've referenced what we

13   think would apply, which is the limited case law that talks

14   about what can be put before the Court in a Rule 12 to rebut

15   some of the allegations made in the complaint.

16        THE COURT:  And what is that other than the three

17   things that I've just delineated?

18        MR. NAVARRO:  Well, it would be the primary

19   components of the investigative file that --

20        THE COURT:  No, no, no.  I'm saying why do you -- so

21   were the primary components of the investigative file attached

22   to the complaint?

23        MR. NAVARRO:  The complaint has only the first

24   amended complaint and it has no attachments.

25        THE COURT:  Right.  Were they attached -- okay.  Were

1  they attached to any complaint?

2          MR. NAVARRO:  They were not attached.  There's no

3  exhibits attached to any of the live complaints.

4          THE COURT:  Right.  I knew the answer to that, but I

5  just want to make sure that I didn't miss it.

6          MR. NAVARRO:  I know.

7          THE COURT:  And so, were they referenced in the

8  complaint?

9          MR. NAVARRO:  They --

10         THE COURT:  Was the investigative -- the components,

11  primary components of the investigative file referenced in the

12  complaint?

13         MR. NAVARRO:  I mean, not directly, Your Honor.

14  They're not referenced in that the -- I mean, this was why they

15  were shared -- the content was shared with counsel.  Okay?

16         THE COURT:  Right.  And I think that's just kind of

17  pre-suit negotiations, or even post-suit.  We're going, hey,

18  this is going to end poorly for you, take a look at this.  I

19  used to do that when I was a defense lawyer.  But I will say as

20  a plaintiff's employment lawyer, I pled things -- you know, for

21  example, that my client was discriminated against because of

22  race.  I may not have had a smoking gun at that point, but you

23  know, you take what is in the complaint as true.  The employer

24  wouldn't then be able to respond to that saying on no, it

25  wasn't because of that, it was because of all these other

1    reasons in response to a 12(b)(6).  You can do that in a motion

2    for summary judgment.

3            MR. NAVARRO:  Yeah.

4            THE COURT:  So that's why I'm trying to figure out if

5    I can only consider what's specifically said in the complaint,

6    what is attached to the complaint, and what is specifically

7    referenced, documents that are not in the complaint but that

8    are referenced by them, like the investigative files.  That's

9    what I'm trying to find out.  Are those exhibits referenced in

10   the complaint?

11           MR. NAVARRO:  No, the complaint is very artful in

12   terms of avoiding exactly doing any of that.

13           THE COURT:  So, how can I consider --

14           MR. NAVARRO:  So, because, you know, Your Honor, but

15   the Rule 11 standards for pleadings mean something.  Okay?  I

16   mean --

17           THE COURT:  Well, no.  So that's a different motion.

18   That doesn't mean that you get around 12(b)(6) by attaching

19   things that I can't consider at the 12(b)(6).  That may be a

20   motion for sanctions.  And I get those, right?  You've pled

21   things that were not in good faith or that you as attorney

22   didn't meet the Rule 11 standard.  That's a different motion.

23   That doesn't mean the sanction is I get to consider your

24   evidence, right?  Because again, that's just going to get me

25   reversed.  Right?

```
 1              MR. NAVARRO:  I think you're correct about that.

 2              THE COURT:  Okay.  So, then my other question is, is

 3    there a way for prosecutors to be sued that -- outside of

 4    prosecutorial immunity?  The knowing standard, right?

 5              MR. NAVARRO:  Yeah --

 6              THE COURT:  All right.  And so, they say that they

 7    knew.  Now, you may be able to disprove that, and you may be

 8    able to have -- you know, make some hay with that, and you may

 9    be able to file motions with that.  But how can they -- how can

10    you get that dismissed if I have to take what's in the

11    complaint as true and I can't consider your exhibits because

12    they weren't referenced without them being able to do some

13    discovery on it?

14              MR. NAVARRO:  Well, because of the prosecutorial

15    immunity.

16              THE COURT:  Okay.  But we just said that there is a

17    knowing exception to that, right.

18              MR. NAVARRO:  Well, there's a knowing exception.  But

19    if they are within the scope of the prosecutorial function, it

20    doesn't matter.

21              THE COURT:  But it --

22              MR. NAVARRO:  They can be malicious in their intent

23    and still be entitled to absolute immunity.

24              THE COURT:  Right.  So, if they're in the grand jury

25    room presenting it.  But what about before that when they are
```

1      still in the investigative things?

2            MR. NAVARRO:  Well, I guess that's where we get into

3      that there is no investigative phase as pleaded --

4            THE COURT:  Well, they allege that there was.  I

5      mean, it's --

6            MR. NAVARRO:  Well, they say that they're going on

7      information and belief.

8            THE COURT:  But they pled it --

9            MR. NAVARRO:  They're spinning it.  They're -- you

10     know.

11           THE COURT:  And I get your frustration.  I can sense

12     that you feel like they're making stuff up in their complaint.

13     I get that.  But if the rules say I have to take their

14     complaint at face value, no matter how badly you disagree with

15     it, how can I ignore it?  And if they say that they knew --

16     like I said, there may be a different motion coming.  If they

17     pled that they knew and you put them on notice ahead of time,

18     that may be a whole different motion hearing.  But if I have to

19     take their complaint at face value and they say that they knew,

20     there is a knowing exception and/or at least the investigative

21     -- they were alleging --

22           MR. NAVARRO:  That would have to be outside of the

23     scope.

24           THE COURT:  Right.

25           MR. NAVARRO:  They would have participated in the

1    investigative component of --

2             THE COURT:  Which is what they -- they have alleged

3    that.  How can I ignore that?

4             MR. NAVARRO:  I mean if the Court is -- it's a

5    conclusory allegation.  But if the Court feels like, okay,

6    well, they say it's --

7             THE COURT:  This is your opportunity to disabuse me

8    if I'm wrong.  And like I said, I'm not trying to get snarky

9    with you now either just like I wasn't with her.

10            MR. NAVARRO:  Yeah.

11            THE COURT:  If the standard is if they put it in the

12   complaint, I have to take it as true, then how can I get around

13   that?  Like I said, if you say, well, they knew it wasn't true,

14   they shouldn't have put it in the complaint, that's a different

15   motion.  You understand what I'm saying.

16            MR. NAVARRO:  Yes.

17            THE COURT:  But if I have to take it as true, that's

18   why I wanted to nail down what I can consider at the 12(b)(6)

19   early stage.

20            So, if there are circumstances where a prosecutor

21   could be -- have a 1983 claim against them, just like the

22   sheriff could -- and we talked about the possible different

23   standards for that.

24            MR. NAVARRO:  Yes.

25            THE COURT:  And I'm not saying how I would -- I

1   really don't know what the evidence is going to show.  But at

2   this phase, I just don't know how I can get around the fact

3   that the complaint says what it says, I have to take it as

4   true, and I can't consider your exhibits because they weren't

5   referenced in the complaint.

6           MR. NAVARRO:  Well, if the mere allegation of that

7   there was a conspiracy outside of the prosecutorial function, I

8   mean, is enough to defeat the Rule 12 on it.  But I mean --

9           THE COURT:  Like I said, you said that you've had

10  communications with them that you think should have disabused

11  them of that, that's a different motion.  But we're not here on

12  that motion.  We're here on does the case get dismissed.

13          And so, to me if there are -- if the complaint would

14  support an allegation that there was conduct by the prosecutors

15  and the sheriff that would fall -- possibly fall outside of

16  immunity, how can I not let them do discovery on that, at least

17  on the bifurcated stage, the limited stage of addressing

18  immunity first?

19          MR. NAVARRO:  Well, they would be limited if there is

20  -- what I'm seeing these days on that --

21          THE COURT:  Right, yes.

22          MR. NAVARRO:  -- the discovery is a very limited

23  discovery on the issue of the immunity.

24          THE COURT:  That's right.  Correct.

25          MR. NAVARRO:  And it's not a full-bore discovery on

1    everything.

2              THE COURT:  Right.

3              MR. NAVARRO:  It's a limited discovery option.  And

4    that seems to be the answer in some of these cases where --

5              THE COURT:  So, it seems to me sometimes -- for

6    example, the counties get sued.  They say you know what, we're

7    going to file a qualified immunity motion, but we don't want to

8    go through the hassle of having the two stages, so we'll just

9    do all at once.  Because we want to take two depositions, one

10   limited to immunity and one that's wide open.  Sometimes they

11   do that.  But that's -- the Defendant has the right to limit

12   discovery to just the immunity question.  And so, we can do

13   that in the bifurcated way.  What I'm trying to do is, like I

14   said, figure out how if prosecutorial immunity -- if the

15   complaint is true, which I know you disagree with.  But if the

16   complaint is taken as true, how do you get around the fact that

17   they should not at least get discovery on that?

18             MR. NAVARRO:  Well, what kind of a discovery are we

19   talking about?

20             THE COURT:  Limited to immunity.

21             MR. NAVARRO:  Are we talking about a written

22   discovery, deposition discovery against the individuals?  I

23   mean, what are we talking about?

24             THE COURT:  Well, I mean, I don't have to micromanage

25   the case.  We're professionals.  And so, I try not to

 1   micromanage the case.  I really try to stay out of the cases.

 2   It's not my case, it's you all's case.  It's your party's case.

 3   So, it seems like to me you've said that you've done Section

 4   1983 work.  And I assume you've done the bifurcated discovery,

 5   right?

 6           MR. NAVARRO:  Yes, we've done it.  I mean, inevitably

 7   you get into disagreements about the edges of --

 8           THE COURT:  I'm calling the judge.  Yeah, sorry.  No,

 9   I get that.

10           MR. NAVARRO:  But yes, we've done that.  And most of

11   that stuff does get worked out.  And I think that what we would

12   want to know is what is the source of some of these

13   allegations.

14           THE COURT:  I understand.

15           MR. NAVARRO:  You know?  Like where are you getting

16   this.

17           THE COURT:  And I'm not commenting one way or the

18   other.  I'm not suggesting that you all have done anything

19   sanctionable.  I'm not suggesting that your clients have done

20   what they're accused of.  What I'm telling you is that at the

21   12(b)(6) stage my options are very limited.  And that is that I

22   have to take the complaint as true, even though you don't like

23   what it says, and I can't consider stuff that is outside of the

24   complaint.  And so, I just think that that's the standard.

25           So, what I would -- I think it makes sense for me to

```
 1   deny the three motions to dismiss moot, the motion to strike
 2   the sealed exhibits as a result.  All of them are without
 3   prejudice.  Although I don't know that a motion to dismiss is
 4   going to be the proper vehicle.  And then for the parties to
 5   confer about a discovery schedule that is limited to just
 6   immunity and have that limited discovery and then brief that.
 7   And then we'll stay the case pending our resolution of that.
 8   That is my proposal.
 9            MR. NAVARRO:  And we'll confer about that.  If you're
10   going to deny their motions, then that triggers our answer date
11   I would imagine.
12            THE COURT:  Well, I mean, nobody is going to default
13   you.  I mean, you have appeared.  So --
14            MR. NAVARRO:  Well, and but, we get -- we do -- we
15   make admissions and denials in that answer.  So, if we're going
16   to do that, we might as well do that so that you have
17   admissions and denials.  Okay?
18            THE COURT:  Sure.  Yeah.
19            MR. NAVARRO:  And that way I think it helps define
20   the scope of the issues.
21            THE COURT:  Right.  Then you want your affirmative
22   defenses and stuff like that.
23            MR. NAVARRO:  One thorny issue here is of course how
24   do you deal with Attorney Barrera's presentation to the grand
25   jury.  You know?  I mean, I really am wrestling with exactly --
```

1    I mean, I myself don't even get into the details --

2              THE COURT:  Let me just ask the Plaintiffs, how could

3    that even remotely be a part of a case?  That has got to be

4    within prosecutorial immunity, doesn't it?

5              MS. GARZA:  Yes, Your Honor.  We would agree --

6              THE COURT:  So, you're not going to ask anything

7    about what happened in the grand jury room?

8              MS. GARZA:  Absolutely not.

9              THE COURT:  Because that's not going to happen.

10             MS. GARZA:  That's correct, Judge.

11             THE COURT:  Does that deal with your -- Ms. Barerra,

12   I don't want (indiscernible) deal with any concerns that you

13   all have that -- and I'm sorry, I shouldn't talk to Ms.

14   Barrera.  If you want to go visit with them, do you want to

15   find out so we can nail down anything that you think might

16   because a problematic --

17             MR. NAVARRO:  As long as no adverse inferences can be

18   drawn from that, we're not going to allow discovery about what

19   happened in the grand jury room --

20             THE COURT:  Well, I'm not going to draw any.  And

21   we're not at the jury phase as well.  And I would definitely

22   tell the jury, just like happens in criminal cases, you can't

23   talk about what happens in grand jury.  It's one of the most

24   important secrecies that we have.  So.

25             MR. NAVARRO:  Exactly.

1          MS. GARZA:  And we understand the distinction, Your

2     Honor, between the prosecutorial function and the investigative

3     function.

4          THE COURT:  Right.  So, do you all need to figure out

5     when the prosecutorial function kicked in?  Is there I guess

6     case law on when that clock started?

7          MS. JOHNSON:  We submit it's at the point of the

8     grand jury presentation, Your Honor.

9          THE COURT:  All right.  So, if you disagree with that

10    -- so that's on the record.  You need to figure out when you

11    think the prosecutorial function kicks in.  I don't know the

12    answer to that.

13         MR. NAVARRO:  I didn't catch --

14         MS. JOHNSON:  I'm sorry.  At the point of the

15    presentation to the grand jury.  So, actions that -- with

16    regard to --

17         THE COURT:  So, a lot of times there's --

18         MR. NAVARRO:  Okay, but there's allegations that says

19    there's pre-agreements about how to deal with references from

20    the hospital.

21         MS. JOHNSON:  Right.

22         MR. NAVARRO:  Okay.  So --

23         MS. JOHNSON:  Our position is that that is not a part

24    of the quasi-judicial function.

25         THE COURT:  All right.  Well, you all can hash that

1    out.  But that is something I think you need to hash out.  And

2    if you can't get that hashed out, then I can probably set that.

3    And that will make the discovery process a lot more fluid -- I

4    mean, efficient.

5         For example, I can tell you a grand jury indictment

6    happens at Docket Entry Number 20 in a federal case.  And there

7    has been an information or a complaint, there's been all kinds

8    of stuff that has happened weeks and months before that sure

9    looks like a prosecutorial function.  Because they're in there

10   and they're charging.  And so, I think you all need to put some

11   thought as to when the prosecutorial function would kick off.

12   And it's not the grand jury.  It's before that.

13        MS. GARZA:  Well, and Your Honor, and I think that

14   it's also not necessarily a timeline, but there may have been

15   some investigative functions that were occurring -- that's what

16   the evidence will bear out.  I mean, there may be some stuff

17   that was done in furtherance of obtaining the indictment and

18   the grand jury presentation.  But if there was some like

19   investigation by the DA's office of witnesses or conversations,

20   that -- you know, so it's not really a need timeline, it's just

21   the actions itself.

22        THE COURT:  But like I said, the biggest fight that I

23   see on this kind of first phase is figuring out when and where

24   the prosecutorial function kicks in.  If it is during the

25   prosecutorial function, I'm not going to -- there's no

```
1    discovery because it doesn't make any sense.  And I think

2    everybody would agree.

3              MS. GARZA:  Yes, Your Honor.

4              THE COURT:  The sheriff I think is fairly

5    straightforward.  I mean, you often run on the sheriff --

6              MR. NAVARRO:  The sheriff we can work out.

7              THE COURT:  Yeah.

8              MR. NAVARRO:  I think here the -- I mean from my --

9    the prosecutorial function is when the casefile is referred to

10   the DA for review.

11             THE COURT:  Right.  And so, really the time that I

12   see these cases against prosecutors is when it's a malicious

13   prosecution case.  And you know, those are fairly few and far

14   between and fairly specific.  And you've got some smoking guns

15   out there.  It's not necessarily linked to, they just misread a

16   statute or they -- I mean, if you've got evidence that say they

17   saw that and they chose to ignore it, you know, maybe that's

18   one thing.  But if they should have seen it, you understand

19   where some of the concerns, you're going to have to persuade me

20   that that is going to be enough.

21             MS. GARZA:  Understood.

22             MR. NAVARRO:  So, if you want an agreed order from us

23   on the scope of --

24             THE COURT:  All right.  No, not on the --

25             MR. NAVARRO:  Scope of the discovery?
```

```
 1              THE COURT:  No.  What I would like is an agreed
 2   schedule.  So, you all get together, figure out what you want
 3   as far as -- you guys can send whatever discovery you want out,
 4   whether it's written depositions or whatever.  I'm not going to
 5   micromanage that.  You all figure that out.  I'm -- the only
 6   thing I want from you is a timeline.  Like, do you want --
 7   whatever it is, two months, three months for discovery.  And
 8   then motions filed 30 days after that.  You know, I'm just
 9   making numbers up.  So, it's not uncommon to have three months
10   of discovery, limited discovery to immunity.  Then you've got
11   the motion for summary judgment.  They don't have any evidence
12   of knowing or -- outside of the prosecutorial whatever.
13   There's nothing about the sheriff.  And they get to respond
14   with whatever they think they have.  I can resolve that.
15              If anything is still alive, then the case just goes
16   forward with wide-open discovery with a new scheduling order.
17              MR. NAVARRO:  With a new one, yeah.
18              THE COURT:  Right.  We do a completely new scheduling
19   order and then it's wide open with whatever is left.
20              MS. GARZA:  Your Honor, would you like us to kind of
21   revise the case management plan and work from there?
22              THE COURT:  I mean, you can --
23              MR. GARZA:  Because we do have -- we kind of
24   addressed this a little bit with Mr. Navarro's associate.
25              THE COURT:  Well, I mean, so what you have here is
```

1   not particularly helpful.

2            MS. GARZA:  No.

3            THE COURT:  Because it says 90 days before trial.  I

4   haven't set trial.

5            MS. GARZA:  Right.  But we do have -- in the

6   management plan itself -- not the scheduling order, but in the

7   management plan itself, we do kind of have dates that run from

8   a court's ruling.  So, we can probably work off of that.

9            MR. NAVARRO:  We'll file an amended one --

10           THE COURT:  So, you don't have to do that.  So,

11   here's the way that these typically happen on the 1983 cases.

12   You submit the I guess first phase scheduling order.  It

13   doesn't have a trial date.  All it's got is discovery and

14   motions cutoff.  Okay?  Then after I rule on that, the last

15   line is going to be the parties should confer -- assuming that

16   summary judgment wasn't granted, the parties should confer and

17   give me a full scheduling order, or maybe we can have a status

18   conference.  That whatever is left, we get a full-blown

19   scheduling order from.

20           That's why I was saying the 90 days before trial

21   doesn't help very much, because that presupposes wide open

22   discovery.  So.

23           MS. GARZA:  In all fairness, we really didn't know

24   what to do with that.

25           THE COURT:  That's okay.  That's all right.  I mean,

```
1    this was -- it's different.
2              So, the reason why I set these for these conferences
3    is sometimes the defense doesn't want to do the bifurcated
4    approach; they want to do just one global and let's get it over
5    with.  We'll file two phases of motions along the way.  And if
6    we need continuances because I haven't ruled because the two
7    motions were filed too close together, then I just grant
8    continuances.  So.
9              MR. NAVARRO:  I think -- I'm thinking through some of
10   the logistical.  So, obviously, there's things pleaded in here
11   about knowledge and all that.  I mean, I don't know who Ms.
12   Gonzalez, the Plaintiff, is not going to know answers to those
13   --
14             THE COURT:  We're not going to sort that out here.
15   Do your discovery.
16             MR. NAVARRO:  Yeah.  Yeah.  Okay.
17             THE COURT:  All right.  So, like I said, everybody is
18   on notice of what's at issue.  You all try to work out when you
19   think the prosecutorial function kicked in.  If you think that
20   there's some overlap, you all try to have that conversation
21   ahead of time.  Really try to get it to before you're in a
22   deposition so that you don't waste your time and have to do
23   multiple depos or whatever.  Try to figure it out.  If you need
24   that resolved ahead of time, then you all can involve me, or I
25   can get a magistrate judge to handle it super quick.  Okay?
```

1            MR. NAVARRO:  Very well, Judge.

2            THE COURT:  All right.  So, for the record, Docket

3    Entries No. 13, 16, and 23 are denied without prejudice.  Those

4    are the motions to dismiss, based on -- just the allegations

5    that are in the complaint, which I am required to take as true.

6    I believe that it makes sense for us to go forward on the

7    bifurcated process to do immunity discovery only.  The parties

8    are going to confer and submit a proposed schedule for just the

9    immunity portion and then they're going to confer about the

10   scope of discovery.  The motion -- Docket Entry 27, which is

11   the motion to strike sealed exhibits is denied as moot.  Okay?

12           MS. JOHNSON:  Thank you, Your Honor.

13           MR. NAVARRO:  Very good, Your Honor.

14           THE COURT:  All right, thank you.  Appreciate it.

15        (Hearing adjourned at 1:56 p.m.)

16                          *  *  *  *  *

17

18

19

20

21

22

23

24

25

1                            I N D E X

2

3                              RULINGS

4                                           Page        Line

5   Dockets 13, 16, and 23 Motions to

6   Dismiss, DENIED                         51          2

7   Docket Entry 27, Motion to Strike

8   Sealed Exhibits, DENIED as moot         51          10

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                  C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, court-approved transcriber,

4   certify that the foregoing is a correct transcript from the

5   official electronic sound recording of the proceedings in the

6   above-entitled matter.

7

8

9

10  Sonya Ledanski Hyde

11

12

13

14

15

16

17

18

19

20  Veritext Legal Solutions

21  330 Old Country Road

22  Suite 300

23  Mineola, NY 11501

24

25  Date:  August 27, 2024
```