1                   IN THE UNITED STATES DISTRICT COURT

2                 FOR THE SOUTHERN DISTRICT OF TEXAS

3                          HOUSTON DIVISION

4    LIZELLE GONZALEZ                §     CASE NO. 7:24-cv-00132
                                      §     HOUSTON, TX
5    VERSUS                           §     FRIDAY,
                                      §     JANUARY 10, 2025
6    G. ALLEN RAMIREZ ET AL           §     1:00 PM TO 1:37 PM

7                          MOTION HEARING

8               BEFORE THE HONORABLE DREW B. TIPTON
                   UNITED STATES MAGISTRATE JUDGE
9
                            APPEARANCES:
10

11       FOR THE PARTIES:            SEE NEXT PAGE

12       ELECTRONIC RECORDING OFFICER: REBECCA DIETZEL

13       COURT CLERK:                KELLIE PAPAIOANNOU

14

15

16

17

18

19

20

21                  TRANSCRIPTION SERVICE BY:

22               Veritext Legal Solutions
                330 Old Country Road, Suite 300
23                   Mineola, NY 11501
             Tel: 800-727-6396 ▼ www.veritext.com

24
        Proceedings recorded by electronic sound recording; transcript
25             produced by transcription service.

```
 1                               APPEARANCES:

 2    FOR THE PLAINTIFF:           ACLU FOUNDATION OF TEXAS INC
                                   David Donatti
 3                                 5225 Katy Fwy
                                   Suite 350
 4                                 Houston, TX 77007
                                   713-942-8146
 5
                                   GARZA MARTINEZ, PLLC
 6                                 Cecilia Garza
                                   202 E. Sprague Street
 7                                 Edinburg, TX 78539
                                   956-335-4900
 8
                                   ACLU
 9                                 Lauren Johnson
                                   915 15th Street N.W.
10                                 Washington, DC 20005
                                   202-870-8116
11
      FOR THE DEFENDANTS:          DENTON NAVARRO RODRIGUEZ
12                                 Kelly Albin
                                   549 N. Egret Bay Boulevard
13                                 Suite 200
                                   League City, TX 77573
14                                 832-632-2102

15

16

17

18

19

20

21

22

23

24

25
```

1            HOUSTON, TEXAS; FRIDAY, JANUARY 10, 2025; 1:00 PM

2            CLERK:  Court calls Civil Action 7:24-132, Gonzalez

3    v. Ramirez et al,  May I have appearances by counsel?

4            THE COURT:  Appearances for plaintiff?

5            MR. DONATTI:  Good afternoon, Your Honor.  David

6    Donatti for (indiscernible) Gonzalez.

7            MS. GARZA:  Good morning, Your Honor.  Cecilia Garza,

8    also (indiscernible) Gonzales.

9            MS. JOHNSON:  And good afternoon, Your Honor.  Lauren

10   Johnson also appearing on behalf of Ms. Gonzalez.

11           MS. ALBIN:  Your Honor, this is Kelly Albin.  I'm

12   here on behalf of (indiscernible).

13           THE COURT:  All right.  Well, they've got you

14   outnumbered, Ms. Albin, so --

15           MS. ALBIN:  (indiscernible).

16           THE COURT:  All right.  I have read -- I've received

17   the letters and the motions to extend and to quash.  I've read

18   all of that.  If you want to add anything to that before we

19   resolve this, I guess I'll start with plaintiffs.

20           MR. DONATTI:  Good afternoon, Your Honor.  David

21   Donatti.  We don't have anything to add, just perhaps to

22   contextualize (indiscernible).

23           THE COURT:  Okay.

24           MR. DONATTI:  So, Your Honor, we acknowledge and

25   appreciate that this (indiscernible) discovery period

 1    subsequent to the Court's denial of defendants' assertions of

 2    immunity, and up until the past few weeks, we've also

 3    acknowledged that the parties (indiscernible) amongst

 4    ourselves.  We've been in communication.  We've had several

 5    (indiscernible) with one another.

 6            And in our view, the urgency of this meeting is

 7    (indiscernible) the January 17th deadline to take depositions

 8    that the parties have agreed to in September.  It has been our

 9    position with regard to (indiscernible) to defendants, at least

10    as early as December, that we would require or at least

11    (indiscernible) the Court's resolution on discovery disputes,

12    which we noticed on December 6th, (indiscernible) procedures

13    before taking depositions in terms of the scope and process of

14    discovery that we are undertaking, as well as issues that we

15    have with defendants under (indiscernible) regarding document

16    production.

17            And the urgency, from our perspective, is that if

18    that (indiscernible) January 17 deadline isn't extended, then

19    we feel we have no choice but to notice the depositions that we

20    have noticed.  We are, of course, open to extending that

21    January 17 date and we've communicated with defendants' counsel

22    on doing so and they have communicated they are unwilling to.

23    And so, that is the context that we want to share with the

24    Court, to the extent it's just not clear from the papers.

25            THE COURT:  Okay.  Ms. Albin?

1      MS. ALBIN:  Thank you, Your Honor.  (indiscernible)

2  to add (indiscernible) at the time that we filed our motion

3  yesterday.  (indiscernible) getting served, but the other six

4  were also (indiscernible).

5      THE COURT:  Let me ask you real quickly.  Are those

6  the people that are under your control, that you've agreed to

7  produce?

8      MS. ALBIN:  Some are (indiscernible) time to try to

9  come up with a schedule for this.  (indiscernible)

10  arrangements, but I (indiscernible).  But some of them are

11  county employees.  Some of them are third-party

12  (indiscernible).

13      THE COURT:  Okay.  So, let's do this.  First off, is

14  there anything other than depositions that we need to sort out,

15  or has everything else been sorted out?

16      MR. DONATTI:  We still have the disputes about

17  production (indiscernible) December 6th, which we believe are

18  necessary to practically take depositions and I can go through

19  the specific issues that were raised in (indiscernible).

20      THE COURT:  All right, go ahead.

21      MR. DONATTI:  Sure.  So, trying -- other than

22  (indiscernible) we had both issued (indiscernible) and requests

23  for production one another and defendants' responses to our

24  interrogatories and requests for production (indiscernible)

25  communicating to them is the process, in respect that it is not

1    clear from the responses to (indiscernible) whether they had

2    conducted searches for responsive documents, if they're

3    withholding documents from the responses based on objections

4    and if so, what objections?  I think that's -- it relates to

5    the crux of the dispute.  (indiscernible), because they say

6    that they have produced, for example, certain communications

7    (indiscernible).

8              It's unclear to us what they have searched for and

9    what they are withholding.  And we have, through the discussion

10   process, (indiscernible) so, we've gone back and forth.

11   (indiscernible) response (indiscernible) two rounds of

12   searches.  First, they searched (indiscernible) defendants'

13   outgoing emails for outgoing emails that contained the words

14   (indiscernible) and abortion and then we responded that that

15   was insufficient, and provided them with search terms.

16             And they did additional searches and got back to us,

17   but again, only searched outgoing emails and we sent them a

18   series of questions.  They have produced, pursuant to those

19   requests, (indiscernible) text messages, very, very few if any

20   emails, and so our clarification was, have you conducted these

21   searches, and if so, are you withholding documents and on what

22   basis.

23             THE COURT:  All right.  Ms. Albin, why are we

24   limiting it to outgoing?

25             MS. ALBIN:  (indiscernible) the plaintiff's

1    accusation is that in terms of the (indiscernible) immunity

2    issue, that specifically the (indiscernible) defendants have

3    directed this investigation.  And so, our -- we thought that we

4    could capture that by -- in outgoing emails, because that would

5    reflect if, in fact, (indiscernible) the assistant district

6    attorney had told somebody in the sheriff's office

7    (indiscernible).

8             THE COURT:  What about the idea that there could be

9    incoming emails that are responded to by phone calls?

10            MS. ALBIN:  Well, Your Honor, that (indiscernible)

11   responding to via email and then (indiscernible) capturing the

12   iPhone (indiscernible).

13            THE COURT:  Well, let's go ahead and do the complete

14   search.  I'm not suggesting there would be anything.  It's just

15   that having done -- again, in my prior life, I did a lot of

16   trade secret theft.  And sometimes you get communications

17   electronically, but then the response is telephonically or in

18   person.  And so, I'm not suggesting that happened in this case,

19   but I think it is a possibility.  And so, therefore, running

20   search terms for both incoming and outgoing emails, it sounds

21   like search terms are basically agreed to.  If you just run

22   those, and then, I assume that you all got a protocol set up in

23   place for any hits.

24            MS. ALBIN:  We do, Your Honor.  (indiscernible) has

25   to be done manually (indiscernible) large volume of data

```
 1    (indiscernible).  So, we're trying to (indiscernible) but we do
 2    have (indiscernible) search terms.  (indiscernible).  So, the
 3    concern is that we're going to get things, you know, just a
 4    large volume of (indiscernible).
 5            THE COURT:  Let's do this.  See if you can reach
 6    agreed search terms.  Typically, in one of these ESI protocols,
 7    what we'll do is you will come up with some agreed search
 8    terms.  If you can't agree (indiscernible), let me know.  I'll
 9    pick them for you.  If you -- you can at least try what the
10    plaintiff suggests and if you get, you know, a billion hits,
11    then we're in another -- that doesn't work and that's
12    unreasonable and I'm not going to order that.  And so
13    hopefully, you all can agree to them.
14            I mean, this is a process of hit and miss.  I can
15    remember doing search terms in trade secret dep cases for
16    somebody who left to go work for a competitor.  When you put
17    that competitor's name in, they're all over a whole lot of
18    emails that are irrelevant, and it's just not going to be cost-
19    effective.
20            If the plaintiff wants them, they can pay for them.
21    If they don't want them, then we can figure out a way to narrow
22    that scope, either by date or -- I mean, it seems like the date
23    range limits, in this case, ought to substantially limit the
24    numbers because we're looking at a fairly finite timeframe, so.
25            MS. ALBIN:  (indiscernible).
```

```
1            THE COURT:  So, when did this -- when did her

2    situation start?  When was she in the -- when was she in the

3    hospital?

4            MS. ALBIN:  January of 2021, I believe.

5            THE COURT:  So, why are we (indiscernible) that name?

6            MR. DONATTI:  (indiscernible) we did not

7    (indiscernible) on the vast majority of our requests.  We did

8    ask for, for example, CVs, curriculum vitae.  And some of

9    (indiscernible) went back ten years.  But for the requests for

10   communications, for example, (indiscernible) time period

11   relevant to (indiscernible) the investigation which would be --

12           MS. ALBIN:  Your Honor --

13           MR. DONATTI:  (indiscernible).

14           MS. ALBIN:  I'm sorry.  (indiscernible) abortion laws

15   from January 2013 to present.

16           THE COURT:  Yeah, we're not going to -- we're not

17   going to do that for this phase.  So, let's do this, for

18   qualified immunity phase, anything that deals with something

19   that's not CV, anything discoverable, you know, things like

20   that, we're limiting it from the time -- what is -- I guess,

21   what is the agreed upon time?  The time that she went to the

22   hospital?  Sometime after that?

23           MS. ALBIN:  I believe (indiscernible) we had

24   (indiscernible).

25           THE COURT:  Okay.  Does that work for you, Mr.
```

1    Donatti?

2              MR. DONATTI:  I didn't hear the end date.

3              THE COURT:  January --

4              MR. DONATTI:  (indiscernible).

5              THE COURT:  Ms. Albin?

6              MS. ALBIN:  (indiscernible) on that.

7              THE COURT:  Mr. Donatti, while she's looking, do you

8    have a suggested end date?  You're muted.

9              MR. DONATTI:  (indiscernible) but the indictment was

10   dismissed April (indiscernible) of 2021.

11             THE COURT:  So, we're looking at January, maybe

12   January 2021 through the end of April 2021?  Does that sound

13   reasonable to everyone?

14             MS. ALBIN:  Yes, Your Honor.

15             THE COURT:  Okay.  I believe that would

16   substantially, I hope, knock down the hits that you would have

17   on the incoming and outgoing.  Again, I'm not suggesting that

18   there are any.  I could just make sure that we've got a clear

19   discovery record.  So, that should address that.

20             Then, we've got whether or not we're including

21   discovery of both absolute and qualified immunity.  I believe

22   that we should go ahead and knock both of these out together.

23   I'm not sure how much more extensive I was able to pick up from

24   the pleadings that would be for the absolute and qualified, but

25   I think that for efficiency's sake, otherwise, if we go --

1    we'll have a second phase of the immunity discovery if we do

2    absolute first, qualified second, and then merits third.  I'm

3    not a huge fan of this, because that's what the Fifth Circuit

4    says as far as bifurcating, just because it drags the case

5    down.  I am sensitive to the fact that this gets expensive for

6    the defendant and so, that's why we have it.

7         So, let's go ahead, I think for an expense purpose,

8    unless there is an extraordinary amount of additional discovery

9    for the qualified immunity, let's go ahead and knock it all out

10   at once and get the immunity addressed at once.  And then, if

11   the motion is granted, then all the expenses stop.  The next

12   one deals -- I'm sorry, go ahead, Ms. Albin.

13        MS. ZIMET:  (indiscernible).  Your Honor, I think

14   (indiscernible) between the between the discovery that goes

15   towards the absolute immunity, which is the absolute

16   (indiscernible) immunity applied unless the prosecutors

17   physically (indiscernible) investigators and directed that

18   investigation, which is very different from the qualified

19   immunity, which (indiscernible).

20        THE COURT:  All right.  I still believe that for

21   efficiency in this case, it makes sense to knock out all the

22   immunity discovery at once.  I had a real run across a case

23   that weighs in heavily in favor of one versus the other.  This

24   is a unique case, and so I think it just makes sense to do

25   that.

1              What about the grand jury proceeding?  Do we need to

2    brief that or are you all able to work it out?  I was trying to

3    figure out, Mr. Donatti, what exactly are you looking for in

4    the grand jury proceeding?

5              MR. DONATTI:  So, the primary goal (indiscernible)

6    their objection as to certain discovery responses, and we need

7    (indiscernible) as if material is really relevant to the grand

8    jury, they're (indiscernible).  And it's not completely clear,

9    but all (indiscernible) grand jury secrecy is that

10   (indiscernible) grand jury proceeding, but this testimony

11   (indiscernible).  But if there is work or collaboration that

12   goes towards preparing as between the district attorney's

13   office and the sheriff's office, that that may be protected by

14   grand jury secrecy in the same way.

15             As for whether we need to brief it, Your Honor, my

16   position (indiscernible) input from my team and (indiscernible)

17   side, but from our perspective, I think what would be most

18   valuable is figuring out a process for objections.  If there is

19   search conducted and there's material that might be responsive,

20   then a prerogative is asserted so that we are looking at

21   something that is particularly concrete, rather than more

22   abstractly with a scope of grand jury moving and how it plays

23   out.  That's just my view.

24             THE COURT:  All right.  Ms. Albin?

25             MS. ALBIN:  Your Honor, (indiscernible) job for

1    something for something that was -- there was specific

2    objection based on privilege (indiscernible).  And it turns out

3    that there really wasn't any materials there that were being

4    held based on privilege.

5            I do think that there are (indiscernible) district

6    attorney creates to present to the (indiscernible) and I think

7    that that is, even though the creation of it is not

8    (indiscernible), the purpose of it is to (indiscernible)

9    presentation and then (indiscernible) the scope of the grand

10    jury's (indiscernible).  And I think that's really

11    (indiscernible) what is left in terms of the grand jury issue.

12            THE COURT:  Okay.  So, why don't we do it that way,

13    then?  Why don't we just get specific that he can have a

14    privilege log to the extent that you think it's necessary

15    (indiscernible) sort that out.  So, with that --

16            MS. ALBIN:  Yes, Your Honor.

17            THE COURT:  What does that leave us?  Does that leave

18    the disciplinary proceedings or did you all get that worked

19    out?

20            MR. DONATTI:  That leaves the disciplinary

21    proceedings, Your Honor.

22            THE COURT:  All right.  Go ahead.  Tell me why you

23    need those.

24            MR. DONATTI:  Again, because there was information

25    that we were aware of based on the public record of

1    disciplinary proceedings that indicate the conflict in the

2    investigation already (indiscernible) that are relevant to the

3    conflict of investigation, and the assertion that they're

4    making is that these are (indiscernible) different view of

5    that.

6              THE COURT:  All right.  Ms. Albin?

7              MS. ALBIN:  Your Honor, (indiscernible) again there

8    is not really much material here (indiscernible) material the

9    district attorney (indiscernible) or communications they had

10   with the disciplinary board about the (indiscernible) is

11   subject to (indiscernible) the proceedings are (indiscernible)

12   confidential.  But the final outcome is not, and the --

13             THE COURT:  What about the exception?

14             MS. ALBIN:  (indiscernible).

15             THE COURT:  Yeah, so the sanction is, "Other than a

16   private reprimand, the Office of Chief Disciplinary Counsel

17   shall, upon request, disclose all documents, statements, or

18   other information related to the disciplinary proceedings that

19   came to the attention of the evidentiary panel during the

20   disciplinary proceedings."

21             MS. ALBIN:  (indiscernible).

22             THE COURT:  Well, look --

23             MS. ALBIN:  (indiscernible).

24             THE COURT:  -- let's set that down, and Mr. Donatti,

25   if you get the information that it relates to that, you're not

1    trying to impede that, are you?

2              MR. DONATTI:  No, Your Honor.

3              THE COURT:  Okay.  Then do we have agreement with all

4    of this?  Then if as long as we're not going past that, that

5    that can be discoverable based on the representations made

6    today?

7              MS. ALBIN:  (indiscernible).

8              THE COURT:  Okay, great.  All right, so then let's do

9    -- let's figure out a timeline, then I understand, and this is

10   not infrequent, there may be a whole lot of anticipation that

11   we're going to get stuff noticed, then all of a sudden,

12   Thanksgiving hits, Christmas hits, New Year's hits, and all of

13   a sudden you realize you're out of time and everybody's

14   slamming each other with depos -- requests.  I know that

15   happens, so this time, why don't we just work together and get

16   an extension that makes sense.

17             As far as the order, if you cannot agree to an order

18   for the presentation, my default rule is that the plaintiff

19   gets to go first if you can't agree, but you don't get to take

20   ten of them.  So, what do we think about the plaintiff taking

21   maybe the first two, and then the defense being able to take

22   the plaintiff or whoever they decide, and then you all work out

23   a schedule that is reasonable.

24             I'm not trying to rush you or jam you up, okay, so

25   what I would like is now that we've kind of sorted out the

1    written discovery issues and you know that the -- hopefully,

2    the universe of the people that we need to depose for the

3    community part that you can confer after this hearing and let

4    me know how much time that you need and then we can just do an

5    agreed order that extends that.  And then -- so, is that enough

6    guidance on how to proceed on the deposition front?

7            MS. ALBIN:  Well (indiscernible) other than the issue

8    (indiscernible) plaintiff's requesting to take any depositions,

9    and (indiscernible) available for that deposition, but then

10   (indiscernible).  So --

11           THE COURT:  Right.  So, I'll tell you this.  Quite

12   frankly, the whole who gets to go first thing, I've always --

13   you know, that always seemed to be something that wound up in

14   front of me.  Those were battles I had in the civil.  I just

15   don't really think it makes that big of a difference.

16           In this case, the plaintiffs have known about this

17   for a while and I think probably it makes sense with the

18   default rule that maybe -- that we will let the plaintiff's

19   deposition be taken first and then you can go ahead and

20   schedule these out.  Mr. Donatti, that gives you -- takes the

21   time pressure off you so that you can take those ten, spread

22   them out, work with Ms. Albin.

23           Find out who it is that she is willing to produce,

24   whether it's county employees or even non-employees that she's

25   willing to produce.  I guess, nail down if you're representing

1    all of the ten, Ms. Albin, at the deposition or if they're

2    getting their own counsel, and then we just try to schedule

3    those.

4           And then, you can let me know how much time you all

5    think you all need, maybe a week to be able to sort all that

6    out and get a schedule that you'll agree to that you can

7    present to me.  I'm just throwing a week out there.  I'm -- and

8    if you need more time, less time, I don't particularly care.  I

9    just wanted to get all the discovery stuff sorted out, have the

10   parties be able to set their own schedules so that I don't have

11   to do it unless the parties can't agree.

12          MS. ALBIN:  (indiscernible).  Just so I understand,

13   what the Court is asking, that we can present a revised

14   schedule order and a deposition (indiscernible) next week?

15          THE COURT:  Yes.  So, just confer because I know that

16   you've got ten people that you've got to get in touch with to

17   figure out when they're available, get their dates all set up,

18   make sure you've got plenty of time to get them prepped, and

19   all that.  So, like I said, I don't want to jam you up.  So, if

20   we can get it set up, you can depose the plaintiff first.

21          Mr. Donatti, I assume that ten is plenty and you

22   don't need more than ten depositions?

23          MR. DONATTI:  (indiscernible), Your Honor.

24          THE COURT:  Okay.  All right.  So let's don't

25   subpoena anybody without conferring with the opposing counsel

1    going forward.  This is our opportunity to get an agreed

2    schedule.  All the other stuff is taken care of.  It's the new

3    year.  There's no holidays that are going to be jamming us up.

4         Like, I said, let's just make sure that we confer

5    with each other and if you need another month, two months,

6    whatever it is to make sure that you can get these depositions

7    done, get your transcripts back, and close out your discovery,

8    like I said, I would very much like to defer to the parties on

9    the schedule.  Does that work?

10         MR. DONATTI:  Thank you, Your Honor.

11         THE COURT:  All right.  So, why don't we do this?

12   It's January 10th.  By January 17th, notify my case manager

13   whether or not you've been able to reach an agreement.

14   Hopefully you have.  If not, if you're close, you just need

15   some more time to be able to work out dates, like I said, Ms.

16   Albin's got a lot of people she needs to coordinate with.  So

17   let's just do that.  So, give us an update by January 10th.

18         If you have an agreed order, you can go ahead and

19   submit that, and I can use that as my basis for getting

20   something entered onto the docket sheet.  Does that work for

21   everybody?  Mr. Donatti?

22         MR. DONATTI:  Yes, Your Honor.

23         THE COURT:  (indiscernible).  Ms. Albin.  Sorry.

24         MS. ALBIN:  (indiscernible).

25         THE COURT:  Okay.  So, we've got (indiscernible) on

```
 1    all of the non-deposition discovery.  Got all that closed out.

 2    We've got either agreements or you've got your marching orders

 3    on that and now we just need the deposition and discovery

 4    extension.

 5             MR. DONATTI:  Can I raise -- can I just confirm a

 6    couple of issues, Your Honor, (indiscernible)?

 7             THE COURT:  Okay.

 8             MR. DONATTI:  The first is, we had discussed

 9    (indiscernible) and incoming as well as outgoing emails.  We

10    also ask that they search other media, in particular

11    (indiscernible) communicating with each other, (indiscernible)

12    text message and (indiscernible) other means as well.

13             THE COURT:  Well, it sounds like they searched those.

14    I mean, you can't --

15             MR. DONATTI:  That's not my understanding, Your

16    Honor.

17             THE COURT:  You can't search just outgoing texts.

18    You run the search terms and it gets everything, right, on your

19    phone.

20             MR. DONATTI:  I'm referring to defendant's counsel.

21    My understanding is they're going to search anything other than

22    emails and then (indiscernible).

23             THE COURT:  Oh, I'm (indiscernible).  I thought that

24    you had more texts produced.  I thought some texts had been

25    produced.
```

```
 1          MS. ALBIN:  There were a lot (indiscernible) searched
 2    (indiscernible) a search of other (indiscernible) defendants
 3    don't use in their (indiscernible) purposes.
 4          THE COURT:  Okay.  So, if you have, whatever
 5    platforms you have that you use for work purposes, I think
 6    should be searched.  I don't know how you search only outgoing
 7    texts, so I'm assuming if they search texts, it would have been
 8    incoming and outgoing.  Ms. Albin, I assume that you didn't
 9    exclude the incoming and just produce the outgoing.  I would
10    assume you would have produced every -- all the hits.
11          MS. ALBIN:  Yes, Your Honor.  We're not
12    (indiscernible) searching the texts.
13          THE COURT:  Okay.  Anything else Mr. Donatti?
14          MR. DONATTI:  Your Honor had raised non-parties who
15    work in the office, so (indiscernible) sheriff's office
16    investigators who were actively involved or a district attorney
17    member who was actively involved (indiscernible) their
18    information searched as well?
19          THE COURT:  Well, Ms. Albin, do you represent them?
20          MS. ALBIN:  (indiscernible) who you're talking about,
21    we're not (indiscernible) other individuals besides district
22    attorney (indiscernible).
23          THE COURT:  So, if you're going to extend -- if
24    you're going -- wanting to run search terms of, for example,
25    PST files for particular people that are non-parties but
```

```
 1    they're county employees, I guess you're going to have to

 2    convince me why they're relevant for the immunity analysis as

 3    opposed to the merits analysis, because the immunity analysis

 4    would be defendant-specific, wouldn't it?

 5                MR. DONATTI:  Yes, Your Honor.  The reason that I

 6    think it's still relevant is all of (indiscernible) goes to

 7    what their involvement was and in what capacity.

 8    (indiscernible), for example, (indiscernible) the district

 9    attorney's office would potentially produce relevant

10    information as to the (indiscernible) defendant's and

11    involvement.

12                THE COURT:  Well, so, like I said, that may hit the

13    merits.  When you're talking about that, if they were

14    communicating with non-parties, that would be in their

15    outgoing.  So, those should pop up if they're talking to

16    sheriff's deputies and things like that.  So, if you're running

17    these search terms that hopefully you're agreed to and they pop

18    up on outgoing non-party, then that might be something you can

19    take a look at and come talk to me about whether or not you

20    need to run a search on the other side.

21                I'm not really sure why you would, because if your

22    theory is that the DAs were acting as investigators or they

23    were calling the shots on this, then the communications that

24    were coming from the DA to those particular non-parties should

25    be what you need, not what those non-parties did afterwards
```

1  that did not involve the DAs.

2       MR. DONATTI:  This (indiscernible).  So for example,

3  we know that there were calls between non-parties regarding the

4  defendants' involvement.  And in some of (indiscernible), Your

5  Honor, is just that those communications may very well have

6  discoverable information.

7       THE COURT:  For the immunity?

8       MR. DONATTI:  Yes, and that is because the key issue

9  regarding the (indiscernible) I think actually defendants and

10 plaintiff were very close on, is about their involvement and

11 the role that they played in it.

12      So, if you have two (indiscernible) the district

13 attorney's office, for example, saying, defendant A instructed

14 me to do this, that would (indiscernible) involvement

15 (indiscernible).

16      THE COURT:  But would those instructions show up in

17 the outgoing searches?  And are you deposing these people?

18      MR. DONATTI:  Some of them, we have noticed

19 depositions (indiscernible), although some (indiscernible) will

20 not be deposing anybody next week.

21      THE COURT:  Right.  I mean, you all are going to --

22 as far I'm concerned, we're -- you know, we're trying to get a

23 clean slate on discovery and get that done in a reasonable

24 fashion.  So, I think to me, before I would authorize going

25 that broad into those additional PST files is that if you're

1    deposing them, asking the question is whether or not they got

2    those, whether they communicated with anybody else.  If they do

3    say yes, then maybe you can have a conversation with Ms. Albin

4    about whether or not another search makes sense.  If you can't

5    agree, then you can bring that to my attention.

6              MR. DONATTI:  Thank you, Your Honor.

7              THE COURT:  Anything else, Mr. Donatti?

8              MR. DONATTI:  No, Your Honor.

9              THE COURT:  All right.  Ms. Albin?

10             MS. ALBIN:  Your Honor, the last thing I would ask

11   (indiscernible) the depositions being taken are the individual

12   defendants at this juncture.  Again, we (indiscernible).  Where

13   we are right now is that (indiscernible).  We believe that

14   there's even (indiscernible) other investigators

15   (indiscernible) defendants were (indiscernible) to have been

16   directing for (indiscernible) issue.  We believe that if those

17   depositions are not (indiscernible) we would not

18   (indiscernible), if the individual defendants (indiscernible).

19             THE COURT:  I've never heard that.  All of the

20   qualified immunity cases that I've had, the defendants a lot of

21   times were the only ones deposed, not having them dig around

22   from the non-parties to see if they could get someone to

23   implicate the defendants.  I -- that would be new.  That would

24   be a new procedure to me.

25             MS. ALBIN:  Your Honor, (indiscernible) our position

1    that that's in line with the kind of theory (indiscernible)

2    about the (indiscernible) should limit (indiscernible) would be

3    able to either figure out (indiscernible) implicates here

4    (indiscernible) kind of more narrow field of discovery to

5    demonstrate that there's some factual basis for the contention

6    that brought them around (indiscernible) in the first place.

7              THE COURT:  But what if the only source of that

8    information is the defendant themselves?

9              MS. ALBIN:  Well, not (indiscernible), Your Honor,

10   (indiscernible) in this case specifically, to whether is

11   (indiscernible) the immunity provision (indiscernible)

12   investigator, so the people that would have that knowledge as

13   much as the defendants would be the investigators themselves.

14   (indiscernible) yes, this defendant directed me to call this

15   person and do these things.  I mean, then I think

16   (indiscernible) at this point, there is nothing that

17   (indiscernible).

18             THE COURT:  So, I'm trying to figure out what the

19   burden is.  If, I understand it, your clients are going to say

20   they didn't coordinate this investigation, weren't acting as

21   investigators and they weren't telling them what to do, then

22   that's going to be an awfully short deposition.  I just don't

23   understand how burdensome that would be.

24             MS. ALBIN:  Well, if that's the limit of the question

25   (indiscernible).  But based on the request for production that

1    we received (indiscernible) which the defendants have answered,

2    they're asking about (indiscernible) activity and communication

3    (indiscernible) abortion laws and (indiscernible).

4            THE COURT:  Yeah, that -- so the abortion aspect, I

5    can understand.  The political stuff, I don't.  So, you may get

6    into the broader discovery, Mr. Donatti, if you make it past

7    the immunity.  But things like that, I mean, this needs to be

8    focused on things that would open them up to liability on the

9    immunity.  So, this isn't a free will.  The benefit of this is

10   that you would get a second deposition.  If I deny the motions

11   for the immunity, and you might be able to get into things that

12   are broader than just this initial immunity analysis, but I

13   want to be clear.

14           I think the defendants should sit for depositions,

15   but the questions should be awfully tailored to the very

16   specific immunity issues that we're dealing with in this case.

17   So, it's difficult for me to, I guess, specifically

18   circumscribe that without knowing what the topics are, but I

19   would hope that that's clear enough.

20           You know, getting into their politics, what they do

21   in their spare time, how passionate they are about, you know,

22   these political issues, have you ever contributed to Right to

23   Life or whatever, you know, those things -- that doesn't have

24   anything to do with whether or not they were -- whether or not

25   they were controlling this investigation or acting as

1    investigators, unless you can persuade me otherwise.

2              MR. DONATTI:  Understood, Your Honor.

3              THE COURT:  Okay.  Ms. Albin, is that -- like I said,

4    it's -- so, this should be the narrow deposition that we're

5    talking about for immunity purposes.  And like I said, it

6    doesn't sound like to me that's going to be that cumbersome if,

7    as -- what I anticipate and I hear from you, is that they're

8    going to say we didn't do any of those things and it's going to

9    be a whole lot if I didn't do thats; that doesn't sound to me

10   to be terribly burdensome.

11             MS. ALBIN:  (indiscernible) and I agree on

12   (indiscernible) the deposition as focused on just the question.

13             THE COURT:  Okay.  Well, I mean, that's the whole

14   point of the bifurcated discovery.  All right.  Then, if you

15   can confer, let me know by Friday whether or not you need a

16   proposed order or if you -- quite frankly, just a letter of

17   agreement amongst the parties as to the schedule.  It doesn't

18   matter to me.  It's just whatever you're -- that you're --

19   believe is going to bind you to the extent you need to or if

20   you need to come back for me to referee any disputes.

21             Hopefully, that should get all this set up.  Just let

22   me know how much more time you need for the discovery and if

23   you want an amended scheduling order, hopefully it will be an

24   agreed.  All right?

25             All right, so any pending motions that are related to

1   the discovery I will terminate as moot based on the

2   (indiscernible) on the record today.  It sounds like we should

3   have addressed all the discovery disputes.  Is that correct?

4           MS. ALBIN:  Yes, Your Honor.

5           MR. DONATTI:  Yes, Your Honor.

6           THE COURT:  All right, so everybody looks equally

7   annoyed.  That must have meant I did my job right.  So, all

8   right.  Thank you very much.  Everybody's excused.

9       (Hearing adjourned at 1:37 p.m.)

10                      * * * * *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              I N D E X

2

3                                 RULINGS

4                                                    Page        Line

5    All pending discovery motions, dismissed        27          25

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        C E R T I F I C A T I O N

2

3          I, Sonya Ledanski Hyde, court-approved transcriber,

4     certify that the foregoing is a correct transcript from the

5     official electronic sound recording of the proceedings in the

6     above-entitled matter.

7

8

9

10    Sonya Ledanski Hyde

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  January 17, 2025