**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| LIZELLE GONZALEZ | § | |
|     **Plaintiff** | § | |
| | § | |
| Vs. | § | **CIVIL ACTION 7: 24-CV-00132** |
| | § | |
| GOCHA ALLEN RAMIREZ, et al. | § | |
|     **Defendants** | § | |

**DISTRICT ATTORNEY GOCHA ALLEN RAMIREZ'**
**MOTION FOR SUMMARY JUDGMENT, ASSERTION OF IMMUNITY**
**AND BRIEF IN SUPPORT THEREOF**
========================================================

MAY IT PLEASE THE COURT:

NOW COMES DEFENDANT GOCHA ALLEN RAMIREZ as District Attorney of the

229th Judicial District (hereafter "DA RAMIREZ") and moves the Court to find that, as a matter

of law, DA Ramirez is entitled to immunity and that Plaintiff's claims must be dismissed. DA

Ramirez respectfully submits this brief in support thereof.

**TABLE OF CONTENTS**

I.           INTRODUCTION AND SUMMARY OF THE ARGUMENTS. ........................ 1

II.         STATEMENT OF THE FACTS. ........................................................ 2

    A.     On September 1, 2021, Senate Bill 8 Takes Effect In Texas. ................................. 2

    B.     On January 7, 2022, Plaintiff Attempted To Self-Induce An Abortion
            At 19-20 Weeks Of Pregnancy. ................................................ 3

    C.     Nurse Martha Torres Reports Plaintiff To Law Enforcement. .............................. 3

    D.     Starr County Sheriff's Office Investigates But Never Discusses The
            Case With DA Ramirez. ........................................................ 4

    E.     DA Ramirez Directs ADA Barrera To Let The Grand Jury Review The
            Case. ........................................................................... 5

    F.     The Starr County Grand Jury Indicts Plaintiff And She Is Arrested On
            April 7, 2022. .................................................................. 6

    G.     DA Ramierz Immediately Seeks Dismissal Of The Indictment After
            Learning About Penal Code § 19.06. ...................................... 7

H.    An SMU Professor With No Ties To The Case Files A State Bar Grievance Against DA Ramirez And He Ultimately Agrees To A Suspension. .................................................................... 9

I.    DA Ramirez's Motion to Dismiss and Discovery. ................................. 9

J.    Plaintiff Admits During Discovery That She Has No Actual Knowledge Of Any Of The DA's Actions In Her Case. ...................... 10

IV.    ARGUMENTS AND AUTHORITIES................................................... 13

A.    Summary Judgment Standard. ............................................................. 14

B.    Immunity Must Be Decided At The Earliest Possible Opportunity. .................... 14

C.    DA Ramirez Is Entitled To Absolute Immunity From Plaintiff's Malicious Prosecution And False Arrest Claims; Even If He Was Not, He Is Entitled To Qualified Immunity. .................................................. 15

D.    Malicious Prosecution.......................................................................... 21

E.    False Arrest ......................................................................................... 23

F.    Plaintiff's Conspiracy Claim Has Absolutely No Evidentiary Basis.................. 24

G.    Plaintiff's Fourteenth Amendment Claims Must Be Dismissed......................... 25

CONCLUSION AND PRAYER ............................................................................. 25

====================================================

## TABLE OF AUTHORITIES

**Cases**

*Albright v. Oliver*, 510 U.S. 266 (1994) ..................................................................... 24

*Anderson v. Creighton*, 483 U.S. 635, 646, n. 6 (1987) ............................................. 14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986)................................... 14

*Armstrong v. Ashley*, 60 F.4th 262, 278–79 (5th Cir. 2023)........................................ 22

*Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) ............................................................... 15

*Baker v. Sebatian*, Civil Action No. 4:22-CV-03103, 2023 WL 6393886, at *3 (S.D.T.X. Sept. 30, 2023) ................................................................................................................. 20

*Bledsoe v. Willis*, No. 23-30238, 2023 WL 8184814, at *6 (5th Cir. 2023)................................. 21

*Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993)............................. 14

*Buckley v. Fitzsimmons,* 509 U.S. 259, 274, 278 (1993) ............................................. 19

*Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 553-54 (5th Cir. 2016) ................. 23

*Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022).................................................................. 25

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) ......................................................... 14

*Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994)...................................................... 24

*Crostley v. Lamar Cnty.*, 717 F.3d 410, 422 (5th Cir. 2013) .......................................... 20

*Daniels v Williams*, 474 U.S. 327 (1986) ......................................................................... 20

*Davidson v Cannon*, 474 U.S. 344 (1986) ........................................................................ 21

*Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) ............................................... 23

*Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020)...................................................... 14

*Gray v. Bell*, 712 F.2d 490, 502 & n. 37 (D.C. Cir. 1983) .............................................. 18

*Green v. Thomas*, 129 F.4th 877, 886-87 (5th Cir. 2025).............................................. 22

*Guerra v. Castillo*, 82 F.4th 278, 288-89 (5th Cir. 2023)............................................... 21

*Hoog-Watson v. Guadalupe Cnty.*, 591 F.3d 431 (5th Cir. 2009) .................................. 19

*Hunter v. Bryant*, 502 U.S. 224, 228 (1991)..................................................................... 14

*Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)........................................................... 15

*Kalina v. Fletcher*, 522 U.S. 118, 130-31 (1997) ............................................................. 19

*Krim v. Banc Texas Group, Inc.*, 989 F.3d 1435, 1442 (5th Cir. 1993) ......................... 14

*Loupe v. O'Bannon*, 824 F.3d 534, 539-40 (5th Cir. 2016)............................................. 15

*Melton v. Phillips*, 875 F.3d 256, 263 (5th Cir. 2017)..................................................... 23

*Monell v. Department of Social Services*, 436 U.S. 658, 691–95 (1978) ....................... 17

*Morrison v. City of Baton Rouge*, 761 F.2d 242, 247-48 (5th Cir. 1985)...................... 18

*Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992) ........................... 17

*Osborne v. Haley*, 549 U.S. 225, 253 (2007).................................................................... 14

*Planned Parenthood of Greater Tex. v. Abbott*, 748 F.3d 583 (5th Cir. 2014) .............. 3

*Singleton v. Cannizzaro*, 956 F.3d 773, 782-83 (5th Cir. 2020)..................................... 19

*Spivey v. Robertson,* 197 F.3d 772, 776 (5th Cir. 1999).................................................. 19

*Terwilliger v. Reyna*, 4 F.4th 270, 279-80 (5th Cir. 2021) ............................................................ 19

*Thompson v. Clark*, ⸺ U.S. ⸺, 142 S. Ct. 1332, 1337, 212 L.Ed.2d 382 (2022) ................ 21

*Thompson v. Clark*, 596 U.S. 36 (2022) ......................................................................................... 21

*Whole Woman's Health v. Jackson 595 U.S. ----*, 141 S.Ct. 2494 (2021) ..................................... 3

*Whole Woman's Health v. Jackson*, 23 F.4th 380, 389 (5th Cir. 2022) .......................................... 3

*Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021) ................................................................. 3

*Wilson v. Stroman*, 33 F.4th 202, 208 (5th Cir. 2022) ................................................................. 23

*Winfrey v. Johnson*, 766 F. App'x 66, 72 (5th Cir. 2019) ............................................................ 25

*Yaselli v. Goff*, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927) ............................................... 18

*Zimmerman v. Cutler*, 657 F. App'x 340, 345 (5th Cir. 2016) ..................................................... 25

**Statutes**
FED. R. CIV. P. 56(c) ...................................................................................................................... 14
Texas Health & Safety C. § 171.204 ............................................................................................... 2

**DEFENDANT GOCHA ALAN RAMIREZ'S MOTION FOR SUMMARY JUDGMENT
AND BRIEF IN SUPPORT THEREOF[1]**
==================================================

## I.    INTRODUCTION AND SUMMARY OF THE ARGUMENTS.

Plaintiff Lizelle Gonzales (f/k/a "Lizelle Herrera") was indicted on March 30, 2022, when the grand jury of Starr County found that she had intentionally caused the death of Jasiel Alessandro Herrera ("JAH") by a self-induced abortion at 19-20 weeks pregnant. Hospital staff where she sought treatment while the abortion was occurring advised her that abortion was now illegal in Texas and called law enforcement to report a violation of the "new law." Investigators from the Sheriff's Office investigated and submitted the investigation to the District Attorney's office. District Attorney Ramirez knew that the case involved a "dead baby" but not the details of the investigation. He directed Assistant District Attorney Alexandria Barrera to allow the grand jury to review the case. Plaintiff was indicted for murder and arrested on April 7, 2022.

A media frenzy ensued.

After Plaintiff's arrest was publicized, a local attorney sent DA Ramirez a screen shot of a section of the penal code appended to the very end of the homicide statute, which exempts a mother who causes the death of her unborn child from prosecution under that chapter. DA Ramirez immediately moved to dismiss the indictment.

Now, Plaintiff brings this civil rights case under 42 U.S.C. § 1983, accusing District Attorney Ramirez of conspiracy, malicious prosecution, and false arrest, claiming that he targeted her because she had an abortion. The undisputed facts show, however, that DA Ramirez *did not* investigate or direct anyone to investigate Plaintiff; *did not* direct anyone about what to present to the grand jury; *was not* present for the grand jury presentation; and *did not* participate in her arrest.

---

[1] Please note that the substantive portion of this MSJ falls within the 25 page limit provided by the Local Rules.

DA Ramirez asserted his entitlement to immunity in his Motion to Dismiss, but the Court was forced to accept as true Plaintiff's allegations. The Motion was denied and discovery commenced. Discovery revealed that not only does Plaintiff lack any personal knowledge of who investigated her or what the DA's role was leading up to the indictment, but also that the "facts" she alleged were rooted in wild canards fueled by bitter personal feuds and developed with very suspect antics. Discovery yielded no facts to support Plaintiff's claim that DA Ramirez conspired to target Plaintiff because she had an abortion. Rather, the sum of discovery is that DA Ramirez did not engage in any conduct other than approve of grand jury review and, consequently, he is entitled to absolute immunity. Alternatively, he is entitled to qualified immunity because he did not act to deprive Plaintiff of a clearly established right. Under either framework, DA Ramirez is entitled to judgment as a matter of law for Plaintiff's claims of malicious prosecution, false arrest, and conspiracy.

## II.    STATEMENT OF THE FACTS.

### A.    On September 1, 2021, Senate Bill 8 Takes Effect In Texas.

On September 1, 2021, Texas' Heartbeat Act—also known as Senate Bill 8 or S.B. 8—became effective, making it illegal for an abortion to be induced or performed in Texas by a physician where the physician has "detected a fetal heartbeat of the unborn child." Texas Health & Safety C. § 171.204. The law was immediately challenged, winding its way through the courts and receiving significant media coverage along the way. [2] *See Whole Woman's Health v. Jackson*

---

[2] *See, e.g.*, *Local pro-abortion advocates protest state enactment of state abortion ban*, Berenice Garcia, September 1, 2021, available at https://myrgv.com/local-news/2021/09/01/local-pro-abortion-advocates-protest-state-enactment-of-state-abortion-ban/; *Window of uncertainty as SB 8 turns Texas reproductive health care upside down*, Staff Writer, September 26, 2021, available at https://www.expressnews.com/news/local/article/Window-of-uncertainty-SB-8-turns-Texas-16486217.php; *Supreme Court issues ruling on Texas abortion law*, Aditi Sangal, Adrienne Vogt, Melissa Macaya and Melissa Mahtani, December 10, 2021, available at https://www.cnn.com/politics/live-news/supreme-court-texas-abortion-law/index.html;

*595 U.S. ----*, 141 S.Ct. 2494 (2021); *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021);

*Whole Woman's Health v. Jackson*, 23 F.4th 380, 389 (5th Cir. 2022).

**B.     On January 7, 2022, Plaintiff Attempted To Self-Induce An Abortion At 19-20 Weeks Of Pregnancy.**

With the public fight over Senate Bill 8 raging, Plaintiff went to Starr County Memorial

Hospital reporting abdominal pain from an attempted abortion on January 7, 2022. **Exs. A.4**

(SCMH records); **A.6** (Muniz Inv. pp. 1-2.). Plaintiff was between 19-20 weeks pregnant. Her

medical records note that, "Upon SVE by MD, 2 pills said to be cytotec[3] in an attempt to have an

abortion…Advised that abortions are illegal in TX." **Ex. A.4** (SCMH records).

Plaintiff's contractions were stopped at the hospital and Plaintiff was discharged on

January 8, 2022, at which time "the unborn child that was later classified as 'Boy Herrera' had a

steady heartbeat." **Exs. A.4-A.5** (SCMH Records; Rosa Inv. pp.1-2). Shortly after leaving the

hospital, Plaintiff returned to the hospital and doctors discovered that "Boy Herrera" no longer had

a heartbeat. **Ex. A.3** (Pl.'s Int. p. 9, 40, 42); **Ex. A.7** (Aguirre Inv. p. 5) After Plaintiff underwent

a C-section, Jasiel Alessandro Herrera's ("JAH") body was taken to the nursery and then cremated.

*Id.* (Pl.'s Int. p. 21); *see also* **A.6-A.7** (Muniz Inv. p. 1; Aguirre Inv. P. 6).

**C.     Nurse Martha Torres Reports Plaintiff To Law Enforcement.**

On January 11, 2022, Nurse Martha Torres, who tended to Plaintiff while she was at the

Hospital called the police to report what had happened because she was concerned about Texas'

"new law." **A.5, A.13** (Rosa Inv. p. 2; Rosa BWC). Because the Cyotec drug had been used at

Plaintiff's home in Starr County, Starr County Sheriff's Office was notified. **Ex. C** (Aguirre Dep.

---

[3] Cytotec is another name for the generic drug misoprostol. *See Planned Parenthood of Greater Tex. Surgical Health Svcs. v. Abbott*, 951 F. Supp. 891, 902 (W.D.T.X. 2013) (discussing Cytotec) (reversed on other grounds by *Planned Parenthood of Greater Tex. v. Abbott*, 748 F.3d 583 (5th Cir. 2014)).

169:5-171:1).  There was no agreement between the Sheriff's Office and Starr County Hospital to report abortions. **Exhs. B-I** (Muniz Dep.63:1-9, 77:3-6, 110:12-12, 176:12-14; Aguirre Dep. 167:9-168:5; L. Fuentes Dep. 154:19-155:6; R. Fuentes Dep. 93:20-94:3, 96:19-22, 97:4-8; Villarreal Dep. 211:8-11, 211:21-23; Barrera Dep. 81:6-16, 213:2-7; Ramirez Dep. 148:7-150:17). The Sheriff's office investigates all reports to determine whether a crime has occurred. ***Id.*** (L. Fuentes Dep. 202:12-17; R. Fuentes Dep. 68:2-23).

Nurse Torres reported to deputies that Plaintiff had been treated at the hospital and discharged and that the "baby was still alive" when she left. Nurse Torres stated that Plaintiff returned about an hour later with "pains again…and the baby died." Nurse Torres said she did not know if what had happened was "murder" because of the "new law"—Senate Bill 8. **Exhs. A.5, A.13** (Rosa Inv. p. 2; Rosa BWC); **Ex. B** (Muniz Dep. 66:19-67:5, 71:6-72:18). Deputy Rosa notified his chain of command, and the case was assigned to SCSO Investigator Muniz, who was the investigator in the office that day. **Ex. D** (L. Fuentes Dep. 50:8-20). Sergeant Rafael Aguirre went to the hospital and assisted Muniz with interviewing witnesses. **Ex. C** (Aguirre Dep. 61:10-63:2, 164:23-25 ). No one from the Hospital spoke to the District Attorney about Plaintiff's case. **Ex. I** (Ramirez Dep. 148:7-150:17).

### D.    Starr County Sheriff's Office Investigates But Never Discusses The Case With DA Ramirez.

There were questions amongst the SCSO investigators about the case, including whether JAH was legally an "individual" such that causing his death would be a criminal offense and how the changing law came into play. **Exs. C-D** (Aguirre Dep. 174:12-175:9;  L. Fuentes Dep. 61:2-12, 106:5-109:13). *See* Texas Penal C. § 19.02 (b)(1) ("A person commits [murder] if the person: [] intentionally or knowingly causes the death of an individual."). Captain Fuentes directed his

team to contact the District Attorney's office to resolve the question. **Ex. D** (L. Fuentes Dep. 188:2-189:1, 190:5-10).

At all relevant times, the attorneys in the District Attorney's office were ADA Alexandria Barrera, ADA Abel Villarreal, ADA Judy Solis, ADA Alfredo Garcia, and District Attorney Gocha Ramirez. On January 11, 2022, Investigator Muniz reached out to ADA Barrera to ask questions, but ADA Barrera was unavailable. **Exs. B, H** (Muniz Dep. 89:1-18; Barrera Dep. 86:9-88:23;). Members of the SCSO then reached out to Assistant District Attorney Abel Villarreal, who told them that he needed more information to determine whether there was a viable criminal offense. **Ex. G** (Villarreal Dep. 114:20-119:16). ADA Villarreal signed the grand jury subpoena for Plaintiff's medical records. **Exs. A.9-11** (GJ subpoenas).

When ADA Barrera returned Investigator Muniz's call, ADA Barrera understood that the investigators had already spoken to ADA Villarreal. **Ex. H** (Barrera Dep. 92:5-94:21). ADA Barrera confirmed during that call that an "individual" under the Texas Penal Code § 1.07 is "a human being who is alive, including an unborn child at every stage of gestation from fertilization until birth." **Exs. B-D, H** (Muniz Dep. 168:9-171:12, 196:21-197:1; Aguirre Dep. 173:20-174:5; Barrera Dep. 87:16-88:22, 92:5-94:21); *see also* Tex. Penal C. § 1.07.

At no time did anyone from the Sheriff's office communicate with District Attorney Ramirez about the case while it was being investigated. **Exs. B-D, I** (Muniz Dep. 57:23, 111:21-24, 162:4-14; Aguirre Dep. 162:7-12, 164:11-165:13, 166:7-9; L. Fuentes Dep. 210:19-21; R. Fuentes 105:6-8, 109:13-111:1, Ex. 36; Ramirez Dep. 163:18-20).

## E.    DA Ramirez Directs ADA Barrera To Let The Grand Jury Review The Case.

On February 1, 2022, District Attorney Ramirez discussed the case with ADA Barrera for the first time. District Attorney Ramirez's understanding of the case at that time was that it involved a "dead baby and drugs being used that resulted in the death of a baby." **Ex. I** (Ramirez

Dep. 184:10-15). The two discussed ADA Barrera submitting the case for grand jury review to determine whether a crime had been committed:

> Q. *So what did she -- what was your conversation about?*
> A. *About her presenting the case to the grand jury.*
> Q. *And what was the case?*
> A. *Ms. Herrera's case.*
> Q. *What was Ms. Herrera's case?*
> A. *It involved a dead baby. That's all I knew*
> ….
> A.  *My impression was that the baby was -- there was a dead baby, not that it was a fetus.*

**Exs. H-J** (Barrera Dep. 116:20-118:18; Ramirez Dep. 161-65, 209:1-214:19, 217:2-19, 219:14-16; Plf's Dep. Ex. 16, p. 85).

DA Ramirez did not discuss possible charges in Plaintiff's case—only that it should be reviewed by the grand jury. **Ex. I** (Ramirez Dep. 211:13-219:15). DA Ramirez spoke with ADA Barrera on one other occasion sometime in March, when ADA Barrera notified DA Ramirez that she was presenting the case to the grand jury on March 25, 2022. *Id.* (Ramirez Dep. 216:6-217:15). DA Ramirez reminded ADA Barrera that he would be in a grand jury in another county at that time. **Exs. I, N** (Ramirez Dep. 225:4-23; Moreno Aff.). DA Ramirez did not see Plaintiff's investigative file in advance of the grand jury presentation and does not have a policy requiring that ADA's allow him to review files before grand jury presentations. **Ex. F, G, I** (Solis Dep. 39:9-22; Villarreal Dep. 211:17-20; Ramirez Dep. 196:14-16). DA Ramirez did not instruct or direct ADA Barrera to lie or make misrepresentations to the grand jury. **Ex. H** (Barrera Dep. 212:2-213:22).

**F.    The Starr County Grand Jury Indicts Plaintiff And She Is Arrested On April 7, 2022.**

On March 25, 2022, ADA Barrera presented the case to the grand jury. **Exs. H-I** (Barrera Dep. 68:6-16; Ramirez Dep. 225:4-23, 238:2-7). DA Ramirez was in a different county presenting to the grand jury there when ADA Barrera presented Plaintiff's case to the grand jury in Starr County. **Exs. I, N** (Ramirez Dep. 225:4-23; Moreno Aff.).

On March 30, 2025, the grand jury foreman signed an indictment for Plaintiff "intentionally and knowingly caus[ing] the death of an individual J.A.H[.], by a self-induced abortion…." **Ex. A.1** (Indictment). On April 5, 2022, the capias was issued by the Deputy District Clerk and sent to the Sheriff's Office. **Ex. A.14** (capias); *see also* Tex. Code. Crim P. 23.03-.031 ("A capias shall be issued by the district clerk upon each indictment for felony presented, after bail has been set or denied by the judge of the court."). On April 7, 2022, Investigator Muniz and Sergeant Aguirre arrested Plaintiff. **Exs. B-C** (Muniz Dep. 103:4-109:8; Aguirre Dep. 148:3-7). DA Ramirez did not review the indictment, set the bond amount, or order the capias to be issued. **Ex. I** (Ramirez Dep. 226:19-228:13).

When Plaintiff was arrested, it set off a "firestorm" about abortion rights. Thereafter, DA Ramirez reviewed the full case file for the first time. *Id.* (Ramirez Depo. 230:14-233:12). Neither DA Ramirez nor anyone in the DA's Office had ever handled a case like Plaintiff's prior to January 2022 (or any time since). **Exs. F, H-I** (Solis Dep. 104:18-21, Barrera Dep. 225:25-226:5; Ramirez Dep. 197:8-16).

## G.    DA Ramierz Immediately Seeks Dismissal Of The Indictment After Learning About Penal Code § 19.06.

When the "firestorm," commenced DA Ramirez "picked up the file on Saturday, I believe it was April 9th, Saturday morning…And I started looking at the file. And as I was looking at the file, I started getting phone calls and messages that ultimately convinced me that I needed to dismiss the indictment." **Ex. I** (Ramirez Dep. 236:10-25, Ex. 33-36).

Specifically, on April 9, 2022, at 4:32 p.m., DA Ramirez received a text from Attorney Brandy Voss asking "*Do you have time for a quick call? It's Brandy Wingate Voss….Kind of urgent.*" **Ex. K**. (Voss Text Messages). At 5:18 p.m., Voss sent DA Ramirez a screen shot of Section 19.06. *Id*. This was the first time that DA Ramirez was aware of the full facts of the case

and of Section 19.06, which exempts a mother who causes the death of her unborn child from prosecution. DA Ramirez told Voss, "*Thank you for your call. I hardly know you but I am surely indebted to you.*" ***Id***. After discussing Section 19.06 with his team for the first time, DA Ramirez decided to issue a press release indicating that the charges should not have been brought and that he would seek immediate dismissal. **Ex. G, I** (Villarreal Dep., Ex. 4; Ramirez Dep. 248:7-18, 236:18-25).

On April 9, 2022, two days after her arrest, Plaintiff made the bond that was set by the judge and was released from jail. **Ex. A.12** (Inmate Release Form). On Sunday, April 10, 2022, DA Ramirez met with Plaintiff, her attorney, and her parents. Plaintiff's defense attorney never raised Section 19.06. **Ex. H** (Barrera Dep. 214:2-215:1). DA Ramirez apologized to Plaintiff and told her that "it had been a mistake. It had fallen out of his hands, and he didn't know what happened…[and] He was out of town, and he didn't know what happened…." **Ex. I-J** (Ramirez Dep. 239:2-240:18; Plf.'s Dep. 18:7-25); *see also* **Exs. I, K** (Ramirez Dep., Exs. 33-36; Voss and Garza Text Messages). On April 11, 2025, District Attorney Ramirez filed a Motion to Dismiss Plaintiff's indictment. **Exhibit A.2** (MTD).

On April 12, 2022, DA Ramirez sent a text message to Becky Rocha stating that "I should never have indicted her. Because its not Murder in Texas. Actually I wasn't even in town when one of my assistants presented the case. But I'm the boss so I need to take the fallout. I'm not going to blame my assistant." **Ex. I** (Ramirez Dep. Ex. 37).

**H.    An SMU Professor With No Ties To The Case Files A State Bar Grievance Against DA Ramirez And He Ultimately Agrees To A Suspension.**

On April 13, 2022, SMU Professor Joanna Grossman,[4] who knew neither Plaintiff nor DA Ramirez, filed a State Bar Grievance against DA Ramirez. Grossman's bar grievance claimed that "Ms. Herrera was maliciously prosecuted by Mr. Ramirez either for political reasons or unknown personal reasons." **Ex. N** (SBOT grievance, pp. 7-10). Despite asserting that DA Ramirez maliciously prosecuted Plaintiff, Grossman later "hypothesized it could have been an error on the district attorney's behalf misunderstanding[5] how the new law affects abortion…." *Id.*

Eventually, DA Ramirez agreed to sign off on a probated suspension from the State Bar based on his interpretation of the language therein, hoping that the District Attorney's office could resume focusing on its work. **Ex. I** (Ramirez Dep. 263:2-274:11). District Attorney Ramirez's suspension was highly publicized and after hearing of the suspension, Plaintiff brought the instant suit. **Ex. J** (Plf.'s Dep. 8:21-9:9).

**I.    DA Ramirez's Motion to Dismiss and Discovery.**

DA Ramirez filed a Motion to Dismiss based on immunity on May 1, 2024. Doc. 13. Relying on Plaintiff's allegations in the First Amended Complaint, the Court denied the motion without prejudice. Doc. 41.1. The parties were ordered to engage in discovery that was to be limited to the question of immunity. *Id*.

Since that order, Plaintiff has taken the depositions of DA Ramirez, ADA Barrera, ADA Villareal, ADA Solis, Sheriff Fuentes, Captain Fuentes, Investigator Aguirre, and Investigator

---

[4] Grossman's career has centered on women's rights. For instance, Grossman has authored articles like *The Most Depressing Advent Calendar: 25 Ways that Texas Endangers Mothers and Children*, wherein she criticizes "Texas GOP's 'pro-life' war on abortion" and calls conservatives that run the state "misogynists." Grossman, Joanna, for Verdict-Legal Analysis and Commentary from Justia, January 17, 2025, available at https://verdict.justia.com/2025/01/17/the-most-depressing-advent-calendar-25-ways-that-texas-endangers-mothers-and-children.

[5] *See also* Sullum, Jacob, "Lawyer Think 'Gross Negligence' Explains an Unlawful Murder Charge Based on a 'Self Induced Abortion,'" for Reason, April 13, 2022, available at https://reason.com/2022/04/13/local-lawyers-think-gross-negligence-explains-an-unlawful-murder-charge-based-on-a-self-induced-abortion/.

Muniz. Plaintiff has received the District Attorney's incoming and outgoing emails during the relevant time period, as well as text messages and chats from the District Attorney's personal cell phone, which were extracted by a third-party forensic company.

Defendants have taken Plaintiff's deposition and the depositions of Gloria Gonzales, and witnesses whom Plaintiff identified in her disclosures as having knowledge of the DA's "investigation, arrest, and/or prosecution of Plaintiff." Defendants have also received affidavits from two attorneys identified by Plaintiff as witnesses who supposedly relayed information to her about DA Ramirez's involvement in the criminal case. Both attorneys deny Plaintiff's claims that they knew anything about Plaintiff's investigation or prosecution. *C.f.* **Ex. J** (Plf.'s Dep. 59:3-60:16) *with* **Exs. L-M** (Garza and Garcia-Vela Aff.).

**J.    Plaintiff Admits During Discovery That She Has No Actual Knowledge Of Any Of The DA's Actions In Her Case.**

During her deposition, Plaintiff admitted that she did not know of any facts directly supporting the allegations contained her First Amended Complaint, including the facts she alleged about DA Ramirez personally investigating her and lying to the grand jury, which were specifically alleged to avoid a Rule 12 dismissal based on absolute immunity.

**1.    Plaintiff has no knowledge of the DA taking investigatory actions.**

First, despite claiming that DA Ramirez participated in investigating her, Plaintiff testified that she has no knowledge of any action the District Attorney took in the criminal investigation conducted by the Starr County Sheriff's Office:

> **Q.** *And you don't know if [Investigator Muniz] ever spoke to Mr. Ramirez directly?*
> **A.** *I don't know.*

….

> **Q.** *And as you sit here today, can you describe any actions that you believe Mr. Ramirez takes in these investigations?*
> **A**. *No.*

…

**Q.** *Do you know whether he ever had any communications with any investigators in the sheriff's office about your case?*
**A.** *No.*

….

**Q.** *And you also don't know whether anybody at the hospital contacted Defendant Ramirez directly about your case, do you?*
**A.** *No.*

**Ex. J.** (Plf.'s Dep. 40:2-13, 41:6-21, 80:12-15); *see also id.* (Plf.'s Dep. 84:24-85:25).

### 2. Plaintiff has no knowledge of the DA directing the Sheriff's Office investigation or working with investigators.

Second, despite claiming that DA Ramirez directed the investigation conducted by Starr

County Sheriff's Office, Plaintiff testified that she has no knowledge of any action taken by the

DA to direct the Starr County Sheriff's Office investigators on how to perform their investigation:

Q. *Do you have any reason to believe that District Attorney Ramirez directed the investigators to investigate you for murder?*
A. *No, no.*

**….**

Q. *You don't know whether the -- the district attorney, the assistant district attorney, investigators in the DA's office, or the sheriff's office, or the sheriff actually worked together on case, do you?*
A. *No, I don't.*

*Id.* (Plf.'s Dep. 43:19-22, 69:12-17); *see also **id**.* (Plf.'s Dep. 43:6-10, 65:25-68:16).

### 3. Plaintiff has no knowledge of the DA's direction to ADA Barrera.

Third, despite claiming in her lawsuit that the District Attorney directed ADA Barrera to

mislead or lie to the grand jury, Plaintiff testified that she has no knowledge of what, if any,

direction DA Ramirez gave to ADA Barrera:

Q. *[A]nd you don't know if [Ramirez and Barrera] had any conversations before it went to the grand jury, do you?*
A. *No.*

….

Q. *...Do you know of specifically anything that Defendant Ramirez did to direct Ms. Barrera to provide false information to the grand jury?*
A. *Specifically, no. I mean, other than his sanction -- than his sanction, no.*

….

Q. *Do you have any information about what it is you believe he did to direct Ms. Barrera in concealing that exception?*

*A. Not that I know of.*
*Q. In fact, do you know whether he talked to her at all about the case before it went to the grand jury?*
*A. No.*
….

*Q. ...Do you know if Defendant Ramirez required Assistant District Attorney Barrera to seek his approval prior to going to the grand jury on your case?*
*A. I wouldn't be able to tell you yes or no. Like I wouldn't know.*
**Id.** (Plf.'s Dep. 50:15-51:9, 73:9-74:17, 76:6-8).

### 4. Plaintiff has no knowledge of what was presented to the grand jury.

Fourth, despite claiming in her lawsuit that DA Ramirez "made misrepresentations of the

facts and the law," to the grand jury, Plaintiff has no knowledge of what was actually presented to

the grand jury:

*Q. You don't know what was said by Assistant District Attorney Barrera to the grand jury, do you?*
*A. No.*
….

**Q**: *Do you believe District Attorney Ramirez made any presentations to the grand jury about your case?*
**A.** *Not that I know of.*
….

**A.** *I don't know what was taken to the grand jury.*

**Id.** (Plf.'s Dep. 34:10-35:11, 35:9-15, 36:4-17).

### 5. Plaintiff has no knowledge of the DA taking actions to "conspire" with the other Defendants.

Fifth, despite claiming in her lawsuit that DA Ramirez conspired to prosecute her, Plaintiff

testified that she did not know whether that actually occurred; she only knew that the DA's office

and Sheriff's office have made statements about working , generally:

*Q. So you don't have any reason to believe that they were conspiring to do something in front of the grand jury related to your case, do you*?
*A. Well, they were -- I know that they were working together during the investigation... I mentioned prior to that -- I know that somewhere I mentioned that they -- they publically speak on working together.*
*Q. Did they ever publically speak about working together on your case?*
*A. No.*

….

    **Q.** *Do you know whether [District Attorney Ramirez] ever talked to Sheriff Fuentes about your case?*
    **A.** *No.*
*Id.* (Plf.'s Dep. 41:6-21, 47:1-23).

### 6. Plaintiff has no knowledge of whether the DA knew there was an exception to murder in the penal code that applied to her.

Finally, despite repeatedly claiming that before her indictment, DA Ramirez was aware of the penal code exception for mothers who cause the death of their unborn child, Plaintiff testified that she had no knowledge of actions of the District Attorney supporting her claim. She also admitted that her accusation was based on nothing more than a conversation she had with Attorney Marty Garcia-Vela (not an employee of the DA's office), who supposedly heard from Attorney Hilda Garza (also not an employee of the DA's office), who heard from some unknown person in the DA's office, that DA Ramirez knew about the exception in the penal code before the indictment. Both Garcia-Vela and Garza, however, deny that they knew anything about Plaintiff's case. **Exhs. J, L-M** (Plf.'s Dep. 22:17-22, 24:5-11; Garcia-Vela Aff.; Garza Aff.).

## IV.    ARGUMENTS AND AUTHORITIES

Plaintiff brings claims under Section 1983 against District Attorney Ramirez for: (1) Malicious Prosecution in violation of the Fourteenth Amendment (2) False Arrest in violation of the Fourth and Fourteenth Amendments and (3) Conspiracy. Doc. 7, ¶¶ 7.1-7.19, 7.31-7.36. Because there is no genuine issue of material fact as to whether DA Ramirez is entitled to immunity, the Court should render judgment in his favor and dismiss Plaintiff's claims against him with prejudice.

### A. Summary Judgment Standard.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Parties seeking summary judgment bear the initial burden of informing the Court of the basis for the motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, which the party believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Once the movant fulfills the burden set forth under *Celotex*, the burden shifts to the non-movant to show that summary judgment should not be granted. FED. R. CIV. P. 56. The party opposing a properly support motion for summary judgment may not rest on mere allegation or denial of pleadings but must set forth specific fact showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

"A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted). Unsubstantiated assertions that a fact issue exists will not suffice. *Krim v. Banc Texas Group, Inc.*, 989 F.3d 1435, 1442 (5th Cir. 1993).

Where, as here, the Defendant asserts immunity, the usual summary judgment framework is altered and the burden of proof shifts to the plaintiff to show that the immunity defense is not available. *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020).

### B.    Immunity Must Be Decided At The Earliest Possible Opportunity.

The Supreme Court has "several times instructed" that "[i]immunity-related issues…should be decided at the earliest opportunity." *Osborne v. Haley*, 549 U.S. 225, 253

(2007); *citing Hunter v. Bryant*, 502 U.S. 224, 228 (1991) ("Immunity ordinarily should be decided by the court long before trial."); *Anderson v. Creighton*, 483 U.S. 635, 646, n. 6 (1987) ("[I]immunity questions should be resolved at the earliest possible stage of litigation.").

Where, as here, the plaintiff makes demonstrably false allegations in her complaint, which are successfully designed to avoid a Rule 12 Motion based on immunity, a defendant has no choice except to be subject to discovery and reassert immunity through a summary judgment motion. *See Carswell v. Camp*, 54 F. 307, 312 (5th Cir. 2022). This process, should, however, be limited and focused solely on "factual disputes relevant to whether [immunity] applies. *Id.* "The basic thrust of the []immunity doctrine is to free officials from the concerns of litigation, including avoidance of disruptive discovery." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009)).

In the instant case, Plaintiff's discovery demands have been the very sort of "disruptive discovery" forbidden by long-standing Supreme Court dictates. Over Defendants' objections to the scope, Plaintiff has obtained District Attorney Ramirez's incoming and outgoing emails, District Attorney Ramirez's text messages and chats from his personal cell phone, the District Attorney's deposition, and the depositions of his staff—all despite Plaintiff admitting she lacked a factual basis for her accusations against DA Ramirez. No further discovery should be permitted because DA Ramirez is entitled to immunity, and this motion is ripe for determination.

**C.    DA Ramirez Is Entitled To Absolute Immunity From Plaintiff's Malicious Prosecution And False Arrest Claims; Even If He Was Not, He Is Entitled To Qualified Immunity.**

Malicious prosecution and false arrest claims brought against prosecutors are subject to absolute immunity, which "shelters prosecutors even when they act 'maliciously, wantonly or negligently.'" *Loupe v. O'Bannon*, 824 F.3d 534, 539-40 (5th Cir. 2016) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976) (additional citations omitted).

Here, both Plaintiff's malicious prosecution and false arrest claims rest on Plaintiff's accusations that the District Attorney investigated Plaintiff, directed the investigation of Plaintiff, lied to the grand jury and participated in Plaintiff's arrest—claims for which she admitted in her deposition she lacks a factual basis. Doc. 7, 6.3-6.6; *see also* Fed. R. Civ. P. 11(b).

It is necessary, then, to start the analysis by identifying the actions *actually* taken by DA Ramirez. The undisputed evidence shows that DA Ramirez did not initiate the investigation of Plaintiff—that occurred because hospital staff were concerned about the "new law" implications. **Exs. A.5, A.13** (Rosa Inv. p. 2; Rosa BWC). DA Ramirez did not investigate Plaintiff; every investigating officer unequivocally testified that they had never spoken with or received any communication from DA Ramirez pertaining to the investigation of Plaintiff. **Exhs. B-D, I** (Muniz Dep. 57:23, 111:21-24, 162:4-14; Aguirre Dep. 162:7-12, 164:11-165:13, 166:7-9; L. Fuentes Dep. 210:19-21; R. Fuentes 105:6-8, 109:13-111:1, Ex. 36; Ramirez Dep. 163:18-20). DA Ramirez did not present Plaintiff's case to the grand jury. He was not even in Starr County when the presentation occurred. **Exs. H-I , N**(Barrera Dep. 68:6-16; Ramirez Dep. 225:4-23, 238:2-7; Moreno Aff.).

DA Ramirez also did not direct ADA Barrera about what she should present to the grand jury, much less that she should present "false information" and "conceal the plain statutory language contained within Texas Penal Code 19.06 from the grand jury." **Ex. H** (Barrera Dep. 212:2-213:22). DA Ramirez did not participate in Plaintiff's arrest or conspire to have her arrested. **Exhs. B-I** (Muniz Dep.63:1-9, 77:3-6, 110:12-12, 176:12-14; Aguirre Dep. 167:9-168:5; L. Fuentes Dep. 154:19-155:6; R. Fuentes Dep. 93:20-94:3, 96:19-22, 97:4-8; Villarreal Dep. 211:8-11, 211:21-23; Barrera Dep. 81:6-16, 213:2-7; Ramirez Dep. 148:7-150:17). DA Ramirez was unaware of the arrest before it happened, and he never spoke to the Sheriff or any Sheriff's

investigators regarding Plaintiff's arrest before it occurred. **Exs. B-D, I** (Muniz Dep. 57:23, 111:21-24, 162:4-14; Aguirre Dep. 162:7-12, 164:11-165:13, 166:7-9; L. Fuentes Dep. 210:19-21; R. Fuentes 105:6-8, 109:13-111:1, Ex. 36; Ramirez Dep. 163:18-20).

    **1. Vicarious Liability Is Not Cognizable Under Section 1983.**

Since the evidence shows that DA Ramirez did nothing more than approve of his subordinate, ADA Barrera, using the grand jury process, it bears noting that vicarious liability is not a viable theory of liability. It is "[w]ell settled Section 1983 jurisprudence establishes that supervisory officials cannot be held vicariously liable for their subordinates' actions. *Mouille v. City of Live Oak, Tex*., 977 F.2d 924, 929 (5th Cir. 1992) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 691–95 (1978). Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injury. *Mouille*, 977 F.2d at 929 (additional citations omitted).

To the extent Plaintiff tries to latch on to District Attorney Ramirez's oversight of ADA Barrera as a basis for liability, her claim must fail. Personal involvement is necessary and there can be no liability for DA Ramirez based on his mere oversight of another. *Mouille*, 977 F.2d at 929.

    **2. The DA's Action Of Directing The ADA To Present Facts To A Grand Jury Is Shielded By Absolute Immunity.**

When the facts are distilled from the accusations in Plaintiff's First Complaint, what remains is undisputed evidence that DA Ramirez did nothing more than engage in two brief discussions with Assistant District Attorney Barrera about her presenting the case to the grand jury. **Exs. H-J, N** (Barrera Dep. 116:20-118:18, 212:2-213:22; Ramirez Dep. 161-65, 209:1-214:19, 216:6-217:15, 217:2-19, 219:14-16, 225:4-23; Plf's Dep. Ex. 16, p. 85; Moreno Aff.).

Thus, this Court must decide whether the District Attorney has absolute immunity for directing ADA Barrera to use the grand jury process.

A prosecutor has absolute immunity from suit under Section 1983 when his actions are "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. One of the most integral aspects of the judicial phase is the preparation and presentation of a case to the grand jury. *Morrison v. City of Baton Rouge*, 761 F.2d 242, 247-48 (5th Cir. 1985) (citing with approval *Gray v. Bell*, 712 F.2d 490, 502 & n. 37 (D.C. Cir. 1983) ("We regard it as settled that presentation of evidence to an indicting Grand Jury falls within the scope of the advocatory prosecutorial conduct protected by *Imbler*.").

DA Ramirez's direction to present to the grand jury fits squarely within the seminal case on the topic—*Imbler v. Pachtman*—wherein the Court discussed a malicious prosecution claim in the context of the prosecutor supposedly seeking a grand jury indictment by the willful introduction of false and misleading evidence:

> In *Yaselli v. Goff*, 12 F.2d 396 (1926), the claim was that the defendant, a Special Assistant to the Attorney General of the United States, maliciously and without probable cause procured plaintiff's grand jury indictment by the willful introduction of false and misleading evidence . . . The District Court dismissed the complaint, and the Court of Appeals affirmed . . . After briefing and oral argument, this Court affirmed the Court of Appeals in a per curiam opinion. *Yaselli v. Goff*, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927).

*Imbler*, 424 U.S. at 422.

The Fifth Circuit echoed this in *Morrison v. City of Baton Rouge*, which is useful here:

> We conclude, however, that, in presenting evidence to a grand jury convened to consider whether to indict the police officer who shot Morrison, [the prosecutor] was fulfilling a function to which *Imbler* immunity applies . . . . Moreover, in *Cook v. Houston Post*, 616 F.2d 791, 793 (5th Cir. 1980), we held that certain investigative activity prior to the presentation of a case to the grand jury, such as interviewing witnesses who will appear before the grand jury, falls "within the *Imbler* shelter." As summarized above, the only specific allegations against Brown concern the manner of his presentation of evidence to the grand jury. As noted, **the cases establish that presentation of evidence to a grand**

**jury in a manner calculated to obtain an indictment, even when maliciously, wantonly or negligently accomplished, is immunized by *Imbler*.**

*Morrison*, 761 F.2d at 247-48 (additional citations omitted).

Standing opposite of the *Imbler* line of cases are those cases where the Fifth Circuit has found that a prosecutor's actions are not integral to his functions as an advocate. Examples include where a prosecutor manufactures evidence and makes false statements to the press regarding the criminal prosecution, *see Buckley v. Fitzsimmons,* 509 U.S. 259, 274, 278 (1993); or participates in an on-scene search and seizure of evidence, *see Hoog-Watson v. Guadalupe Cnty.*, 591 F.3d 431 (5th Cir. 2009); or acts as the complaining witness in a warrant application, *see Kalina v. Fletcher*, 522 U.S. 118, 130-31 (1997); or issues fake subpoenas to compel witness testimony, *see Singleton v. Cannizzaro*, 956 F.3d 773, 782-83 (5th Cir. 2020).

*Terwilliger v. Reyna* is another example. , the plaintiffs alleged that District Attorney Reyna "was the driving force behind the mass arrests" of bikers and instructed arresting officers to use a form affidavit and arrest anyone in bikers' colors. *Terwilliger v. Reyna*, 4 F.4[th] 270, 279-80 (5th Cir. 2021). The Fifth Circuit noted that if DA Reyna had merely been "supplying legal advice based on the investigators' facts" his actions "would fall comfortably within the protection of absolute immunity." *Id.* at 280 (citing *Spivey v. Robertson,* 197 F.3d 772, 776 (5th Cir. 1999) (additional citations omitted). The Court noted that even if DA Reyna had "involved himself in the decision to arrest by informing Chief Stroman that there was 'sufficient probable cause to arrest any biker who was present and appeared by virtue of clothing or personal effects to be affiliated with the Bandidos or Cossacks,'" DA Reyna would have been entitled to absolute immunity. *Id.*

The Fifth Circuit found that Reyna was not entitled to absolute immunity, however, because supplying legal advice to investigators and involving himself in the arrest of bikers was not the sum of his actions. *Id*. DA Reyna also:

- Was present at the scene 'investigating the shooting' and 'publicly acknowledged that he took the unusual step of assisting law enforcement and was involved in the actual investigation of the incident.'"
- Investigated the scene within hours of the incident, took photographs of the scene, reviewed information as it became known.
- Was continuously updated on May 17 as to the status of the investigation.
- Had access to video footage corroborative of law enforcement interviews that revealed many COC attendees, including many of those arrested, had no connection to the violence or parties involved in the violence.

*Id*. at 280.

The undisputed facts here are antithetical to the line of cases like *Terwilliger* where a prosecutor was denied absolute immunity. Rather, *Imbler* and its progeny controls. As the caselaw makes clear, the act of utilizing the grand jury—even when done negligently, mistakenly, or maliciously—is protected by absolute immunity. DA Ramirez did not present the case; he merely approved of grand jury review. He did not direct ADA Barrera to lie or misrepresent the facts; indeed, the grand jury indicted Plaintiff for causing the death of JAH by abortion, which is precisely what occurred. **A.1** (Indictment). The oversight pertained to a section of the penal code that the DA had never been confronted with prior to Plaintiff's case and that he did not immediately identify as an exception to homicide.

Because the undisputed facts show that DA Ramirez did not take any steps that would deprive him of absolute immunity, like investigating Plaintiff or stepping in as a witness against Plaintiff, or issuing an arrest warrant for Plaintiff, the Court should find that DA Ramirez is entitled to absolute immunity from Plaintiff's malicious prosecution and false arrest claims.

**3. Even If Absolute Immunity Did Not Act As A Complete Bar To Plaintiff's Claims, At Worst, The DA's Actions Were Negligent, Which Is Insufficient To Overcome Qualified Immunity.**

Absolute immunity bars Plaintiff's malicious prosecution and false arrest claims against DA Ramirez. But even if it did not, he is entitled to qualified immunity. As this Court has explained, "The doctrine [of qualified immunity] provides government officials 'breathing room

to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law.'" *Baker v. Sebastian*, Civil Action No. 4:22-CV-03103, 2023 WL 6393886, at *3 (S.D.T.X. Sept. 30, 2023) (citing *Crostley v. Lamar Cnty.*, 717 F.3d 410, 422 (5th Cir. 2013) (additional citations omitted); *see also Daniels v Williams*, 474 U.S. 327 (1986) and *Davidson v Cannon*, 474 U.S. 344 (1986) (negligence is not actionable under Section 1983)(negligence is not actionable under Section 1983).

At best, this case is about negligence, which is insufficient to overcome qualified immunity. An appropriate starting point for the analysis is determining whether DA Ramirez's actions violated a constitutional right and if so, was the right clearly established at the time of challenged actions. *Garcia*, 957 F.3d at 600 (additional citations omitted). Plaintiff carries the burden to that the right was clearly established. *Id*.

## D.    Malicious Prosecution

On April 4, 2022, the Supreme Court held that litigants may bring a Fourth Amendment malicious prosecution claim under § 1983. *Thompson v. Clark*, ⎯⎯ U.S. ⎯⎯, 142 S. Ct. 1332, 1337, 212 L.Ed.2d 382 (2022). There was not a clearly established right to be free from malicious prosecution in the Fifth Circuit between December 5, 2003, when the Fifth Circuit decided *Castellano v. Fragozo* and April 4, 2022, when the Supreme Court decided *Thompson v. Clark*. *Guerra v. Castillo*, 82 F.4th 278, 288-89 (5th Cir. 2023). The Fifth Circuit has recognized that a pre-*Thompson* malicious prosecution claim has to be dismissed based on qualified immunity "because this court's caselaw explicitly disclaimed the existence of a constitutional claim for malicious prosecution at the time of [plaintiff's] alleged conduct in 2018 and 2019 [i.e., before *Thompson v. Clark*, 596 U.S. 36 (2022)]." *Bledsoe v. Willis*, No. 23-30238, 2023 WL 8184814, at *6 (5th Cir. 2023). Here, the only actions the District Attorney took occurred before the grand jury

indicted Plaintiff, thus, prior to *Thompson*. Thus, based on the Fifth Circuit precedent, the District Attorney is entitled to qualified immunity against Plaintiff's malicious prosecution claim.

If, *arguendo*, Plaintiff's malicious prosecution claim were viable despite the DA's actions occurring pre-*Thompson*, the Fifth Circuit has instructed that a claim of malicious prosecution requires that the proceedings were initiated with malice. *Armstrong v. Ashley*, 60 F.4th 262, 278–79 (5th Cir. 2023) (citation and quotation omitted). Malice is demonstrated where there is evidence that the criminal case was initiated without probable cause and for a purpose other than bringing the defendant to justice. *Id.* at 278 (citing *Thompson*).

Plaintiff's malicious prosecution claim falters on the element of malice. There is no evidence that the District Attorney approved of ADA Barrera's presenting the case to the grand jury "for a purpose other than bringing the defendant to justice." Plaintiff makes no more than a conclusory assertion that DA Ramirez acted "with malice and with intentional disregard for Plaintiff's constitutional rights for which Plaintiff is entitled to punitive damages." Doc. 7, ¶ 9.3.

The undisputed facts show that DA Ramirez did not review the file until after Plaintiff was arrested and the "firestorm" of media attention ensued. **Ex. I** (Ramirez Dep. 236:10-25, Ex. 33-36). And the evidence shows that DA Ramirez was alerted to Section 19.06 *after* Plaintiff's indictment and arrest by Attorney Brandy Voss. **Ex. K**. Not even Plaintiff's criminal defense lawyer raised the issue of Section 19.06 when she was arrested. **Ex. H** (Barrera Dep. 214:2-215:1)

Plaintiff's was an unprecedented case for District Attorney Ramirez, and one that began in the middle of a fight over a Texas law that does, in fact, make abortion illegal. There is absolutely no evidence that DA Ramirez knew the details of JAH's death and knew of Section 19.06 and directed ADA Barrera to let the grand jury review the case nonetheless. There is no evidence of

malice; thus, no evidence that DA Ramirez's actions caused a constitutional deprivation of a clearly established right.

**E.    False Arrest**

Turning to the false arrest claim and qualified immunity, to establish the existence of a constitutional violation, plaintiff must show that the District Attorney caused her to be arrested and could not have reasonably believed that he had probable cause to arrest her for any crime. *Green v. Thomas*, 129 F.4th 877, 886-87 (5th Cir. 2025).

But, where, as here, the "facts supporting an arrest are placed before an independent intermediary such as a … grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Wilson v. Stroman*, 33 F.4th 202, 208 (5th Cir. 2022) (additional citations omitted). "Thus, a properly secured arrest warrant or grand jury indictment will shield a defendant who has committed or initiated a false arrest. *Wilson*, 33 F.4th at 208 (quoting *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 553-54 (5th Cir. 2016)). The caveat is that "the intermediary must be truly independent. Thus, 'the initiating party may be liable for false arrest if the plaintiff shows that 'the deliberations of that intermediary were in some way tainted by the actions of the defendant.'" *Wilson*, 33 F.4th at 208 (quoting *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009)) (additional citations omitted).

This "taint exception" to the independent intermediary doctrine, however, is only triggered where the defendant actually participates in preparation of the complained-of charging instrument. *See Terwilliger*, 4 F.4th at 283-84; *Melton v. Phillips*, 875 F.3d 256, 263 (5th Cir. 2017) (holding that "an officer must have assisted in the preparation of, or otherwise presented or signed a warrant application in order to be subject to liability under *Franks*")

Here, the undisputed evidence shows that DA Ramirez did not participate in the preparation of any materials that were presented to the grand jury, and he was out of town when the

presentation occurred. Absent some evidence that he participated in the preparation of the materials that went before the grand jury, he is shielded from *Franks* liability for Plaintiff's false arrest claim. *Id.* Even if he had participated in the preparation of the grand jury presentation, which he clearly did not, absent evidence that DA Ramirez directed ADA Barrera to intentionally mislead the grand jury in order to secure Plaintiff's arrest, DA Ramirez is insulated by the independent intermediary doctrine. *Wilson*, 33 F.4th at 212 (*Franks* and *Malley* claims require evidence that grand jury has been intentionally misled). Additionally, there must be some facts establishing that the District Attorney initiated the false arrest, which are simply not present.

In sum, DA Ramirez is entitled to qualified immunity against Plaintiff's malicious prosecution and false arrest claims.

### F.    Plaintiff's Conspiracy Claim Has Absolutely No Evidentiary Basis.

As stated *supra*, there is no evidence of conspiracy between the District Attorney, ADA Barrera, Sheriff Fuentes and Starr County Memorial Hospital. "To support a conspiracy claim under § 1983, the plaintiff must allege facts that suggest "an agreement between the ... defendants to commit an illegal act" and "an actual deprivation of constitutional rights." *Terwilliger*, 4 F.4th at 285 (quoting *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994)).

Here, Plaintiff admitted that she was unaware of any actions taken by any defendants in advance of a conspiracy to prosecute her for having an abortion. She heard rumors and nothing more. Every member of the District Attorney's office and Sheriff's Office unequivocally denied having an agreement with the hospital to investigate or prosecute "abortion cases." **Exhs. B-I** (Muniz Dep.63:1-9, 77:3-6, 110:12-12, 176:12-14; Aguirre Dep. 167:9-168:5; L. Fuentes Dep. 154:19-155:6; R. Fuentes Dep. 93:20-94:3, 96:19-22, 97:4-8; Villarreal Dep. 211:8-11, 211:21-23; Barrera Dep. 81:6-16, 213:2-7; Ramirez Dep. 148:7-150:17).

Plaintiff's baseless conspiracy theory fails.

Defendant Gocha Ramirez' Motion for Summary Judgment
And Assertion of Absolute Immunity                                                                 -24-

**G.**    **Plaintiff's Fourteenth Amendment Claims Must Be Dismissed.**

Finally, Plaintiff's malicious prosecution and unlawful arrest claims are proper under the Fourth Amendment, not the Fourteenth Amendment. As the Fifth Circuit has explained, however, "the Supreme Court did not approve a substantive due process claim arising from malicious prosecution, *Albright v. Oliver*, 510 U.S. 266 (1994), and no subsequent decision of that Court or this court has rendered such a claim cognizable…." *Winfrey v. Johnson*, 766 F. App'x 66, 72 (5th Cir. 2019). The same is true of Plaintiff's unlawful arrest claim. *See Zimmerman v. Cutler*, 657 F. App'x 340, 345 (5th Cir. 2016) ("Zimmerman's unlawful arrest claim must be analyzed under the Fourth Amendment, not the Fourteenth Amendment."). To the extent that the Court permits the claims to advance under the Fourteenth Amendment, however, the analysis for both claims is the same as under the Fourth Amendment and, as with the Fourth Amendment claims, barred by immunity.

**CONCLUSION AND PRAYER**

Therefore, Defendant Ramirez respectfully request that the Court find he is entitled to absolute immunity for the claims alleged in Plaintiff's Amended Complaint and dismiss them with prejudice. To the extent necessary, should the Court determine that absolute immunity does not apply, Defendant Ramirez submits that he is entitled to qualified immunity and the claims against him should be dismissed. Finally, Defendants respectfully ask that the Court stay discover pending the determination of immunity for the reasons stated by the Fifth Circuit in *Carswell v. Camp*, 54 F.4[th] 307 (5th Cir. 2022). Defendants pray for any other relief to which they are justly entitled.

SIGNED on the 1st day of JULY 2025.

Respectfully submitted,

*Kelly R. Albin*

Kelly R. Albin
State Bar No. 24086079

So. Dist. ID No. 3792304
kralbin@rampagelaw.com

By:     *Ricardo J. Navarro*
RICARDO J. NAVARRO
State Bar No. 14829100
So. Dist. Id No. 5953
rjnavarro@rampagelaw.com

**DENTON NAVARRO RODRIGUEZ**
 **BERNAL SANTEE & ZECH, P.C.**
549 N. Egret Bay, Suite 200
League City, Texas 77573
832- 632-2102
832-632-2132 (fax)

**ATTORNEYS FOR DEFENDANT**
**GOCHA ALLEN RAMIREZ**

## CERTIFICATE OF SERVICE

I certify that a true copy of this document has been served in accordance with one or more of the authorized methods for service of process contained in the Federal Rules of Civil Procedure on the persons or parties identified below on this the 1st day of July 2025.

Ida Cecilia Garza                                    **Via E-Filing Notification**
Veronica Sepulveda Martinez                 **Via E-Filing Notification**
GARZA MARTINEZ, PLLC
202 E. Sprague Street
Edinburg, TX 78539
COUNSEL FOR PLAINTIFFS

By:     *Kelly R. Albin*
KELLY R. ALBIN
RICARDO J. NAVARRO