IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | | |
|---|---|---|
| LIZELLE GONZALEZ<br>Plaintiff<br><br>VS.<br><br>GOCHA ALLEN RAMIREZ,<br>ALEXANDRIA LYNN BARRERA,<br>RENE FUENTES, and STARR<br>COUNTY, TEXAS<br>Defendants | )(<br>)(<br>)(<br>)(<br>)(<br>)(<br>)(<br>)(<br>)(<br>)( | CIVIL ACTION NO.<br>7:24-cv-00132 |

ORAL AND VIDEOTAPED DEPOSITION OF
RENE FUENTES
JUNE 12, 2025

ORAL AND VIDEOTAPED DEPOSITION OF RENE FUENTES, produced as a witness at the instance of the PLAINTIFF, taken in the above-styled and numbered cause on JUNE 12, 2025, between the hours of 10:10 a.m. and 1:14 p.m., reported stenographically by DONNA McCOWN, Certified Court Reporter No. 6625, in and for the State of Texas, at Denton Navarro Rodriguez Bernal Santee & Zech, PC, 701 East Harrison, Suite 100, Harlingen, Texas, pursuant to the Federal Rules of Civil Procedure and any provisions stated on the record or attached therein.

Electronically signed by Donna McCown (101-253-986-8079) 7e702ac7-fa7d-40f6-8aa2-72e7b7517c40

ordinary? How did you --

A. We take every case as very important. Anybody that calls to -- they want to make a report, we have to go and investigate.

Q. Okay. And -- and that's -- I mean, that's the prudent thing to do, correct, is to investigate a call?

A. It is, correct.

Q. Okay. What happens when you investigate a call and it turns out to be false or no law was broken?

A. We still have to make a report, and we still have to investigate, document everything and have it on file.

Q. Okay. So if the sheriff's department makes a determination that no crime has been committed, you make a report, keep it in the file. Do you take that to the DA's office?

A. Before they make the decision, they have to contact the county attorney or the DA's -- or the DA on their findings.

Q. Okay. So regardless if it's clear that there is no -- no crime, they contact the DA's office, and the DA's office will tell them yes or no on a felony?

A. Just to confirm.

Q. Okay. In the investigation of Lizelle, was it apparent to anyone at the sheriff's office that she did

Electronically signed by Donna McCown (101-253-986-8079) 7e702ac7-fa7d-40f6-8aa2-72e7b7517c40

happened during the day or calls.

And then the next morning, the night sergeant, he texts me about 7:00 in the morning, 6:00 in the morning, 7:00 in the morning.

Q. Okay. So tell me how many different groups are you a part of with regard to the text messaging?

A. I'm usually with the -- with the administration.

Q. Okay. And the administration would be captains, lieutenants, sergeants?

A. From the corporal -- from the corporal --

Q. Corporal up?

A. -- above.

Q. Okay. That's a new one for me. So who is the corporal? Where --

A. Oh, I'm sorry. It's under sergeant. It's not a sergeant but --

Q. Okay.

A. -- his next step would be sergeant.

Q. Okay. Other than Lizelle Herrera, have you ever heard of anyone arrested for having an abortion?

A. No.

Q. How many investigations have you or your office conducted that were related to pregnancy or pregnancy outcomes?

Electronically signed by Donna McCown (101-253-986-8079) 7e702ac7-fa7d-40f6-8aa2-72e7b7517c40

A. Don't know.

Q. Can you think of any other than Lizelle?

A. No, ma'am.

Q. Same question, but specifically with regard to abortions. How many investigations have you or your office conducted regarding abortions?

A. Don't know.

Q. Do you think there are more than -- than Lizelle, or do you think she's the only one?

A. I'm sorry?

Q. Do you think there are more -- there were more investigations other than Lizelle?

A. I don't know.

Q. How many investigations have you or your office conducted where you obtained medical records?

A. Me?

Q. Or the sheriff's office. How often is it that -- that your investigators obtain medical records?

A. Don't know, Miss.

Q. Is it more often than not or not too often?

A. I don't want to guess.

Q. Okay. I appreciate that.

How many investigations have you or the sheriff's office conducted where the initial report of a crime came from a hospital or hospital employee?

Electronically signed by Donna McCown (101-253-986-8079) 7e702ac7-fa7d-40f6-8aa2-72e7b7517c40

A. Okay. Can you repeat, please, ma'am?

Q. Of course. Are you aware that the sheriff's office can only investigate something if it's a crime?

A. But we do all reports. Anybody goes to the office that wants to make a report, so we have to -- we have to document everything.

Q. Let me ask you, Sheriff, what is the purpose of an investigation? What -- what -- why do you do them? I know it's kind of a simple question -- it sounds like a simple question, but, you know, what -- with someone -- like for somebody on the jury that may not have any clue how law enforcement works, when you get a call or a report, you investigate. What is the purpose of your investigation?

A. If somebody complains of a crime, so we have to investigate. We have to talk to people, witnesses, pick up evidence. You see if it's a crime. If there's enough evidence, we file charges.

Q. Okay. Does the sheriff's office ever provide guidance to hospital staff about when they should report crimes?

A. No, ma'am.

Q. Okay. Do you know how the hospital receives guidance or training on -- on their reporting duties?

A. No, ma'am.

Electronically signed by Donna McCown (101-253-986-8079) 7e702ac7-fa7d-40f6-8aa2-72e7b7517c40

Q. Okay. Do you know if the DA's office provides any guidance to the hospital on reporting requirements?

A. No, ma'am.

Q. Has your office ever shared any information with hospital staff about crimes related to abortion?

A. I don't know.

Q. Are you familiar with SB 8?

A. No, ma'am.

Q. Is it common for the sheriff's office to get reports from CPS or child protective services or department of family protective services?

A. Yes, they -- they do call.

Q. Is it common for your office to report your investigation or your suspects to CPS?

A. Like child abuse, something like that?

Q. Yes.

A. Yes.

Q. And are you required -- your investigators are required to contact CPS?

A. Yes.

Q. If there's a -- I guess not probable cause, but sufficient reason?

A. Yes.

Q. Did the sheriff's office report Lizelle Herrera to CPS following her abortion?

Electronically signed by Donna McCown (101-253-986-8079) 7e702ac7-fa7d-40f6-8aa2-72e7b7517c40

indicted, correct?

A. I was advised, yes.

Q. Yes. Do you recall -- do you recall who you were advised by, you personally, not the office?

A. I want to say Captain Fuentes.

Q. Did you have any discussions with DA Ramirez or any of the ADAs about the indictment?

A. Not at all.

Q. When Captain Fuentes advised you, was it in person or via phone call?

A. Person.

MR. NAVARRO: I'm going to object to the redundancy of the questions. A lot of this has already been asked and answered. I'm kind of letting it flow.

MS. GARZA: Yeah, I understand.

MR. NAVARRO: But it -- we really have had the same question multiple times now.

MS. GARZA: There's -- there's no problem. I -- I'm not disagreeing with you. It's just sometimes things come out, and then I have to go back, and I can't remember what I asked or didn't asked.

MR. NAVARRO: Yeah, but nothing has come out, I mean. He's asked -- he's --

MS. GARZA: No. That's what I mean.

MR. NAVARRO: -- responded to the same

Electronically signed by Donna McCown (101-253-986-8079) 7e702ac7-fa7d-40f6-8aa2-72e7b7517c40

A. Because I trust Chief Molina.

Q. How often do you go to the jail just to kind of make rounds to see what's going on over there?

A. I go often. Once a month, because I trust Chief Molina and his captains.

Q. The jail in Rio Grande City, is that -- that's right next to the --

A. -- the sheriff --

Q. -- sheriff's office?

A. The sheriff's office, yes.

Q. Yeah. It's like the building next to it?

A. Yes.

Q. Did DA Ramirez contact you before Lizelle was in jail, was arrested?

A. Before?

Q. Yes.

A. No.

Q. Did DA Ramirez contact you while Lizelle was in custody?

A. He -- I think, yes, he did. When she posted bond, Mr. Ramirez called me -- I mean, text me, I believe, if Lizelle was already bond out. I said, "Yes. She'll be out in a few minutes." That's it.

Q. Okay. And we do have some of those text messages that were produced from Mr. Ramirez's phone.

Electronically signed by Donna McCown (101-253-986-8079) 7e702ac7-fa7d-40f6-8aa2-72e7b7517c40

12:35 I'll go ahead and show you. This was previously labeled Plaintiff's Exhibit 36.

12:35 Are those the text messages that you're referring to, Sheriff?

12:35 A. The one in green?

12:35 Q. Yes.

12:35 A. Okay. "Good morning, Sheriff. Did Ms. Herrera bond out" -- yes.

12:36 Q. Okay. And then you advised that she was still in custody as of April 9th at 8 --

12:36 A. No. I advised him that she'll be out any minute.

12:36 Q. Okay. Well, looking at that next text, it says, "No. She's still in custody," correct?

12:36 A. Okay. Yes.

12:36 Q. Okay. And then I believe on the next page, it's a little bit later, you indicated that bond had been posted and she would be out in the next 15 minutes or so.

12:36 A. Okay. Yes. That's right.

12:36 Q. Okay. You just didn't remember all of them.

12:36 A. Yeah.

12:36 Q. No problem. Do you -- did you have any phone calls or discussions with DA Ramirez about Lizelle's arrest and bond being set?

Electronically signed by Donna McCown (101-253-986-8079) 7e702ac7-fa7d-40f6-8aa2-72e7b7517c40

A. The bond, no, ma'am, no discussion.

Q. Do you know what he meant by, "It seems that we've stirred up a hornet's nest"?

A. No. What -- what my -- my thoughts were that because after the arrest, I received a lot -- I was receiving calls, calls, calls, calls, threats and all that. And I had to literally change the number for the sheriff's office for three days, because -- you know, let the local people know, because people were calling and calling me and --

Q. What -- what types of calls were you receiving?

A. People from out of town. Like that they were going to do a riot in front of my jail on Saturday morning.

Q. Okay. And then you said you also received threats via phone?

A. Yes.

Q. What kinds -- what kinds of threats are --

A. My -- my secretary would pick up the calls. I never pick up any calls. E-mails, I got a lot of e-mails, people get upset, I guess.

Q. Okay. So you do recall receiving e-mails, and at least your secretary was giving you updates or messages about what was coming in?

A. Because we had to change -- we had to change

Electronically signed by Donna McCown (101-253-986-8079) 7e702ac7-fa7d-40f6-8aa2-72e7b7517c40