```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                      McALLEN DIVISION

LIZELLE GONZALEZ                )(
        Plaintiff                )(
                                 )(
VS.                              )(   CIVIL ACTION NO.
                                 )(   7:24-cv-00132
GOCHA ALLEN RAMIREZ,             )(
ALEXANDRIA LYNN BARRERA,         )(
RENE FUENTES, and STARR          )(
COUNTY, TEXAS                    )(
        Defendants               )(
```

---

ORAL AND VIDEOTAPED DEPOSITION OF
JUDITH SOLIS
JUNE 6, 2025

---

ORAL AND VIDEOTAPED DEPOSITION OF JUDITH SOLIS, produced as a witness at the instance of the PLAINTIFF, taken in the above-styled and numbered cause on JUNE 6, 2025, between the hours of 10:09 a.m. and 1:58 p.m., reported stenographically by DONNA McCOWN, Certified Court Reporter No. 6625, in and for the State of Texas, at Denton Navarro Rodriguez Bernal Santee & Zech, PC, 701 East Harrison, Suite 100, Harlingen, Texas, pursuant to the Federal Rules of Civil Procedure and any provisions stated on the record or attached therein.

**BRYANT & STINGLEY, INC.**
**Harlingen (956) 428-0755          McAllen (956) 618-2366**

```
10:51  1    would, I mean, yeah.  I'm sure he would want to know,
10:51  2    "Are you doing -- who's helping you?"
10:51  3         Q.  Do you know how many murder cases the office
10:51  4    handles in a given year?
10:51  5         A.  Not too many, thank God.
10:51  6         Q.  Is the district attorney also aware of major
10:51  7    arrests on, for example, murder charges?
10:52  8         A.  I would think so, but I don't know for sure.
10:52  9         Q.  Are there any decisions that require
10:52 10    consultation with the district attorney himself?
10:52 11         A.  Require?
10:52 12         Q.  Or approval by him?
10:52 13         A.  I haven't had that situation arise, maybe
10:52 14    because I handle the less egregious.  He always says,
10:52 15    "I trust your instinct.  You know these cases.  You
10:52 16    know what's going on.  You know more.  Trust your --
10:52 17    trust yourself, your instinct," and -- or "You know
10:52 18    more about it.  If you think that's a fair offer, then
10:52 19    go ahead."
10:52 20             But like a requirement, like, "Hey, Judy,
10:52 21    you better run that by me," no.  I haven't had that
10:53 22    experience yet.
10:53 23         Q.  Are there written policies in the office?
10:53 24         A.  Yes.  We have.  Yeah, definitely when we --
10:53 25    there's some from the County, right, and then there's
```

```
12:48  1         A.  I don't remember.
12:48  2         Q.  Are you familiar with the United States Supreme
12:49  3   Court case Roe v. Wade?
12:49  4         A.  Yes.
12:49  5         Q.  What do you understand that case stood for?
12:49  6         A.  Well, that was when women were given the right
12:49  7   to choose.
12:49  8         Q.  To choose to have an abortion, correct?
12:49  9         A.  Yes.
12:49 10         Q.  Yes.  And did you know that in January of 2022
12:49 11   Roe v. Wade was still the law?
12:49 12         A.  Yes.
12:49 13         Q.  And during the time the DA's office was
12:49 14   investigating and prosecuting Lizelle, were there any
12:49 15   conversations about how she could be charged with
12:49 16   murder when Roe was still the law?
12:49 17         A.  I don't remember anything like that.
12:49 18         Q.  Before Lizelle had been charged, had you ever
12:49 19   heard of another person being charged with murder for
12:49 20   their own abortion in Texas?
12:49 21         A.  I don't -- I don't recall.
12:49 22         Q.  Did Lizelle's murder charge make sense to you?
12:50 23         A.  I don't -- I don't really know what happened
12:50 24   there.  I wasn't privy to a lot, so I don't know.
12:50 25         Q.  Did it make sense to you under the law, like,
```

Electronically signed by Donna McCown (101-253-986-8079)                84353a2f-0706-4d39-b642-91c972629fbe