IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

LIZELLE GONZALEZ            ) (
       Plaintiff        ) (
                      ) (
VS.                   ) (   CIVIL ACTION NO.
                      ) (   7:24-cv-00132
GOCHA ALLEN RAMIREZ,     ) (
ALEXANDRIA LYNN BARRERA,  ) (
RENE FUENTES, and STARR    ) (
COUNTY, TEXAS           ) (
       Defendants       ) (

_____

ORAL AND VIDEOTAPED DEPOSITION OF
LIZELLE GONZALEZ
FEBRUARY 13, 2025

_____

      ORAL AND VIDEOTAPED DEPOSITION OF LIZELLE

GONZALEZ, produced as a witness at the instance of the

Defendants, taken in the above-styled and numbered

cause on FEBRUARY 13, 2025, between the hours of

10:10 a.m. and 1:51 p.m., reported stenographically by

DONNA McCOWN, Certified Court Reporter No. 6625, in and

for the State of Texas, at Garza Martinez, PLLC, 202

East Sprague Street, Edinburg, Texas, pursuant to the

Federal Rules of Civil Procedure and any provisions

stated on the record or attached therein.

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
| 10:15 | 1  | wasn't enough.  Can you explain what you mean by that?        |
| 10:16 | 2  | A.  I can't explain.  I mean --                              |
| 10:16 | 3  | Q.  I'm sorry?                                               |
| 10:16 | 4  | A.  I mean, I don't think I can explain.                     |
| 10:16 | 5  | Q.  Okay.                                                    |
| 10:16 | 6  | A.  I wouldn't have an explanation for you now,              |
| 10:16 | 7  | so -- but you had -- what was the last question you          |
| 10:16 | 8  | had, I'm sorry, just right now?                              |
| 10:16 | 9  | Q.  I was -- I was trying to understand your                 |
| 10:16 | 10 | explanation that it wasn't enough, what you meant by         |
| 10:16 | 11 | that when you -- when I asked you why you decided to         |
| 10:16 | 12 | sue District Attorney Ramirez.                              |
| 10:16 | 13 | Part of your answer was it wasn't enough,                    |
| 10:16 | 14 | and I was trying to get -- to understand what you meant      |
| 10:16 | 15 | by that.                                                    |
| 10:16 | 16 | A.  So are you asking me why I did it                        |
| 10:16 | 17 | individually --                                             |
| 10:16 | 18 | Q.  Yes.                                                    |
| 10:16 | 19 | A.  -- or why I did it entirely, like why I just            |
| 10:16 | 20 | chose to move forward?                                       |
| 10:16 | 21 | Q.  My first question is about suing the district           |
| 10:16 | 22 | attorney individually.                                       |
| 10:16 | 23 | A.  Individually?                                            |
| 10:16 | 24 | Q.  Yes.                                                    |
| 10:16 | 25 | A.  Okay.  So I -- I thought about it for a while           |

**BRYANT & STINGLEY, INC.**
**Harlingen (956) 428-0755        McAllen (956) 618-2366**

Electronically signed by Donna McCown (101-253-986-8079)                                     c30e5570-c7bf-48f8-a148-411407deec4e

10:16  1     after my arrest.  And when the sanction came in is when
10:16  2     I -- not that I got the motivation, but I knew that
10:17  3     there was something that I know that I wasn't wrong and
10:17  4     that he was.
10:17  5         Q.  And when you say "sanction," what do you mean
10:17  6     by that?
10:17  7         A.  When he was sanctioned by the Bar.
10:17  8         Q.  The State Bar?
10:17  9         A.  Yes.
10:17 10         Q.  Okay.  You also sued Assistant District
10:17 11     Attorney Alex Barrera?
10:17 12         A.  Uh-huh.
10:17 13         Q.  And I have the same question.  Why did you
10:17 14     decide to sue her individually?
10:17 15         A.  Why?
10:17 16         Q.  Yes, why?
10:17 17         A.  Same thing.  I mean...
10:17 18         Q.  Well, she -- she wasn't sanctioned by the Bar,
10:17 19     was she?
10:17 20         A.  No.
10:17 21         Q.  Okay.
10:17 22         A.  Not that I know of.
10:17 23         Q.  All right.  So when you say "same thing," help
10:17 24     me understand what you mean by that.
10:17 25         A.  Okay.  So Alexandria, to my knowledge, why she

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

18

| | |
|---|---|
| 10:35 1 | gobbled up -- |
| 10:35 2 | A.  Yeah. |
| 10:35 3 | Q.  -- if we talk over each other. |
| 10:35 4 | You mentioned because he made the press |
| 10:35 5 | release he knew that the -- the charge against you |
| 10:35 6 | wasn't going to stand, right? |
| 10:35 7 | A.  Not only because of the press release, because |
| 10:35 8 | he personally -- like not personally, like he himself |
| 10:35 9 | told me that it had been a mistake.  It had fallen out |
| 10:35 10 | of his hands, and he didn't know what happened. |
| 10:35 11 | Q.  And when did he tell you that? |
| 10:35 12 | A.  The Sunday after I got out of jail. |
| 10:35 13 | Q.  So he didn't speak to you at any time prior to |
| 10:35 14 | you being arrested, did -- |
| 10:35 15 | A.  No. |
| 10:35 16 | Q.  -- he? |
| 10:35 17 | A.  No. |
| 10:35 18 | Q.  Okay.  And you understand that the grand jury |
| 10:35 19 | presentation was before you got arrested? |
| 10:36 20 | A.  Yes. |
| 10:36 21 | Q.  All right.  You said that he told you it was a |
| 10:36 22 | mistake? |
| 10:36 23 | A.  Yes.  It was out of his hands.  He was out of |
| 10:36 24 | town, and he didn't know what had happened were the |
| 10:36 25 | nature of his words. |

**BRYANT & STINGLEY, INC.**
**Harlingen (956) 428-0755          McAllen (956) 618-2366**

Electronically signed by Donna McCown (101-253-986-8079)                                        c30e5570-c7bf-48f8-a148-411407deec4e

10:40 1   there was nothing that I could tell you, oh I, knew

10:40 2   this was going to happen to me, because I didn't.

10:40 3           MS. ALBIN:  Objection, nonresponsive.

10:40 4       Q.  I want to focus on the period of time before

10:40 5   you were arrested.  Okay?

10:40 6       A.  Okay.

10:40 7       Q.  All right.  Not after you're arrested.  I know

10:40 8   there was news releases and it was high profile at that

10:40 9   time.  But I'm talking about before the arrest.  All

10:40 10  right?

10:40 11      A.  Okay.

10:40 12      Q.  Can you tell us any actions that Mr. Ramirez

10:40 13  took other than being the DA of the county --

10:40 14      A.  No.

10:40 15      Q.  Sorry.  Let me finish the question.  Let me get

10:41 16  the question out, then you can answer.

10:41 17          Before the arrest, are there any actions

10:41 18  of District Attorney Ramirez that you can describe that

10:41 19  he took that make you believe he knew the presentation

10:41 20  was going to be before the grand jury and was a

10:41 21  mistake?

10:41 22      A.  No.

10:41 23      Q.  Okay.  Do you understand that the reason -- the

10:41 24  stated reason for the dismissal of the criminal charges

10:41 25  against you was that the Penal Code has an exception

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

10:43  1    have that leads you to believe that District Attorney

10:43  2    Ramirez knew before you were arrested that there was

10:43  3    this exception in the Penal Code statute for mothers

10:43  4    who have caused the death of their unborn child?

10:43  5         A.  I believe he was told that it wasn't, like, a

10:43  6    prosecutable thing.  But can I prove it to you?  I

10:43  7    probably can't.  I mean, it was just -- I was -- it was

10:43  8    when everything had happened, and I was told that he

10:43  9    had prosecuted knowing that -- they had already told

10:43 10    him or something that it wasn't going to go through,

10:43 11    and they followed through.

10:43 12         Q.  Okay.  Who told you that?

10:43 13         A.  I spoke to Martie Vela?  Garcia-Vela?

10:44 14    Garcia-Vela.  Martie.

10:44 15         Q.  Martie Garcia-Vela?

10:44 16         A.  Yes.  She's an attorney.

10:44 17         Q.  When did you talk to Ms. Vela?

10:44 18         A.  After Mr. Ramirez's sanction, after the news

10:44 19    came out.

10:44 20         Q.  And Ms. Vela told you that District Attorney

10:44 21    Ramirez knew prior to you being arrested that there was

10:44 22    this exception in the Penal Code statute?

10:44 23         A.  Yes.

10:44 24         Q.  Was that a phone conversation?

10:44 25         A.  Yes.

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

10:55 1  going back a little bit.  The grand jury convened

10:56 2  before you were arrested, correct?

10:56 3      A.  Yes.

10:56 4      Q.  And you allege in your lawsuit that there were

10:56 5  misrepresentations that were made in front of the grand

10:56 6  jury.  Do you understand that?

10:56 7      A.  Uh-huh.

10:56 8      Q.  Okay.

10:56 9      A.  Yes.  Sorry.

10:56 10     Q.  That's okay.  What are the misrepresentations

10:56 11 that you believe Ms. Barrera made in front of the grand

10:56 12 jury?

10:56 13     A.  Well, they accused me of murder.  So I don't

10:56 14 know how the presentation to the jury was, but I mean,

10:56 15 it was enough to charge me as a murderer and make the

10:56 16 grand jury believe that she's a murderer, let's indict

10:56 17 her.

10:56 18     Q.  Do you have any information about anything

10:56 19 specifically that Ms. Barrera said in front of the

10:56 20 grand jury?

10:56 21     A.  No.

10:56 22     Q.  You don't know what was said in front of --

10:56 23     A.  Yes --

10:56 24     Q.  -- the grand jury?

10:56 25     A.  -- not that I know of.

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

10:56 1      Q.  Okay.  Sorry.  We talked over each other a

10:57 2    little bit.  Let me just make sure that question is

10:57 3    clear.

10:57 4              You don't know what was said by Assistant

10:57 5    District Attorney Barrera to the grand jury, do you?

10:57 6      A.  No.

10:57 7      Q.  And I -- I just want to make sure this part is

10:57 8    clear too, because we've gone back and forth a little

10:57 9    bit.  Do you believe District Attorney Ramirez made any

10:57 10   presentations to the grand jury about your case?

10:57 11     A.  Not that I know of.

10:57 12     Q.  Okay.  So then is it fair to say you don't know

10:57 13   of anything that he said to the grand jury because he

10:57 14   wasn't there?

10:57 15     A.  He said he was out of town.

10:57 16     Q.  So he didn't say anything to the grand jury,

10:57 17   did he?

10:57 18     A.  No.  He said he wasn't here when it was

10:57 19   presented.

10:57 20     Q.  And you believe that?

10:57 21     A.  I don't know what to believe from him.

10:57 22     Q.  But do you have any reason not to believe that?

10:57 23     A.  I mean -- no.  Like he was actually there?  I

10:58 24   can't tell you, yeah, he was there; yeah, I've been

10:58 25   told he was there.  No.

**BRYANT & STINGLEY, INC.**
**Harlingen (956) 428-0755       McAllen (956) 618-2366**

Electronically signed by Donna McCown (101-253-986-8079)                                    c30e5570-c7bf-48f8-a148-411407deec4e

10:58 1    Q.  Okay.  And do you have any reason to believe

10:58 2    that he had his assistant take materials or anything in

10:58 3    to the grand jury?

10:58 4    A.  I don't know what was taken to the grand jury.

10:58 5    Q.  Okay.  So you don't know anything about what he

10:58 6    may have said or not said or sent to the grand jury, do

10:58 7    you?

10:58 8    A.  No.

10:58 9    Q.  All right.  So the allegation against

10:58 10   Mr. Ramirez and Ms. Barrera that they basically lied to

10:58 11   the grand jury is based on the fact that a murder

10:58 12   charge was presented; is that fair?

10:58 13   A.  Yeah.  Yes.

10:58 14   Q.  And there's no other reason that you can say

10:58 15   that you believe they made misrepresentations to the

10:58 16   grand jury?

10:58 17   A.  No.

10:58 18   Q.  What actions, if any, do you believe Assistant

10:59 19   District Attorney Barrera engaged in as part of the

10:59 20   investigation?  So this is going back before the grand

10:59 21   jury even.

10:59 22        What actions do you think she took that

10:59 23   caused her to be involved in your -- in the

10:59 24   investigation?

10:59 25   A.  Sheriff's office and the DA's office work

**BRYANT & STINGLEY, INC.**
**Harlingen (956) 428-0755        McAllen (956) 618-2366**

11:02  1      A.  No.

11:02  2      Q.  Okay.  I have the same question about District

11:02  3  Attorney Ramirez.  What specific acts did he -- or

11:02  4  actions did he take that make you believe he was

11:02  5  involved in the investigation?

11:03  6      A.  Ms. Muniz telling me that she was going to

11:03  7  speak to the DA's office after concluding my interview.

11:03  8      Q.  And you don't know if she ever spoke to anybody

11:03  9  in the DA's office?

11:03  10     A.  I don't know.

11:03  11     Q.  And you don't know if she ever spoke to

11:03  12  Mr. Ramirez directly?

11:03  13     A.  I don't know.

11:03  14     Q.  Is that the only reason that you believe that

11:03  15  the district attorney had any involvement in your

11:03  16  investigation?

11:03  17     A.  Can you repeat that?

11:03  18     Q.  The fact that Ms. Muniz, the investigator in

11:03  19  the sheriff's office, said she was going to talk to

11:03  20  someone in the DA's office, is that the only reason

11:03  21  that you believe District Attorney Ramirez was involved

11:03  22  in the investigation?

11:03  23     A.  That -- I think he's involved in all

11:03  24  investigations.

11:03  25     Q.  In what way?

**BRYANT & STINGLEY, INC.**
**Harlingen (956) 428-0755        McAllen (956) 618-2366**

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

11:04  1          A.  They work together.  They work hand in hand.

11:04  2          Q.  What -- what actions does Mr. Ramirez take in

11:04  3   investigations?

11:04  4          A.  They publicize it in every press release that

11:04  5   they work hand in hand in their investigations.

11:04  6          Q.  And as you sit here today, can you describe any

11:04  7   actions that you believe Mr. Ramirez takes in these

11:04  8   investigations?

11:04  9          A.  No.

11:04 10          Q.  He didn't interview you, right?

11:04 11          A.  No.

11:04 12          Q.  And do you know whether he ever went out to the

11:04 13   hospital to interview anybody?

11:04 14          A.  No.

11:04 15          Q.  Do you know whether he ever had any

11:04 16   communications with any investigators in the sheriff's

11:04 17   office about your case?

11:04 18          A.  No.

11:04 19          Q.  Do you know whether he ever talked to Sheriff

11:04 20   Fuentes about your case?

11:04 21          A.  No.

11:04 22          Q.  And what about Ms. Barrera?  Do you know

11:04 23   whether she ever talked to any investigators in the

11:04 24   sheriff's office about your case?

11:05 25          A.  Not that I know of.

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

11:06  1    Q.  Do you know whether District Attorney Ramirez

11:07  2  ever provided any legal advice to investigators in the

11:07  3  sheriff's office about your case?

11:07  4    A.  Like a lawyer, not a DA?  Is that what you're

11:07  5  asking me?

11:07  6    Q.  I'm asking you if you know of whether or not

11:07  7  the district attorney ever gave legal advice to any of

11:07  8  the investigators, anyone in the sheriff's office who

11:07  9  was investigating your case?

11:07  10    A.  Not that I know of.

11:07  11    Q.  What about Ms. Barrera?  Do you know whether

11:07  12  she ever gave legal advice to any investigators or

11:07  13  anyone in the sheriff's office about your case?

11:07  14    A.  Not that I can remember.

11:07  15    Q.  Do you know whether anybody in the district

11:07  16  attorney's office ever gave legal advice or guidance to

11:07  17  someone in the sheriff's office about your case?

11:07  18    A.  Not that I -- that I know of, no.

11:07  19    Q.  Do you have any reason to believe that District

11:08  20  Attorney Ramirez directed the investigators to

11:08  21  investigate you for murder?

11:08  22    A.  No, no.

11:08  23    Q.  Do you have any reason to believe that

11:08  24  Ms. Barrera directed the investigators to investigate

11:08  25  you for murder?

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

11:11 1    Attorney Ramirez, and Assistant District Attorney

11:11 2    Barrera had met to discuss how the presentation to the

11:11 3    grand jury was going to go?

11:11 4         A.  No.  I wouldn't know.

11:11 5         Q.  So you don't have any reason to believe that

11:12 6    they were conspiring to do something in front of the

11:12 7    grand jury related to your case, do you?

11:12 8         A.  Well, they were -- I know that they were

11:12 9    working together during the investigation.

11:12 10        Q.  Okay.  Well, I just -- I had just gotten done

11:12 11   asking you what you knew about them being involved in

11:12 12   the investigation, and I understood your testimony to

11:12 13   be you didn't know anything about what they did during

11:12 14   the investigation.

11:12 15             So if that's not true, then I want to know

11:12 16   what it is you know about their role in the

11:12 17   investigation.

11:12 18        A.  I mentioned prior to that -- I know that

11:12 19   somewhere I mentioned that they -- they publically

11:12 20   speak on working together.

11:12 21        Q.  Did they ever publically speak about working

11:12 22   together on your case?

11:12 23        A.  No.

11:12 24        Q.  So I'm only --

11:12 25        A.  I mean --

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

11:26  1   co-conspirator Assistant District Attorney Defendant

11:26  2   Barrera, to provide false information and conceal the

11:26  3   plain statutory language contained in the Penal Code

11:26  4   from the grand jury.

11:26  5            Do you understand that's an allegation

11:26  6   you've made in the lawsuit?

11:26  7       A.  Can you rephrase that to where I can understand

11:26  8   it in nonlegal terms?

11:26  9       Q.  I'm -- I'm just reading what's alleged in the

11:26  10  lawsuit.  Okay?

11:26  11      A.  I understand, but it's very legal to what I

11:26  12  know.

11:26  13      Q.  I'll summarize, and your counsel can object if

11:26  14  they don't feel I've correctly summarized.  But

11:26  15  basically, this allegation is that District Attorney

11:26  16  Ramirez directed Assistant District Attorney Barrera to

11:26  17  provide false information to the grand jury.

11:26  18            So let's start with that question.  Do you

11:26  19  know of specifically anything that Defendant Ramirez

11:26  20  did to direct Ms. Barrera to provide false information

11:27  21  to the grand jury?

11:27  22      A.  Specifically, no.  I mean, other than his

11:27  23  sanction -- than his sanction, no.

11:27  24      Q.  And do you know of anything he specifically did

11:27  25  to direct Ms. Barrera about concealing that exception

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

11:27 1    that we talked about earlier in the Penal Code for the

11:27 2    mother of an unborn -- mother of an unborn child?  Do

11:27 3    you have any information about what it is you believe

11:27 4    he did to direct Ms. Barrera in concealing that

11:27 5    exception?

11:27 6         A.  Not that I know of.

11:27 7         Q.  In fact, do you know whether he talked to her

11:27 8    at all about the case before it went to the grand jury?

11:27 9         A.  No.

11:27 10        Q.  Okay.  And you don't know whether the grand

11:27 11   jury was presented with that exception in the Penal

11:27 12   Code or not, do you?

11:27 13        A.  I -- like I mentioned before, I don't know what

11:28 14   was presented.

11:28 15        Q.  Okay.  You provided to the defendants through

11:28 16   the discovery process some names of people who you

11:28 17   believe have information about the lawsuit.  Okay?  So

11:28 18   I'm going to ask you about some of those people.

11:28 19             Gloria Gonzalez, I understand you to

11:28 20   testify that's your mother?

11:28 21        A.  Yes.

11:28 22        Q.  What is it that you believe she knows about the

11:28 23   claims in your lawsuit?

11:28 24        A.  The phone call with -- between Raul, my

11:28 25   stepfather, and Mr. Ramirez.

**BRYANT & STINGLEY, INC.**
**Harlingen (956) 428-0755        McAllen (956) 618-2366**

Electronically signed by Donna McCown (101-253-986-8079)                                    c30e5570-c7bf-48f8-a148-411407deec4e

11:36 1    or if it was even true, right?

11:36 2        A.  No.

11:36 3        Q.  What about -- I think she's a former assistant

11:36 4    district attorney -- Hilda Garza?  What does she know

11:36 5    about your case?

11:36 6        A.  I've never spoken to her, so...

11:36 7        Q.  Okay.  She was identified as a person who

11:36 8    provided information about what the district attorneys

11:36 9    knew about your case, but you don't know anything about

11:36 10   that?

11:36 11       A.  Yes.  She -- okay.  So backtracking to when I

11:36 12   spoke to Martie, that was a name that was mentioned,

11:37 13   that she was the one who told Mr. Ramirez.  And I'm

11:37 14   not -- like I said, when I spoke to her, it was "they,"

11:37 15   which is referring to me, it's referring to

11:37 16   Mr. Ramirez, Ms. Barrera.

11:37 17            I believe Ms. Hilda was the one that

11:37 18   disclosed to Martie that -- I don't know if they -- she

11:37 19   disclosed everything to her.  But when I spoke to

11:37 20   Martie, it was Hilda had told them this and this, that

11:37 21   it wasn't prosecutable.

11:37 22       Q.  Okay.  And did you know that Hilda Garza wasn't

11:37 23   employed at the DA's office at the time of your

11:37 24   investigation and arrest?

11:37 25       A.  No.

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

11:37 1     Q.  You didn't know that?

11:37 2     A.  No.  The only -- to -- the only background I

11:37 3  know of Ms. Garza was that previously she was an

11:37 4  employee at one point.  I don't know when.

11:37 5     Q.  So you don't know if, in fact, Ms. Garza ever

11:37 6  really did tell District Attorney Ramirez or Assistant

11:38 7  District Attorney Barrera that the case was not

11:38 8  prosecutable, to use your word?  You don't know if that

11:38 9  conversation ever really happened, do you?

11:38 10     A.  No.

11:38 11     Q.  Okay.

11:38 12     A.  I don't.  That would be a question for

11:38 13  Ms. Hilda and Ms. Martie.

11:38 14     Q.  And you've never spoken to Ms. Hilda Garza

11:38 15  before?

11:38 16     A.  No.

11:38 17     Q.  Sorry if I already asked you this, but have you

11:38 18  ever met Assistant District Attorney Barrera?

11:39 19     A.  Never.

11:39 20     Q.  Have you ever had a phone conversation with

11:39 21  her, exchanged any kind of messages?

11:39 22     A.  Never.

11:39 23     Q.  Do you have any opinion about whether she had a

11:39 24  personal interest in your case?

11:39 25     A.  I -- I didn't know who Ms. Barrera was until

Electronically signed by Donna McCown (101-253-986-8079)        c30e5570-c7bf-48f8-a148-411407deec4e

11:48  1    "With respect to" -- that's short for paragraph -- "4.4

11:49  2    of plaintiff's FAC" -- is first amended complaint.

11:49  3    That's the lawsuit.  Okay?

11:49  4        A.  Uh-huh.

11:49  5        Q.  You were asked to state the basis for your

11:49  6    allegation that Sheriff Fuentes or someone in the

11:49  7    sheriff's office in connection with and/or under the

11:49  8    joint supervision of Defendant Barrera conducted an

11:49  9    investigation into plaintiff, you, your conduct.

11:49 10        A.  Uh-huh.

11:49 11        Q.  Okay.  And you see there's an objection.

11:49 12    There's an answer below that?

11:49 13        A.  Uh-huh.

11:49 14        Q.  Okay.  Did you -- did you write this answer?

11:49 15        A.  No.

11:49 16        Q.  Have you seen --

11:49 17        A.  I mean, yeah, I've seen this before.

11:49 18        Q.  You've seen this before?  Okay.

11:49 19        A.  No, I didn't write it.

11:49 20        Q.  Okay.  That's fine.  So I'm going to ask you --

11:49 21        A.  I reviewed these before.

11:49 22        Q.  Okay.  And this -- you understand this is your

11:50 23    answer to this question?

11:50 24        A.  Yes.

11:50 25        Q.  Okay.  So in the answer section, it says -- on

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

11:50  1    three -- about three lines down, "Plaintiff's

11:50  2    allegation that Sheriff Fuentes or someone in the

11:50  3    sheriff's office in connection with and under the joint

11:50  4    supervision of Defendant Barrera conducted an

11:50  5    investigation of plaintiff's conduct is based on public

11:50  6    statements made by Defendant Ramirez and his office and

11:50  7    assistant district attorney's work in coordination with

11:50  8    the sheriff and his office during the investigation

11:50  9    process."

11:50 10                Do you see that sentence that I just read?

11:50 11        A.  Uh-huh, yeah.  Can I have a pen?

11:50 12        Q.  That's going to go to the court reporter.

11:51 13        A.  Okay.  That's fine.

11:51 14        Q.  Your attorney may want to mark up theirs and

11:51 15    maybe share with you, but --

11:51 16                MS. GARZA:  Yeah, let's -- let's do that

11:51 17    and put the exhibit down.  Let me just grab -- we don't

11:51 18    have to go off the record.  Just give me a -- give me a

11:51 19    sec.

11:51 20                THE WITNESS:  Do you want a pen?  There's

11:51 21    a pen.

11:51 22                MS. GARZA:  Yeah, but I don't want you to

11:51 23    get unplugged.  And you can give us yours and you can

11:51 24    have ours.  And I'll write all over this one.

11:51 25        Q.  Okay.  The -- the statement that I just read in

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

11:51 1    your answer to this interrogatory, do you see where I

11:51 2    was at?

11:51 3         A.  "In connection with or under," right?

11:51 4         Q.  Yes.  All right.  And you reference here public

11:51 5    statements made by Defendant Ramirez that his office

11:52 6    and assistant district attorney's work in coordination

11:52 7    with the sheriff and his office during the

11:52 8    investigation process.

11:52 9         A.  Yes.

11:52 10        Q.  Is there a specific statement that you were

11:52 11   referring to when you gave this answer?

11:52 12        A.  There's several statements.

11:52 13        Q.  Okay.  Do -- can you recall any of those?

11:52 14        A.  The -- the press release -- the press releases

11:52 15   that they gave -- they gave -- they released one --

11:52 16   they've released several.  Mine is like the rest of

11:52 17   them.

11:52 18             I can't recall if mine says that they

11:52 19   worked hand in hand, but most of them do.  At the very

11:52 20   end of their press releases they state that.

11:52 21        Q.  When you say "mine," what are you talking

11:52 22   about?

11:52 23        A.  There's a press release about my arrest.

11:52 24   There's a press release for each arrest -- well, not

11:52 25   each, but the ones that they make public.  And at the

Electronically signed by Donna McCown (101-253-986-8079)                c30e5570-c7bf-48f8-a148-411407deec4e

11:52 1    very end of the press releases, they state that they

11:52 2    work together.  I don't know if you've ever reviewed

11:52 3    any.

11:52 4        Q.  Is there -- and I think you -- I think you've

11:53 5    produced those, but there's no statement -- or is there

11:53 6    a statement that Defendant Ramirez released publically

11:53 7    saying that in your case he worked with the sheriff's

11:53 8    office?

11:53 9        A.  I would have to go back into the press release.

11:53 10       Q.  Okay.  And was there only one?

11:53 11       A.  Yeah.

11:53 12       Q.  Okay.  And is that -- was that press release

11:53 13   made after the charge was dismissed?

11:53 14       A.  It was released the day I spoke to Mr. Ramirez

11:53 15   in his office.  And I think my charge was dismissed

11:53 16   like the following day.

11:53 17       Q.  Okay.  And this says -- the next sentence,

11:53 18   "Murder indictments are rare in Starr County;

11:54 19   therefore, the DA, ADAs, DA investigators, sheriff and

11:54 20   his investigators would have worked together throughout

11:54 21   each phase given its rare, serious, and potential

11:54 22   high-profile nature."

11:54 23            But I think you've testified that you

11:54 24   don't have any information about whether the sheriff,

11:54 25   the district attorney, the assistant district attorney,

11:54  1    or any of the investigators actually worked together on

11:54  2    your case, do you?

11:54  3         A.  Can you rephrase that?

11:54  4              MS. ALBIN:  Can you read that back.

11:54  5    Sorry.

11:54  6              (Requested portion was read back.)

11:55  7         A.  I don't understand the question.  Do I have

11:55  8    any -- okay.  So I'm going to rephrase it.  I -- do I

11:55  9    have anything that -- do I -- what was it?  I'm sorry.

11:55  10   Because I said rephrase, not repeat, like better words

11:55  11   that I would understand.

11:55  12        Q.  You don't know whether the -- the district

11:55  13   attorney, the assistant district attorney,

11:55  14   investigators in the DA's office, or the sheriff's

11:55  15   office, or the sheriff actually worked together on your

11:55  16   case, do you?

11:55  17        A.  No, I don't.

11:55  18        Q.  Okay.  I hope that was a little better.  Do my

11:55  19   best.

11:55  20        A.  Doing good.  That's okay.  For the most part I

11:55  21   do understand, but there's just some things.

11:55  22        Q.  And I am now on Interrogatory No. 2.  It's --

11:56  23   kind of starts at the bottom of --

11:56  24        A.  Oh, I see.

11:56  25        Q.  And then the answer carries over to the next

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

73

12:00 1    Q.  Okay.  And in any of those public statements

12:00 2    have you seen something that says the district attorney

12:00 3    is required to have discussions with assistant district

12:00 4    attorneys prior to a potential murder indictment being

12:00 5    presented --

12:00 6    A.  That it is required?

12:00 7    Q.  Yes.

12:00 8    A.  No, not that I know of, no.

12:00 9    Q.  Do you know anything about a policy that would

12:01 10   require District Attorney Ramirez to approve of a

12:01 11   potential murder indictment being presented to the

12:01 12   grand jury?

12:01 13   A.  If -- of a policy, no.

12:01 14   Q.  So the -- the only reason that you gave this

12:01 15   answer is this general public statements about working

12:01 16   together on cases; is that true?

12:01 17   A.  Yeah, they make public statements.

12:01 18   Q.  But there's no other reason that you put in

12:01 19   your answer here that the -- it's the policy, practice,

12:01 20   and custom of the Starr County DA's office that they're

12:01 21   required to have discussions with and approval of

12:01 22   Defendant Ramirez on potential murder indictments?

12:01 23   You -- you don't have any specific reason that you

12:01 24   stated that other than press releases that say they

12:01 25   work together, right?

Electronically signed by Donna McCown (101-253-986-8079)                                    c30e5570-c7bf-48f8-a148-411407deec4e

12:01  1        A.  Uh-huh.  Yes.

12:01  2        Q.  Okay.  And you're not aware of any requirement

12:02  3   that Defendant Ramirez imposed on the assistant

12:02  4   district attorneys to get his approval before the

12:02  5   murder indictment that was brought against you was

12:02  6   taken to the grand jury, do you?

12:02  7        A.  Can you rephrase your question?

12:02  8        Q.  Sure.  Do you know if Defendant Ramirez

12:02  9   required Assistant District Attorney Barrera to seek

12:02 10   his approval prior to going to the grand jury on your

12:02 11   case?

12:02 12        A.  I wouldn't be able to tell you yes or no.  Like

12:02 13   I wouldn't know.

12:02 14        Q.  Okay.

12:02 15        A.  I know that when I spoke to him, one of his

12:02 16   statements was, "It's out of my hands."  And he went

12:02 17   like that.

12:02 18        Q.  Did that suggest to you that he didn't know?

12:02 19        A.  At the time, I didn't know what to believe, so

12:03 20   I just took his -- whatever he said, I just said,

12:03 21   "Okay.  Thank you," and I walked out.

12:03 22             So I did take away what he said, like I

12:03 23   know -- I do remember what he said, and I -- it does --

12:03 24   like I know what he did say.  But at the time when

12:03 25   everything was going on, like I mentioned, I just took

Electronically signed by Donna McCown (101-253-986-8079)                                    c30e5570-c7bf-48f8-a148-411407deec4e

12:04  1     A.  I don't know.

12:04  2     Q.  Okay.

12:04  3     A.  I think the dismissal came up in, like, 12 --

12:04  4   less than 12 hours after being released, so I wouldn't

12:05  5   know if they had conversation then.

12:05  6     Q.  But you -- and you don't know if they had any

12:05  7   conversations before it went to the grand jury, do you?

12:05  8     A.  No.

12:05  9     Q.  Okay.  If you go to Interrogatory No. 4.

12:05  10     A.  Uh-huh.

12:05  11     Q.  This asks for the basis of your contention that

12:05  12   Defendant Barrera was in direct communication with the

12:05  13   Starr County Sheriff's Office investigators providing

12:05  14   legal advice during the investigation.

12:05  15     Do you see that?  Sorry.  Is that yes?

12:05  16     A.  Yes.

12:05  17     Q.  Okay.  And in the answer six lines down --

12:05  18   actually, let me back up.

12:05  19     Starting about three lines down,

12:05  20   "Plaintiff's contention that Defendant Barrera was in

12:06  21   direct communication with Starr County Sheriff's Office

12:06  22   investigators providing legal advice during the

12:06  23   investigation is based on a general knowledge and

12:06  24   understanding of the custom and practice of assistant

12:06  25   district attorneys, including Defendant Barrera's

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

12:09  1     A.  Huh-uh.

12:09  2     Q.  Do you know whether he called Defendant Ramirez

12:09  3  directly?

12:09  4     A.  I don't know, no.

12:09  5     Q.  And do you know whether he reached out to

12:09  6  Assistant District Attorney Barrera directly?

12:09  7     A.  I wouldn't know.

12:09  8     Q.  Okay.  And you don't know whether anybody at

12:09  9  the hospital ever contacted Sheriff Fuentes directly

12:09 10  about your case, do you?

12:09 11     A.  I wouldn't know.

12:09 12     Q.  And you also don't know whether anybody at the

12:10 13  hospital contacted Defendant Ramirez directly about

12:10 14  your case, do you?

12:10 15     A.  No.

12:10 16     Q.  And same question about Assistant District

12:10 17  Attorney Barrera.  You don't know whether anybody at

12:10 18  the hospital ever reached out to her directly, do you?

12:10 19     A.  I wouldn't know.

12:10 20     Q.  Okay.  I want you to -- if you would turn to

12:11 21  Interrogatory No. 7.

12:11 22     A.  Uh-huh.

12:11 23     Q.  And this asks about the basis for your claim

12:11 24  that Defendant Barrera commenced and continued an

12:11 25  unfounded investigation followed by providing the grand

Electronically signed by Donna McCown (101-253-986-8079)                                    c30e5570-c7bf-48f8-a148-411407deec4e

84

| | | |
|---|---|---|
| 12:17 | 1 | (Brief recess) |
| 12:19 | 2 | Q.  Okay.  Ms. Gonzalez, I'm going to pass you what |
| 12:19 | 3 | I'm marking as Exhibit 2 to today's deposition.  And, |
| 12:19 | 4 | again, if you would -- |
| 12:19 | 5 | MS. GARZA:  We'll switch them. |
| 12:19 | 6 | Q.  Yeah.  Do us a favor and not mark that if you |
| 12:19 | 7 | need it. |
| 12:19 | 8 | These are -- this document is Plaintiff's |
| 12:19 | 9 | Corrected Responses and Objections to Defendant Gocha |
| 12:19 | 10 | Allen Ramirez's First Set of Interrogatories and First |
| 12:19 | 11 | Set of Production. |
| 12:19 | 12 | A.  Uh-huh. |
| 12:19 | 13 | Q.  Some of the questions I'm going to ask you will |
| 12:19 | 14 | sound similar to what we just went through with |
| 12:19 | 15 | Assistant District Attorney Barrera, but these are |
| 12:19 | 16 | specific to District Attorney Ramirez.  Do you |
| 12:19 | 17 | understand that? |
| 12:19 | 18 | A.  Yes. |
| 12:19 | 19 | Q.  Okay.  Have you seen this document before? |
| 12:19 | 20 | A.  Uh-huh. |
| 12:19 | 21 | Q.  Sorry.  Is that -- |
| 12:19 | 22 | A.  Yes. |
| 12:19 | 23 | Q.  Okay.  And I think you've testified at length |
| 12:20 | 24 | about this today, but just to make sure, other than the |
| 12:20 | 25 | press releases that talk about the district attorney's |

**BRYANT & STINGLEY, INC.**
**Harlingen (956) 428-0755       McAllen (956) 618-2366**

12:20  1     office and the sheriff's office working together, do

12:20  2     you have any reason to believe that Defendant Ramirez

12:20  3     investigated your case?

12:20  4          A.   That he investigated?  No, I don't think so.

12:20  5     That he -- my case specifically, I wouldn't know, no.

12:20  6     I mean, as per Mr. Ramirez's word was that he didn't

12:20  7     know, I mean, but...

12:20  8          Q.   And that suggests that he didn't investigate

12:20  9     it, right?

12:20 10          A.   Uh-huh.  I mean, he said he didn't know in

12:21 11     general about the -- not in general about the case, but

12:21 12     I wasn't -- I'm not sure what he was referring to, but

12:21 13     as far as his knowledge at the time was that he didn't

12:21 14     know what had happened.

12:21 15          Q.   Okay.  And did anything about that conversation

12:21 16     make you believe he was involved in the investigation?

12:21 17          A.   No.

12:21 18          Q.   And there's nothing else that you can point to

12:21 19     that makes you believe he was involved in the

12:21 20     investigation, right?

12:21 21               MS. GARZA:  Objection.

12:21 22          A.   In the investigation?

12:21 23          Q.   Correct.

12:21 24          A.   I mean, no, not that I know of, that I can

12:21 25     recall.

Electronically signed by Donna McCown (101-253-986-8079)                                    c30e5570-c7bf-48f8-a148-411407deec4e