**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| LIZELLE GONZALEZ | § | |
| **Plaintiff** | § | |
| | § | |
| Vs. | § | **CIVIL ACTION 7: 24-CV-00132** |
| | § | |
| GOCHA ALLEN RAMIREZ, et al. | § | |
| **Defendants** | § | |

**ASSISTANT DISTRICT ATTORNEY ALEXANDRIA BARRERA'S**
**MOTION FOR SUMMARY JUDGMENT, ASSERTION OF IMMUNITY**
**AND BRIEF IN SUPPORT THEREOF**
==========================================================

MAY IT PLEASE THE COURT:

NOW COMES DEFENDANT ALEXANDRIA BARRERA as Assistant District Attorney

of the 229th Judicial District (hereafter "ADA Barrera") and moves the Court to find that, as a

matter of law, ADA Barrera is entitled to immunity and that Plaintiff's claims must be dismissed.

ADA Barrera respectfully submits this brief in support thereof.

**TABLE OF CONTENTS**

I. INTRODUCTION AND SUMMARY OF THE ARGUMENTS. ......................... 1

II. STATEMENT OF THE FACTS. ............................................................. 2

    A. On September 1, 2021, Senate Bill 8 Takes Effect In Texas................................. 2

    B. On January 7, 2022, Plaintiff Attempted An Abortion At 19-20 Weeks
       Of Pregnancy. ............................................................................... 3

    C. Nurse Martha Torres Reports Plaintiff To Law Enforcement. ............................... 4

    D. Starr County Sheriff's Office Investigates The Case............................................ 4

    E. ADA Barrera Presented The Case To The Starr County Grand Jury
       Who Indicted Plaintiff And She Was Arrested On April 7, 2022. ......................... 7

    F. DA Ramierz Immediately Seeks Dismissal Of The Indictment After
       Learning About Penal Code § 19.06........................................................... 8

    G. An SMU Professor With No Ties To The Case Files A State Bar
       Grievance Against DA Ramirez And He Ultimately Agrees To A
       Suspension. .............................................................................. 10

H.    ADA Barrera's Motion to Dismiss and Discovery. ............................................. 10

I.     Plaintiff Admits During Discovery That She Has No Actual
       Knowledge Of Any Of ADA Barrera's Actions. ............................................... 11

III.          ARGUMENTS AND AUTHORITIES ................................................................ 14

A.    Summary Judgment Standard. ........................................................................... 15

B.    Immunity Must Be Decided At The Earliest Possible Opportunity. ................... 15

C.    ADA Barrera Is Entitled To Absolute Immunity From Plaintiff's
      Malicious Prosecution And False Arrest Claims; Even If She Were
      Not, She Is Entitled To Qualified Immunity. ..................................................... 16

Malicious Prosecution ...................................................................................................... 21

False Arrest ...................................................................................................................... 23

D.    Plaintiff's Conspiracy Claim Has Absolutely No Evidentiary Basis. ................. 24

E.    Plaintiff's Fourteenth Amendment Claims Must Be Dismissed. ........................ 24

CONCLUSION AND PRAYER ........................................................................................ 25

=====================================================

## TABLE OF AUTHORITIES

**Cases**

*Albright v. Oliver*, 510 U.S.(1994) ................................................................................. 27

*Anderson v. Creighton*, 483 U.S. 635 (1987) ................................................................. 17

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................... 16

*Armstrong v. Ashley*, 60 F.4th 262 (5th Cir. 2023) ........................................................ 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................... 17

*Baker v. Sebatian*, Civil Action No. 4:22-CV-03103, 2023 WL 6393886 (S.D.T.X. Sept. 30,
    2023) .......................................................................................................................... 23

*Bledsoe v. Willis*, No. 23-30238, 2023 WL 8184814 (5th Cir. 2023) .............................. 24

*Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955 (5th Cir. 1993) ........................................ 16

*Buckley v. Fitzsimmons,* 509 U.S. 259 (1993) ............................................................... 20

*Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548 (5th Cir. 2016) ................... 26

*Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022) ............................................................ 28

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................... 16

*Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994) .............................................................. 27

*Crostley v. Lamar Cnty.*, 717 F.3d 410 (5th Cir. 2013) ................................................... 23

*Daniels v Williams*, 474 U.S. (1986) ............................................................................. 23

*Davidson v Cannon*, 474 U.S. (1986) ............................................................................ 23

*Deville v. Marcantel*, 567 F.3d (5th Cir. 2009) .............................................................. 26

*Garcia v. Blevins*, 957 F.3d 596 (5th Cir. 2020) ............................................................ 16

*Gray v. Bell*, 712 F.2d 490 (D.C. Cir. 1983) .................................................................. 19

*Green v. Thomas*, 129 F.4th 877 (5th Cir. 2025) ........................................................... 26

*Guerra v. Castillo*, 82 F.4th 278 (5th Cir. 2023) ............................................................ 24

*Hoog-Watson v. Guadalupe Cnty.*, 591 F.3d (5th Cir. 2009) .......................................... 20

*Hunter v. Bryant*, 502 U.S. 224 (1991) ........................................................................ 17

*Imbler v. Pachtman*, 424 U.S. 409 (1976) .................................................................... 18

*Kalina v. Fletcher*, 522 U.S. 118 (1997) ...................................................................... 20

*Krim v. Banc Texas Group, Inc.*, 989 F.3d 1435 (5th Cir. 1993) ................................ 16

*Loupe v. O'Bannon*, 824 F.3d 534 (5th Cir. 2016) ....................................................... 18

*Morrison v. City of Baton Rouge*, 761 F.2d 242 (5th Cir. 1985) .................................. 19

*Osborne v. Haley*, 549 U.S. 225 (2007) ........................................................................ 17

*Planned Parenthood of Greater Tex. v. Abbott*, 748 F.3d (5th Cir. 2014) ..................... 4

*Whole Woman's Health v. Jackson 595 U.S. ----*, S.Ct. 2494 (2021) ............................. 3

*Singleton v. Cannizzaro*, 956 F.3d 773 (5th Cir. 2020) ................................................ 20

*Spivey v. Robertson,* 197 F.3d 772 (5th Cir. 1999) ....................................................... 21

*Terwilliger v. Reyna*, 4 F.4th 270 (5th Cir. 2021) ......................................................... 21

*Thompson v. Clark*, 569 U.S. 36 (2022) ....................................................................... 24

*Thompson v. Clark*, 596 U.S. 36 (2022) ....................................................................... 24

*Whole Woman's Health v. Jackson 595 U.S. ----*, 141 S.Ct. (2021).............................. 3

*Whole Woman's Health v. Jackson*, 23 F.4th (5th Cir. 2022) ......................................... 3

*Whole Woman's Health v. Jackson*, 595 U.S. (2021).................................................... 3

*Wilson v. Stroman*, 33 F.4th 202 (5th Cir. 2022) ......................................................... 26

*Winfrey v. Johnson*, 766 F. App'x 66, 72 (5th Cir. 2019) ........................................... 27

*Yaselli v. Goff*, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. (1927) ..................................... 19

*Zimmerman v. Cutler*, 657 F. App'x 340 (5th Cir. 2016) ............................................. 27

## Statutes

FED. R. CIV. P. 56(c) ................................................................................................... 14

Texas Health & Safety C. § 171.204 ............................................................................ 2

**DEFENDANT ADA ALEXANDRIA BARRERA'S
MOTION FOR SUMMARY JUDGMENT
AND BRIEF IN SUPPORT THEREOF[1]**
====================================================

### I.    INTRODUCTION AND SUMMARY OF THE ARGUMENTS.

Plaintiff Lizelle Gonzales (f/k/a "Lizelle Herrera") was indicted on March 30, 2022, when the grand jury of Starr County found that she had intentionally caused the death of Jasiel Alessandro Herrera ("JAH") by a self-induced abortion at 19-20 weeks pregnant. Hospital staff where she sought treatment while the abortion was occurring advised her that abortion was now illegal in Texas and called law enforcement to report a violation of the "new law."

When Assistant District Attorney Barrera received the file from the Sheriff's Office, she evaluated whether the criminal homicide elements had been met and concluded that it appeared Plaintiff had (1) intentionally, knowingly, recklessly, or with criminal negligence (2) caused the death of an unborn child who was at some stage of gestation between fertilization and birth. *See* Tex. Penal C. §§ 1.07(26), 19.01. Therefore, ADA Barrera presented material she received from the Sheriff's Office to the Starr County grand jury who true billed a murder indicted against Plaintiff for causing the death of JAH by self-induced abortion.

Plaintiff was arrested on April 7, 2022.

Following Plaintiff's arrest and the media frenzy that ensued, District Attorney Gocha Ramirez was notified by a local lawyer of an exception at the end of the homicide statute for a mother who causes the death of her unborn child. This was when ADA Barrera was first made aware of the exception—and of her error in presenting the case to the grand jury. DA Ramirez immediately moved to dismiss the indictment.

---

[1] Please note that the substantive portion of this MSJ falls within the 25 page limit provided by the Local Rules.

Now, Plaintiff brings this civil rights case under 42 U.S.C. § 1983, accusing ADA Barrera of conspiracy, malicious prosecution, and false arrest, claiming that she deliberately targeted Plaintiff because Plaintiff had an abortion. The undisputed facts, however, show that ADA Barrera merely prepared for and presented the case to the grand jury based on the information that she was aware of at the time. ADA Barrera admittedly would not have presented the case to the grand jury if she had been aware of the exception under the penal code applicable to Plaintiff, which she learned of only *after* Plaintiff's indictment.

ADA Barrera asserted her entitlement to immunity in her Motion to Dismiss, but the Court was forced to accept as true Plaintiff's allegations, including that ADA Barrera targeted and investigated Plaintiff and intentionally lied to the grand jury to obtain a bogus indictment for personal reasons. The Motion was denied and discovery commenced. Discovery revealed that ADA Barrera did nothing more than respond to a couple of inquiries from Sheriff's Office investigators during the investigation of Plaintiff and then presented the information that she was aware of to the grand jury. There is no evidence showing that ADA Barrera was a party to a conspiracy to target Plaintiff because she had an abortion, or that ADA Barrera acted as an investigator, or that she maliciously misled the grand jury, as Plaintiff claims. ADA Barrera is entitled to absolute immunity for her preparation and presentation to the grand jury. Alternatively, she is entitled to qualified immunity because he did not act to deprive Plaintiff of a clearly established right. Under either framework, ADA Barrera is entitled to judgment as a matter of law for Plaintiff's claims of malicious prosecution, false arrest, and conspiracy.

## II.    STATEMENT OF THE FACTS.

### A.    On September 1, 2021, Senate Bill 8 Takes Effect In Texas.

On September 1, 2021, Texas' Heartbeat Act—also known as Senate Bill 8 or S.B. 8—became effective, making it illegal for an abortion to be induced or performed in Texas by a

physician where the physician has "detected a fetal heartbeat of the unborn child." Texas Health & Safety C. § 171.204. The law was immediately challenged, winding its way through the courts and receiving significant media coverage along the way. [2] *See Whole Woman's Health v. Jackson 595 U.S. ----, 141 S.Ct. 2494 (2021); Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021); *Whole Woman's Health v. Jackson*, 23 F.4th 380, 389 (5th Cir. 2022).

**B.    On January 7, 2022, Plaintiff Attempted An Abortion At 19-20 Weeks Of Pregnancy.**

With the public fight over Senate Bill 8 raging, Plaintiff went to Starr County Memorial Hospital reporting abdominal pain from an attempted abortion on January 7, 2022. **Exs. A.4** (SCMH records); **A.6** (Muniz Inv. pp. 1-2.). Plaintiff was between 19-20 weeks pregnant. Her medical records note that, "Upon SVE by MD, 2 pills said to be Cytotec[3] in an attempt to have an abortion…Advised that abortions are illegal in TX." **Ex. A.4** (SCMH records).

Plaintiff's contractions were stopped at the hospital and Plaintiff was discharged on January 8, 2022, at which time "the unborn child that was later classified as 'Boy Herrera' had a steady heartbeat." **Exs. A.4-A.5** (SCMH Records; Rosa Inv. pp.1-2). Shortly after leaving the hospital, Plaintiff returned to the hospital and doctors discovered that "Boy Herrera" no longer had a heartbeat. **Ex. A.3** (Pl.'s Int. p. 9, 40, 42); **Ex. A.7** (Aguirre Inv. p. 5) After Plaintiff underwent a C-section, Jasiel Alessandro Herrera's ("JAH") body was taken to the nursery and then cremated. *Id.* (Pl.'s Int. p. 21); *see also* **A.6-A.7** (Muniz Inv. p. 1; Aguirre Inv. P. 6).

---

[2] *See, e.g.*, *Local pro-abortion advocates protest state enactment of state abortion ban*, Berenice Garcia, September 1, 2021, available at https://myrgv.com/local-news/2021/09/01/local-pro-abortion-advocates-protest-state-enactment-of-state-abortion-ban/; *Window of uncertainty as SB 8 turns Texas reproductive health care upside down*, Staff Writer, September 26, 2021, available at https://www.expressnews.com/news/local/article/Window-of-uncertainty-SB-8-turns-Texas-16486217.php; *Supreme Court issues ruling on Texas abortion law*, Aditi Sangal, Adrienne Vogt, Melissa Macaya and Melissa Mahtani, December 10, 2021, available at https://www.cnn.com/politics/live-news/supreme-court-texas-abortion-law/index.html;

[3] Cytotec is another name for the generic drug misoprostol. *See Planned Parenthood of Greater Tex. Surgical Health Svcs. v. Abbott*, 951 F. Supp. 891, 902 (W.D.T.X. 2013) (discussing Cytotec) (reversed on other grounds by *Planned Parenthood of Greater Tex. v. Abbott*, 748 F.3d 583 (5th Cir. 2014)).

**C.    Nurse Martha Torres Reports Plaintiff To Law Enforcement.**

On January 11, 2022, Nurse Martha Torres, who tended to Plaintiff while she was at the Hospital called the police to report what had happened because she was concerned about Texas' "new law." **A.5, A.13** (Rosa Inv. p. 2; Rosa BWC). Because the Cytotec drug had been used at Plaintiff's home in Starr County, Starr County Sheriff's Office was notified. **Ex. C** (Aguirre Dep. 169:5-171:1).  There was no agreement between the Sheriff's Office and Starr County Hospital to report abortions. **Exs. B-I** (Muniz Dep. 63:1-9, 77:3-6, 110:12-12, 176:12-14; Aguirre Dep. 167:9-168:5; L. Fuentes Dep. 154:19-155:6; R. Fuentes Dep. 93:20-94:3, 96:19-22, 97:4-8; Villarreal Dep. 211:8-11, 211:21-23; Barrera Dep. 81:6-16, 213:2-7, 224:2-14; Ramirez Dep. 148:7-150:17). The Sheriff's office investigates all reports made to law enforcement of any nature to determine whether a crime has occurred—especially when a death has been reported and is alleged to have been caused by another person. *Id.* (Aguirre Dep. 163:1-10; L. Fuentes Dep. 202:12-17; R. Fuentes Dep. 68:2-23).

Nurse Torres reported to deputies that Plaintiff had been treated at the hospital and discharged and that the "baby was still alive" when she left. Nurse Torres stated that Plaintiff returned about an hour later with "pains again…and the baby died." Nurse Torres said she did not know if what had happened was "murder" because of the "new law"—Senate Bill 8. **Exs. A.5, A.13** (Rosa Inv. p. 2; Rosa BWC); **Ex. B** (Muniz Dep. 66:19-67:5, 71:6-72:18).

**D.    Starr County Sheriff's Office Investigates The Case.**

Deputy Rosa notified his chain of command, and the case was assigned to SCSO Investigator Muniz, who was the investigator in the office that day. **Ex. D** (L. Fuentes Dep. 50:8-20). Investigator Muniz had never worked on any case similar to Plaintiff's and had never investigated a murder when she was assigned Plaintiff's case. **Ex. B** (Muniz Dep. 176:12-16). Sergeant Rafael Aguirre, Muniz's supervisor, went to the hospital and assisted Muniz with

interviewing witnesses. **Ex. C** (Aguirre Dep. 61:10-63:2, 164:23-25). Investigator Muniz received directions about the investigation from Sergeant Aguirre and Captain Fuentes. **Ex. B** (Muniz Dep. 70:16-71:5, 99:9-23, 140:1-9). No one from the District Attorney's office directed investigators to go to the hospital and begin an investigation. **Ex. C** (Aguirre Dep. 172:7-12).

There were questions amongst the SCSO investigators about the case, including whether JAH was legally an "individual" such that causing his death would be a criminal offense and how the changing law came into play. **Exs. C-D** (Aguirre Dep. 172:13, -173:16, 174:12-175:9; L. Fuentes Dep. 61:2-12, 106:5-109:13). *See* Texas Penal C. § 19.02 (b)(1) ("A person commits [murder] if the person: [] intentionally or knowingly causes the death of an individual."). Captain Fuentes directed his team to contact the District Attorney's office to resolve the question. **Ex. D** (L. Fuentes Dep. 188:2-189:1, 190:5-10). Investigator Muniz recalled looking up sections of the penal code during the investigation and having discussions about the penal code, but she could not remember which sections were discussed when and with whom. **Ex. B** (Muniz Dep. 152:11-176:8).

At all relevant times, the attorneys in the District Attorney's office were ADA Alexandria Barrera, ADA Abel Villarreal, ADA Judy Solis, ADA Alfredo Garcia, and District Attorney Gocha Ramirez. On January 11, 2022, Investigator Muniz reached out to ADA Barrera to ask questions, but ADA Barrera was unavailable. **Exs. B, H** (Muniz Dep. 89:1-18; Barrera Dep. 86:9-88:23). Members of the SCSO then reached out to Assistant District Attorney Abel Villarreal, who told them that he needed more information to determine whether there was a viable criminal offense. **Ex. G** (Villarreal Dep. 114:20-119:16). ADA Villarreal signed the grand jury subpoena for Plaintiff's medical records. **Exs. A.9-11** (GJ subpoenas).

When ADA Barrera returned Investigator Muniz's call, ADA Barrera understood that the investigators had already spoken to ADA Villarreal. **Ex. H** (Barrera Dep. 92:5-94:21, 96:2-15).

She learned that JAH had lost oxygen for about two hours, which had caused hemorrhaging and death. **Ex. H** (Barrera Dep. 154:16-19). ADA Barrera confirmed during that call that an "individual" under the Texas Penal Code § 1.07 is "a human being who is alive, including an unborn child at every stage of gestation from fertilization until birth." **Exs. B-D, H** (Muniz Dep. 168:9-171:12, 196:21-197:1; Aguirre Dep. 173:20-174:5; Barrera Dep. 87:16-88:22, 92:5-94:21); *see also* Tex. Penal C. § 1.07 ADA Barrera was not thinking about *Roe v. Wade* or Senate Bill 8 when she researched the definition of "individual"—she was focused on the elements for homicide in the penal code. **Ex. H** (Barrera Dep. 122:16-124:25, 153:8-24, 155:6-16). Investigator Muniz also sent ADA Barrera a text later that day asking whether JAH's ashes could be released to the funeral home. **Ex. H** (Barrera Dep., Ex. 16). ADA Barrera responded that the ashes could be released and that photos of the ashes should be taken. *Id*.

On January 18, 2022, Investigator Rafael Aguirre spoke with ADA Barrera about the investigation and whether to obtain an arrest warrant or grand jury subpoena. **Exs. C, H** (Aguirre Dep. 99:1-105:12, Barrera Dep. 99:2-101:14. Ex. 16). ADA Barrera advised Investigator Aguirre *not* to arrest Plaintiff, and, instead, make sure all witnesses were interviewed. *Id*. ADA Barrera did not direct investigators about how to interview witnesses or what evidence to collect. **Ex. C, H** (Aguirre Dep. 165:23-166:6; Barrera Dep. 102:23-103:3, 115:11-16). Investigator Muniz asked ADA Barrera if she wanted to be present for the interview of Plaintiff's doctor, but ADA Barrera declined and ADA Barrera did not attend Doctor Lozano's interview or any other witness interviews. **Ex. C, H** (Aguirre Dep. 165:1-3; Barrera Dep., Ex. 16, 224:21-25).

On February 1, 2022, ADA Barrera received a case update from Investigator Muniz. **Ex. H** (Barrera Dep. 115:17-116:19). That same day, ADA Barrera discussed the case with District Attorney Ramirez for the first time. **Ex. H** (Barrera Dep. 117:1-118:118). DA Ramirez directed

ADA Barrera to the case for grand jury review to determine whether a crime had been committed. **Exs. H-J** (Barrera Dep. 116:20-120:13; Ramirez Dep. 161-65, 209:1-214:19, 217:2-19, 219:14-16; Plf's Dep. Ex. 16, p. 85). ADA Barrera received the full case file from the Sheriff's Office on or about March 17, 2022, after Investigator Muniz dropped it off at the DA's office without meeting ADA Barrera. **Exs. B, H** (Muniz Dep. 146:13-15, 161:19-162:3, Ex. 12; Barrera Dep. 225:1-15). ADA Barrera did not direct investigators about what charge to list in their report. **Ex. C** (Aguirre Dep. 166:24-167:5). ADA Barrera did not contact or interview the Plaintiff; she did not contact any witnesses; she did not contact Starr County Memorial Hospital; she did not contact the funeral home where JAH was cremated; she did not issue any subpoenas; she did not try to acquire any evidence; she did not supervise Muniz or Aguirre; she did not direct investigators to issue an arrest warrant; she reviewed only the file brought left at the DA's office by Investigator Muniz. **Exs. H, L** (Barrera Dep. 131:19-133:2, 222:19-223:14; Barrera ROGG responses).

ADA Barrera and DA Ramirez spoke about Plaintiff's case on one other occasion sometime in March, when ADA Barrera notified DA Ramirez that she was presenting the case to the grand jury on March 25, 2022. **Exs. I, N** (Ramirez Dep. 216:6-217:15, 225:4-23; Moreno Aff.). DA Ramirez did not instruct or direct ADA Barrera to lie or make misrepresentations to the grand jury and ADA Barrera did not lie or knowingly make misrepresentations to the grand jury. **Ex. H** (Barrera Dep. 212:2-213:22, 238:2-7). ADA Barrera presents cases to the grand jury so that they can "judge the facts" and determine which law applies to those facts. **Ex. H** (Barrera Dep. 135:20-136:1).

**E.   ADA Barrera Presented The Case To The Starr County Grand Jury Who Indicted Plaintiff And She Was Arrested On April 7, 2022.**

On March 25, 2022, ADA Barrera presented the case to the grand jury. **Exs. H-I** (Barrera Dep. 68:6-16; Ramirez Dep. 225:4-23, 238:2-7). DA Ramirez was in a different county presenting

to the grand jury there when ADA Barrera presented Plaintiff's case to the grand jury in Starr County. **Exs. I, N** (Ramirez Dep. 225:4-23; Moreno Aff.). ADA Barrera would not have presented the case to the grand jury if she had known about Tex. Penal C. § 19.06, which exempts from the homicide chapter a mother who causes the death of her unborn child. **Ex. H** (Barrera Dep. 110:12-19, 138:2-140:6). And while ADA Barrera has prosecuted several homicide cases, none of her cases ever involved a situation similar to Plaintiff's situation. Indeed, no one from the DA's Office had ever handled a case like Plaintiff's prior to January 2022 (or any time since). **Exs. F, H-I** (Solis Dep. 104:18-21, Barrera Dep. 225:25-226:5, 209:5-18, Ex. 14; Ramirez Dep. 197:8-16).

On March 30, 2025, the grand jury foreman signed an indictment for Plaintiff "intentionally and knowingly caus[ing] the death of an individual J.A.H[.], by a self-induced abortion…." **Ex. A.1** (Indictment). On April 5, 2022, the capias was issued by the Deputy District Clerk and sent to the Sheriff's Office. **Ex. A.14** (capias); *see also* Tex. Code. Crim P. 23.03-.031 ("A capias shall be issued by the district clerk upon each indictment for felony presented, after bail has been set or denied by the judge of the court.").

On April 7, 2022, Investigator Muniz and Sergeant Aguirre arrested Plaintiff. **Exs. B-C** (Muniz Dep. 103:4-109:8; Aguirre Dep. 148:3-7). ADA Barrera did not give them any instructions about whether to arrest Plaintiff and ADA Barrera did not participate in Plaintiff's arrest. **Ex. H** (Barrera Dep. 145:3-148:1, 149:4-7). In fact, ADA Barrera testified that because it was a sealed indictment, she was not sure what investigators were supposed to do to effectuate the arrest and could not have advised them regarding same. *Id*.

## F.    DA Ramierz Immediately Seeks Dismissal Of The Indictment After Learning About Penal Code § 19.06.

When Plaintiff was arrested, a "firestorm" commenced, at which time DA Ramirez reviewed the file for the first time and was alerted to Section 19.06 by a local attorney, Brandy

Voss. **Ex. I, K** (Ramirez Dep. 230:14-233:12, 236:10-25, Ex. 33-36; Voss text messages). Following their conversation, DA Ramirez notified ADA Barrera about Section 19.06, which was when ADA Barrera learned of the exception. **Ex. H** (Barrera Dep. 161:10-168:20, 215:2-216:18).

ADA Barrera normally finds defenses or exceptions embedded in the statute where the elements of the offense are found. **Ex. H** (Barrera Dep. 210:3-211:10). Section 19.06 is at the end of the entire chapter, not embedded with the elements. See Tex. Penal C., Ch. 19. Plaintiff's defense attorney, from whom ADA Barrera regularly receives communications about his clients' matters, never raised Section 19.06 with ADA Barrera. **Ex. H** (Barrera Dep. 214:2-215:1).

After discussing Section 19.06 with his team for the first time, DA Ramirez decided to issue a press release indicating that the charges should not have been brought and that he would seek immediate dismissal. **Ex. G, H-I** (Villarreal Dep., Ex. 4; Barrera Dep. 168:20-169:1; Ramirez Dep. 248:7-18, 236:18-25).

On April 9, 2022, two days after her arrest, Plaintiff made the bond that was set by the court and was released from jail. **Ex. A.12** (Inmate Release Form). On Sunday, April 10, 2022, DA Ramirez met with Plaintiff, her attorney, and her parents. DA Ramirez apologized to Plaintiff and told her that "it had been a mistake. It had fallen out of his hands, and he didn't know what happened…[and] He was out of town, and he didn't know what happened…." **Ex. I-J** (Ramirez Dep. 239:2-240:18; Plf.'s Dep. 18:7-25); *see also* **Exs. I, K** (Ramirez Dep., Exs. 33-36; Voss and Garza Text Messages). On April 11, 2025, District Attorney Ramirez filed a Motion to Dismiss Plaintiff's indictment. **Exhibit A.2** (MTD).

In exchanges with Investigator Muniz immediately after the "firestorm," ADA Barrera confided that she felt "so bad about this oversight." **Ex. H** (Barrera Dep. Ex. 20). ADA Barrera also admitted in a text exchange with a former co-worker at the time that she felt like she was

having a "panic attack" related to Plaintiff's case because she felt "really bad for everything that had happened and the fact that [she] had not seen or known about 19.06." **Ex. H** (Barrera Dep. 156:1-4, Ex. 19).

### G.    An SMU Professor With No Ties To The Case Files A State Bar Grievance Against DA Ramirez And He Ultimately Agrees To A Suspension.

On April 13, 2022, SMU Professor Joanna Grossman, [4]  who knew neither Plaintiff nor DA Ramirez, filed a State Bar Grievance against DA Ramirez. Grossman's bar grievance claimed that "Ms. Herrera was maliciously prosecuted by Mr. Ramirez either for political reasons or unknown personal reasons." **Ex. N** (SBOT grievance, pp. 7-10). Despite asserting that DA Ramirez maliciously prosecuted Plaintiff, Grossman later "hypothesized it could have been an error on the district attorney's behalf misunderstanding[5] how the new law affects abortion…." *Id.*

Eventually, DA Ramirez agreed to sign off on a probated suspension from the State Bar based on his interpretation of the language therein, hoping that the District Attorney's office could resume focusing on its work. **Ex. I** (Ramirez Dep. 263:2-274:11). District Attorney Ramirez's suspension was highly publicized and after hearing of the suspension, Plaintiff brought the instant suit. **Ex. J** (Plf.'s Dep. 8:21-9:9).

### H.    ADA Barrera's Motion to Dismiss and Discovery.

ADA Barrera filed a Motion to Dismiss based on immunity on May 1, 2024. Doc. 13. Relying on Plaintiff's allegations in the First Amended Complaint, the Court denied the motion

---

[4] Grossman's career has centered on women's rights. For instance, Grossman has authored articles like *The Most Depressing Advent Calendar: 25 Ways that Texas Endangers Mothers and Children*, wherein she criticizes "Texas GOP's 'pro-life' war on abortion" and calls conservatives that run the state "misogynists." Grossman, Joanna, for Verdict-Legal Analysis and Commentary from Justia, January 17, 2025, available at https://verdict.justia.com/2025/01/17/the-most-depressing-advent-calendar-25-ways-that-texas-endangers-mothers-and-children.

[5] *See also* Sullum, Jacob, "Lawyer Think 'Gross Negligence' Explains an Unlawful Murder Charge Based on a 'Self Induced Abortion,'" for Reason, April 13, 2022, available at https://reason.com/2022/04/13/local-lawyers-think-gross-negligence-explains-an-unlawful-murder-charge-based-on-a-self-induced-abortion/.

without prejudice. Doc. 41.1. The parties were ordered to engage in discovery that was to be limited to the question of immunity. *Id*.

Since that order, Plaintiff has taken the depositions of DA Ramirez, ADA Barrera, ADA Villareal, ADA Solis, Sheriff Fuentes, Captain Fuentes, Investigator Aguirre, and Investigator Muniz. Plaintiff has received ADA Barrera's incoming and outgoing emails during the relevant time period, as well as text messages and chats from the ADA Barrera's personal cell phone, which were extracted by a third-party forensic company.

Defendants have taken Plaintiff's deposition and the depositions of Gloria Gonzales, and witnesses whom Plaintiff identified in her disclosures as having knowledge of the DA's "investigation, arrest, and/or prosecution of Plaintiff." Defendants have also received affidavits from two attorneys identified by Plaintiff as witnesses who supposedly relayed information to her about DA Ramirez's involvement in the criminal case. Both attorneys deny Plaintiff's claims that they knew nothing about Plaintiff's investigation or prosecution. *C.f.* **Ex. J** (Plf.'s Dep. 59:3-60:16) *with* **Exs. L-M** (Garza and Garcia-Vela Aff.).

## I.  Plaintiff Admits During Discovery That She Has No Actual Knowledge Of Any Of ADA Barrera's Actions.

During her deposition, Plaintiff admitted that she did not know of any facts directly supporting the allegations containing her First Amended Complaint, including the facts she alleged about ADA Barrera personally investigating her and lying to the grand jury, which were specifically alleged to avoid a Rule 12 dismissal based on absolute immunity. She conceded that all she knew about ADA Barrera is that ADA Barrera presented the case to the grand jury and that she was DA Ramirez's "assistant":

> **Q**. *...[W]hat involvement is it that Ms. Barrera had in the case that has caused you to file the lawsuit against her? And you mentioned the presentation to the grand jury.*
> **A**. *Uh-huh.*
> **Q**. *Is there anything else?*

**A.** *Just didn't specify her -- the grand jury. I said her involvement in general.*
**Q.** *Right. What involvement? What is it that she did? What actions did she take that have led you to file this lawsuit against her?*
**A.** *Action of -- hold on. I can't put it into words, but her involvement in the case, in the presentation in her -- she's assistant to Gocha and --well, basically just that. I mean, that's all I can tell you. It's not much.*

Ex J (Plf.'s Dep. 12:6-21).

    **1. Plaintiff has no knowledge of the ADA Barrera taking investigatory actions.**

First, despite claiming that ADA Barrera participated in investigating her, Plaintiff testified that she has no knowledge of any action the District Attorney took in the criminal investigation conducted by the Starr County Sheriff's Office:

    **Q.** *Can you testify about any actions that you know [ADA Barrera] took that caused her to be involved in the investigation?*
    **A.** *No.*

Ex. J. (Plf.'s Dep. 36:18-38:8); *see also id.* (Plf.'s Dep. 84:24-85:25).

    **2. Plaintiff has no knowledge of ADA Barrera directing the Sheriff's Office investigation or working with investigators.**

Second, despite claiming that ADA Barrera directed the investigation conducted by Starr County Sheriff's Office, Plaintiff testified that she has no knowledge of any action taken by ADA Barrera to direct the Starr County Sheriff's Office investigators on how to perform their investigation:

    **Q.** *Do you have any reason to believe that Ms. Barrera directed the investigators to investigate you for murder?*
    **A.** *No.*

*Id.* (Plf.'s Dep. 43:23-44:1); *see also* ***id.*** (Plf.'s Dep. 43:6-10, 65:25-68:16).

    **3. Plaintiff has no knowledge of the DA's direction to ADA Barrera.**

Third, despite claiming in her lawsuit that the District Attorney directed ADA Barrera to mislead or lie to the grand jury, Plaintiff testified that she has no knowledge of what, if any, direction DA Ramirez gave to ADA Barrera:

    **Q.** *[A]nd you don't know if [Ramirez and Barrera] had any conversations before it went to the grand jury, do you?*

A. *No.*

….

**Q.** *…Do you know of specifically anything that Defendant Ramirez did to direct Ms. Barrera to provide false information to the grand jury?*
**A.** *Specifically, no. I mean, other than his sanction -- than his sanction, no.*

….

**Q**. *Do you have any information about what it is you believe he did to direct Ms. Barrera in concealing that exception?*
**A**. *Not that I know of.*
**Q**. *In fact, do you know whether he talked to her at all about the case before it went to the grand jury?*
**A**. *No.*

….

**Q.** *…Do you know if Defendant Ramirez required Assistant District Attorney Barrera to seek his approval prior to going to the grand jury on your case?*
**A.** *I wouldn't be able to tell you yes or no. Like I wouldn't know.*

*Id.* (Plf.'s Dep. 50:15-51:9, 73:9-74:17, 76:6-8).

### 4.  Plaintiff has no knowledge of what was presented to the grand jury.

Fourth, despite claiming in her lawsuit that ADA Barrera "made misrepresentations of the

facts and the law," to the grand jury, Plaintiff has no knowledge of what was actually presented to

the grand jury:

**Q.** *You don't know what was said by Assistant District Attorney Barrera to the grand jury, do you?*
**A.** *No.*

….

*Id.* (Plf.'s Dep. 34:10-35:11, 35:9-15, 36:4-17).

### 5.  Plaintiff has no knowledge of ADA Barrera taking actions to "conspire" with the other Defendants.

Fifth, despite claiming in her lawsuit that ADA Barrera was involved in a conspiracy to

prosecute her, Plaintiff admitted that she did not know whether that actually occurred—only that

the DA's office and Sheriff's office have made statements about working, generally:

**Q**….*[C]an you testify about any statements or conversations that the district attorney Ramirez had with Assistant District Attorney Barrera about your case?*
**A**. *No.*

*Q. And can you testify about any conversations or statements exchanged between the district attorney and the sheriff about your case?*
*A. Between them, no.*
*Q. Okay. So is there any information you have that leads you to believe that District Attorney Ramirez conspired with assistant district attorney to prosecute your case?*
*A. Can you rephrase your question? The last --just the last part.*
*Q. Is there any other information that you have about this conspiracy you've alleged about District Attorney Ramirez and Assistant District Attorney Barrera to prosecute your case?*
*A. Not that I know of, no.*
*Q. And what about Sheriff Fuentes?*
*A. Not that I know of.*

*Id.* (Plf.'s Dep. 115:4-25).

### 6. Plaintiff has no knowledge of whether ADA Barrera knew there was an exception to murder in the penal code that applied to her.

Finally, despite repeatedly claiming that before her indictment, ADA Barrera was aware of the penal code exception for mothers who cause the death of their unborn child, Plaintiff testified that she had no knowledge of actions of ADA Barrera supporting her claim. She also admitted that her accusation was based on nothing more than a conversation she had with Attorney Marty Garcia-Vela (not an employee of the DA's office), who supposedly heard from Attorney Hilda Garza (also not an employee of the DA's office), who heard from some unknown person in the DA's office, that "they" knew about the exception in the penal code before the indictment. Both Garcia-Vela and Garza, however, deny that they knew anything about Plaintiff's case. **Exs. J, L-M** (Plf.'s Dep. 31:14-33:6; Garcia-Vela Aff.; Garza Aff.).

## III.    ARGUMENTS AND AUTHORITIES

Plaintiff brings claims under Section 1983 against ADA Barrera for: (1) Malicious Prosecution in violation of the Fourteenth Amendment (2) False Arrest in violation of the Fourth and Fourteenth Amendments and (3) Conspiracy. Doc. 7, ¶¶ 7.1-7.19, 7.31-7.36. Because there is no genuine issue of material fact as to whether ADA Barrera is entitled to immunity, the Court should render judgment in her favor and dismiss Plaintiff's claims against her with prejudice.

A.     **Summary Judgment Standard.**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Parties seeking summary judgment bear the initial burden of informing the Court of the basis for the motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, which the party believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Once the movant fulfills the burden set forth under *Celotex*, the burden shifts to the non-movant to show that summary judgment should not be granted. FED. R. CIV. P. 56. The party opposing a properly support motion for summary judgment may not rest on mere allegation or denial of pleadings but must set forth specific fact showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

"A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted). Unsubstantiated assertions that a fact issue exists will not suffice. *Krim v. Banc Texas Group, Inc.*, 989 F.3d 1435, 1442 (5th Cir. 1993).

Where, as here, the Defendant asserts immunity, the usual summary judgment framework is altered and the burden of proof shifts to the plaintiff to show that the immunity defense is not available. *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020).

B.     **Immunity Must Be Decided At The Earliest Possible Opportunity.**

The Supreme Court has "several times instructed" that "[i]immunity-related issues…should be decided at the earliest opportunity." *Osborne v. Haley*, 549 U.S. 225, 253

(2007); *citing Hunter v. Bryant*, 502 U.S. 224, 228 (1991) ("Immunity ordinarily should be decided by the court long before trial."); *Anderson v. Creighton*, 483 U.S. 635, 646, n. 6 (1987) ("[I]immunity questions should be resolved at the earliest possible stage of litigation.").

Where, as here, the plaintiff makes demonstrably false allegations in her complaint, which are successfully designed to avoid a Rule 12 Motion based on immunity, a defendant has no choice except to be subject to discovery and reassert immunity through a summary judgment motion. *See Carswell v. Camp*, 54 F. 307, 312 (5th Cir. 2022). This process, should, however, be limited and focused solely on "factual disputes relevant to whether [immunity] applies. *Id*. "The basic thrust of the [] immunity doctrine is to free officials from the concerns of litigation, including avoidance of disruptive discovery." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009)).

In the instant case, Plaintiff's discovery demands have been the very sort of "disruptive discovery" forbidden by long-standing Supreme Court dictates. Over Defendants' objections to the scope, Plaintiff has obtained ADA Barrera's incoming and outgoing emails, ADA Barrera's text messages and chats from her personal cell phone, ADA Barrera's deposition, and the depositions of the District Attorney's office staff—all despite Plaintiff admitting she lacked a factual basis for her accusations against ADA Barrera. No further discovery should be permitted because ADA Barrera is entitled to immunity, and this motion is ripe for determination.

**C.    ADA Barrera Is Entitled To Absolute Immunity From Plaintiff's Malicious Prosecution And False Arrest Claims; Even If She Were Not, She Is Entitled To Qualified Immunity.**

**1.    The ADA's Presentation To The Grand Jury Is Shielded By Absolute Immunity.**

Malicious prosecution and false arrest claims brought against prosecutors are subject to an absolute immunity bar, which "shelters prosecutors even when they act 'maliciously, wantonly or

negligently.'" *Loupe v. O'Bannon*, 824 F.3d 534, 539-40 (5th Cir. 2016) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976) (additional citations omitted).

Here, both Plaintiff's malicious prosecution and false arrest claims rest on Plaintiff's accusations that ADA Barrera investigated Plaintiff, directed the investigation of Plaintiff, lied to the grand jury and participated in Plaintiff's arrest—claims for which she admitted in her deposition she lacks a factual basis—and which simply did not happen. Doc. 7, 6.3-6.6; *see also* Fed. R. Civ. P. 11(b).

ADA Barrera's actions consisted of presenting the case to the grand jury and responding to a few questions from investigators. ADA Barrera did not herself, investigate Plaintiff or direct investigators on how they should conduct their investigation. She merely responded to a few questions that were tied to her ability to make a grand jury presentation and had a meeting or two with the investigators to receive case updates. Ironically, the only direction she actually gave to the investigators was that they should *not* arrest Plaintiff. When she presented the case, ADA Barrera did not lie to the grand jury; she admittedly made a mistake by not knowing about Section 19.06 of the Texas Penal Code.

A prosecutor has absolute immunity from suit under Section 1983 when his actions are "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. One of the most integral aspects of the judicial phase is the preparation and presentation of a case to the grand jury. *Morrison v. City of Baton Rouge*, 761 F.2d 242, 247-48 (5th Cir. 1985) (citing with approval *Gray v. Bell*, 712 F.2d 490, 502 & n. 37 (D.C. Cir. 1983) ("We regard it as settled that presentation of evidence to an indicting Grand Jury falls within the scope of the advocatory prosecutorial conduct protected by *Imbler*.").

ADA Barrera's presentation to the grand jury aligns with the seminal case on the topic—*Imbler v. Pachtman*—differing only in that, unlike in *Imbler*, there is no evidence here that ADA Barrera had ill-motives. The *Imbler* Court discussed a malicious prosecution claim in the context of the prosecutor supposedly seeking a grand jury indictment by the willful introduction of false and misleading evidence:

> In *Yaselli v. Goff*, 12 F.2d 396 (1926), the claim was that the defendant, a Special Assistant to the Attorney General of the United States, maliciously and without probable cause procured plaintiff's grand jury indictment by the willful introduction of false and misleading evidence . . . The District Court dismissed the complaint, and the Court of Appeals affirmed . . . After briefing and oral argument, this Court affirmed the Court of Appeals in a per curiam opinion. *Yaselli v. Goff*, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927).

*Imbler*, 424 U.S. at 422.

The Fifth Circuit echoed this in *Morrison v. City of Baton Rouge*, which is useful here:

> We conclude, however, that, in presenting evidence to a grand jury convened to consider whether to indict the police officer who shot Morrison, [the prosecutor] was fulfilling a function to which *Imbler* immunity applies . . .. Moreover, in *Cook v. Houston Post*, 616 F.2d 791, 793 (5th Cir. 1980), we held that certain investigative activity prior to the presentation of a case to the grand jury, such as interviewing witnesses who will appear before the grand jury, falls "within the *Imbler* shelter." As summarized above, the only specific allegations against Brown concern the manner of his presentation of evidence to the grand jury. As noted, **the cases establish that presentation of evidence to a grand jury in a manner calculated to obtain an indictment, even when maliciously, wantonly or negligently accomplished, is immunized by *Imbler*.**

*Morrison*, 761 F.2d at 247-48 (additional citations omitted).

In *Singleton v. Cannizzaro*, the Fifth Circuit also observed that where a prosecutor decides *not* to use the grand jury process, the prosecutor's actions may not be shrouded by absolute immunity, but when the process is utilized, *Imbler* controls. *Singleton v. Cannizzaro*, 956 F.3d 773, 781-83 (5th Cir. 2020).

Standing opposite of the *Imbler* line of cases are those cases where the Fifth Circuit has found that a prosecutor's actions are not integral to his functions as an advocate. Examples include where a prosecutor manufactures evidence and makes false statements to the press regarding the

criminal prosecution, *see Buckley v. Fitzsimmons,* 509 U.S. 259, 274, 278 (1993); or participates in an on-scene search and seizure of evidence, *see Hoog-Watson v. Guadalupe Cnty.*, 591 F.3d 431 (5th Cir. 2009); or acts as the complaining witness in a warrant application, *see Kalina v. Fletcher*, 522 U.S. 118, 130-31 (1997); or issues fake subpoenas to compel witness testimony, *see Singleton*, 956 F.3d 773, 782-83; or ordering a warrantless arrest, *see Loupe*, 824 F.3d at 539-40.

*Terwilliger v. Reyna* is another example. There, the plaintiffs alleged that District Attorney Reyna "was the driving force behind the mass arrests" of bikers and instructed arresting officers to use a form affidavit and arrest anyone in bikers' colors. *Terwilliger v. Reyna*, 4 F.4th 270, 279-80 (5th Cir. 2021). Importantly, **the Fifth Circuit noted that if DA Reyna had merely been "supplying legal advice based on the investigators' facts" his actions "would fall comfortably within the protection of absolute immunity**." *Id.* at 280 (citing *Spivey v. Robertson,* 197 F.3d 772, 776 (5th Cir. 1999) (additional citations omitted). The Court noted that even if DA Reyna had "involved himself in the decision to arrest by informing Chief Stroman that there was 'sufficient probable cause to arrest any biker who was present and appeared by virtue of clothing or personal effects to be affiliated with the Bandidos or Cossacks,'" DA Reyna would have been entitled to absolute immunity. *Id*.

The Fifth Circuit found that Reyna was not entitled to absolute immunity, however, because supplying legal advice to investigators and involving himself in the arrest of bikers was not the sum of his actions. *Id*. DA Reyna also:

- Was present at the scene 'investigating the shooting' and 'publicly acknowledged that he took the unusual step of assisting law enforcement and was involved in the actual investigation of the incident.'"
- Investigated the scene within hours of the incident, took photographs of the scene, reviewed information as it became known.
- Was continuously updated on May 17 as to the status of the investigation.

- Had access to video footage corroborative of law enforcement interviews that revealed many COC attendees, including many of those arrested, had no connection to the violence or parties involved in the violence.

*Id*. at 280.

The undisputed facts here are antithetical to the line of cases like *Terwilliger* where a prosecutor was denied absolute immunity. Rather, *Imbler* and its progeny controls. As the caselaw makes clear, the act of utilizing the grand jury—even when done negligently, mistakenly, or maliciously—is protected by absolute immunity. Here, ADA Barrera presented the Sheriff's file to the grand jury and there is no evidence that she lied or misrepresent the facts; indeed, the grand jury indicted Plaintiff for causing the death of JAH by abortion, which is precisely what occurred. **A.1** (Indictment). The oversight pertained to a section of the penal code with which ADA Barrera was unfamiliar and that was not built into the elements of the offense where she would expect to have found an exception. This mistake is immunized under the well-established caselaw.

Further, the evidence establishes that in advance of her grand jury presentation, ADA Barrera's only significant direction to the investigators was *not* to arrest Plaintiff and to confirm the definition of "individual" under the penal code. **Exs. B-D, H** (Muniz Dep. 168:9-171:12, 196:21-197:1; Aguirre Dep. 99:1-105:12, 165:1-167:5, 173:20-174:5; Barrera Dep. 87:16-88:22, 92:5-94:21, 96:2-15, 99:2-101:14, Ex. 16, 102:23-103:3, 115:11-116:19, 122:16-124:25, 131:19-133:2, 222:19-223:14, 153:8-24, 155:6-16, 222:19-224:25; Barrera ROGG).

These actions are dissimilar to the cases cited *supra* where a prosecutor actually took over investigative functions held by police such that the prosecutor was not entitled to absolute immunity.

Because the undisputed facts show that ADA Barrera did not take any steps that would deprive her of absolute immunity, like investigating Plaintiff or stepping in as a witness against

Plaintiff, or issuing an arrest warrant for Plaintiff, the Court should find that ADA Barrera is entitled to absolute immunity from Plaintiff's malicious prosecution and false arrest claims.

> **2.    Even If Absolute Immunity Did Not Act As A Complete Bar To Plaintiff's Claims, At Worst, ADA Barrera Made a Mistake, Which Is Insufficient To Overcome Qualified Immunity.**

Absolute immunity bars Plaintiff's malicious prosecution and false arrest claims against ADA Barrera. Full stop. But even if it did not, she is entitled to qualified immunity. As this Court has explained, "The doctrine [of qualified immunity] provides government officials 'breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law.'" *Baker v. Sebatian*, Civil Action No. 4:22-CV-03103, 2023 WL 6393886, at *3 (S.D.T.X. Sept. 30, 2023) (citing *Crostley v. Lamar Cnty.*, 717 F.3d 410, 422 (5th Cir. 2013) (additional citations omitted); *see also Daniels v Williams*, 474 U.S. 327 (1986) and *Davidson v Cannon*, 474 U.S. 344 (1986) (negligence is not actionable under Section 1983)(negligence is not actionable under Section 1983).

At best, this case is about a mistake, which is insufficient to overcome qualified immunity. An appropriate starting point for the analysis is determining whether ADA Barrera's actions violated a constitutional right and if so, was the right clearly established at the time of challenged actions. *Garcia*, 957 F.3d at 600 (additional citations omitted). Plaintiff carries the burden to that the right was clearly established. *Id.*

**<u>Malicious Prosecution</u>**

On April 4, 2022, the Supreme Court held that litigants may bring a Fourth Amendment malicious prosecution claim under § 1983. *Thompson v. Clark*, 569 U.S. 36  (2022). There was not a clearly established right to be free from malicious prosecution in the Fifth Circuit between December 5, 2003, when the Fifth Circuit decided *Castellano v. Fragozo* and April 4, 2022, when the Supreme Court decided *Thompson v. Clark*. *Guerra v. Castillo*, 82 F.4th 278, 288-89 (5th Cir.

2023). The Fifth Circuit has recognized that a pre-*Thompson* malicious prosecution claim has to be dismissed based on qualified immunity "because this court's caselaw explicitly disclaimed the existence of a constitutional claim for malicious prosecution at the time of [plaintiff's] alleged conduct in 2018 and 2019 [i.e., before *Thompson v. Clark*, 596 U.S. 36 (2022)]." *Bledsoe v. Willis*, No. 23-30238, 2023 WL 8184814, at *6 (5th Cir. 2023). Here, the only actions the Assistant District Attorney took occurred before the grand jury indicted Plaintiff, thus, prior to *Thompson*. Thus, based on the Fifth Circuit precedent, ADA Barrera is entitled to qualified immunity against Plaintiff's malicious prosecution claim.

If, *arguendo*, Plaintiff's malicious prosecution claim were viable despite the ADA's actions occurring pre-*Thompson*, the Fifth Circuit has instructed that a claim of malicious prosecution requires that the proceedings were initiated with malice. *Armstrong v. Ashley*, 60 F.4th 262, 278–79 (5th Cir. 2023) (citation and quotation omitted). Malice is demonstrated where there is evidence that the criminal case was initiated without probable cause and for a purpose other than bringing the defendant to justice. *Id.* at 278 (citing *Thompson*).

Plaintiff's malicious prosecution claim falters on the element of malice. There is no evidence that ADA Barrera presented the case to the grand jury "for a purpose other than bringing the defendant to justice." Plaintiff makes no more than a conclusory assertion that ADA Barrera acted "with malice and with intentional disregard for Plaintiff's constitutional rights for which Plaintiff is entitled to punitive damages." Doc. 7, ¶ 9.3.

The undisputed facts show that ADA Barrera was unaware of Section 19.06 until she was told by her boss of the exception *after* Plaintiff had been indicted. **Ex. H** (Barrera Dep. 161:10-169:1, 210:3-211:10, 215:2-216:18).

Not even Plaintiff's criminal defense lawyer raised the issue of Section 19.06 when Plaintiff was arrested. *Id.* (Barrera Dep. 214:2-215:1). ADA Barrera testified that she reviewed the elements under the homicide chapter and that the facts as she understood them fit. After being directed by the District Attorney to use the grand jury process, she did so and allowed the grand jury to make an independent determination—not maliciously; mistakenly. As a result, Plaintiff cannot establish a viable constitutional violation for malicious prosecution, as required to overcome qualified immunity.

**False Arrest**

Turning to the false arrest claim and qualified immunity, to establish the existence of a constitutional violation, plaintiff must show that the Assistant District Attorney caused her to be arrested and could not have reasonably believed that he had probable cause to arrest her for any crime. *Green v. Thomas*, 129 F.4th 877, 886-87 (5th Cir. 2025).

But, where, as here, the "facts supporting an arrest are placed before an independent intermediary such as a … grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Wilson v. Stroman*, 33 F.4th 202, 208 (5th Cir. 2022) (additional citations omitted). "Thus, a properly secured arrest warrant or grand jury indictment will shield a defendant who has committed or initiated a false arrest. *Wilson*, 33 F.4th at 208 (quoting *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 553-54 (5th Cir. 2016)). The caveat is that "the intermediary must be truly independent. Thus, 'the initiating party may be liable for false arrest if the plaintiff shows that 'the deliberations of that intermediary were in some way tainted by the actions of the defendant.'" *Wilson*, 33 F.4th at 208 (quoting *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009)) (additional citations omitted).

There is no evidence here that ADA Barrera tainted the deliberations. The evidence establishes that the Sheriff's office conducted the investigation and she presented the file and what

she knew at the time to the grand jury. Consequently, Plaintiff's false arrest claim fails, and as with the malicious prosecution claim, Plaintiff cannot overcome qualified immunity.

**D.    Plaintiff's Conspiracy Claim Has Absolutely No Evidentiary Basis.**

As stated *supra*, there is no evidence of conspiracy between the District Attorney, ADA Barrera, Sheriff Fuentes and Starr County Memorial Hospital. "To support a conspiracy claim under § 1983, the plaintiff must allege facts that suggest "an agreement between the ... defendants to commit an illegal act" and "an actual deprivation of constitutional rights." *Terwilliger*, 4 F.4th at 285 (quoting *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994)).

Here, Plaintiff admitted that she was unaware of any actions taken by any defendants in advance of a conspiracy to prosecute her for having an abortion. She heard rumors and nothing more. Every member of the District Attorney's office and Sheriff's Office unequivocally denied having an agreement with the hospital to investigate or prosecute "abortion cases." **Exs. B-I** (Muniz Dep.63:1-9, 77:3-6, 110:12-12, 176:12-14; Aguirre Dep. 167:9-168:5; L. Fuentes Dep. 154:19-155:6; R. Fuentes Dep. 93:20-94:3, 96:19-22, 97:4-8; Villarreal Dep. 211:8-11, 211:21-23; Barrera Dep. 81:6-16, 213:2-7; Ramirez Dep. 148:7-150:17).

Plaintiff's baseless conspiracy theory fails.

**E.    Plaintiff's Fourteenth Amendment Claims Must Be Dismissed.**

Finally, Plaintiff's malicious prosecution and unlawful arrest claims are proper under the Fourth Amendment, not the Fourteenth Amendment. As the Fifth Circuit has explained, however, "the Supreme Court did not approve a substantive due process claim arising from malicious prosecution, *Albright v. Oliver*, 510 U.S. 266 (1994), and no subsequent decision of that Court or this court has rendered such a claim cognizable...." *Winfrey v. Johnson*, 766 F. App'x 66, 72 (5th Cir. 2019). The same is true of Plaintiff's unlawful arrest claim. *See Zimmerman v. Cutler*, 657 F. App'x 340, 345 (5th Cir. 2016) ("Zimmerman's unlawful arrest claim must be analyzed under the

Fourth Amendment, not the Fourteenth Amendment."). To the extent that the Court permits the claims to advance under the Fourteenth Amendment, however, the analysis for both claims is the same as under the Fourth Amendment and, as with the Fourth Amendment claims, barred by immunity.

## CONCLUSION AND PRAYER

Therefore, ADA Barrera respectfully request that the Court find she is entitled to absolute immunity for the claims alleged in Plaintiff's Amended Complaint and dismiss them with prejudice. To the extent necessary, should the Court determine that absolute immunity does not apply, ADA Barrera submits that she is entitled to qualified immunity and the claims against her should be dismissed. Finally, ADA Barrera respectfully ask that the Court stay discover pending the determination of immunity for the reasons stated by the Fifth Circuit in *Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022). ADA Barrera pray for any other relief to which they are justly entitled.

SIGNED on the 10th day of JULY 2025.

Respectfully submitted,

By:    *Kelly R. Albin*
Kelly R. Albin
State Bar No. 24086079
So. Dist. ID No. 3792304
kralbin@rampagelaw.com

By:    *Ricardo J. Navarro*
RICARDO J. NAVARRO
State Bar No. 14829100
So. Dist. Id No. 5953
rjnavarro@rampagelaw.com

**DENTON NAVARRO RODRIGUEZ
  BERNAL SANTEE & ZECH, P.C.**
549 N. Egret Bay, Suite 200
League City, Texas 77573
832- 632-2102
832-632-2132 (fax)

**ATTORNEYS FOR DEFENDANT
ALEXANDRIA BARRERA**

### <u>CERTIFICATE OF SERVICE</u>

I certify that a true copy of this document has been served in accordance with one or more of the authorized methods for service of process contained in the Federal Rules of Civil Procedure on the persons or parties identified below on this the 10th day of July 2025.

Ida Cecilia Garza                                              **Via E-Filing Notification**
Veronica Sepulveda Martinez                         **Via E-Filing Notification**
GARZA MARTINEZ, PLLC
202 E. Sprague Street
Edinburg, TX 78539
COUNSEL FOR PLAINTIFFS

By:    *Kelly R. Albin*
          KELLY R. ALBIN
          RICARDO J. NAVARRO