**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| **LIZELLE GONZALEZ** | § | |
| **Plaintiff** | § | |
| | § | |
| **Vs.** | § | **CIVIL ACTION 7: 24-CV-00132** |
| | § | |
| **GOCHA ALLEN RAMIREZ, et al.** | § | |
| **Defendants** | § | |

**SHERIFF RENE FUENTES'
MOTION FOR SUMMARY JUDGMENT, ASSERTION OF IMMUNITY
AND BRIEF IN SUPPORT THEREOF**
================================================================

MAY IT PLEASE THE COURT:

NOW COMES DEFENDANT RENE FUENTES as the elected Sheriff of Starr County,

Texas (hereafter "Sheriff or Sheriff Fuentes") and moves the Court to find that, as a matter of

law, Sheriff Fuentes is entitled to immunity and that Plaintiff's claims must be dismissed with

prejudice. Sheriff Fuentes respectfully submits this brief in support thereof.

## TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF THE ARGUMENTS. ......................... 1

II.     STATEMENT OF THE FACTS. ............................................................. 2

   A.   On September 1, 2021, Senate Bill 8 Takes Effect In Texas. ................................. 2

   B.   On January 7, 2022, Plaintiff Attempted To Self-Induce An Abortion
        At 19-20 Weeks Of Pregnancy. ...................................................................... 3

   C.   Nurse Martha Torres Reports Plaintiff To Law Enforcement and Starr
        Sheriff's Office Investigator investigate the case—not Sheriff Fuentes. ............... 3

   D.   The Starr County Grand Jury Indicts Plaintiff And She Is Arrested On
        April 7, 2022. ............................................................................................. 6

   E.   DA Ramierz Immediately Seeks Dismissal Of The Indictment After
        Learning About Penal Code § 19.06. ............................................................... 7

   F.   Sheriff Fuentes' Motion to Dismiss and Discovery ........................................... 8

   G.   Plaintiff Admits During Discovery That She Has No Actual
        Knowledge Of Any Of The Sheriff's Actions In Her Case. ................................. 9

IV.          ARGUMENTS AND AUTHORITIES ................................................................. 10

    A.     Summary Judgment Standard. ............................................................. 10

    B.     Immunity Must Be Decided At The Earliest Possible Opportunity. .................... 11

    C.     Vicarious Liability Is Not Cognizable Under Section 1983. ............................... 12

    D.     Sheriff Fuentes is entitled to Qualified Immunity. ................................. 13

    E.     Plaintiff's Conspiracy Claim Has Absolutely No Evidentiary Basis................... 16

    F.     Plaintiff's Fourteenth Amendment Claims Must Be Dismissed.......................... 17

CONCLUSION AND PRAYER ........................................................................... 17

====================================================

## TABLE OF AUTHORITIES

**Cases**

*Albright v. Oliver*, 510 U.S. 266 (1994) .............................................................. 18

*Anderson v. Creighton*, 483 U.S. 635 (1987) ..................................................... 12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................... 11

*Armstrong v. Ashley*, 60 F.4th 262 (5th Cir. 2023).......................................... 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)............................................................... 12

*Bledsoe v. Willis*, No. 23-30238, 2023 WL 8184814, at *6 (5th Cir. 2023)................................ 15

*Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955 (5th Cir. 1993)....................... 11

*Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548 (5th Cir. 2016)............................... 16

*Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022)............................................... 19

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................. 10

*Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994)................................................ 18

*Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009) ........................................ 16

*Garcia v. Blevins*, 957 F.3d 596 (5th Cir. 2020)............................................... 11

*Green v. Thomas*, 129 F.4th 877 (5th Cir. 2025)............................................. 16

*Guerra v. Castillo*, 82 F.4th 278 (5th Cir. 2023) .............................................. 14

*Hunter v. Bryant*, 502 U.S. 224 (1991)............................................................. 11

*Krim v. Banc Texas Group, Inc.*, 989 F.3d 1435 (5th Cir. 1993) .................. 11

*Melton v. Phillips*, 875 F.3d 256 (5th Cir. 2017)............................................. 17

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) ...................... 13

*Mouille v. City of Live Oak, Tex.*, 977 F.2d 924 (5th Cir. 1992) ................... 13

*Osborne v. Haley*, 549 U.S. 225 (2007)............................................................. 11

*Planned Parenthood of Greater Tex. v. Abbott*, 748 F.3d 583 (5th Cir. 2014) ..................... 3

*Thompson v. Clark*, —— U.S. ——, 142 S. Ct. 1332, 1337, 212 L.Ed.2d (2022) ...................... 14

*Thompson v. Clark*, 596 U.S. 36 (2022) ............................................................ 15

*Whole Woman's Health v. Jackson 595 U.S. ---- S.Ct. 2494 (2021).............................. 2

*Whole Woman's Health v. Jackson*, 23 F.4th 380 (5th Cir. 2022) ................. 3

*Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021)................................... 2

*Wilson v. Stroman*, 33 F.4th 202 (5th Cir. 2022)............................................ 16

*Winfrey v. Johnson*, 766 F. App'x 66 (5th Cir. 2019)..................................... 18

*Zimmerman v. Cutler*, 657 F. App'x 340 (5th Cir. 2016)............................... 19

Statutes

FED. R. CIV. P. 56(c) .................................................................................................. 10

Texas Health & Safety C. § 171.204 ........................................................................... 2

**DEFENDANT RENE FUENTES' MOTION FOR SUMMARY JUDGMENT
AND BRIEF IN SUPPORT THEREOF**
====================================================

## I.    INTRODUCTION AND SUMMARY OF THE ARGUMENTS.

Plaintiff Lizelle Gonzales (f/k/a "Lizelle Herrera") was indicted on March 30, 2022, when the grand jury of Starr County found that she had intentionally caused the death of Jasiel Alessandro Herrera ("JAH") by a self-induced abortion at 19-20 weeks pregnant. Hospital staff where she sought treatment while the abortion was occurring advised her that abortion was now illegal in Texas and called law enforcement to report a violation of the "new law." Investigator Muniz and Sergeant Aguirre from the Starr County Sheriff's Office investigated the case and submitted their investigation to the District Attorney's office. Sheriff Fuentes did not participate in the investigation, review the file, or attend the grand jury proceedings. Assistant District Attorney Alexandria Barrera presented the case to the grand jury. Plaintiff was indicted for murder and arrested on April 7, 2022.

A media frenzy ensued.

After Plaintiff's arrest was publicized, a local attorney sent District Attorney Ramirez a screen shot of a section of the penal code appended to the very end of the homicide statute, which exempts a mother who causes the death of her unborn child from prosecution under that chapter. DA Ramirez immediately moved to dismiss the indictment.

Now, Plaintiff brings this civil rights case under 42 U.S.C. § 1983, accusing Sheriff Fuentes of conspiracy, malicious prosecution, and false arrest, claiming that the Sheriff targeted her because she had an abortion. The undisputed facts show, however, that Sheriff Fuentes *did not* investigate or direct anyone to investigate Plaintiff; *did not* direct anyone about what to present to the grand jury; *was not* present for the grand jury presentation; and *did not* participate in her arrest.

Sheriff Fuentes asserted his entitlement to immunity in his Motion to Dismiss, but the Court was forced to accept as true Plaintiff's allegations. The Motion was denied and discovery commenced. Discovery revealed that Plaintiff lacks personal knowledge about whether the Sheriff investigated her and what, if any, Sheriff Fuentes' role was leading up to the indictment. Discovery yielded no facts to support Plaintiff's claim that Sheriff Fuentes conspired to target Plaintiff because she had an abortion.  Rather, the sum of discovery is that Sheriff Fuentes did not engage in any conduct other than tell his Captain to make sure the investigators submitted their case to the District Attorney's Office. Sheriff Fuentes is entitled to qualified immunity because he did not take any direct actions that caused Plaintiff to be deprived of a clearly established right.

## II.    STATEMENT OF THE FACTS.

### A.    On September 1, 2021, Senate Bill 8 Takes Effect In Texas.

On September 1, 2021, Texas' Heartbeat Act—also known as Senate Bill 8 or S.B. 8—became effective, making it illegal for an abortion to be induced or performed in Texas by a physician where the physician has "detected a fetal heartbeat of the unborn child." Texas Health & Safety C. § 171.204. The law was immediately challenged, winding its way through the courts and receiving significant media coverage along the way. [1] *See Whole Woman's Health v. Jackson 595 U.S. ----*, 141 S.Ct. 2494 (2021); *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021); *Whole Woman's Health v. Jackson*, 23 F.4th 380, 389 (5th Cir. 2022).

---

[1] *See, e.g.*, *Local pro-abortion advocates protest state enactment of state abortion ban*, Berenice Garcia, September 1, 2021, available at https://myrgv.com/local-news/2021/09/01/local-pro-abortion-advocates-protest-state-enactment-of-state-abortion-ban/; *Window of uncertainty as SB 8 turns Texas reproductive health care upside down*, Staff Writer, September 26, 2021, available at https://www.expressnews.com/news/local/article/Window-of-uncertainty-SB-8-turns-Texas-16486217.php; *Supreme Court issues ruling on Texas abortion law*, Aditi Sangal, Adrienne Vogt, Melissa Macaya and Melissa Mahtani, December 10, 2021, available at https://www.cnn.com/politics/live-news/supreme-court-texas-abortion-law/index.html;

**B.      On January 7, 2022, Plaintiff Attempted To Self-Induce An Abortion At 19-20 Weeks Of Pregnancy.**

With the public fight over Senate Bill 8 raging, Plaintiff went to Starr County Memorial Hospital reporting abdominal pain from an attempted abortion on January 7, 2022. **Exs. A.4** (SCMH records); **A.6** (Muniz Inv. pp. 1-2.). Plaintiff was between 19-20 weeks pregnant. Her medical records note that, "Upon SVE by MD, 2 pills said to be cytotec[2] in an attempt to have an abortion…Advised that abortions are illegal in TX." **Ex. A.4** (SCMH records).

Plaintiff's contractions were stopped at the hospital and Plaintiff was discharged on January 8, 2022, at which time "the unborn child that was later classified as 'Boy Herrera' had a steady heartbeat." **Exs. A.4-A.5** (SCMH Records; Rosa Inv. pp.1-2). Shortly after leaving the hospital, Plaintiff returned to the hospital and doctors discovered that "Boy Herrera" no longer had a heartbeat. **Ex. A.3** (Pl.'s Int. p. 9, 40, 42); **Ex. A.7** (Aguirre Inv. p. 5) After Plaintiff underwent a C-section, Jasiel Alessandro Herrera's ("JAH") body was taken to the nursery and then cremated. *Id.* (Pl.'s Int. p. 21); *see also* **A.6-A.7** (Muniz Inv. p. 1; Aguirre Inv. P. 6).

**C.      Nurse Martha Torres Reports Plaintiff To Law Enforcement and Starr Sheriff's Office Investigator investigate the case—not Sheriff Fuentes.**

On January 11, 2022, Nurse Martha Torres, who tended to Plaintiff while she was at the Hospital called the police to report what had happened because she was concerned about Texas' "new law." **A.5, A.13** (Rosa Inv. p. 2; Rosa BWC). Because the Cyotec drug had been used at Plaintiff's home in Starr County, Starr County Sheriff's Office was notified. **Ex. C** (Aguirre Dep. 169:5-171:1). There was no agreement between the Sheriff's Office and Starr County Hospital to report abortions and the case was unlike any investigated or prosecuted in Starr County. **Exhs. B-**

---

[2] Cytotec is another name for the generic drug misoprostol. *See Planned Parenthood of Greater Tex. Surgical Health Svcs. v. Abbott*, 951 F. Supp. 891, 902 (W.D.T.X. 2013) (discussing Cytotec) (reversed on other grounds by *Planned Parenthood of Greater Tex. v. Abbott*, 748 F.3d 583 (5th Cir. 2014)).

**I** (Muniz Dep. 63:1-9, 77:3-6, 110:12-12, 176:12-14; Aguirre Dep. 167:9-168:5; L. Fuentes Dep. 154:19-155:6; R. Fuentes Dep. 64:9-12, 93:20-94:3, 96:19-22, 97:4-8; Solis Dep. 104:18-21; Villarreal Dep. 211:8-11, 211:21-23; Barrera Dep. 81:6-16, 213:2-7, 225:25-226:5; Ramirez Dep. 148:7-150:17, 197:8-16)**.**

The Sheriff's office investigates all reports that they receive about crimes having possibly been committed to determine whether a crime has occurred. *Id.* (L. Fuentes Dep. 202:12-17; R. Fuentes Dep. 26:20-27:1, 68:2-23).

Nurse Torres reported to deputies that Plaintiff had been treated at the hospital and discharged and that the "baby was still alive" when she left. Nurse Torres stated that Plaintiff returned about an hour later with "pains again…and the baby died." Nurse Torres said she did not know if what had happened was "murder" because of the "new law"—Senate Bill 8. **Exhs. A.5, A.13** (Rosa Inv. p. 2; Rosa BWC); **Ex. B** (Muniz Dep. 66:19-67:5, 71:6-72:18).

The Starr County Sheriff's Office (SCSO) was notified of the complaint. Sheriff Rene Fuentes is the Starr County Sheriff and was elected in 2008. **Ex. E** (R. Fuentes Dep. 31:11-12). He oversees multiple departments and supervises more than 100 employees. *Id.* (R. Fuentes Dep. 33:20-34:19, 54:20-55:13). Sheriff Fuentes' captains and lieutenants regularly meet with deputies and investigators about what is going on day-to-day in the Sheriff's Office. Sheriff Fuentes, in turn, meets with the captain and lieutenant as needed for updates. *Id.* (R. Fuentes Dep. 36:16-37:11). The Sheriff also receives general updates in the SCSO through WhatsApp. *Id.* (R. Fuentes Dep. 92:19-93:13). Sheriff Fuentes does not conduct investigations or interfere with his investigators' work. **Ex. D-E** (L. Fuentes 128:21-129:6; R. Fuentes Dep. 37:22-38:11, 72:5-9).

Plaintiff's case was assigned to SCSO Investigator Muniz, who was the investigator in the office that day. **Ex. D** (L. Fuentes Dep. 50:8-20). Sergeant Rafael Aguirre went to the hospital and

assisted Muniz with interviewing witnesses. **Ex. C** (Aguirre Dep. 61:10-63:2, 164:23-25 ). Sheriff Fuentes did not play any part in deciding who would investigate the case. **Ex. E** (R. Fuentes Dep. 47:12-17, 102:11-15).

Captain Fuentes notified Sheriff Fuentes at the office about the hospital making a call to report that someone had "taken some pills for an abortion." **Ex. E.** (R. Fuentes 21:16-20, 98:21-99:5). Sheriff Fuentes did not know whether abortion was legal in Texas at that time and he did not have any discussions with his staff about the issue. *Id.* (R. Fuentes 22:22-25, 69:3-11). Sheriff Fuentes did not know who Plaintiff was and did not know any of her family members. *Id.* (R. Fuentes 98:8-17). Sheriff Fuentes "advised Captain Fuentes to direct  investigators to document everything and prepare the case, and when they were done, to contact the district attorney's office." *Id*. (R. Fuentes Dep. 22:11-14).

During the investigation, neither Investigator Muniz nor Sergeant Aguirre ever spoke with Sheriff Fuentes and do not know what information, if any, he received about the investigation. **Exs. B-E** (Muniz Dep. 162:15-163:15,); Aguirre Dep. 162:3-6, 164:1-16, 165:6-9, 167:6-8 ; L. Fuentes Dep. 224:12-225:16; R. Fuentes Dep. 23:17-24, 25:6-10, 69:12-17). Sheriff Fuentes did not read any reports related to the case or participate in the investigation in any way. *Id*. For example, Sheriff Fuentes was not aware when interviews were conducted or who the investigators were in contact with at the hospital. **Ex. E.** (R. Fuentes Dep. 99:11-100:10). He was not involved in having the grand jury subpoenas issued. *Id.* (R. Fuentes Dep. 81:22-82:4). Sheriff Fuentes was not involved in determining what charge would apply to Plaintiff. *Id.* (R. Fuentes Dep. 101:14-23).

Sheriff Fuentes was aware that investigators had contacted the District Attorney's Office but he did not know specifics about those conversations, or even who the investigators spoke with,

because he did not participate in those discussions. **Ex. E, H** (Fuentes Dep. 24:20-25:5, 27:2-6, 47:3-24, 74:1-3, 78:13-20, 79:20-24, 80:21-81:1; Barrera Dep. 212:16-18). During the investigation, Captain Fuentes occasionally provided the Sheriff with updates during in-person conversations, as he did with all cases, but Sheriff Fuentes did not provide feedback or direction about how the investigation should be conducted. **Ex. D-E** (L. Fuentes Dep. 54:17-55:4, 130:1-133:21, 196:5-22; R. Fuentes Dep. 42:8-25, 82:5-19, 102:19-105:5).

Sheriff Fuentes never discussed the investigation with District Attorney Ramierz or Assistant District Attorney Barrera. ***Id.*** (R. Fuentes Dep. 105:6-8, 128:5-11); *see also* **Ex. D** (L. Fuentes 230:6-233:1). In fact, Sheriff Fuentes "very rarely" has any communication with District Attorney Ramirez and when he does, it is usually about matters unrelated to work, like the Houston Astros baseball team. ***Id.*** (R. Fuentes Dep. 39:12-24).

**D.      The Starr County Grand Jury Indicts Plaintiff And She Is Arrested On April 7, 2022.**

On March 25, 2022, ADA Barrera presented the case to the grand jury. **Exs. H-I** (Barrera Dep. 68:6-16; Ramirez Dep. 225:4-23, 238:2-7). Sheriff Fuentes did not testify during the grand jury presentation. **Ex. E** (R. Fuentes Dep. 90:7-16). DA Ramirez was in a different county presenting to the grand jury there when ADA Barrera presented Plaintiff's case to the grand jury in Starr County. **Exs. I, N** (Ramirez Dep. 225:4-23; Moreno Aff.).

On March 30, 2025, the grand jury foreman signed an indictment for Plaintiff "intentionally and knowingly caus[ing] the death of an individual J.A.H[.], by a self-induced abortion…." **Ex. A.1** (Indictment). Sheriff Fuentes believes the SCSO is bound by the decision of the grand jury and is not authorized to render a contrary decision. **Ex. E** (R. Fuentes Dep. 118:15-21). Sheriff Fuentes was not involved in arresting Plaintiff or deciding whether there was probable cause to arrest Plaintiff. ***Id.*** (R. Fuentes Dep. 106:15-108:10).

On April 5, 2022, the capias was issued by the Deputy District Clerk and sent to the Sheriff's Office. **Ex. A.14** (capias); *see also* Tex. Code. Crim P. 23.03-.031 ("A capias shall be issued by the district clerk upon each indictment for felony presented, after bail has been set or denied by the judge of the court."). On April 7, 2022, Investigator Muniz and Sergeant Aguirre arrested Plaintiff. **Exs. B-C** (Muniz Dep. 103:4-109:8; Aguirre Dep. 148:3-7).

**E.    DA Ramierz Immediately Seeks Dismissal Of The Indictment After Learning About Penal Code § 19.06.**

When the firestorm around Plaintiff's arrest commenced, DA Ramirez "picked up the file on Saturday…April 9th, Saturday morning…And [he] started looking at the file. And as [he] was looking at the file, [he] started getting phone calls and messages that ultimately convinced [him] that [he] needed to dismiss the indictment." **Ex. I** (Ramirez Dep. 236:10-25, Ex. 33-36).

Specifically, on April 9, 2022, at 4:32 p.m., DA Ramirez received a text from Attorney Brandy Voss asking "*Do you have time for a quick call? It's Brandy Wingate Voss….Kind of urgent.*" **Ex. K**. (Voss Text Messages). At 5:18 p.m., Voss sent DA Ramirez a screen shot of Section 19.06. *Id*. This was the first time that DA Ramirez was aware of the full facts of the case and of Section 19.06, which exempts a mother who causes the death of her unborn child from prosecution. DA Ramirez told Voss, "*Thank you for your call. I hardly know you but I am surely indebted to you.*" *Id*. After discussing Section 19.06 with his team for the first time, DA Ramirez decided to issue a press release indicating that the charges should not have been brought and that he would seek immediate dismissal. **Ex. G, I** (Villarreal Dep., Ex. 4; Ramirez Dep. 248:7-18, 236:18-25). Ramirez notified Sheriff Fuentes that he was seeking dismissal. **Ex. E** (R. Fuentes Dep. 109:13-111:1, 120:6-15).

On April 9, 2022, two days after her arrest, Plaintiff was released on bond. **Ex. A.12** (Inmate Release Form). Sheriff Fuentes approved the request from the bondsman to bond Plaintiff out of jail. *Id.* (R. Fuentes Dep. 115:10-116:17).

On Sunday, April 10, 2022, DA Ramirez met with Plaintiff, her attorney, and her parents. Plaintiff's defense attorney never raised Section 19.06. **Ex. H** (Barrera Dep. 214:2-215:1). DA Ramirez apologized to Plaintiff and told her that "it had been a mistake. It had fallen out of his hands, and he didn't know what happened…[and] He was out of town, and he didn't know what happened…." **Ex. I-J** (Ramirez Dep. 239:2-240:18; Plf.'s Dep. 18:7-25); *see also* **Exs. I, K** (Ramirez Dep., Exs. 33-36; Voss and Garza Text Messages). On April 11, 2025, District Attorney Ramirez filed a Motion to Dismiss Plaintiff's indictment. **Ex. A.2** (MTD).

The only discussions Sheriff Fuentes had with District Attorney about Plaintiff was after Plaintiff posted bond, at which time District Attorney Ramirez asked the Sheriff whether Plaintiff was still in custody and, later, when Ramirez notified Fuentes that he was going to issue a press release about Plaintiff's charge being dismissed. *Id*. (R. Fuentes Dep. 109:13-111:1, 120:6-15

**F.    Sheriff Fuentes' Motion to Dismiss and Discovery.**

Sheriff Fuentes filed a Motion to Dismiss based on immunity on May 1, 2024. Doc. 23. Relying on Plaintiff's allegations in the First Amended Complaint, the Court denied the motion without prejudice. Doc. 41.1. The parties were ordered to engage in discovery that was to be limited to the question of immunity. *Id*.

Since that order, Plaintiff has taken the depositions of DA Ramirez, ADA Barrera, ADA Villareal, ADA Solis, Sheriff Fuentes, Captain Fuentes, Investigator Aguirre, and Investigator Muniz. Plaintiff has received the Sheriff's incoming and outgoing emails during the relevant time period and an affidavit from the IT Director who searched Sheriff Fuentes' phone for content about Plaintiff. **Ex. N** (Abel Barrera Aff.).

Defendant Rene Fuentes' Motion for Summary Judgment
And Assertion of Qualified Immunity                                    -8-

Defendants have taken Plaintiff's deposition and the depositions of Gloria Gonzales, and witnesses whom Plaintiff identified in her disclosures as having knowledge of the DA's "investigation, arrest, and/or prosecution of Plaintiff." Defendants have also received affidavits from two attorneys identified by Plaintiff as witnesses who supposedly relayed information to her about DA Ramirez's involvement in the criminal case. Both attorneys deny Plaintiff's claims that they knew anything about Plaintiff's investigation or prosecution. *C.f.* **Ex. J** (Plf.'s Dep. 59:3-60:16) *with* **Exs. L-M** (Garza and Garcia-Vela Aff.).

## G.    Plaintiff Admits During Discovery That She Has No Actual Knowledge Of Any Of The Sheriff's Actions In Her Case.

During her deposition, Plaintiff testified that she sued Sheriff Fuentes because she believes, "as an acting sheriff, I can tell you that he should have had a knowledge of my arrest," and she believes Sheriff Fuentes "has involvement in every arrest." **Ex. J** (Plf.'s Dep. 12:13-16:22, 33:17-24, 41:6-44:12, 47:25-49:16). Plaintiff could not testify about any actions taken by Sheriff Fuentes, however, despite having pleaded in her First Amended Complaint details about what the Sheriff supposedly did during her investigation and how he conspired with District Attorney Ramirez and Assistant District Attorney Barrera and Starr County Hospital:

> *Q. Do you know of any information, other than the  fact that he's the sheriff, that makes you believe he even knew that the investigation was going on prior to you being arrested?*
...
> *A. No.*

**Id**. (Plf.'s Dep. 42:17-25).

> *Q. You don't know whether the -- the district attorney, the assistant district attorney, investigators in the DA's office, or the sheriff's office, or the sheriff actually worked together on your case, do you?*
> *A. No, I don't.*

**Id.** (Plf.'s Dep. 69:12-17).

> *Q. Okay. And you don't know whether anybody at the hospital ever contacted Sheriff Fuentes directly about your case, do you?*
> *A. I wouldn't know.*

**Id**. (Plf.'s Dep. 80:8-11).

*Q. And can you testify about any conversations or statements exchanged between the district attorney and the sheriff about your case?*
*A. Between them, no.*
***Id.*** (Plf.'s Dep. 115:9-24).

## IV.    ARGUMENTS AND AUTHORITIES

Plaintiff brings claims under Section 1983 against Sheriff Fuentes for: (1) Malicious Prosecution in violation of the Fourteenth Amendment (2) False Arrest in violation of the Fourth and Fourteenth Amendments and (3) Conspiracy. Doc. 7, ¶¶ 7.1-7.10, 7.20-7.36. Because there is no genuine issue of material fact as to whether Sheriff Fuentes is entitled to immunity, the Court should render judgment in his favor and dismiss Plaintiff's claims against him with prejudice.

### A.  Summary Judgment Standard.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Parties seeking summary judgment bear the initial burden of informing the Court of the basis for the motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, which the party believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Once the movant fulfills the burden set forth under *Celotex*, the burden shifts to the non-movant to show that summary judgment should not be granted. FED. R. CIV. P. 56. The party opposing a properly support motion for summary judgment may not rest on mere allegation or denial of pleadings but must set forth specific fact showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

"A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956

(5th Cir. 1993) (citation omitted). Unsubstantiated assertions that a fact issue exists will not suffice. *Krim v. Banc Texas Group, Inc*., 989 F.3d 1435, 1442 (5th Cir. 1993).

Where, as here, the Defendant asserts immunity, the usual summary judgment framework is altered and the burden of proof shifts to the plaintiff to show that the immunity defense is not available. *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020).

**B.     Immunity Must Be Decided At The Earliest Possible Opportunity.**

The Supreme Court has "several times instructed" that "[i]immunity-related issues…should be decided at the earliest opportunity." *Osborne v. Haley*, 549 U.S. 225, 253 (2007); *citing Hunter v. Bryant*, 502 U.S. 224, 228 (1991) ("Immunity ordinarily should be decided by the court long before trial."); *Anderson v. Creighton*, 483 U.S. 635, 646, n. 6 (1987) ("[I]immunity questions should be resolved at the earliest possible stage of litigation.").

Where, as here, the plaintiff makes demonstrably false allegations in her complaint, which are successfully designed to avoid a Rule 12 Motion based on immunity, a defendant has no choice except to be subject to discovery and reassert immunity through a summary judgment motion. *See Carswell v. Camp*, 54 F. 307, 312 (5th Cir. 2022). This process, should, however, be limited and focused solely on "factual disputes relevant to whether [immunity] applies. *Id*. "The basic thrust of the []immunity doctrine is to free officials from the concerns of litigation, including avoidance of disruptive discovery." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009)).

In the instant case, Plaintiff's discovery demands have been the very sort of "disruptive discovery" forbidden by long-standing Supreme Court dictates. Over Defendants' objections to the scope, Plaintiff has obtained Sheriff Fuentes' incoming and outgoing emails, the depositions of the Sheriff and his staff and the Sheriff's phone has been searched—all despite Plaintiff admitting she lacked a factual basis for her accusations about Sheriff Fuentes' involvement. No

further discovery should be permitted because Sheriff Fuentes is entitled to immunity, and this motion is ripe for determination.

## C.    Vicarious Liability Is Not Cognizable Under Section 1983.

Since the evidence shows that Sheriff Fuentes did nothing more than receive a few updates about Plaintiff's case and instruct Captain Fuentes to ensure the case was reviewed by the District Attorney's Office, Plaintiff's claim against Sheriff Fuentes is properly read as seeking *respondeat superior* liability.

It is "[w]ell settled Section 1983 jurisprudence establishes that supervisory officials cannot be held vicariously liable for their subordinates' actions." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 691– 95 (1978). "Only the **direct acts or omissions of government officials, not the acts of subordinates**, will give rise to individual liability under § 1983." *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997) (collecting cases) (emphasis supplied); *see also DeMarco v. Davis*, 914 F.3d 383, 390 (5th Cir. 2019). Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injury. *Mouille*, 977 F.2d at 929 (additional citations omitted).

Here, all of the facts show that Investigator Muniz and Sergeant Aguirre were responsible for conducting the investigation and were supervised by Captain Fuentes. They gathered the evidence, conducted interviews, including Plaintiff's interview, obtained grand jury subpoenas and submitted the case to the District Attorney's office. The Sheriff never spoke with them, directed them how to perform the investigation, or provided guidance of any sort, other than to tell Captain Fuentes that the investigators needed to document the facts and submit their investigation to the District Attorney's Office. **Exs. B-E** (Muniz Dep. 162:15-163:15,); Aguirre Dep. 162:3-6, 164:1-

16, 165:6-9, 167:6-8 ; L. Fuentes Dep. 224:12-225:16; R. Fuentes Dep. 23:17-24, 25:6-10, 69:12-17).

Because he did not engage in any direct acts that caused an alleged constitutional deprivation, Sheriff Fuentes cannot be individually liable and all of the claims, which are brought under Section 1983, must be dismissed.

**D.    Sheriff Fuentes is entitled to Qualified Immunity.**

Even if there was some evidence indicating that Sheriff Fuentes took some direct action, causing Plaintiff to suffer a constitutional deprivation—which he did not—he is entitled to qualified immunity for Plaintiff's malicious prosecution and false arrest claims. A state official is entitled to qualified immunity unless (1) the plaintiff establishes a violation of a constitutional right; and (2) that right was "clearly established" at the time of the alleged violation. *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (citing *Pearson*, 555 U.S. at 232). While a court has sound discretion to address either of these prongs first, "the development of the law is best served by undertaking, wherever possible, the threshold constitutional analysis." *Mayfield v. Currie*, 976 F.3d 482, 493 (5th Cir. 2020); *Cope*, 3 F.4th at 204 ("Still, often 'the better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all.'") (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).

**a.    Malicious Prosecution**

On April 4, 2022, the Supreme Court held that litigants may bring a Fourth Amendment malicious prosecution claim under § 1983. *Thompson v. Clark*, —— U.S. ——, 142 S. Ct. 1332, 1337, 212 L.Ed.2d 382 (2022). There was not a clearly established right to be free from malicious prosecution in the Fifth Circuit between December 5, 2003, when the Fifth Circuit decided *Castellano v. Fragozo* and April 4, 2022, when the Supreme Court decided *Thompson v. Clark*.

*Guerra v. Castillo*, 82 F.4th 278, 288-89 (5th Cir. 2023). The Fifth Circuit has recognized that a pre-*Thompson* malicious prosecution claim has to be dismissed based on qualified immunity "because this court's caselaw explicitly disclaimed the existence of a constitutional claim for malicious prosecution at the time of [plaintiff's] alleged conduct in 2018 and 2019 [i.e., before *Thompson v. Clark*, 596 U.S. 36 (2022)]." *Bledsoe v. Willis*, No. 23-30238, 2023 WL 8184814, at *6 (5th Cir. 2023). Here, the only actions the Sheriff took were in directing Captain Fuentes to ensure investigators contacted the District Attorney's Office, which occurred before the grand jury indicted Plaintiff, thus, prior to *Thompson*. Therefore, based on the Fifth Circuit precedent, the Sheriff is entitled to qualified immunity against Plaintiff's malicious prosecution claim.

If, *arguendo*, Plaintiff's malicious prosecution claim were viable despite the Sheriff's Office's investigation being concluded pre-*Thompson*, the Fifth Circuit has instructed that a claim of malicious prosecution requires that the proceedings were initiated with malice. *Armstrong v. Ashley*, 60 F.4th 262, 278–79 (5th Cir. 2023) (citation and quotation omitted). Malice is demonstrated where there is evidence that the criminal case was initiated without probable cause and for a purpose other than bringing the defendant to justice. *Id.* at 278 (citing *Thompson*).

Plaintiff's malicious prosecution claim against the Sheriff falters on the element of malice. There is no evidence that Sheriff Fuentes knew who Plaintiff was, targeted her because she had an abortion, or took any bad-faith actions for a malicious reason.

Rather, the undisputed facts show that Sheriff Fuentes was not involved in the investigation at all and did not know details about what was happening with Plaintiff's case. The Sheriff was not aware of the state of abortion in Texas when Plaintiff was investigated, which was amid a shift in the law at the State and Federal levels. There is simply no evidence of malice; thus, no evidence that Sheriff Fuentes' actions caused a constitutional deprivation of a clearly established right.

**b.  False Arrest**

Turning to the false arrest claim and qualified immunity, to establish the existence of a constitutional violation, plaintiff must show that the Sheriff caused Plaintiff to be arrested and could not have reasonably believed that he had probable cause to arrest her for any crime. *Green v. Thomas*, 129 F.4th 877, 886-87 (5th Cir. 2025).

But, where, as here, the "facts supporting an arrest are placed before an independent intermediary such as a … grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Wilson v. Stroman*, 33 F.4th 202, 208 (5th Cir. 2022) (additional citations omitted). "Thus, a properly secured arrest warrant or grand jury indictment will shield a defendant who has committed or initiated a false arrest. *Wilson*, 33 F.4th at 208 (quoting *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 553-54 (5th Cir. 2016)). The caveat is that "the intermediary must be truly independent. Thus, 'the initiating party may be liable for false arrest if the plaintiff shows that 'the deliberations of that intermediary were in some way tainted by the actions of the defendant.'" *Wilson*, 33 F.4th at 208 (quoting *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009)) (additional citations omitted).

This "taint exception" to the independent intermediary doctrine, however, is only triggered where the defendant actually participates in preparation of the complained-of charging instrument. *See Terwilliger*, 4 F.4th at 283-84; *Melton v. Phillips*, 875 F.3d 256, 263 (5th Cir. 2017) (holding that "an officer must have assisted in the preparation of, or otherwise presented or signed a warrant application in order to be subject to liability under *Franks*")

Here, the undisputed evidence shows that Sheriff Fuentes did not participate in the preparation of any materials that were presented to the grand jury and did not, himself, testify before the grand jury. **Exs. B-E** (Muniz Dep. 162:15-163:15,); Aguirre Dep. 162:3-6, 164:1-16, 165:6-9, 167:6-8 ; L. Fuentes Dep. 224:12-225:16; R. Fuentes Dep. 23:17-24, 25:6-10, 69:12-17,

90:7-16). Absent some evidence that he participated in the preparation of the materials that went before the grand jury, he is shielded from *Franks* liability for Plaintiff's false arrest claim. *Id.* Even if he had participated in the preparation of the grand jury presentation, which he did not, absent evidence that Sheriff Fuentes took some affirmative action to cause the grand jury to be misled, he is entitled to qualified immunity. *Wilson*, 33 F.4th at 212 (*Franks* and *Malley* claims require evidence that grand jury has been intentionally misled). Additionally, there must be some facts establishing that Sheriff Fuentes initiated the false arrest, which are simply not present.

In sum, Sheriff Fuentes is entitled to judgment as a matter of law because he did not take any direct action in Plaintiff's case and cannot be vicarious liability for the acts of his subordinates. Alternatively, Sheriff Fuentes is entitled to qualified immunity against Plaintiff's malicious prosecution and false arrest claims because he did not engage in any conduct that caused the violation of a clearly established right.

**E.    Plaintiff's Conspiracy Claim Has Absolutely No Evidentiary Basis.**

As stated *supra*, there is no evidence of conspiracy between the District Attorney, ADA Barrera, Sheriff Fuentes and Starr County Memorial Hospital. "To support a conspiracy claim under § 1983, the plaintiff must allege facts that suggest "an agreement between the ... defendants to commit an illegal act" and "an actual deprivation of constitutional rights." *Terwilliger*, 4 F.4th at 285 (quoting *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994)).

Here, Plaintiff admitted that she was unaware of any actions taken by any defendants in advance of a conspiracy to prosecute her for having an abortion. She heard rumors and nothing more. Every member of the District Attorney's office and Sheriff's Office unequivocally denied having an agreement with the hospital to investigate or prosecute "abortion cases." **Exhs. B-I** (Muniz Dep.63:1-9, 77:3-6, 110:12-12, 176:12-14; Aguirre Dep. 167:9-168:5; L. Fuentes Dep.

154:19-155:6; R. Fuentes Dep. 93:20-94:3, 96:19-22, 97:4-8; Villarreal Dep. 211:8-11, 211:21-23; Barrera Dep. 81:6-16, 213:2-7; Ramirez Dep. 148:7-150:17).

Plaintiff's baseless conspiracy theory fails.

**F.    Plaintiff's Fourteenth Amendment Claims Must Be Dismissed.**

Finally, Plaintiff's malicious prosecution and unlawful arrest claims are proper under the Fourth Amendment, not the Fourteenth Amendment. As the Fifth Circuit has explained, however, "the Supreme Court did not approve a substantive due process claim arising from malicious prosecution, *Albright v. Oliver*, 510 U.S. 266 (1994), and no subsequent decision of that Court or this court has rendered such a claim cognizable…." *Winfrey v. Johnson*, 766 F. App'x 66, 72 (5th Cir. 2019). The same is true of Plaintiff's unlawful arrest claim. *See Zimmerman v. Cutler*, 657 F. App'x 340, 345 (5th Cir. 2016) ("Zimmerman's unlawful arrest claim must be analyzed under the Fourth Amendment, not the Fourteenth Amendment."). To the extent that the Court permits the claims to advance under the Fourteenth Amendment, however, the analysis for both claims is the same as under the Fourth Amendment and, as with the Fourth Amendment claims, barred by immunity.

**CONCLUSION AND PRAYER**

Therefore, Sheriff Fuentes submits that he is entitled to qualified immunity and the claims against him should be dismissed. Defendants respectfully ask that the Court stay discover pending the determination of immunity for the reasons stated by the Fifth Circuit in *Carswell v. Camp*, 54 F.4[th] 307 (5th Cir. 2022). Defendants pray for any other relief to which they are justly entitled.

SIGNED on the 22nd day of JULY 2025.

Respectfully submitted,

*Kelly R. Albin*
Kelly R. Albin
State Bar No. 24086079

So. Dist. ID No. 3792304
kralbin@rampagelaw.com

By:      *Ricardo J. Navarro*
         RICARDO J. NAVARRO
         State Bar No. 14829100
         So. Dist. Id No. 5953
         rjnavarro@rampagelaw.com

         **DENTON NAVARRO RODRIGUEZ**
         **   BERNAL SANTEE & ZECH, P.C.**
         549 N. Egret Bay, Suite 200
         League City, Texas 77573
         832- 632-2102
         832-632-2132 (fax)

         **ATTORNEYS FOR DEFENDANT**
         **SHERIFF RENE FUENTES**

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true copy of this document has been served in accordance with one or more of the authorized methods for service of process contained in the Federal Rules of Civil Procedure on the persons or parties identified below on this the 22nd day of July 2025.

Ida Cecilia Garza                                          **Via E-Filing Notification**
Veronica Sepulveda Martinez                    **Via E-Filing Notification**
GARZA MARTINEZ, PLLC
202 E. Sprague Street
Edinburg, TX 78539
COUNSEL FOR PLAINTIFFS


Lauren Alicia Johnson                               **Via E-Filing Notification**
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
915 15th Street NW
Washington DC 20005
COUNSEL FOR PLAINTIFFS


David A. Donatti                                         **Via E-Filing Notification**

Adriana Pinon                                            **Via E-Filing Notification**
AMERICAN CIVIL LIBERTIES
UNION OF TEXAS
P.O Box 12905
Austin, TX 78711-2905
COUNSEL FOR PLAINTIFFS


By:   *Kelly R. Albin*
        KELLY R. ALBIN
        RICARDO J. NAVARRO