# STARR COUNTY SHERIFF'S OFFICE



**LAW ENFORCEMENT POLICY BOOK**

L. Gonzalez 000426

L. Gonzalez 000427

## IN APPRECIATION

Our new law enforcement policies & procedures reflect the effort of many dedicated people to whom we wish to express our appreciation.

First, I want to thank the many officers and staff that took the time to participate in this important project.   Because of your efforts, this manual reflects the philosophy and operational approach of Starr County Sheriff's Office in managing and providing vital law enforcement services to our community.   Of the many deserving of my gratitude, I especially want to thank:

**Chief Guillermo Pena**
**Captain Larry Fuentes**
**Captain Romeo J. Ramirez, Jr.**
**Janie Grigsby, Administrative Assistant**
**Letty Alanis, Administrative Assistant**

I also wish to thank each professional outside of our agency whose individual effort, knowledge, and experience attach personal meaning to each policy.   We are the beneficiaries of their collective experience and shared wisdom.   Some of these fine organizations and people include:

**STATE OF TEXAS:**
El Paso County Sheriff's Office

**Steve Westbrook, Executive Director,**
Sheriffs' Association of Texas

**Terry Julian, Executive Director,**
Texas Commission on Jail Standards

The professionals at OSS – Law Enforcement Advisors® who helped us bring this project together spent long, tedious hours conducting research, auditing and inspecting various law enforcement agencies, debating issues, and compiling new data.   They are:

**David Lee Salmon II**, Project Coordinator, Assistant Editor
**David L. Salmon, Ph.D.**, Editor
**John Upton**, Research & Assistant Editor
**Courtney McNutt**, Research & Assistant Editor
**Joelle Durdin**, Research & Assistant Editor
**Shelby Carr**, Research, Writing, & Editing
**Ryan Grundstein**, Writing & Editing
**Greg Flint**, Research, Writing, & Editing
**Dax Salmon**, Research, Graphics Design
**Karen Salmon**, Proofing & Editing

L. Gonzalez 000428

After the original content was compiled, vital input was received from a variety of professional disciplines.  Professionals who devoted their valuable time to review, comment, and debate issues are especially appreciated for their interest in law enforcement in general, and their efforts on this project in particular.  Some of the more noteworthy participants are:

**George C. "Sonny" Blackwell**, Risk Manager, Stewart, Sneed, & Hewes
**Benjamin E. Griffith**, Attorney at Law, Griffith & Griffith Law Offices
**Daniel J. Griffith**, Attorney at Law, Griffith & Griffith Law Offices
**Ronald Kelley,** Law Enforcement Specialist, State of Florida
**Robert E. Krall**, CSP, ARM, Director of Risk Control, Trident Insurance Services
**Robert Laird**, Safe & Orderly Schools, Mississippi Department of Education
**Leonard Sims**, Chief of Police, Bexar County Hospital District
**Drew Warren**, Chief of Police, Cleveland, Mississippi
**Thomas A. Wicker**, Attorney at Law, Holland, Ray, Upchurch, & Hillen, P.A.

Inspiration and some original content were drawn from a variety of sources as well as the following organizations:

**International Association of Chief's of Police**
**Magnolia State Law Enforcement Academy**
**Mississippi Department of Public Safety**
**National Center for Rural Law Enforcement**
**National Sheriffs Association**
**Texas Commission on Law Enforcement Standards & Education**
**Texas Department of Public Safety**
**United States Department of Corrections**
**United States Department of Justice**

In grateful appreciation to all those that served, and provided invaluable resource material, I am

SHERIFF RENE FUENTES

L. Gonzalez 000429

# INTRODUCTION

L. Gonzalez 000430

**STARR COUNTY SHERIFF'S OFFICE**
**Law Enforcement Policies & Procedures**
**with Associated Forms**

## TABLE OF CONTENTS

### 1. Introduction:

1.01 Letter from Agency Head
1.02 Receipt for Policies & Procedures Manual
1.03 How to Use This Manual
1.04 Mission Statement
1.05 Objective Statements
1.06 Orders & Instructions
1.07 Oath of Office
1.08 Request for Review or Comment
1.09 Suggestion Form

### 2. Standards, Ethics & Management:

2.01 Policy & Procedure Management System
2.02 Staffing Analysis
2.03 Management Philosophy & Goals
2.04 Delegation of Authority
2.05 Critical Incident Reporting
2.06 Communications
2.07 Civil Litigation
2.08 Internal Affairs
2.09 Selection & Placement of Personnel
2.10 Quality Assurance
2.11 Canons of Police Ethics
2.12 Professional Conduct
2.13 Abuse of Position
2.14 Officer & Employee Corruption Prevention
2.15 Rules of Conduct

### 3. Personnel:

3.01 Workplace Harassment
3.02 Drug-Free Workplace Program
3.03 Training & Proficiency Testing
3.04 Firearms Training & Proficiency Demonstration
3.05 Officer & Employee Discipline & Accountability
3.06 Employee Insubordination
3.07 Grievance Procedures
3.08 Appearance & Grooming

L. Gonzalez 000431

3.09   Disabled Persons
3.10   Court Appearance
3.11   Fitness for Duty
3.12   Field Training & Evaluation Program
3.13   Community Relations
3.14   News Media Relations
3.15   Employee & Confidential Records
3.16   Uniforms
3.17   Computer Use, Security & Access
3.18   Incentive Step Pay Plan [Sample]

**4.  General Patrol:**

4.01   Patrol Functions & Tactics
4.02   Radio Procedures
4.03   Communications Center - 911
4.04   Civil Rights & Constitutional Warnings
4.05   Search Warrants
4.06   Search of Motor Vehicles
       a.  4.06b-1 Search of Motor Vehicle - Consent to Search Form
4.07   Interviews & Searches
4.08   Arrest Procedures
4.09   Evidence Collection, Control, & Storage
       a.  4.09b-1 Evidence Form
4.10   Jail Lockup & Intake of Detainees
4.11   Transporting Arrested Persons
4.12   Bail Bonds
4.13   Report Writing
4.14   Traffic Stops & Enforcement
4.15   Highway Incident Traffic Control
4.16   Investigation of Motor Vehicle Accidents
4.17   Emergency Vehicle Warning Devices
4.18   Vehicular Pursuit:
       a.  Judgmental
       b.  Limited
       c.  Prohibitive
       d.  Restrictive
4.19   Ride Along Policy
       a.  4.19b-1 Ride Along Program Application Form
4.20   Vehicle Maintenance
       a.  4.20b-1 Vehicle Maintenance Form
4.21   Death or Serious Injury Notification
4.22   Post-Shooting Incident
4.23   Blood Borne Pathogens & Other Infectious Diseases
4.24   Off-Duty Conduct & Powers of Arrest
4.25   Secondary or Off-Duty Employment

L. Gonzalez 000432

4.26   Use of Agency Vehicles
4.27   Mentally Ill Persons
4.28   Intoxicated Persons

## 5. Use of Force:

5.01   Use of Force & Deadly Force
5.02   Chemical Agent – Oleoresin Capsicum (OC)
5.03   Special Munitions – Distraction Devices
5.04   Special Munitions – Less Than Lethal
5.05   Knives & Edged Weapons
5.06   Active Shooter Response

## 6. Emergency Events:

6.01   Emergency Management
         a. 6.01b-1 Emergency Management – Handling a Crisis Attachment
6.02   Emergency Call Out Procedure
6.03   Civil Disturbances
6.04   Strikes & Labor Disputes
6.05   Hostage or Barricaded Subject Incidents
6.06   Bomb & Mass Destruction Threats
         a. 6.06b-1 Bomb & Mass Destruction Threats Attachment

## 7. Special Operations:

7.01   Crime Scenes
7.02   Robbery or Alarm Response
7.03   Child Abuse Investigations
7.04   Criminal Investigation
7.05   Missing Persons Investigations
         a. 7.05b-1 Missing Persons Investigations Form
7.06   Domestic Abuse Investigations
7.07   Covert Operations & Undercover Investigations
7.08   Covert Electronic Recording
         a. 7.08b-1 Covert Electronic Recording – Consent to Search Form
7.09   Overt Electronic Recording
7.10   Canine Operations
7.11   Special Weapons & Tactics (SWAT)
7.12   Roadblocks

L. Gonzalez 000433

**Starr County Sheriff's Office**
**Law Enforcement Policies & Procedures**
**with Associated Forms**

## TABLE OF CONTENTS – ALPHABETICAL

**Policy Title, Policy Number**

Abuse of Position, 2.13
Active Shooter Response, 5.06
Appearance & Grooming, 3.08
Arrest Procedures, 4.08
Bail Bonds, 4.12
Blood Borne Pathogens & Other Infectious Diseases, 4.23
Bomb & Mass Destruction Threats, 6.06
Bomb & Mass Destruction Threats Attachment. 6.06b-1
Canine Operations, 7.10
Canons of Police Ethics, 2.11
Chemical Agent – Oleoresin Capsicum (OC), 5.02
Child Abuse Investigations, 7.03
Civil Disturbances, 6.03
Civil Litigation, 2.07
Civil Rights & Constitutional Warnings, 4.04
Communications, 2.06
Communications Center – 911, 4.03
Community Relations, 3.13
Computer Use, Security & Access, 3.17
Court Appearance, 3.10
Covert Electronic Recording, 7.08
Covert Electronic Recording – Consent to Search Form, 7.08b-1
Covert Operations & Undercover Investigations, 7.07
Crime Scenes, 7.01
Criminal Investigation, 7.04
Critical Incident Reporting, 2.05
Death or Serious Injury Notification, 4.21
Delegation of Authority, 2.04
Disabled Persons, 3.09
Domestic Abuse Investigations, 7.06
Drug-Free Workplace Program, 3.02
Emergency Call Out Procedure, 6.02
Emergency Management, 6.01
Emergency Management – Handling a Crisis Attachment, 6.01b-1
Emergency Vehicle Warning Devices, 4.17
Employee & Confidential Records, 3.15
Employee Insubordination, 3.06
Evidence Collection, Control, & Storage, 4.09
Evidence Form, 4.09b-1
Field Training & Evaluation Program, 3.12

L. Gonzalez 000434

Firearms Training & Proficiency Demonstration, 3.04
Fitness for Duty, 3.11
Grievance Procedures, 3.07
Highway Incident Traffic Control, 4.15
Hostage or Barricaded Subject Incidents, 6.05
How to Use This Manual, 1.03
Internal Affairs – ICE, 2.08
Interviews & Searches, 4.07
Intoxicated Persons, 4.28
Investigation of Motor Vehicle Accidents, 4.16
Jail Lockup & Intake of Detainees, 4.10
Juvenile Procedures, 7.13
Knives & Edged Weapons, 5.05
Letter from Agency Head [Sample], 1.01
Management Philosophy & Goals, 2.03
Mentally Ill Persons, 4.27
Missing Persons Investigations, 7.05
Missing Persons Investigations Form, 7.05b-1
Mission Statement, 1.04
News Media Relations, 3.14
Oath of Office, 1.07
Objective Statements, 1.05
Off-Duty Conduct & Powers of Arrest, 4.24
Officer & Employee Corruption Prevention, 2.14
Officer & Employee Discipline & Accountability, 3.05
Orders & Instructions, 1.06
Overt Electronic Recording, 7.09
Patrol Functions & Tactics, 4.01
Policy & Procedure Management System, 2.01
Post Shooting Incident, 4.22
Professional Conduct, 2.12
Quality Assurance, 2.10
Radio Procedures, 4.02
Receipt for Policies & Procedures Manual, 1.02
Report Writing, 4.13
Request for Review or Comment, 1.08
Ride Along Policy, 4.19
Ride Along Program Application Form, 4.19b-1
Roadblocks, 7.15
Robbery or Alarm Response, 7.02
Rules of Conduct, 2.15
Search of Motor Vehicle - Consent to Search Form, 4.06b-1
Search of Motor Vehicles, 4.06
Search Warrants, 4.05
Secondary or Off-Duty Employment, 4.25
Selection & Placement of Personnel, 2.09
Special Munitions – Distraction Devices, 5.03
Special Munitions – Less Than Lethal, 5.04

L. Gonzalez 000435

Special Weapons & Tactics (SWAT), 7.11
Staffing Analysis, 2.02
Strikes & Labor Disputes, 6.04
Suggestion Form, 1.09
Traffic Stops & Enforcement, 4.14
Training & Proficiency Testing, 3.03
Transporting Arrested Persons, 4.11
Uniforms, 3.16
Use of Agency Vehicles, 4.26
Use of Force & Deadly Force, 5.01
Vehicle Maintenance, 4.20
Vehicle Maintenance Form, 4.20b-1
Vehicular Pursuit, Judgmental, 4.18
Vehicular Pursuit, Limited, 4.18
Vehicular Pursuit, Prohibitive, 4.18
Vehicular Pursuit, Restrictive, 4.18
Workplace Harassment, 3.01

L. Gonzalez 000436

L. Gonzalez 000437



GUILLERMO "WILLIE" PEÑA
CHIEF DEPUTY

LARRY FUENTES
CAPTAIN

ROMEO J. RAMIREZ JR.
CAPTAIN

RENE FUENTES
SHERIFF

100 EAST 6th STREET
PHONE: (956) 487-5571
FAX NUMBER: (956) 487-0021
RIO GRANDE CITY, TEXAS 78582

April 26, 2010

To:    All Jail Officers and Employees

Re:    Policy & Procedure Manual

Dear Ladies & Gentlemen:

The publication of these *new policies and procedures* marks an important milestone in our continued development as a local leader in law enforcement. For those of you who participated in creating this document, please accept my hardiest thanks for a *job well done!* If you did not have an opportunity to provide input, we now ask for your assistance.

Over the next few days and weeks, the entire agency will be learning and applying the details of our new polices and procedures. As we do so, we will re-visit some of the old practices as well. Take time to study and learn. Then give us your ideas on how we can make this an even better guide toward achieving a safer and more efficient operation. With warmest personal regards to each of you, I remain

Sincerely,

Sheriff Rene Fuentes

L. Gonzalez 000438

L. Gonzalez 000439

## STARR COUNTY SHERIFF'S OFFICE
## RECEIPT FOR POLICIES & PROCEDURES MANUAL

I, _____, hereby acknowledge receipt of one (1) copy of the *Starr County Sheriff's Office Policies & Procedures Manual*.

It is understood that this manual is entrusted to me for safekeeping, study, and compliance. I will use my best efforts to study, learn, and comply with the instructions contained in this manual. The updating, maintenance, and safe storage of this manual are my personal responsibility.

I understand this manual contains ***restricted law enforcement data***, and that release of its contents to anyone not having an official need to know may place residents of this community, and officers and employees of this agency at risk.

I will retain this manual in my possession or safekeeping, and will not allow it to be copied or reproduced in any manner without prior authorization from a superior authorized to permit such duplication. Further, I will immediately report to Sheriff Rene Fuentes any attempt made by those outside of the agency to borrow, acquire a copy, view, or use this manual. Likewise, I will immediately report the loss of this manual or portions of its contents to my immediate supervisor or Sheriff Rene Fuentes.

I affirm my commitment to honor this agreement this _____ day of _____, 2010.


_____
Printed name


_____
Signature


_____
Printed name of Witness


_____
Witness' Signature

L. Gonzalez 000440

## STARR COUNTY SHERIFF'S OFFICE

### HOW TO USE THIS MANUAL

Contained in this manual are Policies and Procedures of the Starr County Sheriff's Office. This manual deals with the specifics of operating this law enforcement agency both administratively and operationally, and it addresses issues relating to how we manage, supervise, and provide law enforcement services to the community we serve.

Our policies are developed with you and good order in mind. They are of critical importance to your safety, the safety of fellow officers, and the community at large. These policies will be periodically updated. You will be notified when changes are made at roll calls, during training sessions, and by written notice. It is your responsibility to understand these policies and follow the procedures set forth in this manual.

Policies and procedures are written to provide a basis for the day-to-day operations. Their purpose is to standardize the agency's approach and response to recurrent and predictable situations. Policies and procedures are intended to provide you with guidance regarding the performance of your responsibilities as a sworn law enforcement officer or employee of this agency. They contribute to the overall achievement of the mission by defining performance expectations, ensuring conformity to legal standards, defining and institutionalizing *best practices,* and establishing a basis for accountability.

It is an important requirement that each of us be familiar with the details of this manual, and readily apply its guidelines in every aspect of what we do in carrying out our vital mission. How well you study and use what you learn directly affects the safety and well being of the citizens we are sworn to protect, and ourselves.

Begin your education process by paging through the manual. Familiarize yourself with the format; review how subjects are categorized and numbered; and look for specific topics of interest to you. Next read the *Use of Force* policy, and the *Vehicle Pursuit* policy. Ask yourself, *can I understand and apply these policies?* Continue and read each policy, and when you come to something you don't understand, find confusing, or simply question, write it down and talk with your supervisor to seek the answers. Repeat the process until you are confident you know the policy well enough to apply it in spirit as well as in practice.

During your reading of the manual, if you find something incorrectly stated, or you have a better idea, we want to know about it. This is a *living document.* It was put together with change in mind – the kind of change that brings improvement. Your assistance is needed to make it work, and keep it working as a quality guide.

Use the following *Suggestion Form* to make written suggestions. You may use the original in the book to make copies. Then put your suggestions on a copy of the form, and turn it in to your supervisor. No recommendation is too small or unimportant, so please share your ideas.

L. Gonzalez 000441

## STARR COUNTY SHERIFF'S OFFICE

**MISSION STATEMENT**

### Mission Statement

Starr County Sheriff's Office consistently and with uniformity strives to maintains social order and provide professional law enforcement services to citizens in the community, within prescribed ethical, budgetary, and constitutional constraints. This agency strives to enforce the law and maintain order in a fair and impartial manner, recognizing the need for justice, and the consistent appearance of justice. The Sheriff recognizes that no law enforcement agency can operate at its maximum potential without supportive input from the citizens it serves. This agency actively solicits and encourages the cooperation of all citizens to reduce and limit the opportunities for crime and to assist in bringing to justice those that break the law.

SHERIFF RENE FUENTES

1

L. Gonzalez 000442

**Starr County Sheriff's Office**
**Law Enforcement**
**Policies and Procedures**

| Subject: Criminal Investigation | Policy Number: 7.04 |
|---|---|
| Issue Date: 04/26/2010 | Revision Date: |
| Approval Authority<br>Title and Signature: Sheriff Rene Fuentes | |

**POLICY:**

Complaints of major violations of the law require investigations that are conducted in-depth by Starr County Sheriff's Office with attention to detail regardless of whether the investigation is preliminary or of a follow-up nature.

**PROCEDURES:**

**Preliminary Investigation:**
The preliminary investigation begins when the first law enforcement unit arrives at the scene of a crime or information is taken by an officer concerning a crime. The investigation continues until postponed or until transferred to another officer. The following officer responsibilities are part of the preliminary investigation and may vary according to the type of crime being investigated and the circumstances associated with the crime scene:

1. Provide aid to the injured;
2. Protect the crime scene to insure evidence is not lost or contaminated;
3. Determine if an offense has actually been committed, and if so, the exact nature of the offense;
4. Determine the identity of the suspect or suspects and effect an arrest if it can be accomplished either at the scene or through immediate pursuit;
5. Furnish other field units descriptions, method, and direction of flight of suspects, and other relevant information concerning wanted suspects or vehicles;
6. Obtain complete identification of all witnesses;
7. Determine what information is known by the victim and each witness;
8. Determine, in detail, the exact circumstances of the offense;
9. Arrange for the collection of evidence;
10. Obtain written and signed statements from victim(s), witnesses, and from the suspect(s);
11. Determine the necessity and degree of follow-up surveillance of the crime scene; &
12. Accurately and completely record all pertinent information on the report forms.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

L. Gonzalez 000786

The initial stages of all preliminary investigations, including crime scene processing, are conducted by patrol officers. The investigation of any serious crime is the responsibility of a criminal investigator.

As soon as a patrol officer concludes the preliminary investigation, the initial field report should be completed including all information obtained at the scene of the offense.

It is the responsibility of the shift supervisor to ensure that an adequate and complete preliminary investigation has been made and to review, screen, and approve the officer's report. The confirmation of shift supervisor approval is required on each report. In the case of those offenses reported directly to and handled completely by a criminal investigator, the Chief Deputy, reviews the report.

**Follow-up Investigation:**
The follow-up investigation is an extension of the preliminary investigation. The purpose of the follow-up is to provide additional investigation in order to affect the arrest of an offender and/or recover stolen property. Officer or criminal investigator responsibilities of the follow-up investigation include:

1. Identifying and apprehending offenders;
2. Collecting, documenting, and preserving physical evidence, arranging for the analysis and evaluation of the evidence, and reviewing the laboratory analysis of that evidence;
3. Recovering stolen property;
4. Conducting additional interviews of victims and witnesses, as required;
5. Interviewing and interrogating suspects, as required;
6. Obtaining additional information from law enforcement officers and informants;
7. Reviewing agency records and coordinating with adjoining agencies regarding other similar offenses to determine if other crimes may have been committed by the suspects;
8. Reviewing all information contained in the case file (preliminary investigation and earlier follow-up reports) concerning this offense;
9. Recording information obtained and preparing supplementary reports, as required;
10. Distributing information, as appropriate;
11. Planning, organizing, and conducting searches, if necessary;
12. Arranging for polygraph examinations;
13. Preparing a case file folder;
14. Checking the suspect's local police record and criminal histories; &
15. Preparing the application for warrants.

**Assignment of Investigators:**
In assigning investigators for follow-up, agency management normally considers the following guidelines:

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

L. Gonzalez 000787

1. Patrol officers normally conduct and complete the investigation of all non-criminal calls for police service and for misdemeanor or felony crimes not appropriate for referral to the criminal investigator.
2. A Criminal investigator conducts follow-up investigations when one or more of the following conditions exists:
   a. Offense appears to be part of a pattern;
   b. Where sufficient evidence is recovered that could lead to or identify a potential suspect;
   c. When there is a known suspect to the crime;
   d. When articles of a crime are known to be, and can be, recovered;
   e. When follow-up investigations are required in widely separated locations outside this jurisdiction; &
   f. In all other instances as directed by agency management.

**Relationships with Prosecuting Attorney:**
The prosecuting attorney's office prosecutes felony and misdemeanor criminal cases in each court and for offenses committed in whole or in part within their jurisdiction.

Prosecutor offices usually manage a tremendous caseload.  In order to support the prosecutor's staff, all personnel are required to:

1. Coordinate appointments in advance;
2. Be on time;
3. Have a subject for discussion planned in advance;
4. Present facts clearly, detailing the actual evidence and statements to support your contentions;
5. Clearly identify fact from your opinion; &
6. Keep conversations brief.

In every known contested case, misdemeanor or felony, the officer involved makes an appointment with the prosecuting attorney to discuss the case prior to trial.

During investigations, planning sessions, or pretrial stages, any questions of law or criminal procedure are addressed to the prosecuting attorney.  Questions on law enforcement procedure are addressed to the Sheriff or designee.

Any criminal cases referred to the prosecuting attorney which result either in a decision of *declined to prosecute* or *dismissed* due to *law enforcement mishandling* must be reported by the prosecuting attorney or staff to the Sheriff immediately so they can be carefully reviewed and the appropriate corrective action taken.

**Serious Crimes - Criminal Investigator Response:**
A criminal investigator assigned to Starr County Sheriff's Office is on-call 24 hours each day to conduct the following investigations:

RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency.  Data subject to this restriction is contained throughout this publication.

Page 3 of 9

L. Gonzalez 000788

1. Deaths or serious injury of a violent or suspicious nature;
2. Actual or suspected sexual assault and other sex offenses
3. Armed robberies;
4. Burglaries where there is excessive or unusual loss (high dollar value, cash, jewelry, silver, etc.);
5. Major disasters (where investigators can assist in identification of victims);
6. Hostage situations;
7. Kidnappings, extortion;
8. Officer involved shootings;
9. Bombings; &
10. Any criminal offense or situation for which the on duty ranking officer or shift supervisor believes a *criminal investigator* should be immediately assigned.

In the event the criminal investigator on call is unavailable, the Sheriff or the Chief Deputy is contacted immediately for further guidance. If requested by the assigned criminal investigator, the dispatcher directs available patrol personnel to assist with protection of crime scene, traffic, crowd control, witness canvas, etc.

**TACTICS:**

**Use of Crime Checklist:**
Attached to this policy is a Crime Checklist that is used in addition to any other investigative tool or list in the conduct of the investigations. Investigators, regardless of seniority or rank, cover or attempt to cover each item on this list when conducting their investigations. Each item is addressed within the body of their written reports.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

L. Gonzalez 000789

## CRIME INVESTIGATOR CHECKLIST

The following is a crime checklist.  It contains questions, which should be addressed during the criminal investigation, as well as specific questions relating to different types of crimes.  These lists are not intended to be all-inclusive, but serve as guides in doing actual investigations, preparing reports, and in supervisory review of such reports.

**General Investigative Questions:**

***Who is involved?***

1. Who is the victim?
2. Who is the suspect?
3. Who is a witness?
4. Who reported the case?

***What happened?***

1. What took place?
2. What offense was committed?
3. What are the elements of the offense?
4. What was the object of the attack?

***When did it happen?***

1. When in time did the occurrence take place?
   a. At what hour?
   b. On what day?
   c. In what month?
   d. In what year?
2. Was it day or night?
3. Was it clear or cloudy?
4. Was it foggy, misty, raining, smoggy, snowing, hailing, sleeting, etc.?

***Where did it happen?***

1. Where did the offense occur?
2. Where was the object of the offense?
3. Where is the object of the offense now?
4. Where was the object of the offense found?
5. Where was the perpetrator of the offense?
6. Where is the suspect now?
7. Where was the suspect when apprehended?
8. Over what area did the offense extend?

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency.  Data subject to this restriction is contained throughout this publication.

L. Gonzalez 000790

Law Enforcement Policies and Procedures, 7.04 Criminal Investigation

9. Where were the witnesses in relation to the crime scene?
10. Where are the witnesses now?

### How did it happen?

1. How was the offense committed?
    a. What preparation was made to commit the offense?
    b. What was done to avoid detection?
2. How was the property or person attacked?
    a. What method was used to induce the victim to give up his property?
    b. What means were used to overcome resistance of the victim?
    c. What means or instruments were used in the perpetration of the offense?
3. How did the offender act?
4. How did the victim act?
5. How did the situation assist in the commission of the offense?
6. How did the offender enter and exit the crime scene?
    a. What means of entry and exit were used?
    b. What instruments were used for entry/exit?
7. Ensure each element of the offense is covered in reports, statements, etc.

**Offenses Against Persons:**
The offenses of robbery, assault, battery, murder, kidnapping, abduction, mayhem, sex offenses, and extortion are considered offenses against the person. The investigating officer should determine the following:

1. What device, trick, ruse, or other method did the perpetrator use to gain access to the victim?
2. What did the perpetrator say, using exact wording?
3. What in detail did the perpetrator do?
4. How did he act?
5. What means did he use to commit the act?
6. What preceded the offense?
7. What was the victim doing immediately preceding and at the time of the offense?
8. Were there any accomplices?
    a. What did they look like?
    b. What did the accomplices do in participation of the crime?
    c. Did they arrive with the perpetrator?
    d. Did they leave with the perpetrator?
9. How did the perpetrator arrive and depart?
10. What other facts surrounding the occurrence could be used to identify the perpetrator and accomplices?
11. When all else fails, investigate the victim.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

L. Gonzalez 000791

Law Enforcement Policies and Procedures, 7.04 Criminal Investigation

**Offenses Against Property:**

### Burglary

1. Precisely what type of premise was entered?
2. Where was the point of entry?
3. Where was the point of departure?
4. What instruments were used to gain entry?
5. What was done to preserve evidence of entry and exit?
6. What acts were committed by the perpetrator at the scene?
7. Where were occupants of the premises?
8. How did the perpetrator arrive and depart?
9. Are there any other facts or acts that can be used to identify the perpetrator?
10. From what place was property stolen?
11. Were there occupants on the premises?
12. Where were they?
13. What means were used to take the property?
14. How did the victim discover the loss?
15. What means were used to distract attention of victims or persons in the vicinity?
16. How did the perpetrator arrive and depart?
17. Video, CCTV, or photos of crime or suspect?

### Fraudulent Checks

1. How were the checks written or otherwise prepared?
2. What type of paper was used?
3. How were the checks returned?
4. What purpose was to be served by check?
5. What claim was made by the passer to establish authenticity of check?
6. Was the victim able to note description of check passer?
7. What caused the victim to notice the worthless check?
8. What did the passer say when presenting the check to the victim?
9. What time of day was the check passed?
10. How did the check passer arrive and depart?
11. Are there any other pertinent facts?
12. Video, CCTV, or photo of transaction?

### Embezzlement

1. What property was the subject of the embezzlement?
2. What was the value of the property?
3. Who had ownership?
4. Who had possession of the property at the time of the conversion?
5. Under what circumstances was the property received or held?
6. How was the loss of the property discovered?

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency.  Data
subject to this restriction is contained throughout this publication.

L. Gonzalez 000792

Law Enforcement Policies and Procedures, 7.04 Criminal Investigation

7. Where was the property recovered?
8. Who had possession of the property at the time of recovery?
9. Video, CCTV, or photos of crime or suspect?

### Arson

1. How was the fire reported?
2. Who reported the fire?
   a. Name
   b. Address
   c. Telephone number
   d. Occupation
   e. Description
   f. Circumstances causing person to note fire
3. When time was the fire discovered?
4. Who discovered the fire?
   a. Name
   b. Address
   c. Telephone number
   d. Occupation
   e. Description
5. Where was the person who discovered the fire?
6. How did he happen to be there?
7. What type of structure or property was set on fire?
8. Condition of the structure before the fire?
9. Was the building vacant, and if so, for how long?
10. Was the building inhabited?
11. Was a human being in the structure at the time of the fire?
12. Would an ordinary person have reason to know or suspect the building was inhabited?
13. Who occupies the building?
14. What type of business is carried on in the building?
15. How long has this business been at this location?
16. Insurance information on building and/or contents
17. Financial condition of business
18. Who owns the building?
    a. Name
    b. Address
    c. Age
    d. Description
    e. When acquired building
19. How was the fire started?
20. What materials, accelerants, and devices were used?
21. What was the value of the property destroyed?
22. What were the findings of the arson investigator, of the fire department, and

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

L. Gonzalez 000793

Law Enforcement Policies and Procedures, 7.04 Criminal Investigation

other agencies?  Attach the reports as exhibits.

23. Was there a burning or charring as distinguished from mere scorching?

24. What evidence (traces on clothing of suspect or clue materials at the scene) is associated the suspect with the scene?

25. What actions of the suspect offered evidence of criminal intent?

26. Video, CCTV, or photos of crime or suspect?

27. Many times the actor may be in the crowd watching fire personnel work to put out the fire.  Officers should observe the crowd for unusual activity.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency.  Data subject to this restriction is contained throughout this publication.

L. Gonzalez 000794