```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF TEXAS
                 McALLEN DIVISION

LIZELLE GONZALEZ             ) (
        Plaintiff            ) (
                             ) (
VS.                          ) (   CIVIL ACTION NO.
                             ) (   7:24-cv-00132
GOCHA ALLEN RAMIREZ,         ) (
ALEXANDRIA LYNN BARRERA,     ) (
RENE FUENTES, and STARR      ) (
COUNTY, TEXAS                ) (
        Defendants           ) (
```

_____

ORAL AND VIDEOTAPED DEPOSITION OF
LIZELLE GONZALEZ
FEBRUARY 13, 2025

_____


ORAL AND VIDEOTAPED DEPOSITION OF LIZELLE

GONZALEZ, produced as a witness at the instance of the

Defendants, taken in the above-styled and numbered

cause on FEBRUARY 13, 2025, between the hours of

10:10 a.m. and 1:51 p.m., reported stenographically by

DONNA McCOWN, Certified Court Reporter No. 6625, in and

for the State of Texas, at Garza Martinez, PLLC, 202

East Sprague Street, Edinburg, Texas, pursuant to the

Federal Rules of Civil Procedure and any provisions

stated on the record or attached therein.

**BRYANT & STINGLEY, INC.**
**Harlingen (956) 428-0755        McAllen (956) 618-2366**

APPEARANCES

COUNSEL FOR PLAINTIFF:

    I. CECILIA GARZA
    GARZA MARTINEZ, PLLC
    202 East Sprague Street
    Edinburg, Texas  78539

    MARIANA (MOLLY) KOVEL
    AMERICAN CIVIL LIBERTIES UNION
    SENIOR STAFF ATTORNEY
    125 Broad Street, 18th Floor
    New York, NY  10004

    SARAH CORNING, via Zoom
    AMERICAN CIVIL LIBERTIES UNION TEXAS
    Staff Attorney
    P.O. Box 8306
    Houston, Texas  77288

COUNSEL FOR DEFENDANTS:

    KELLY R. ALBIN
    DENTON NAVARRO RODRIGUEZ BERNAL
    SANTEE & ZECH, P.C.
    549 Egret Bay Boulevard, Suite 200
    League City, Texas  77573

ALSO PRESENT:
    Rene Ortiz, Videographer
    Gocha Allen Ramirez, via Zoom
    Alexandria Lynn Barrera, via Zoom

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

```
 1                          INDEX
 2                                              PAGE
        Appearances ................................  2
 3
        LIZELLE GONZALEZ
 4      Examination by Ms. Albin .......................  4
        Examination by Ms. Garza ....................... 121
 5      Examination by Ms. Albin ....................... 127
        Examination by Ms. Garza ....................... 132
 6
        Errata Sheet/Signature Page .................... 136
 7
        Reporter's Certificate ......................... 138
 8
        Attached to the end of the transcript:  Stipulations
 9
                          EXHIBITS
10
        NUMBER  DESCRIPTION                            PAGE
11
          1     Corrected Responses and Objections to
12                Alexandria Barrera's First Set of
                  Interrogatories and First Set of
13                Production Request to Plaintiff
                  Pertaining to Immunity .................  64
14
          2     Corrected Responses and Objections to
15                Gocha Allen Ramirez's First Set of
                  Interrogatories and First Set of
16                Production Request to Plaintiff
                  Pertaining to Immunity .................  84
17
          3     Agreed Judgment of Probated Suspension .. 117
18
19
20
21
22
23
24
25
```

BRYANT & STINGLEY, INC.
Harlingen (956) 428-0755        McAllen (956) 618-2366

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

4

```
10:11  1              THE VIDEOGRAPHER:  It is February 13,
10:11  2    2025.  It is 10:10 a.m.  We're on the record.
10:11  3              THE COURT REPORTER:  This is Donna McCown,
       4    the Texas CSR Court Reporter No. 6625.  I would like to
       5    have the announcement of appearances of people that are
       6    on the Zoom right now, please.
       7              Sarah, can you announce your appearance
       8    again.
10:11  9              MS. CORNING:  Can you hear me now?
10:11  10             THE COURT REPORTER:  Yes.
10:11  11             MS. CORNING:  Okay.  Hi.  I'm Sarah
10:11  12   Corning, counsel for plaintiff.
10:12  13             THE COURT REPORTER:  And Ms. Barrera.
10:12  14             MS. BARRERA:  Alexandria Barrera, one of
10:12  15   the named defendants.
10:12  16             THE COURT REPORTER:  Okay.  Thank you.
10:12  17                  LIZELLE GONZALEZ,
10:12  18   having been duly sworn, testified as follows:
10:12  19                    EXAMINATION
10:12  20   BY MS. ALBIN:
10:12  21      Q.  Good morning, Ms. Gonzalez.
10:12  22      A.  Good morning.
10:12  23      Q.  My name is Kelly Albin.  I'm an attorney, and I
10:12  24   represent the defendants in the lawsuit that you filed
10:12  25   against Gocha Ramirez, Alexandria Barrera, Starr
```

**BRYANT & STINGLEY, INC.**
**Harlingen (956) 428-0755      McAllen (956) 618-2366**

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

10:24  1        A.  Okay.

10:24  2        Q.  Need to take a drink of water just --

10:24  3        A.  I can take a break right now.

10:24  4        Q.  You need to take a break?

10:24  5        A.  Yes.

10:25  6            MS. ALBIN:  All right.  Sure.

10:25  7            (Brief recess)

10:31  8        Q.  Okay.  Ms. Gonzalez, we've taken a short break.

10:31  9   We're back on the record.  Do you understand that

10:31  10  you're still under oath?

10:31  11       A.  Yes.

10:31  12       Q.  Okay.  Very good.  Before the break, I was

10:31  13  asking about the -- the basis for your lawsuit against

10:31  14  Sheriff Rene Fuentes individually, and I wanted to know

10:31  15  what things -- what actions do you believe Sheriff

10:31  16  Fuentes engaged in that caused you to file the lawsuit

10:31  17  against him.

10:31  18       A.  So as far as I know, at one point, they worked

10:32  19  together.  And like I mentioned before, as a sheriff --

10:32  20  and I'm speaking in general -- he has involvement --

10:32  21  I'm pretty sure he has involvement in every arrest.

10:32  22            And like I said, not only just mine, but

10:32  23  in my case, I'm worried about mine.  And like I said,

10:32  24  like they all worked together as far as Sheriff

10:32  25  Fuentes -- well, the conducting of my arrest, like --

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

10:32  1    so...

10:32  2        Q.  But I think you testified he's not the one that

10:32  3    arrested you, correct?

10:32  4        A.  No.  It was -- I mean, his investigators, I'm

10:32  5    guessing.  So, well...

10:32  6        Q.  So is there something that you believe he did

10:32  7    related to your arrest other than just he's the sheriff

10:32  8    and you think he would know about all of the arrests

10:32  9    that are happening?

10:32  10        A.  As far as I know, no.

10:32  11        Q.  Okay.  And you said they worked together.  Who

10:32  12    is "they"?

10:32  13        A.  The DA's office, sheriff's office.

10:33  14        Q.  Okay.  And my question is about Sheriff Fuentes

10:33  15    specifically.

10:33  16        A.  Yeah.

10:33  17        Q.  Is there someone that you believe he, Sheriff

10:33  18    Fuentes, was specifically in contact with about your

10:33  19    case?

10:33  20        A.  Not that I know of.

10:33  21        Q.  Okay.

10:33  22        A.  Sheriff Fuentes, I'm thinking like -- but no.

10:33  23        Q.  Okay.  And you've answered no.  If at some

10:33  24    point today you remember something, I would ask that

10:33  25    you let me know that you've remembered and you want to

**BRYANT & STINGLEY, INC.**
**Harlingen (956) 428-0755        McAllen (956) 618-2366**

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

10:33  1    provide more information.  Okay?

10:33  2        A.  Yes.

10:33  3        Q.  Okay.  Your -- in your lawsuit, you allege that

10:34  4    the district attorney and assistant district attorney

10:34  5    made misrepresentations of the facts and the law to the

10:34  6    grand jury.  Do you understand that allegation is in

10:34  7    your lawsuit?

10:34  8        A.  Can you rephrase that?

10:34  9        Q.  In your lawsuit, you allege that District

10:34 10    Attorney Ramirez and Assistant District Attorney

10:34 11    Barrera made misrepresentations of the facts and the

10:34 12    law to a grand jury.  Do you understand that's a claim

10:34 13    you've made in the lawsuit?

10:34 14        A.  Yes.

10:34 15        Q.  Okay.  What misrepresentations of the facts and

10:34 16    the law did Mr. Ramirez make to the grand jury?

10:34 17        A.  The -- he knew I hadn't committed a crime.

10:34 18        Q.  Why do you believe that he knew you had not

10:34 19    committed a crime?

10:34 20        A.  His press release stated it.

10:34 21        Q.  And that was made after you were released and

10:35 22    the --

10:35 23        A.  That --

10:35 24        Q.  Hold on.  Let me finish my question.  That's

10:35 25    okay.  It's going to -- we'll get a record that's all

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

10:35  1    gobbled up --

10:35  2        A.  Yeah.

10:35  3        Q.  -- if we talk over each other.

10:35  4            You mentioned because he made the press

10:35  5    release he knew that the -- the charge against you

10:35  6    wasn't going to stand, right?

10:35  7        A.  Not only because of the press release, because

10:35  8    he personally -- like not personally, like he himself

10:35  9    told me that it had been a mistake.  It had fallen out

10:35  10   of his hands, and he didn't know what happened.

10:35  11       Q.  And when did he tell you that?

10:35  12       A.  The Sunday after I got out of jail.

10:35  13       Q.  So he didn't speak to you at any time prior to

10:35  14   you being arrested, did --

10:35  15       A.  No.

10:35  16       Q.  -- he?

10:35  17       A.  No.

10:35  18       Q.  Okay.  And you understand that the grand jury

10:35  19   presentation was before you got arrested?

10:36  20       A.  Yes.

10:36  21       Q.  All right.  You said that he told you it was a

10:36  22   mistake?

10:36  23       A.  Yes.  It was out of his hands.  He was out of

10:36  24   town, and he didn't know what had happened were the

10:36  25   nature of his words.

**BRYANT & STINGLEY, INC.**

**Harlingen (956) 428-0755        McAllen (956) 618-2366**

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

10:36  1      Q.  Did he tell you anything else other than it was

10:36  2  a mistake, it was out of his hands, and he didn't know

10:36  3  what had happened?

10:36  4      A.  Yeah.

10:36  5      Q.  And I'm sorry.  You said he was out of town?

10:36  6      A.  Yeah.  He was out of town when the case was

10:36  7  presented was what he had mentioned.

10:36  8      Q.  And do you have any reason to believe that he

10:36  9  was not out of town when the case was presented to the

10:36 10  grand jury?

10:36 11      A.  Do I have any reason?  I mean, I believed him.

10:36 12      Q.  And as you sit here today, do you still believe

10:36 13  he was out of town when the case was presented to the

10:36 14  grand jury?

10:36 15      A.  No.

10:36 16      Q.  So you think he was in the room with the grand

10:36 17  jury when the presentation happened?

10:36 18      A.  Not that he was in the room, no.  Did he have

10:37 19  knowledge that it was going to be presented?  Pretty

10:37 20  sure he did.

10:37 21      Q.  Okay.  And why do you believe that he did?

10:37 22      A.  At the time of my arrest, it was a high-profile

10:37 23  case apparently, was the talk of the town.  I mean, it

10:37 24  wasn't just a simple arrest, so I don't know how you're

10:37 25  a DA and not know what's going to go down, so...

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

10:37 1      Q.  And that arrest was actually after the grand

10:37 2   jury presentation.  You understand that --

10:37 3      A.  Yes.

10:37 4      Q.  -- right?

10:37 5      A.  Yes.

10:37 6      Q.  Okay.  So what happened before the grand jury

10:37 7   presentation that makes you believe it was high

10:37 8   profile?

10:37 9      A.  I didn't -- before the presentation, I -- I

10:37 10  didn't even know I was being investigated, so it wasn't

10:37 11  like -- how can I put it to?  It wasn't -- to me it

10:37 12  wasn't like a normal investigation.

10:37 13          Like it was just -- it all happened so

10:37 14  quick -- well, not so quick, but it was -- it was all

10:37 15  over the place.  I was like -- I didn't expect it, but

10:38 16  I didn't know I was a suspect or that I was being

10:38 17  investigated to actually be arrested or that there was

10:38 18  even charges being brought upon me.

10:38 19          So I don't know how a DA has no knowledge

10:38 20  of that being so that you are the DA of the county.

10:38 21     Q.  Okay.  So other than the fact that he's the DA

10:38 22  of the county, my question is what makes you believe

10:38 23  that Mr. Ramirez knew that the charge against you --

10:38 24  before the grand jury that he knew that the charge

10:38 25  against you was a mistake?

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

10:38  1      A.  I don't believe he was -- can you ask your

10:38  2   question one more time?

10:38  3              MS. ALBIN:  Can you read the question

10:39  4   back.

10:39  5              (Requested portion was read back.)

10:39  6      A.  He previously was a lawyer.  He's now the DA.

10:39  7   I don't know how you -- I mean, if you build up a case,

10:39  8   you actually pursue charges, he had to have -- I mean,

10:39  9   it's basic common sense.

10:39  10     Q.  Are you able to tell the jury about any facts,

10:39  11  any actions that you are aware of that District

10:39  12  Attorney Ramirez took before the grand jury was

10:39  13  convened that make you believe he was involved and knew

10:39  14  it was a mistake?

10:39  15     A.  Like I previously mentioned, I didn't even -- I

10:39  16  didn't know they saw me as a suspect.  I didn't -- they

10:39  17  just told me it was a casual conversation, the time --

10:40  18  the day that I went in to speak to one of the

10:40  19  investigators.

10:40  20             So this was -- like I mentioned, this was

10:40  21  all just like -- it was all quick.  It was all of a

10:40  22  sudden.  So -- and like I said, as a DA, you have to

10:40  23  have knowledge of what you're going to pursue, what

10:40  24  charges you're going to press.  You know what I mean?

10:40  25             Because before -- prior to my arrest,

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

10:40  1    there was nothing that I could tell you, oh I, knew

10:40  2    this was going to happen to me, because I didn't.

10:40  3              MS. ALBIN:  Objection, nonresponsive.

10:40  4        Q.  I want to focus on the period of time before

10:40  5    you were arrested.  Okay?

10:40  6        A.  Okay.

10:40  7        Q.  All right.  Not after you're arrested.  I know

10:40  8    there was news releases and it was high profile at that

10:40  9    time.  But I'm talking about before the arrest.  All

10:40 10    right?

10:40 11        A.  Okay.

10:40 12        Q.  Can you tell us any actions that Mr. Ramirez

10:40 13    took other than being the DA of the county --

10:40 14        A.  No.

10:40 15        Q.  Sorry.  Let me finish the question.  Let me get

10:41 16    the question out, then you can answer.

10:41 17              Before the arrest, are there any actions

10:41 18    of District Attorney Ramirez that you can describe that

10:41 19    he took that make you believe he knew the presentation

10:41 20    was going to be before the grand jury and was a

10:41 21    mistake?

10:41 22        A.  No.

10:41 23        Q.  Okay.  Do you understand that the reason -- the

10:41 24    stated reason for the dismissal of the criminal charges

10:41 25    against you was that the Penal Code has an exception

**BRYANT & STINGLEY, INC.**
**Harlingen (956) 428-0755        McAllen (956) 618-2366**

Electronically signed by Donna McCown (101-253-986-8079)                                    c30e5570-c7bf-48f8-a148-411407deec4e

23

| | | |
|---|---|---|
| 10:41 | 1 | for mothers who cause the death of an unborn child? |
| 10:41 | 2 | A.  Uh-huh. |
| 10:41 | 3 | Q.  Okay. |
| 10:41 | 4 | A.  Yes, sorry. |
| 10:41 | 5 | Q.  That's okay.  Do you -- and -- and you allege |
| 10:42 | 6 | in the lawsuit that before your arrest, District |
| 10:42 | 7 | Attorney Ramirez and Assistant District Attorney |
| 10:42 | 8 | Barrera knew that there was this exception in the Penal |
| 10:42 | 9 | Code statute.  Do you understand that, that that's your |
| 10:42 | 10 | allegation? |
| 10:42 | 11 | A.  That they -- can you repeat that? |
| 10:42 | 12 | Q.  The allegation in the lawsuit is that before |
| 10:42 | 13 | you were arrested, District Attorney Ramirez and |
| 10:42 | 14 | Assistant District Attorney Barrera knew that there was |
| 10:42 | 15 | this exception to the murder statute in the Penal Code. |
| 10:42 | 16 | A.  Yes. |
| 10:42 | 17 | Q.  Okay.  Why do you believe that District |
| 10:42 | 18 | Attorney Ramirez knew that there was this exception in |
| 10:42 | 19 | the Penal Code? |
| 10:42 | 20 | A.  There was a conversation I had.  It was a |
| 10:42 | 21 | conversation I had, and I -- it was -- when the |
| 10:42 | 22 | sanction came up -- well, are you asking me now or the |
| 10:43 | 23 | time before my arrest, right?  Like... |
| 10:43 | 24 | Q.  So I'm asking you before you were -- before the |
| 10:43 | 25 | arrest, what facts, what information is it that you |

**BRYANT & STINGLEY, INC.**
**Harlingen (956) 428-0755        McAllen (956) 618-2366**

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

10:43  1    have that leads you to believe that District Attorney
10:43  2    Ramirez knew before you were arrested that there was
10:43  3    this exception in the Penal Code statute for mothers
10:43  4    who have caused the death of their unborn child?
10:43  5        A.  I believe he was told that it wasn't, like, a
10:43  6    prosecutable thing.  But can I prove it to you?  I
10:43  7    probably can't.  I mean, it was just -- I was -- it was
10:43  8    when everything had happened, and I was told that he
10:43  9    had prosecuted knowing that -- they had already told
10:43 10    him or something that it wasn't going to go through,
10:43 11    and they followed through.
10:43 12        Q.  Okay.  Who told you that?
10:43 13        A.  I spoke to Martie Vela?  Garcia-Vela?
10:44 14    Garcia-Vela.  Martie.
10:44 15        Q.  Martie Garcia-Vela?
10:44 16        A.  Yes.  She's an attorney.
10:44 17        Q.  When did you talk to Ms. Vela?
10:44 18        A.  After Mr. Ramirez's sanction, after the news
10:44 19    came out.
10:44 20        Q.  And Ms. Vela told you that District Attorney
10:44 21    Ramirez knew prior to you being arrested that there was
10:44 22    this exception in the Penal Code statute?
10:44 23        A.  Yes.
10:44 24        Q.  Was that a phone conversation?
10:44 25        A.  Yes.

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

10:44  1      Q.  Did you call her or did she call you?

10:44  2      A.  I think I called her.

10:44  3      Q.  What was the purpose of your call to her?

10:44  4      A.  I had just found out about the sanction, and I

10:44  5   didn't -- I had no -- I didn't know anything about it

10:44  6   before, prior to.  I called her, and I was like -- like

10:45  7   "What happened? " And that's when she told me.

10:45  8      Q.  Did you know Ms. Vela outside of that

10:45  9   conversation?

10:45 10      A.  Uh-huh.

10:45 11      Q.  Okay.  How -- how did you know her?

10:45 12      A.  I met Ms. Martie at the City of Escobares.

10:45 13               THE COURT REPORTER:  At the what?

10:45 14               THE WITNESS:  City of Escobares.  Sorry.

10:45 15   I talk pretty fast.

10:45 16      Q.  Were you both employees there?

10:45 17      A.  When I met her, I wasn't an employee.  I'm not

10:45 18   sure if she was a lawyer to the City already, but I

10:45 19   knew that she had involvement with the City as a

10:45 20   lawyer.

10:45 21      Q.  Okay.  So how did your paths cross at the City

10:45 22   of Escobares?

10:45 23      A.  When I -- I already met -- I had already

10:45 24   known -- I'm sorry.  I had already known her, like,

10:45 25   prior -- I mean, not know her, like, friendship, but I

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

10:45 1    mean, she was a lawyer.

10:45 2         Like I knew who she was, but I had never

10:45 3    had, like, conversations with her until the City of

10:45 4    Escobares.

10:46 5         The first time that we had a conversation

10:46 6    there was -- I mean, it was a cook-off, so that's where

10:46 7    we like -- like we would just -- it was a casual

10:46 8    conversation.  So after that, I would see her there,

10:46 9    and when -- when the sanction happened, I spoke to her.

10:46 10   She was the one who I called.

10:46 11        Q.  Okay.  And was there more than that one phone

10:46 12   conversation about this topic?

10:46 13        A.  No.

10:46 14        Q.  Any text messages?

10:46 15        A.  No.

10:46 16        Q.  Did you message her through any other, like

10:46 17   WhatsApp or --

10:46 18        A.  No.

10:46 19        Q.  Nothing like that?

10:46 20        A.  Well, but not related to the case.  It was like

10:46 21   we were going to meet, but we never did.

10:46 22        Q.  Okay.  And do you know where Ms. Vela

10:46 23   practices?  Is that here in Edinburg?

10:46 24        A.  To be honest, I really -- I don't know.

10:46 25        Q.  Okay.

**BRYANT & STINGLEY, INC.**
**Harlingen (956) 428-0755        McAllen (956) 618-2366**

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

10:46  1      A.  She practices all over, so I don't know.

10:46  2      Q.  Is her office in the Valley somewhere?

10:46  3      A.  I know she has here.  I know she has -- I know

10:47  4  she's worked here before.  I know she's been in

10:47  5  Houston.  I know she's been in Starr.  I can't tell you

10:47  6  where exactly.

10:47  7      Q.  Okay.  Did you have conversations with anybody

10:47  8  other than Ms. Vela -- any other person who claimed

10:47  9  that District Attorney Ramirez knew prior to your

10:47 10  arrest that there was this exception in the murder

10:47 11  statute?

10:47 12      A.  Not that I can remember right now.  Oh, sorry,

10:47 13  no, not that I can remember.

10:47 14      Q.  And is the conversation with Ms. Vela the only

10:47 15  reason that you believe District Attorney Ramirez knew

10:47 16  prior to your arrest that there was an exception in the

10:47 17  murder statute for mothers?

10:47 18          MS. GARZA:  Objection.

10:47 19      Q.  You can answer.

10:47 20      A.  Prior to my arrest -- well, I mean, just his

10:48 21  apology.

10:48 22      Q.  Okay.

10:48 23      A.  I mean.

10:48 24      Q.  Did he tell you when he talked to you and

10:48 25  apologized that he knew before you were arrested --

**BRYANT & STINGLEY, INC.**
**Harlingen (956) 428-0755        McAllen (956) 618-2366**

Electronically signed by Donna McCown (101-253-986-8079)                c30e5570-c7bf-48f8-a148-411407deec4e

10:48  1         A.  No.

10:48  2         Q.  -- that -- sorry.  Let me get the question out.

10:48  3    I know it's tough.

10:48  4               In the apology that he made to you, did he

10:48  5    say that he knew prior to your arrest that there was

10:48  6    this exception in the statute?

10:48  7         A.  No.

10:48  8         Q.  Is there -- is there any other reason that you

10:48  9    believe District Attorney Ramirez knew of this

10:48  10   exception in the murder statute for mothers?

10:48  11        A.  That I have knowledge of, no.  I can tell you

10:48  12   there was a conversation, and I don't know if it was

10:48  13   because he knew that it was -- like he -- I don't know

10:49  14   the nature of the conversation -- like I can tell you

10:49  15   the conversation, like, more like what it was.  But

10:49  16   that I can tell you that it was because he knew, I

10:49  17   don't know.

10:49  18               Were -- he stated that if he would have

10:49  19   known who I was or -- or that it was -- who I was that

10:49  20   I was related to that this would have never happened or

10:49  21   something like that.

10:49  22        Q.  You're saying District Attorney Ramirez said if

10:49  23   he had known who you were related to, this wouldn't

10:49  24   have happened?

10:49  25        A.  Yeah.  I mean, he spoke to a relative of mine

Electronically signed by Donna McCown (101-253-986-8079)                                c30e5570-c7bf-48f8-a148-411407deec4e

10:49  1    on the phone.  But this was after my arrest.

10:49  2        Q.  Okay.

10:49  3        A.  And he went on to say that after knowing who I

10:49  4    was, my relation to the person he was on the phone

10:49  5    with, he just -- I mean, he just went on to say that if

10:49  6    he would have known that it was me, that -- I mean, we

10:49  7    would have not gotten to the point where I was -- I was

10:50  8    already incarcerated and -- but it was after, so...

10:50  9        Q.  Who was he having that conversation with?

10:50 10        A.  With my stepfather.

10:50 11        Q.  What's his name?

10:50 12        A.  Raul Garza.

10:50 13        Q.  And you heard that conversation?

10:50 14        A.  No.

10:50 15        Q.  Then how do you know what the conversation --

10:50 16    what happened during the conversation?

10:50 17        A.  I was told by my mom.

10:50 18        Q.  And she was not on the phone for that

10:50 19    conversation, right?

10:50 20        A.  She was present.

10:50 21        Q.  She was listening in on --

10:50 22        A.  Yes.

10:50 23        Q.  -- conversation?

10:50 24        A.  They were like -- well, I think it was on

10:50 25    speaker, if I'm not mistaken.

**BRYANT & STINGLEY, INC.**
**Harlingen (956) 428-0755        McAllen (956) 618-2366**

Electronically signed by Donna McCown (101-253-986-8079)                                    c30e5570-c7bf-48f8-a148-411407deec4e

10:50 1      Q.  Did anybody record that conversation that you

10:50 2    know of?

10:50 3      A.  Not that I know of.  I mean, at the time, they

10:50 4    were just trying to get me out of jail, so I don't

10:50 5    think they took the time to do that.

10:50 6      Q.  And what is it about the fact that your mom

10:50 7    told you that District Attorney Ramirez said if he had

10:51 8    known who you were related to, it wouldn't have gotten

10:51 9    to that point --

10:51 10     A.  Not that I was related.  He didn't -- okay.

10:51 11           MS. GARZA:  Let her finish her question.

10:51 12           THE WITNESS:  I'm sorry.

10:51 13     Q.  Yeah, sorry.  What is it about that statement

10:51 14    that you were told Mr. Ramirez made that makes you

10:51 15    believe he knew prior to you being arrested that there

10:51 16    was an exception in the Penal Code for mothers who

10:51 17    cause the death an of unborn child?

10:51 18     A.  No, I don't know.  I mean, I can't tell you,

10:51 19    like, this made me think he knew, like -- because

10:51 20    you're being specific, right, to the Penal Code, so no,

10:51 21    I mean...

10:51 22     Q.  I just want to know all of the reasons that you

10:51 23    have stated in your lawsuit that he knew, District

10:51 24    Attorney Ramirez knew, that you could not be prosecuted

10:51 25    because there was an exception in the Penal Code.

Electronically signed by Donna McCown (101-253-986-8079)                    c30e5570-c7bf-48f8-a148-411407deec4e

10:51  1               And you've told me about the conversation
10:52  2       with Ms. Vela.  You've told me that he said when he
10:52  3       apologized that it was a mistake.  And then you
10:52  4       mentioned this conversation that your mother relayed to
10:52  5       you.
10:52  6               And I just want to know if there's any
10:52  7       other reasons that you believe District Attorney
10:52  8       Ramirez knew prior to your arrest that there was an
10:52  9       exception in the Penal Code.  That's the allegation in
10:52 10       the lawsuit.  I want to know why you believe that.
10:52 11           A.  No, I mean, there's no more reasons --
10:52 12           Q.  Okay.
10:52 13           A.  -- I can think of.
10:52 14           Q.  I have the same question for Assistant District
10:52 15       Attorney Barrera.
10:52 16           A.  Uh-huh.
10:52 17           Q.  Okay.  Can you tell me all the reasons that you
10:52 18       believe she knew prior to you being arrested that there
10:52 19       was an exception in the Penal Code for the -- for a
10:52 20       mother who causes the death of an unborn child?
10:52 21           A.  When I spoke to Martie, she didn't tell me
10:53 22       names.  Like she wasn't -- but she said that they --
10:53 23       I'm sorry.  I'm speaking of Gocha and Ms. Barrera, like
10:53 24       they had already been told.
10:53 25               But, I mean, they -- I guess they both --

**BRYANT & STINGLEY, INC.**
**Harlingen (956) 428-0755        McAllen (956) 618-2366**

Electronically signed by Donna McCown (101-253-986-8079)                                                    c30e5570-c7bf-48f8-a148-411407deec4e

10:53  1    I don't know, if they both decided to do it together,

10:53  2    but, I mean, they still prosecuted the case.  They

10:53  3    still presented the case.  Well, Mr. Ramirez says he

10:53  4    wasn't there when it was presented.  It was his

10:53  5    assistant, so...

10:53  6         Q.  What did Martie tell you about the district

10:53  7    attorney and assistant district attorney knowing about

10:53  8    the -- the exception?  What specifically did -- how did

10:53  9    she know that?  Let's start with that.

10:53 10         A.  I don't know how she knew.

10:53 11         Q.  Did she work in the office at the time?

10:53 12         A.  I'm not sure.

10:53 13         Q.  Did she tell you if somebody told her that they

10:53 14    had had those conversations with the district attorney

10:54 15    and assistant district attorney?

10:54 16         A.  I don't know who she spoke to.

10:54 17         Q.  Okay.  So all she told you was they knew --

10:54 18         A.  Yeah.

10:54 19         Q.  -- but she didn't tell you why they knew or who

10:54 20    told --

10:54 21         A.  Well, she told me that they had already been

10:54 22    told -- she didn't tell me by whom -- that they had

10:54 23    already been told that it wasn't, like, prosecutable or

10:54 24    that it wasn't -- that there wasn't a case.  It was

10:54 25    something, like, in that -- referring to it, like, not

**BRYANT & STINGLEY, INC.**
**Harlingen (956) 428-0755        McAllen (956) 618-2366**

10:54 1    that it wasn't -- that it wasn't prosecutable, that it

10:54 2    wasn't, like, in a move -- they couldn't move forward

10:54 3    with it, but they still went ahead and presented the

10:54 4    case and did everything.

10:54 5        Q.  But she didn't tell you why she knew that?

10:54 6        A.  No.

10:54 7        Q.  And so we would have to ask her if we wanted to

10:54 8    know why she made that statement to you, right?

10:54 9        A.  Uh-huh.

10:54 10       Q.  Okay.

10:54 11       A.  Yes.

10:54 12       Q.  Is there anything else that you are aware of

10:54 13   that leads you to believe that Assistant District

10:54 14   Attorney Barrera knew prior to your arrest that there

10:54 15   was this exception in the statute?

10:54 16       A.  No.

10:55 17       Q.  What about the sheriff?  Do you have any

10:55 18   information about actions he took or things he said or

10:55 19   a conversation that happened that make you believe he

10:55 20   knew that there was this exception in the Penal Code?

10:55 21       A.  No.

10:55 22       Q.  And did Ms. Vela say anything about Sheriff

10:55 23   Fuentes?

10:55 24       A.  No.

10:55 25       Q.  Do you have any belief about -- I'm going --

Electronically signed by Donna McCown (101-253-986-8079)                                    c30e5570-c7bf-48f8-a148-411407deec4e

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

LIZELLE GONZALEZ                    ) (
        Plaintiff                   ) (
                                    ) (
VS.                                 ) (    CIVIL ACTION NO.
                                    ) (    7:24-cv-00132
GOCHA ALLEN RAMIREZ,                ) (
ALEXANDRIA LYNN BARRERA,            ) (
RENE FUENTES, and STARR             ) (
COUNTY, TEXAS                       ) (
        Defendants                  ) (

REPORTER'S CERTIFICATE

        I, DONNA McCOWN, Certified Court Reporter,
certify that the witness, LIZELLE GONZALEZ, was duly
sworn by me, and that the deposition transcript is a
true and correct record of the testimony given by the
witness on FEBRUARY 13, 2025, and that the deposition
was reported by me in stenograph and was subsequently
transcribed under my supervision.

        Pursuant to Federal Rule 30(e)(2), a review of
the transcript was requested.
        I FURTHER CERTIFY that I am not a relative,
employee, attorney or counsel of any of the parties,
nor a relative or employee of such attorney or counsel,
nor am I financially interested in the action.

        WITNESS MY HAND on this the _____ day
_____, 2025.


        _____
        DONNA McCOWN, Texas CSR 6625
        Expiration Date:  01-31-26
        Bryant & Stingley, Inc., CRN No. 41
        P.O. Box 3420
        Harlingen, Texas  78551
        (956) 428-0755


**BRYANT & STINGLEY, INC.**
**Harlingen (956) 428-0755        McAllen (956) 618-2366**