IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| LIZELLE GONZALEZ        Plaintiff | § § § | |
| Vs. | § § | CIVIL ACTION 7: 24-CV-00132 |
| GOCHA ALLEN RAMIREZ, et al.        Defendants | § § § | |

**DISTRICT ATTORNEY GOCHA ALLEN RAMIREZ'S
REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**
===============================================================

MAY IT PLEASE THE COURT:

NOW COMES DEFENDANT GOCHA ALLEN RAMIREZ as District Attorney of the 229th Judicial District (hereafter "DA RAMIREZ") and files this Reply in Support of his Motion for Summary Judgment. ECF 79.

As a threshold matter, District Attorney Ramirez respectfully asks the Court to grant Defendants' Motion to Strike the bogus affidavit of Bernice Garza, along with the irrelevant deposition testimony and text messages of Rosita and Becky Rocha for the reasons set forth in the Motion. ECF 94. The fact that Plaintiff was reduced to relying on statements from an admitted human smuggler/ ex-employee and jaded women with whom the District Attorney previously had sexual encounters is telling of Plaintiff's desperation to mask the lack of evidence and sound legal arguments in her Response. The Court should not entertain these distractions.

Fortunately, the legal question before the Court is quite simple: *is there a genuine issue of material fact regarding whether District Attorney Ramirez engaged in investigative activities during Plaintiff's criminal investigation?* The answer is equally simple: *No, he did not*.

District Attorney Ramirez is entitled to absolute immunity.

**A.    The evidence establishes that DA Ramirez never communicated with investigators, had two discussions with ADA Barrera about Plaintiff's case, and told ADA Barrera to let the grand jury decide the matter. These facts are not disputed.**

In the entirety of the *novella* that is her Response to DA Ramirez's summary judgment motion, little more than three pages is devoted to addressing whether DA Ramirez is entitled to absolute immunity, which is the central issue before the Court. See Doc. 91, pp. 34-37. Review of the slim arguments reveals that there is no fact dispute about DA Ramirez's involvement in Plaintiff's investigation.

First, DA Ramirez presented evidence showing that he never communicated with Sheriff's Office investigators about Plaintiff's criminal investigation. Plaintiff could not point to a single piece of evidence to dispute this fact in her Response. Instead, she asserted that the evidence of the DA's lack of involvement was his own testimony and should not be believed because of his "diminished credibility." ECF 91, pp. 37-38. Setting aside the impropriety of Plaintiff's attempt at a character assassination and request that the Court decide credibility at this stage, the evidence cited by DA Ramirez was not just his own testimony, *but the testimony of every single member of the Sheriff's office who was involved in Plaintiff's investigation*. ECF 79-15 (Muniz Dep. 57:23, 111:21-24, 162:4-14); ECF 79-16 (Aguirre Dep. 162:7-12, 164:11-165:13, 166:7-9); ECF 79-17 (L. Fuentes Dep. 210:19-21); ECF 79-18 (R. Fuentes 105:6-8, 109:13-111:1, Ex. 36); ECF 79-22 (Ramirez Dep. 163:18-20). This fact contention, therefore, is not disputed.

In the absence of evidence that DA Ramirez investigated Plaintiff, she pleads with the Court to draw a contrary inference based on nothing more than a 2020 campaign video wherein DA Ramirez[1] pledged to work with law enforcement and a cherry-picked statement from Captain Fuentes' deposition. With regard to the latter, Plaintiff takes one line from Captain Fuentes'

---

[1] Defendants have not received a copy of

Defendant Gocha Ramirez' Reply in Support of his Motion for Summary Judgment        -2-

deposition where he said he contacts the DA directly "for the most part" to imply that Fuentes received direction from DA Ramirez about Plaintiff's case. This is problematic for two reasons. One, Plaintiff omitted the related testimony that shows the context in which he made the statement:

> *Q. Okay. Who is -- who do you -- if you have to make contact in the DA's office, who is your comfort contact?*
> *A. I call Mr. Ramirez.*
> *Q. You call the DA directly?*
> *A. **But it's never because of a case.** It's always because of something that they need from one of my investigators or something, if there's an issue. If there's not an issue, then -- then no*.

ECF 91-28 (L. Fuentes Dep. 71:16-24).

And, two, Plaintiff ignored Captain Fuentes' testimony regarding how often he spoke with DA Ramirez *about Plaintiff's case*:

> ***Q. How many conversations did you have with DA Ramirez during the investigation?***
> ***A. Zero***.

ECF 79-17 (L. Fuentes Dep. 210:19-21).

DA Ramirez agrees that he made a campaign video in 2020 stating that he would work closely with law enforcement. And DA Ramirez does not dispute Fuentes' complete testimony. Plaintiff has presented nothing, however, to counter the deposition testimony from the three members of the Sheriff's Office involved in the case, who each testified they never discussed the case with DA Ramirez. There is no genuine issue of material fact regarding DA Ramirez's involvement with Sheriff's Office investigators in Plaintiff's case. To borrow Captain Fuentes' testimony, DA Ramirez's involvement was "zero."

Second, Plaintiff admits that the evidence establishes DA Ramirez had only two discussions with ADA Barrera about Plaintiff's case, which is consistent with the evidence presented by DA Ramirez. This fact-contention is, therefore, not disputed.

Third, three pieces of evidence—none of which is disputed by Plaintiff or DA Ramirez—confirm that in those two discussions between DA Ramirez and ADA Barrera, DA Ramirez's only

instruction to ADA Barrera was to present the case to the grand jury and not arrest Plaintiff. On February 1, 2022, ADA Barrera text DA Ramirez:



ECF 91-21 at 76 (cited in Plf's Resp., Doc. 91, at p. 35).

Later that day, ADA Barrera also text Investigator Muniz:



ECF 91-21 at 32 (cited in Plf's Resp., Doc. 91, at p. 35).

DA Ramirez's deposition testimony, also cited by Plaintiff, shows that in response to ADA Barrera asking about presenting Plaintiff's case to the grand jury, he responded, "Yeah, you can present it to the grand jury." ECF 91-24 (Ramirez Dep. 152:2-3).

Plaintiff tells the Court that these three pieces of evidence, which are not in dispute, show that "Defendant Ramirez directed ADA Barrera to instruct Investigator Muniz that the investigative facts should be presented to a grand jury—even though he testified that he then understood there was no probable cause to indict Ms. Gonzalez." Doc. 91, p. 35. Of course, that is not what this evidence shows. Nothing in the two text messages or DA Ramirez's deposition

testimony reflects that DA Ramirez told ADA Barrera to instruct Investigator Muniz about anything, much less specifics about Plaintiff's investigation. The messages say what they say (and do not say what they do not say). Plaintiff's mischaracterization of the evidence does not represent a fact dispute, but, instead a dispute about what can be read from the facts.

Last, Plaintiff faults DA Ramirez because "after Ms. Gonzalez's arrest, DA Ramirez expressly took responsibility of her prosecution … [and] [h]e personally met with the Plaintiff and apologized to her." ECF 91, p. 37. Plaintiff argues that his taking accountability for an error of his office is evidence that he personally investigated Plaintiff. The conclusion is amiss. There is no evidence that DA Ramirez apologized for personally conducting the investigation of Plaintiff or directly participating in the investigation. Rather, his apology rings of a statement that he made in the campaign video that Plaintiff so readily cited: "Never will I pass the buck. The buck always stops with the District Attorney. As it should." 91-3 at 5:46. The head of an organization taking responsibility for the error of his office is not evidence that the District Attorney personally investigated Plaintiff, contrary to her assertion.

In sum, the undisputed evidence, which is cited by Plaintiff and DA Ramirez, reflects the District Attorney's role during Plaintiff's investigation: DA Ramirez never spoke with investigators; DA Ramirez never directed ADA Barrera to deliver instructions to investigators; DA Ramirez had two conversations with ADA Barrera and directed her to present the case to the grand jury but did not review the full file in advance of the grand jury indictment. And DA Ramirez immediately moved to dismiss the indictment and apologized when he realized Plaintiff could not be prosecuted under the Texas Penal Code because of the murder exception for mothers who cause the death of their unborn children.

**B.     Based on the undisputed facts, DA Ramirez is entitled to absolute immunity.**

Given that the facts are not disputed, the question is whether DA Ramirez is entitled to absolute immunity as a matter of law. Plaintiff argues that under *Terwilliger v. Reyna*, a case decided under Rule 12, not Rule 56, DA Ramirez is not entitled to absolute prosecutorial immunity. ECF 91, p. 36.

In a single-sentence argument, Plaintiff endeavors to draw a parallel between his involvement (or lack thereof) in Plaintiff's case and former McClennan County District Attorney Abelino Reyna's involvement in the Twin Peaks shootout investigation, as discussed in *Terwilliger, et al. v. Reyna, et al*. She concludes that DA Ramirez's actions are just like those attributed to DA Reyna and *Terwilliger* and like Reyna, DA Ramirez should be denied absolute immunity. ECF 91, p. 36 (quoting *Terwilliger*, F.4th at 281).

These are the allegations that the Court had to consider regarding the actions of DA Reyna when evaluating the Motion to Dismiss:

> Reyna was the driving force behind the mass arrests and **told Asst. Chief Lanning that "'all bikers wearing colors' should be arrested.**" Further, the Plaintiffs allege, **Reyna was present at the scene "investigating the shooting"** and **"publicly acknowledged that he took the unusual step of assisting law enforcement** and was involved in the actual investigation of the incident." The complaint states that "**Reyna investigated the scene within hours of the incident**, **took photographs of the scene**, **reviewed information as it became known**, and in all respects inserted himself in the role of an investigator/detective." The Plaintiffs allege that Reyna was **continuously updated on May 17 as to the status of the investigation**. Moreover, Reyna had access to video footage corroborative of law enforcement interviews that revealed many COC attendees, including many of those arrested, had no connection to the violence or parties involved in the violence.
>
> …
>
> Reyna's alleged conduct in personally investigating the scene of the fracas and taking photographs… he was allegedly **"[c]reating or manufacturing new facts**…"

*Terwilliger, et al. v. Reyna, et al.*, 4 F.4th 270, 280-81 (5th Cir. 2021).

Unlike the allegations in *Terwilliger*, here, the evidence shows that DA Ramirez never directed the Sheriff or any of his staff to arrest Plaintiff. Unlike in *Terwilliger*, here, the evidence shows that DA Ramirez was never present at the scene being investigated. Unlike in *Terwilliger*, here, the evidence shows that DA Ramirez was not assisting the investigators the day of Plaintiff's incident or any time after, and certainly never made a public admission that he was working with law enforcement to investigate Plaintiff. Unlike in *Terwilliger*, here, DA Ramirez did not take photos as the scene being investigated or supply facts to investigators for the purpose. Unlike in *Terwilliger*, here, DA Ramirez did not obtain information about Plaintiff from some other law enforcement source and furnish that information to the Sheriff's office to arrest Plaintiff. Unlike in *Terwilliger*, here, DA Ramirez did not go to the scene and create or manufacture new facts to use in arresting Plaintiff. Plaintiff's attempt to compare the two is absurd.

The Court in *Terwilliger* simply was not deciding whether absolute immunity applied to a District Attorney who did not initiate the investigation, speak to investigators, gather evidence himself while at the scene, publicly acknowledge his investigative efforts, create facts to use in the arrest affidavit, etc. *Terwilliger's* value in the instant case is in demonstrating the conduct by which absolute prosecutorial immunity may be lost—not that that should be the result here. *Terwilliger* does not help Plaintiff.

In fact, there is no case that helps Plaintiff. None of the referenced cases held that prosecutorial immunity is inapplicable based on a decision to present a case to the grand jury, which is all that DA Ramirez did here. Plaintiff's final effort on this point is to invite the Court to depart from well-settled law and draw a distinction between the decision to seek a grand jury indictment and the act of making the grand jury presentation itself and then to afford absolute immunity only to the latter. *See* ECF 91, p. 37. This invitation should be squarely rejected. Indeed,

going back to *Imbler* where the contours of absolute prosecutorial immunity were formed in the context of Section 1983 actions, the Court recognized that, "The function of a prosecutor that most often invites a common-law tort action is his **decision to initiate a prosecution**, as this may lead to a suit for malicious prosecution if the State's case misfires." *Imbler v. Pachtman*, 424 U.S. 409, 421 (1976). For these decisions, the Court held, a prosecutor must have absolute immunity in the decision to prosecute a case and in the presentation itself. This applies with full force to the instant case. DA Ramirez is entitled to absolute immunity.

C.    **Alternatively, DA Ramirez Is Entitled To Qualified Immunity to Plaintiff's Malicious Prosecution, False Arrest, and Conspiracy claims.**

Plaintiff's arguments about whether DA Ramirez is entitled to qualified immunity as an alternative to absolute immunity is even more bizarre than her conclusions about what can be read from the undisputed evidence in this case. She makes some general arguments that are meritless.

First, she asks the Court to simply toss the application of qualified immunity in Section 1983 cases, disregarding decades of controlling caselaw, because, according to Plaintiff, the doctrine "lacks a textual basis," "subverts the purpose of Section 1983," "undermines public policy," and should be reevaluated. ECF 91, p. 56 (citations omitted).

Plaintiff asks too much. The doctrine of qualified immunity is firmly established and must be applied here. Plaintiff also suggests that this Court should only apply qualified immunity to split-second decisions. Again, Plaintiff cannot just invent the law as she believes it should be and then demand this Court follow her edicts.

Next, Plaintiff argues that because the Court denied the Motion to Dismiss, which included DA Ramirez's argument that the Fifth Circuit did not recognize a Fourteenth Amendment malicious prosecution claim when Plaintiff was investigated, the issue cannot be reviewed during the summary judgment process. Plaintiff posits that the ruling on the Motion to Dismiss carries

throughout litigation as the law of the case and is improperly raised in DA Ramirez's Rule 56 Motion. Plaintiff's argument ignores that the Motion to Dismiss was focused on the application of immunity based on the fictitious allegations that Plaintiff pleaded. This red-herring should be ignored.

**False Arrest**

Turning to the constitutional arguments, the threshold question on the issue of whether there is a disputed fact issue regarding false arrest, is whether District Attorney Ramirez caused Plaintiff to be arrested without probable cause. The facts show that the District Attorney simply instructed that the case go to the grand jury—it was the grand jury's indictment that caused Plaintiff to be arrested—not direction or participation in the arrest by DA Ramirez. *See* ECF 79-15 (Muniz Dep.63:1-9, 77:3-6, 110:12-12, 176:12-14); ECF 79-16 (Aguirre Dep. 167:9-168:5); 79-17 (L. Fuentes Dep. 154:19-155:6); ECF 79-18 (R. Fuentes Dep. 93:20-94:3, 96:19-22, 97:4-8); ECF 79-20 (Villarreal Dep. 211:8-11, 211:21-23); ECF 79-21 (Barrera Dep. 81:6-16, 213:2-7); ECF 79-22 (Ramirez Dep. 148:7-150:17).

In Response to this obstacle where there is no personal involvement by the defendant, Plaintiff responds that a "DA's office investigator who reports directly to DA Ramirez ordered the Sheriff's office to arrest Ms. Gonzalez." ECF 91, p. 43. This argument is suggests that the Court apply *respondeat superior* liability, which is not viable in a Section 1983 case. *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 691–95 (1978)). What Plaintiff must do is link the arrest to DA Ramirez, not one of his subordinates.

Moreover, Plaintiff fails to overcome the bar created by the independent intermediary doctrine, under which DA Ramirez could not have committed a constitutional infraction for false

arrest where a grand jury rendered an indictment unless the evidence shows that he tainted the grand jury. Here, Plaintiff completely unravels into arguments about criminal *mens rea*, which are completely unhelpful. And in a last-ditch effort, she makes the conclusory assertion that the evidence that DA Ramirez tainted the grand jury is that he directed ADA Barrera to present the case to the grand jury. By Plaintiff's logic, the independent intermediary doctrine would be rendered completely meaningless because the mere act of presenting a case to an intermediary would be evidence that the intermediary was tainted and the doctrine inapplicable. This circular logic is inconsistent with the law.

What Plaintiff did not and cannot point to is any evidence showing that DA Ramirez took direct actions to arrest Plaintiff or directed ADA Barrera to lie to the grand jury or to misrepresent information to the grand jury, such that a colorable constitutional violation occurred. Further, Plaintiff spends significant time squabbling with herself about what standard applies when evaluating the independent intermediary doctrine, which is problematic given the necessity that the constitutional right be clearly established at the time of the alleged misconduct. See ECF 91, p. 45.

DA Ramirez is entitled to qualified immunity for Plaintiff's false arrest claim.

**Malicious Prosecution**

Additionally, DA Ramirez is entitled to qualified immunity on Plaintiff's malicious prosecution claim. Initially, it is unclear whether Plaintiff is attempting to assert a new claim—that she was framed for murder—or if this is just repackaging of her malicious prosecution claim. To the extent it is the former, Plaintiff may not raise new claims in a Response to a Summary Judgment Motion. *See Cutrera v. Bd. of Sup'rs of Louisiana State Univ.*, 429 F.3d 108 (5th Cir. 2005).

Defendant Gocha Ramirez' Reply in Support of his Motion for Summary Judgment      -10-

Regarding the malicious prosecution claim, Plaintiff cannot overcome qualified immunity "because this court's caselaw explicitly disclaimed the existence of a constitutional claim for malicious prosecution at the time of [plaintiff's] alleged conduct in 2018 and 2019 [i.e., before *Thompson v. Clark*, 596 U.S. 36 (2022)]." *Bledsoe v. Willis*, No. 23-30238, 2023 WL 8184814, at *6 (5th Cir. 2023). Acknowledging that *Thompson* presents an insurmountable problem for any actions that occurred before April 4, 2022, Plaintiff claims that District Attorney Ramirez continued prosecuting her until she was arrested on April 7, 2022. ECF 91, p. 48. Here, again, Plaintiff's only evidence is that "On April 7th, a DA investigator who report directly to DA Ramirez directed Investigator Muniz to arrest Ms. Gonzalez." ECF 91, 49. Plaintiff is missing the connection between the District Attorney and this investigator, which makes this a mere *respondeat superior* theory of liability.

Plaintiff's other Response to DA Ramirez's assertion that there is no evidence of malice to support her malicious prosecution claim, as required under, *Armstrong v. Ashley*, 60 F.4th 262, 278–79 (5th Cir. 2023), is to say that Ramirez had "personal opinions" about the facts. She cites the deposition testimony of DA Ramierz and ADA Barrera to support this theory, but neither of them testified in the cited passage that DA Ramirez was motivated to prosecute Plaintiff because he had "personal opinions" about what she had done. ECF 91, p. 51. This is yet another exhausting example of Plaintiff citing evidence that is not disputed but then describing it to the Court to say something that it does not. She does the same with her accusation that the additional evidence of DA Ramierz's malice is that ADA Solis represented Plaintiff's husband in divorce proceedings. There is absolutely no evidence in the record showing that DA Ramiez was motivated by some desire to help a subordinate in a family law case. Like the pleading that started this case, Plaintiff freely spins tales for which there is no evidence.

DA Ramirez is entitled to qualified immunity because there is no evidence showing that he committed a constitutional violation where he merely directed ADA Barrera to present a case to the grand jury.

**Conspiracy**

"To support a conspiracy claim under § 1983, the plaintiff must allege facts that suggest "an agreement between the ... defendants to commit an illegal act" and "an actual deprivation of constitutional rights." *Terwilliger*, 4 F.4th at 285 (quoting *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994)).

Importantly, in her Response, Plaintiff abandoned her claim that the supposed conspiracy involved employees of the Starr County Memorial Hospital and the Starr County DA's Office and Sheriff's Office. This is significant because without Starr County Memorial Hospital, her conspiracy involves a single entity: Starr County. Because Starr County cannot conspire with itself, as a matter of law, Plaintiff's conspiracy claim is doomed. *See Hilliard v. Ferguson*, 30 F.3d 639, 653 (5th Cir. 1994) ("It is a long-standing rule in this circuit that a "corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.") (citing *Nelson Radio & Supply Co. v. Motorola, Inc*., 200 F.2d 911, 914 (5th Cir.1952), cert. denied, 345 U.S. 925 (1953)).

Further, Plaintiff has still been unable to identify facts showing that the Sheriff, DA Ramirez, and ADA Barrera acted with the purpose of violating her rights. Plaintiff's baseless conspiracy theory fails.

## CONCLUSION AND PRAYER

Therefore, Defendant Ramirez respectfully request that the Court find he is entitled to absolute immunity for the claims alleged in Plaintiff's Amended Complaint and dismiss them with prejudice. To the extent necessary, should the Court determine that absolute immunity does not

apply, Defendant Ramirez submits that he is entitled to qualified immunity and the claims against him should be dismissed. Finally, Defendants respectfully ask that the Court stay discover pending the determination of immunity for the reasons stated by the Fifth Circuit in *Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022). Defendants pray for any other relief to which they are justly entitled.

SIGNED on the 19th day of AUGUST 2025.

Respectfully submitted,

By: *Kelly R. Albin*
Kelly R. Albin
State Bar No. 24086079
So. Dist. ID No. 3792304
kralbin@rampagelaw.com

By: *Ricardo J. Navarro*
RICARDO J. NAVARRO
State Bar No. 14829100
So. Dist. Id No. 5953
rjnavarro@rampagelaw.com

**DENTON NAVARRO RODRIGUEZ BERNAL SANTEE & ZECH, P.C.**
549 N. Egret Bay, Suite 200
League City, Texas 77573
832- 632-2102
832-632-2132 (fax)

**ATTORNEYS FOR DEFENDANT GOCHA ALLEN RAMIREZ**

## CERTIFICATE OF SERVICE

I certify that a true copy of this document has been served in accordance with one or more of the authorized methods for service of process contained in the Federal Rules of Civil Procedure on the persons or parties identified below on this the 19th day of AUGUST 2025.

| | |
|---|---|
| Ida Cecilia Garza | **Via E-Filing Notification** |
| Veronica Sepulveda Martinez | **Via E-Filing Notification** |
| GARZA MARTINEZ, PLLC | |
| 202 E. Sprague Street | |
| Edinburg, TX 78539 | |
| COUNSEL FOR PLAINTIFFS | |
| | |
| Lauren Alicia Johnson | **Via E-Filing Notification** |
| AMERICAN CIVIL LIBERTIES | |
| UNION FOUNDATION | |
| 915 15th Street NW | |
| Washington DC 20005 | |
| COUNSEL FOR PLAINTIFFS | |
| | |
| David A. Donatti | **Via E-Filing Notification** |
| Adriana Pinon | **Via E-Filing Notification** |
| AMERICAN CIVIL LIBERTIES | |
| UNION OF TEXAS | |
| P.O Box 12905 | |
| Austin, TX 78711-2905 | |
| COUNSEL FOR PLAINTIFFS | |

By: *Kelly R. Albin*
      KELLY R. ALBIN
      RICARDO J. NAVARRO