**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| **LIZELLE GONZALEZ** | § | |
| *Plaintiff* | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION 7:24-CV-00132** |
| | § | |
| **GOCHA ALLEN RAMIREZ, et al.** | § | |
| *Defendants* | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE EVIDENCE**

==================================================================

I. Cecilia Garza
Texas Bar No. 24041627
USDTX Federal Admission No.: 578825
Garza Martinez, PLLC
202 E. Sprague Street
Edinburg, Texas 78539
Telephone No.: 956-335-4900
Telecopier No.: 956-338-5700
cecilia@garzamartinezlaw.com
*Attorney in charge for Plaintiff*

David A. Donatti
Texas Bar No. 24097612
USDTX Federal Admission No.: 33771067
American Civil Liberties Union of Texas
P.O. Box 12905
Austin, TX 78711-2905
Telephone No.: 713-942-8146
Facsimile: 713-942-8966
ddonatti@aclutx.org

Lauren Alicia Johnson
DC Bar No.: 1011382*
American Civil Liberties Union Foundation
915 15th Street NW
Washington DC 20005
Telephone No.: 202-731-5567
ljohnson@aclu.org
* Admitted *pro hac vice*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................ii

SUMMARY OF ARGUMENT.......................................................................................... 1

BACKGROUND ............................................................................................................... 2

LEGAL STANDARD ....................................................................................................... 6

LEGAL ARGUMENT ...................................................................................................... 9

    I.   The exhibits related to Becky and Rosita Rocha are relevant to the questions
        before this Court on summary judgment. ................................................. 9

        A.   The excerpts from Rosita and Becky Rocha's depositions are relevant
            to DA Ramirez's involvement in investigating and prosecuting Ms.
            Gonzalez and his knowledge about whether abortion could be charged
            as murder. .......................................................................................... 10

        B.   The text messages between each of the Rocha sisters and D.A.
            Ramirez are relevant to DA Ramirez's knowledge of the law and
            involvement in the Gonzalez prosecution. ........................................ 12

    II.  The affidavit of Bernice Garza was timely disclosed pursuant to Rule 26 and
        complies with the requirements of Rule 56. .......................................... 12

        A.   Plaintiff timely disclosed Bernice Garza as a witness. ................... 13

        B.   Bernice Garza's affidavit is based on personal knowledge and contains
            admissible facts. ................................................................................ 17

CONCLUSION................................................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Amie v. El Paso Ind. School Dist.*,
　253 F. App'x 447 (5th Cir. 2007) ............................................................... 8

*Augustus v. Bd. Of Pub. Instruction*,
　306 F.2d 862 (5th Cir. 1962) ..................................................................... 6

*Bennett v. Hartford Ins. Co. of Midwest*,
　890 F.3d 597 (5th Cir. 2018) ................................................................... 14

*Betzel v. State Farm Lloyds*,
　480 F.3d 704 (5th Cir. 2007) ................................................................... 15

*Cain v. Exxon Mobil Corp.*,
　400 F. Supp. 3d 514 (M.D. La. 2019) ........................................................ 6

*Callier v. Jascott Invs., LLC*,
　No. 3:22-CV-00301-LS, 2025 WL 97843 (W.D. Tex. Jan. 14, 2025).................... 7

*Campbell Harrison & Dagley, L.L.P. v. PBL Multi-Strategy Fund, L.P.*,
　744 F. App'x 192 (5th Cir. 2018) ............................................................. 18

*Coleman v. Houston Indep. Sch. Dist.*,
　113 F.3d 528 (5th Cir. 1997) ..................................................................... 9

*D.B. By & Through Becton v. City of McKinney, Texas*,
　No. 4:16-CV-00965, 2017 WL 6421261 (E.D. Tex. Dec. 18, 2017) .................... 18

*D'Onofrio v. Vacation Publ'ns, Inc.*,
　888 F.3d 197 (5th Cir. 2018) ..................................................................... 8

*El Deeb v. Univ. of Minn.*,
　60 F.3d 423 (8th Cir. 1995) ....................................................................... 8

*Forbus v. Andrews Dist. Co. of N. Tex., Ltd.*,
　No. Civ. A. 3:04-cv-0468-B, 2005 WL 3637041 (N.D. Tex. Nov. 1, 2005) ........... 7

*Hager v. Brinker Tex., Inc.*,
　102 F.4th 692 (5th Cir. 2024) ................................................................... 8

*Hansard v. Pepsi-Cola Metro. Bottling Co., Inc.*,
　865 F.2d 1461 (5th Cir. 1989) ................................................................... 8

*Hargett v. Phillips, 66 Co.*,
　2025 LX 268249 (S.D. Tex. 2025) ............................................................. 8

*Indel Food Prods., Inc. v. Dodson Int'l Parts, Inc.*,
   No. EP-20-CV-98-KC, 2021 WL 5206610 (W.D. Tex. Sept. 21, 2021) ............................... 16

*Keller v. Coastal Bend Coll.*,
   629 F. App'x 596 (5th Cir. 2015) ........................................................................... 16

*La Day v. Catalyst Tech., Inc.*,
   302 F.3d 474 (5th Cir. 2002) ............................................................................... 19

*LSR Consulting, LLC v. Wells Fargo Bank, N.A.*,
   835 F. 3d 530 (5th Cir 2016) ................................................................................. 8

*Maldonado v. Mammoth Energy Servs., Inc.*,
   2025 LX 108210 (W.D. Tex. 2025) ........................................................................... 8

*Maldonado v. Mammoth Energy Servs., Inc.*,
   2025 U.S. LX 110098 (W.D. Tex. 2025) ....................................................................11

*Mendoza v. A & A Landscape & Irrigation, LP*,
   No. 4:12-CV-562, 2014 WL 6627741 (E.D. Tex. Nov. 21, 2014) ......................................... 13

*Miller v. Michaels Stores, Inc.*,
   98 F4th 211 (5th Cir. 2024) ................................................................................... 8

*OKC Corp. v. Williams*,
   461 F. Supp. 540 (N.D. Tex. 1978) ........................................................................... 6

*Patel v. Texas Tech Univ.*,
   941 F.3d 743 (5th Cir. 2019) ................................................................................. 8

*Reed v. Iowa Marine & Repair Corp.*,
   16 F.3d 82 (5th Cir. 1994) .................................................................................. 15

*Reeves v. Sanderson Plumbing Prods., Inc.*,
   530 U.S. 133 (2000) ..........................................................................................11

*Renwick v. PNK Lake Charles, L.L.C.*,
   901 F.3d 605 (5th Cir. 2018) ................................................................................. 9

*Riahi v. Chertoff*,
   No. CV H-06-2427, 2008 WL 11393140 (S.D. Tex. Mar. 13, 2008) ..................................... 7

*Thomas v. Great Atl. & Pac. Tea Co.*,
   233 F.3d 326 (5th Cir. 2000) ................................................................................11

*United States v. Cantu*,
   167 F.3d 198 (5th Cir. 1999) ................................................................................. 8

*United States v. Grigsby*,
    86 F.4th 602 (5th Cir. 2023) ........................................................................ 14

## RULES

Fed. R. Civ. P. 26
    advisory committee's note to 1933 amendment ............................................ 13

Fed. R. Civ. P. 26(a)(1)(A)(i) ........................................................................... 13

Fed. R. Civ. P. 26(e)(1)(A) ............................................................................... 13

Fed. R. Civ. P. 37(c)(1) ............................................................................. 14, 15

Fed. R. Civ. P. 56(c)(1)(A) ................................................................................. 7

Fed. R. Civ. P. 56(c)(2) ............................................................................... 8, 18

Fed. R. Civ. P. 56(c)(4) ............................................................................. 17, 19

Fed. R. Evid. 402 ............................................................................................... 8

Fed. R. Evid. 602 ............................................................................................... 8

Fed. R. Evidence 401 ......................................................................................... 8

Fed. Rule of Evidence 801(d)(2) ...................................................................... 17

## SUMMARY OF ARGUMENT

The question at the heart of this case is what role Defendants played in the investigation and prosecution of Ms. Gonzalez. Defendants seek to strike evidence bearing directly on this question, specifically: deposition testimony that DA Ramirez was told that abortion was not a crime and was urged to release Ms. Gonzalez from jail; deposition testimony that DA Ramirez admitted that ADA Barrera and ADA Villarreal were keeping him apprised of everything happening during the investigation and prosecution of Ms. Gonzalez; deposition testimony that DA Ramirez paid for a prior abortion for one of his mistresses; text messages contradicting DA Ramirez's deposition testimony about the nature and extent of his relationship with witnesses; and an affidavit from a former employee at the DA's Office recounting her observations of DA Ramirez and ADA Barrera's involvement in Ms. Gonzalez's investigation and prosecution.[1]

Instead of objecting to specific portions of the records, Defendants seek to strike five exhibits in their entirety, including transcripts of depositions they took, text messages to and from the Defendants that they requested, and an affidavit from a former DA's office employee. The claimed bases for this extraordinary relief are that the deposed witnesses are not credible, his text messages are personally embarrassing, and that the affidavit was disclosed out of time and lacks personal knowledge. But because credibility assessments are improper on summary judgment, a motion to strike cannot succeed on these grounds. Defendants' other claim that the affidavit was untimely disclosed and lacks personal knowledge is wholly misplaced, as discovery is still ongoing, the affidavit was disclosed within days of Plaintiff obtaining it, and the affiant's statements are based on her observations of and conversations with the Defendants. Indeed,

---

[1] Note that Defendants' Motion to Strike references ECF document numbers 91-11, 91-13, 91-14, 91-15, and 91-25. However, the exhibit they label "91-15" as the text messages between Rosita Rocha and DA Ramirez is in fact ECF document number 91-14, and the exhibit they label "91-14" as the Deposition of Becky Rocha is in fact ECF document number 91-26.

because Defendants had knowledge of this witness from day one, they ought to have initially disclosed her *to Plaintiff* as a person likely to have discoverable information. Contrary to Defendants' arguments, Plaintiff's exhibits comply with the requirements of Rules 26 and 56. Accordingly, Defendants' motion to strike lacks merit and should be denied, and the disputed exhibits should be unsealed on the docket.

## **BACKGROUND**

The challenged exhibits consist of deposition transcripts and evidence produced during discovery, which remains ongoing. On January 22, 2025, the parties entered an Agreed Modified Discovery Scheduling Order regarding the assertions of immunity, requiring Defendants to complete production of documents by January 28, 2025, with a deadline to give notice for depositions by "[t]he later of February 28, 2025, or seven days after resolution of discovery disputes, if any are noticed." ECF 67. Because Defendants did not meet their January 28th deadline, Defendants' counsel agreed to modify the discovery schedule so that the deadline to give notice for depositions would be "the latter of 30 days after Defendants notify Plaintiff that their production of documents is complete, or seven days after resolution of discovery disputes, if any are noticed." ECF 98-1 (Emails between Counsel). As discussed *infra*, Defendants have continued to produce documents as recently as July 16, 2025, and Plaintiff filed a notice with this Court concerning discovery disputes on July 8, 2025, to which Defendants have responded. The deadlines for discovery have therefore not passed and discovery remains open.

Despite the discovery disputes and delays, over the past several months the parties engaged in depositions and exchanged discovery that Defendants now seek to strike. On February 21, 2025, Plaintiff filed a timely supplemental disclosure pursuant to Rule 26(a)(1) including sisters Rosita Rocha and Becky Rocha as "individual(s) likely to have discoverable

2

information" relevant to the investigation, charging, and arrest of Lizelle Gonzalez, and disclosed a text message conversation between Becky Rocha and Defendant Ramirez discussing the murder prosecution of Plaintiff. ECF 98-2. On March 31, 2025, Defendants subpoenaed Becky and Rosita Rocha to be deposed. ECF 77, 78. On April 7, 2025, Plaintiff deposed Defendant Ramirez. ECF 91-24. Ramirez was asked about his relationships with Becky and Rosita Rocha, his communications with them about Plaintiff, as well as his involvement with Becky Rocha's abortion, which bore on his knowledge that abortion was not a crime. *Id.* (Ramirez Dep. 251:22-24, 252:8-10, 274:19-275:5, 224:25-225:3). He misrepresented his relationship with each sister, denied speaking to Rosita Rocha about Plaintiff's investigation or prosecution, and denied knowing anything about Becky Rocha's abortion. *Id.*

On June 4, 2025, Defendants deposed Becky Rocha and Rosita Rocha. ECF 91-25; ECF 91-26. During Rosita Rocha's deposition, Defendants' counsel elicited testimony about her conversations with DA Ramirez concerning Plaintiff's arrest and incarceration. *See e.g.*, ECF 91-25 (R. Rocha Dep. 7:8-24) ("And [DA Ramirez] said, '[Ms. Gonzalez is] in jail.'… So I said, 'Gocha, get her out of jail,'... said, 'Gocha, the laws have not changed.'… And he says, 'Yes, Rosie. Abel and – and Alexandria are on top of everything, and they're advising everything that's going on.'"). This testimony contradicted statements made by DA Ramirez during his deposition. ECF 91-24 (Ramirez Dep. 274:19-22) ("I don't remember talking to [Rosita Rocha] about the arrest of Lizelle Gonzalez."). Defense counsel also elicited testimony from both Rosita and Becky Rocha that DA Ramirez had paid for and urged Becky Rocha to obtain an abortion when she was pregnant with his child. ECF 91-25 (R. Rocha Dep. 136:18-24); ECF 91-26 (B. Rocha Dep. 21:15-21).

During their deposition of Rosita Rocha, Defendants requested all text messages between her and DA Ramirez that had been provided to Plaintiff's counsel. DA Ramirez also served a fourth set of production requests on Plaintiff, seeking "any text messages, chats, emails, or communications of any kind that reflect conversations with Gocha Ramirez, Alexandria Barrera, or Rene Fuentes that are in Plaintiff's possession, including, but not limited to, every text message provided to Plaintiff's counsel by Rosita Rocha or Becky Rocha." ECF 98-3. Between June 25 and 28, 2025, Plaintiff produced all responsive text messages to Defendants' counsel. Contrary to DA Ramirez's deposition testimony that Rosita Rocha was an "acquaintance" that he knew from her time working in the Starr County Sheriff's Office and that he is not friends with her, the text messages between him and Rosita Rocha evidence a decades-long friendship during which he frequently discussed his work and family matters. *Compare* ECF 91-24 (Ramirez Dep. 274:19-275-7) *with* ECF 91-13 (Texts between Ramirez and R. Rocha). And contrary to DA Ramirez's deposition testimony that he did not have a romantic relationship with Becky Rocha, the text messages between them demonstrate otherwise. *Compare* ECF 91-24 (Ramirez Dep. 251:22-252:13) *with* ECF 91-14 (Texts between Ramirez and B. Rocha).

In February of 2025, Bernice Garza personally contacted Plaintiff Lizelle Gonzalez and said she would be willing to discuss information that may be relevant to Ms. Gonzalez's lawsuit. ECF 98-4 (Declaration of C. Garza). On or about February 14, 2025, Plaintiff's counsel spoke to Bernice Garza's attorney about the possibility of talking to his client to learn whether she had any information relevant to this litigation. *Id.* Bernice Garza's attorney informed Plaintiff's counsel that she would not participate in any discussions regarding the Lizelle Gonzalez lawsuit while her own criminal case was pending. *Id.* In mid-June, Bernice Garza again reached out to Plaintiff Lizelle Gonzalez personally and told her she would be willing to provide information

via testimony or subpoena. *Id*. Plaintiff's counsel attempted twice to speak to Bernice Garza's attorney, but that attorney did not return her message or calls. *Id*.

Throughout this time, discovery dragged on as Defendants failed to respond to Plaintiff's discovery demands and failed to turn over promised documents. *See* ECF 80. Plaintiff sent emails to Defendants' counsel including on March 24, 2025, May 9, 2025, June 25, 2025, and July 3, 2025, seeking information about these unanswered requests. ECF 80 at 43-49. On July 1, 2025, although discovery requests were outstanding and disputes were unresolved, Defendant Ramirez filed a motion for summary judgment. ECF 79. Defendant Ramirez did not inform Plaintiff of the timing of or his intention to file the motion. After repeated requests to speak with opposing counsel went unanswered, on July 8, 2025, Plaintiff filed a letter requesting the Court's intervention regarding discovery disputes that have been ongoing for months. ECF 80 at 43-49, 1-3. On July 10, 2025, Defendant Barrera filed her motion for summary judgment. ECF 81. On July 11, 2025, Defendants produced an affidavit regarding a search of Defendant Rene Fuentes's cell phone. *See* ECF 86. On July 16, 2025, Defendants filed their response to Plaintiff's discovery disputes letter and produced a Starr County policy manual. *Id*.

In the meantime, on July 3, 2025, Bernice Garza's lawyer authorized Plaintiff's counsel to meet with his client. ECF 98-5; ECF 98-7. On July 16, 2025, Plaintiff's counsel met with Bernice Garza who provided a signed affidavit. ECF 91-11. On July 18, 2025, Plaintiff disclosed Bernice Garza as a potential witness and produced her affidavit to Defendants. ECF 98-8; ECF 91-11 at 2-3 (Affidavit of B. Garza). Bernice Garza, who was the Crime Victims Unit Coordinator in the DA's Office, witnessed "ADA Barrera frequently sharing information about the investigation [of Ms. Gonzalez]" including "multiple conversations between ADA Barrera and DA Ramirez discussing what evidence had been collected" prior to the Grand Jury

presentation. ECF 91-11 at 2-3 (Affidavit of B. Garza). This account contradicted the deposition testimony of DA Ramirez and ADA Barrera. ECF 91-24 (Ramirez Dep. 157:5-6) ("none of the staff or ADAs were involved in the investigation."); ECF 91-23 (Barrera Dep. 102:12) ("[n]obody was working on that case at our office."). Defendants have not noticed a deposition of Bernice Garza.

On July 22, 2025, Defendant Fuentes filed his summary judgment motion. ECF 88. On August 12, 2025, Plaintiff filed her Omnibus Response in opposition to summary judgment. ECF 91. In support of her response brief, Plaintiff filed 32 exhibits including: 1) excerpts from the deposition of Rosita Rocha; 2) excerpts from the deposition of Becky Rocha; 3) text messages between Rosita Rocha and DA Ramirez; 4) text messages between Becky Rocha and DA Ramirez; and 5) the signed affidavit of Bernice Garza. ECF 91-11, 91-13, 91-14, 91-25, 91-26. On August 15, 2025, Defendants filed a motion to strike these five exhibits to Plaintiff's Omnibus Response in their entirety. ECF 94. That same day, this Court granted Defendants' request to seal these exhibits pending resolution of the motion to strike. On August 18, 2025, Defendants requested Plaintiff's position on an extension for their reply to the summary judgment opposition. ECF 98-9. Plaintiff's counsel responded she would not oppose an extension should Defendants seek to depose Bernice Garza. *Id.* Defendants' counsel did not reply to Plaintiff's counsel's email. Instead, Defendants filed their reply briefs on August 18, 2025. ECF 95, 96, 97.

## **LEGAL STANDARD**

"Motions to strike are disfavored and rarely granted." *OKC Corp. v. Williams*, 461 F. Supp. 540, 550 (N.D. Tex. 1978) (citing *Augustus v. Bd. Of Pub. Instruction*, 306 F.2d 862, 868 (5th Cir. 1962)). *See also Cain v. Exxon Mobil Corp.*, 400 F. Supp. 3d 514, 520 (M.D. La. 2019)

6

("Motions to strike are generally disfavored and infrequently granted due to the fact that they are a drastic remedy and are often used as a dilatory tactic."). Courts therefore will "only intervene[] at summary judgment to strike statements that are 'an obvious sham.'" *Callier v. Jascott Invs., LLC*, No. 3:22-CV-00301-LS, 2025 WL 97843, at *1 (W.D. Tex. Jan. 14, 2025).

The party seeking to strike an exhibit must specify which portions of that exhibit are improperly before the court. *Riahi v. Chertoff*, No. CV H-06-2427, 2008 WL 11393140, at *4 n.7 (S.D. Tex. Mar. 13, 2008) ("Defendant generally alleges many evidentiary defects with the affidavit, but fails to specify what portions of the affidavit are objectionable."). If the party fails to identify which portions of the exhibit should be stricken and the basis for their objection, the motion to strike should be denied. *Id.* ("Because Defendant fails to 'specify the objectionable portions of the affidavit and the specific grounds for objection,' the affidavit should not be stricken.") (internal citations omitted). *See also Forbus v. Andrews Dist. Co. of N. Tex., Ltd.*, No. Civ. A. 3:04-cv-0468-B, 2005 WL 3637041 at *3 (N.D. Tex. Nov. 1, 2005) ("[Plaintiff] makes general objections without specifying the portions of the affidavits she believes are objectionable. The Court is not required to comb through each affidavit and isolate what it believes [plaintiff] is objecting to.").

At the summary judgment stage, parties are permitted to cite "parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "[A]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Hargett v. Phillips, 66 Co.*, 2025 LX 268249, at *4 (S.D. Tex.

7

2025) (quoting *Hager v. Brinker Tex., Inc.*, 102 F.4th 692, 702 (5th Cir. 2024)). "'Affidavits asserting personal knowledge must include enough factual support to show that the affiant possesses that knowledge.'" *Amie v. El Paso Ind. School Dist.*, 253 F. App'x 447, 451 (5th Cir. 2007) (quoting *El Deeb v. Univ. of Minn.*, 60 F.3d 423, 428 (8th Cir. 1995)). Furthermore, "[p]ersonal knowledge can include inferences and opinions, so long as they are grounded in personal observation and experience." *United States v. Cantu*, 167 F.3d 198, 204 (5th Cir. 1999) (citing Fed. R. Evid. 602). In fact, "[c]ourts have often permitted lay witnesses to express opinions about the motivation or intent of a particular person if the witness had an adequate opportunity to observe the underlying circumstances." *Hansard v. Pepsi-Cola Metro. Bottling Co., Inc.*, 865 F.2d 1461, 1466 (5th Cir. 1989).

Evidence relied upon "need not be presented in an admissible form, but it must be 'capable of being presented in a form that would be admissible in evidence.'" *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 208 (5th Cir. 2018) (quoting *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F. 3d 530, 534 (5th Cir 2016) (citing Fed. R. Civ. P. 56(c)(2))). Hearsay may be considered competent summary judgment evidence if the "statement can be presented in admissible form at trial." *Miller v. Michaels Stores, Inc.*, 98 F4th 211, 218 (5th Cir. 2024) (quoting *Patel v. Texas Tech Univ.*, 941 F.3d 743, 746 (5th Cir. 2019)). Although relevancy is a prerequisite to admissibility, the threshold is quite low. *See Maldonado v. Mammoth Energy Servs., Inc.*, 2025 LX 108210 at *10 (W.D. Tex. 2025); Fed. R. Evid. 402. Evidence is relevant when "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evidence 401.

At summary judgment, the court must determine whether there are material facts in dispute that must be decided by a factfinder. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528,

533 (5th Cir. 1997). "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (internal quotations and citations omitted). Evidence is therefore relevant to a motion for summary judgment if it has any tendency to demonstrate that there exist disputed material facts.

## <u>LEGAL ARGUMENT</u>

**I.**     **The exhibits related to Becky and Rosita Rocha are relevant to the questions before this Court on summary judgment.**

Defendants ask the court to strike the deposition testimony and text messages of Rosita and Becky Rocha in their entirety. Defendants fail to identify which portions of the deposition testimony they object to. Their argument for striking these exhibits appears to be: 1) the testimony has subjected the District Attorney to embarrassing news stories, 2) the testimony is not direct evidence of DA Ramirez's involvement in the prosecution of the Plaintiff, and 3) the testimony of Rosita Rocha is not reliable. But none of these arguments provide the court with a reason to strike the relevant exhibits. The fact that DA Ramirez may have been embarrassed by the revelations in these exhibits does not require the court to take such drastic action— particularly where, as here, there are strong countervailing reasons for the court to consider the evidence they contain. Further, the testimony of the Rocha sisters provides important context regarding DA Ramirez's actions that are relevant to outstanding material fact issues. Evidence submitted by the nonmoving party does not have to be as limited or "direct" as the Defendants seem to suggest. And whether or not Rosita Rocha is credible is a question for a factfinder. It

should not be a factor considered in a motion to strike, especially where, as here, multiple text messages from DA Ramirez himself corroborate Ms. Rocha's testimony.

### A. The excerpts from Rosita and Becky Rocha's depositions are relevant to DA Ramirez's involvement in investigating and prosecuting Ms. Gonzalez and his knowledge about whether abortion could be charged as murder.

In her Omnibus Response to Defendants' Motions for Summary Judgment, Plaintiff attached excerpts of Rosita Rocha's deposition for several purposes. In part, Plaintiff aimed to show that DA Ramirez called Rosita Rocha and discussed the prosecution of Plaintiff while Plaintiff was still incarcerated. *See* ECF 91 at 23 (Pl.'s Omnibus Br.); ECF 91-25 (R. Rocha Dep. 6:4-8:5). That this conversation happened while Ms. Gonzalez was still in the Starr County Jail, and before DA Ramirez had taken any steps to dismiss her case, underscores Plaintiff's arguments concerning the timing of DA Ramirez's involvement in her prosecution and incarceration. During this call, the DA admitted that ADA Villarreal and ADA Barrera had been notifying him about the prosecution—a fact that is highly relevant to whether DA Ramirez should receive absolute immunity. ECF 91-25 (R. Rocha Dep. 7:22-24, 136:8-9, 140:21-141:1). Rosita Rocha further testified that she told the DA that Ms. Gonzalez's arrest and continued detention was unlawful, which is relevant to Plaintiff's false arrest and malicious prosecution claims. *Id*. (R. Rocha Dep. 7:15-17).

Plaintiff also attached excerpts of both Rosita and Becky Rocha's depositions to show that DA Ramirez had personal knowledge of the legality of abortion because he had paid for Becky Rocha to have an abortion when she became pregnant with his child. ECF 91-25 (R. Rocha Dep. 136:18-25); ECF 91-26 (B. Rocha Dep. 21:15-21). Such knowledge shows, at *minimum*, a deliberate indifference to the fact that there was no probable cause to prosecute or arrest Ms. Gonzalez. Alternatively, a reasonable juror could conclude from this fact that DA

Ramirez was maliciously attempting to prosecute Ms. Gonzalez despite knowing that the law did not permit him to do so. In either case, the fact that DA Ramirez had personal experience with abortion—like his duty as a District Attorney to know the criminal law of Texas—is relevant to establish a genuine dispute of material fact regarding his subjective knowledge that the prosecution spearheaded by ADA Barrera was unconstitutional. Indeed, during the telephone conversation described by Rosita Rocha, DA Ramirez suggested he supported the prosecution of Ms. Gonzalez and expressed reluctance to release her from jail, notwithstanding the fact that the murder charge was unlawful. ECF 91-25 (R. Rocha Dep. 6:14-15; 7:15-16, 139:5-12).

Defendants ask the court to strike the deposition excerpts of Becky and Rosita Rocha because of alleged credibility issues. By making this argument they only highlight the fatal flaw in their summary judgment motions: sorting through all the testimony adduced thus far requires a factfinder to weigh disputed facts and make multiple determinations of witness credibility, which is wholly inappropriate at the summary judgment stage. On summary judgment, the court's role is not to "make credibility determinations or weigh the evidence," as those tasks are among those specifically reserved for the jury. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Maldonado v. Mammoth Energy Servs., Inc.*, 2025 U.S. LX 110098 at *9, (W.D. Tex. 2025). Defendants' credibility arguments therefore underscore why summary judgment should be denied. *Thomas v. Great Atl. & Pac. Tea Co.*, 233 F.3d 326, 331 (5th Cir. 2000) ("[W]hen questions about the credibility of key witnesses loom as large as they do here, summary judgment is inappropriate."). Indeed, the deposition testimony of both Rocha sisters directly contradicts the self-serving statements of ADA Barrera and DA Ramirez—yet another reason that this evidence should not be stricken. *See* ECF 91 at 27-30 (Pl.'s Omnibus Br.).

11

**B.    The text messages between each of the Rocha sisters and D.A. Ramirez are relevant to DA Ramirez's knowledge of the law and involvement in the Gonzalez prosecution.**

Defendants further ask the court to strike exhibits 91-13 and 91-14, which consist of text messages between DA Ramirez and both Rocha sisters. Again, the main argument they submit for this demand is that DA Ramirez is embarrassed by their content. First, the messages demonstrate the significance of the longstanding intimate relationships that DA Ramirez had with both women (thereby explaining to a factfinder why he might have been candidly discussing Plaintiff's case with them over phone and text message). The messages with Becky Rocha also support her testimony that she had a romantic relationship with DA Ramirez that resulted in an unwanted pregnancy and abortion that he paid for, which is relevant to the DA's knowledge of the law at the time he decided to submit a murder charge against Ms. Gonzalez to the grand jury. Finally, the text messages demonstrate various instances where DA Ramirez's deposition testimony is belied by documentary proof. *See* ECF 91 at 27-30 (Pl.'s Omnibus Br.). Because the text messages are relevant, the Defendants' motion to strike these exhibits lacks merit.

**II.    The affidavit of Bernice Garza was timely disclosed pursuant to Rule 26 and complies with the requirements of Rule 56.**

Defendants ask the court to strike a sworn affidavit of Bernice Garza, the Crime Victim's Unit Coordinator who worked in the District Attorney's Office, in its entirety. Again, Defendants fail to identify which portions of the affidavit they object to or are improperly before this Court for its consideration. Instead, they allege that although discovery remains ongoing, and although Plaintiff disclosed Bernice Garza as a witness soon after she learned that this witness had information relevant to her lawsuit, this disclosure was somehow untimely. Defendants also contend that this Court should disregard Bernice Garza's first-hand observations of and

conversations with Defendants concerning the investigation and prosecution of Ms. Gonzalez, arguing that her account lacks personal knowledge and contains hearsay. Neither of these arguments is supported by the record. Because Bernice Garza was timely disclosed as a witness and because the affidavit fully complies with the requirements of Rule 56(c)(4), Defendant's arguments lack merit.

**A.      Plaintiff timely disclosed Bernice Garza as a witness.**

Rule 26 requires initial disclosure of "the name . . . of each individual likely to have discoverable information . . . that the disclosing party may use." Fed. R. Civ. P. 26(a)(1)(A)(i). These disclosures must be supplemented in a "timely manner" upon learning that the information previously provided is incomplete or incorrect. *See* Fed. R. Civ. P. 26(e)(1)(A). "Supplementations need not be made as each new item of information is learned but should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches." Fed. R. Civ. P. 26 advisory committee's note to 1933 amendment.

Here, Plaintiff timely disclosed Bernice Garza as a witness on July 18, 2025, while discovery was still ongoing. S*ee, e.g.*, *Mendoza v. A & A Landscape & Irrigation, LP*, No. 4:12-CV-562, 2014 WL 6627741, at *3 (E.D. Tex. Nov. 21, 2014) ("The Court will permit the affidavit of [witness] to remain as he was disclosed as a potential witness . . . prior to the close of the discovery deadline."). As outlined above and in the pending discovery disputes letter and response, there are still several outstanding discovery disputes, including requests to Defendants for documents required in initial disclosures. Defendants have even continued to produce discovery even after filing for summary judgment. *See* ECF No. 80 (outlining missing discovery, including insurance disclosures required by Fed. R. Civ. P. 26(1)(A)(iv)); ECF 86 (noting that documents were produced by Defendants on July 16, 2025). Defendants ignore the ongoing

status of discovery and offer no caselaw supporting their assertion, relying instead on inapposite caselaw involving witnesses disclosed "[a]fter the close of discovery." ECF 94 at 5 (Defs.' Br.) (citing *Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d 597, 601 (5th Cir. 2018)). Defendants' decision to file motions for summary judgment in the midst of ongoing discovery disputes and without prior notice does not sweep away Plaintiff's ability to supplement witness disclosures while discovery remains open.

Further, Plaintiff timely disclosed Bernice Garza as a witness after learning that she was likely to have discoverable information. Preliminarily, Defendants were always aware that Bernice Garza had information that was relevant to this litigation given her employment at the DAs office during the relevant time period, the fact that she reported to ADA Barrera, and the text messages between her and ADA Barrera discussing the office's prosecution of Ms. Gonzalez. Yet, Defendants failed to disclose Bernice Garza in their Rule 26 Disclosures. Defendants' counsel was also on notice as early as ADA Barrera's deposition in March of 2025 that Plaintiff had attempted to speak to Bernice Garza to determine whether she had information relevant to this matter. *See* ECF 98-8 (Barrera Dep. 40:8-11). As detailed above, despite prior outreach from Plaintiff's counsel, it was not until July 3, 2025, that Bernice Garza's counsel provided approval for Plaintiff's counsel to speak to her about this matter. ECF 91-7. Only after that date was Plaintiff able to ascertain whether she had information likely to be discoverable. Bernice Garza signed the affidavit on July 16, and Plaintiff disclosed her as a witness and provided her affidavit to Defendants on July 18. *Id*; ECF 98-8.

Even if the court determines that Plaintiff did not timely disclose Bernice Garza, any alleged untimeliness was substantially justified or harmless. *United States v. Grigsby*, 86 F.4th 602, 615 (5th Cir. 2023); Fed. R. Civ. P. 37(c)(1). "To evaluate whether a Rule 26 violation was

14

harmless" a court "weighs four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Id.* All four factors weigh in favor of admitting the affidavit.

First, Bernice Garza's affidavit is important to Plaintiff overcoming the immunity assertions because it describes Defendants Barrera's and Ramirez's active role in the criminal investigation and prosecution of Lizelle Gonzalez and calls into question their testimony relevant to key questions of immunity. Defendants do not dispute the importance of this testimony; instead, they acknowledge that it demonstrates a "fact issue." *See* ECF 94 at 4. The importance of this testimony thus weighs in favor of admitting the affidavit. *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707–08 (5th Cir. 2007).

Second, Defendants were not prejudiced by the timing of Plaintiff's disclosure because they were already well aware of Bernice Garza's potential to be a witness in this matter. *See Reed v. Iowa Marine & Repair Corp.*, 16 F.3d 82, 85 (5th Cir. 1994) (explaining that the "basic purpose" of Rule 26 is "preventing prejudice and surprise"). Bernice Garza was previously an employee in the District Attorney's office whom Defendant Barrera supervised, and Defendants had produced text messages exchanged between she and Defendant Barrera about this matter. ECF 91-11 at 4 (Affidavit of B. Garza); ECF 91-23 (Barrera Dep. 151:4-154:22). Defendants were also seemingly aware that Plaintiff had attempted to contact Bernice Garza because Defendant Barrera testified that she had spoken to Bernice Garza about this outreach. *See* ECF 98-11 (Barrera Dep. 40:8-11). Defendants were thus not unfairly surprised by Bernice Garza's potential to be a witness and had the ability and ample opportunity to contact her. *See Indel Food Prods., Inc. v. Dodson Int'l Parts, Inc.*, No. EP-20-CV-98-KC, 2021 WL 5206610, at *1 (W.D.

Tex. Sept. 21, 2021) ("[Witness] worked on Movants' behalf on the very transaction that gave rise to this litigation . . . . There is no reason why Movants would have been unable to contact [witness] . . . and would have been aware that Defendant may contact him. Thus, Defendant did not create an unfair surprise.").

The third and fourth factors also weigh in Plaintiff's favor. Any delay was justified because Plaintiff's counsel sought approval from Bernice Garza's attorney, which they did not receive until July 3, 2025. ECF 98-5 (Emails between R. Barrera and A. Harris). Accordingly, Plaintiff's counsel did not make substantive contact with Bernice Garza until July 4 – after Defendant Ramirez filed his motion for summary judgment on July 1, 2025, but while discovery remained open. ECF 98-4 (Declaration of C. Garza); ECF 79 (Ramirez Motion for Summary Judgment). Plaintiff subsequently offered to agree to an extension of Defendants' summary judgment reply deadline if Defendants wished to depose Bernice Garza, which Defendants did not accept. *See* ECF 98-7 (Emails between Defendants' counsel and Plaintiff's counsel). Because discovery is still ongoing and the deadline to notice depositions has not elapsed, Defendants may still depose her and supplement the summary judgment record, without prejudice or delay. *Keller v. Coastal Bend Coll.*, 629 F. App'x 596, 598–99 (5th Cir. 2015) ("The district court correctly found that 'any prejudice to Plaintiff caused by Defendant's failure to disclose . . . c[ould] be cured by deposing [the witness] and allowed both parties to take her deposition and supplement the summary judgment record."). Yet in the almost two months since the disclosure of Bernice Garza as a witness, Defendants have made no effort to do so. In sum, Plaintiff timely disclosed Bernice Garza during ongoing discovery, or, alternatively her affidavit is admissible because any delay was harmless.

**B.    Bernice Garza's affidavit is based on personal knowledge and contains admissible facts.**

Defendants' attempt to strike Bernice Garza's affidavit as containing hearsay and lacking

personal knowledge also fails because Bernice Garza's affidavit is based on her observations of

and conversations with the Defendants and contains admissible facts. It is thus appropriate

material for the Court to consider on summary judgment. Fed. R. Civ. P. 56(c)(4).

As a threshold matter, Defendants do not identify which statements they object to as

inadmissible hearsay, instead vaguely protesting that Bernice Garza made "averments based on

statements between members of the DA's office other than the defendants." ECF No. 94 at 5.

However, her affidavit does not recount any statements between non-Defendants in the District

Attorney's office. At most, her affidavit only references non-defendants in the District Attorney's

office when she attests that she "regularly messaged . . . other DA employees on WhatsApp,"

that she "witnessed and was aware of ADA Barrera frequently sharing information about the

investigation with . . . Assistant District Attorney Abel Villarreal," and that she spoke to DA

Ramirez about calls he had with "people outside of the District Attorney's Office" who learned

about the indictment and "expressed concern" prior to the arrest. ECF 91-11 at 2-4. These

observations and conversations are all based on first-hand accounts made by Bernice Garza of

the Defendants. None of these assertions recount statements made between non-defendants, and

thus it is unclear which statements Defendants allege are hearsay.

Significantly, Defendants do not challenge Bernice Garza's recounting of statements

made by Defendant Ramirez or Defendant Barrera as hearsay, likely in recognition that they are

not hearsay or would alternatively be admissible under a hearsay exception. *See, e.g.*, Fed. Rule

of Evidence 801(d)(2) (statements is not hearsay if it is "offered against an opposing party

and  . . . was made by the party" or "is one the party manifested that it adopted or believed to be

true"). These statements would therefore be admissible at trial. *LSR Consulting*, 835 F.3d at 534

("At the summary judgment stage, materials cited to support or dispute a fact need only be

capable of being 'presented in a form that would be admissible in evidence.'") (quoting Fed. R.

Civ. P. 56(c)(2)).

Defendants' claim that Bernice Garza lacked personal knowledge is likewise belied by

the information contained in the affidavit itself, which details her longstanding employment at

the DA's Office and her ability to observe the Defendants during the investigation and

prosecution of Ms. Gonzalez. For example, Defendants vaguely claim that Bernice Garza lacked

personal knowledge to affirm that "[i]t would have been typical for DA Ramirez to be informed

that the case was going to the Grand Jury and that an indictment was returned for a case this

significant" ECF 91-11 at 4 (Affidavit of B. Garza). However, her affidavit is based on personal

knowledge derived from her employment and presence throughout the relevant period, including

her observations and conversations within the District Attorney's office. Such personal

knowledge is sufficient under Rule 56. *Campbell Harrison & Dagley, L.L.P. v. PBL Multi-

Strategy Fund, L.P.*, 744 F. App'x 192, 198 (5th Cir. 2018) (personal knowledge "requirement is

satisfied when the court can reasonably infer personal knowledge from the affidavit itself"); *D.B.

By & Through Becton v. City of McKinney, Texas*, No. 4:16-CV-00965, 2017 WL 6421261, at *2

(E.D. Tex. Dec. 18, 2017) ("Generally, an affiant or declarant is competent to testify when her

testimony is grounded in observation or other personal experience and is not based on

speculation, intuition, or rumors about matters remote from that personal experience.").

Defendants do not provide any basis for challenging Bernice Garza's personal knowledge

of typical practices in the District Attorney's office. Instead, they suggest that this is not

sufficiently direct evidence to prove Defendant Ramirez's awareness of the grand jury

proceedings in this matter. ECF 94 at 5.  However, at the summary judgment stage, "court[s] must consider both direct and circumstantial evidence." *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 477 (5th Cir. 2002). Bernice Garza's affidavit provides precisely the type of circumstantial evidence that is appropriate for consideration. Any arguments to the contrary go to the weight or sufficiency of evidence and are not a basis to strike Bernice Garza's affidavit, which is admissible evidence based on personal knowledge. Fed. R. Civ. P. 56(c)(4).

## **CONCLUSION**

For the reasons stated above, the Court should deny Defendants' motion to strike and unseal the exhibits at issue.

Respectfully Submitted,

By: _____
I. Cecilia Garza
TX State Bar No. 24041627
USDTX Federal Admission No.: 578825
202 E. Sprague Street
Edinburg, Texas 78539
Telephone No.: 956-335-4900
Telecopier No.: 956-338-5700
cecilia@garzamartinezlaw.com
*Attorney in charge for Plaintiff*

Veronica Sepulveda Martinez
TX State Bar No. 24081144
USDTX Federal Admission No.: 3048499
202 E. Sprague Street
Edinburg, Texas 78539
Telephone No.: 956-335-4900
Telecopier No.: 956-338-5700
veronica@garzamartinezlaw.com

Lauren Alicia Johnson
DC Bar No.: 1011382*
American Civil Liberties Union Foundation
915 15th Street NW

19

Washington DC 20005
Telephone No.: 202-731-5567
ljohnson@aclu.org

Nancy Rosenbloom,
NY Bar No.  2168425*
Mariana Kovel
NY Bar No.: 4512000*
Elizabeth Cheryl Jarit
NY Bar No.: 5005020*
Kiera Adelaide Goddu
NY Bar No.: 6185656**
June Gersh
NY Bar No.: 6194971**
American Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
Telephone No:  202-393-4930
nrosenbloom@aclu.org
mkovel@aclu.org
ljarit@aclu.org
kgoddu@aclu.org
agersh@aclu.org

David A. Donatti
Texas Bar No. 24097612
Adriana Piñon
Texas Bar No. 24089768
Ashley Harris
Texas Bar No.: 24123238
Sarah F. Corning
Texas Bar No. 24144442*
American Civil Liberties Union of Texas
P.O. Box 12905
Austin, TX 78711-2905
Telephone No.: 713-942-8146
Facsimile: 713-942-8966
ddonatti@aclutx.org
apinon@aclutx.org
aharris@aclutx.org
scorning@aclutx.org

**ATTORNEYS FOR PLAINTIFF**

\*        Admitted *pro hac vice*
\*\*       P*ro hac vice* admission pending

## <u>CERTIFICATE OF COMPLIANCE WITH PAGE COUNT</u>

I hereby certify that the page count for this brief complies with the page limit requirements set forth in this Court's rules.

_____
I. Cecilia Garza

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 5th day of September, 2025, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, and that service to all counsel will be provided through the CM/ECF system.

_____
I. Cecilia Garza

21