United States District Court
Southern District of Texas

**ENTERED**

April 01, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| LIZELLE GONZALEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:24-CV-00132 |
| | § | |
| GOCHA ALLEN RAMIREZ, | § | |
| ALEXANDRIA LYNN BARRERA, | § | |
| STARR COUNTY, TEXAS, and | § | |
| RENE FUENTES, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lizelle Gonzalez ("Gonzalez") self-induced an abortion. She was indicted by a Starr County grand jury for murder and arrested. Defendant Gocha Ramirez, the District Attorney ("DA") for Starr County, Texas, dismissed the case after learning that the Texas Penal Code provides a defense under the murder statute for women that have an abortion. Gonzalez then sued DA Ramirez, Assistant District Attorney ("ADA") Alexandria Barrera, Sheriff Rene Fuentes (collectively, "Defendants"), and Starr County for alleged Fourth and Fourteenth Amendment violations under 42 U.S.C. § 1983.

Pending before the Court is DA Ramirez's Motion for Summary Judgment, (Dkt. No. 79), ADA Barrera's Motion for Summary Judgment, (Dkt. No. 81), Sheriff Fuentes's Motion for Summary Judgment, (Dkt. No. 88), and Defendants' Objections and Motions to Strike Certain Evidence Submitted in Response to Defendants' Summary Judgment Motion, (Dkt. No. 94). For the following reasons, the Court **GRANTS in part** and

**DENIES in part** Defendants' Objections and Motions to Strike Certain Evidence Submitted in Response to Defendants' Summary Judgment Motion, (Dkt. No. 94); **GRANTS** DA Ramirez's Motion for Summary Judgment, (Dkt. No. 79); **GRANTS** ADA Barrera's Motion for Summary Judgment, (Dkt. No. 81); and **GRANTS** Sheriff Fuentes's Motion for Summary Judgment, (Dkt. No. 88).

## I.    BACKGROUND[1]

In early January 2022, with the public fight over the Texas Heartbeat Act raging,[2] Gonzalez was treated at Starr County Memorial Hospital after using medication to self-induce an abortion. (Dkt. No. 91 at 11). Shortly after being discharged, a nurse reported Gonzalez's abortion to law enforcement. (*Id.*). A Rio Grande City officer responded but the case was quickly transferred to the Starr County Sheriff's Office. (*Id.*).

Captain Lenard Fuentes assigned the investigation to Investigator Esmeralda Muniz. (*Id.* at 12). Investigator Muniz and Sergeant Rafael Aguirre conducted the criminal investigation into Gonzalez, which included gathering evidence, interviewing witnesses, and obtaining grand-jury subpoenas. (*Id.* at 12–20). The investigation did not conclude until March 17, 2022. (Dkt. No. 91-4 at 11–13).

---

[1]    Except where noted, this Section contains only undisputed facts, and all facts and reasonable inferences have been construed in favor of the nonmovant. *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020). The Court has not weighed evidence or made credibility findings. *Id.*

[2]    The Texas Heartbeat Act, also known as Senate Bill 8, became effective in 2021. *Tex. Right to Life v. Van Stean*, 702 S.W.3d 348, 351 (Tex. 2024) (per curiam). The Act makes it illegal for an abortion to be induced or performed in Texas by a physician where the physician has "detected a fetal heartbeat for the unborn child." Tex. Health & Safety Code § 171.204.

During the investigation, Sheriff Fuentes was aware that Gonzalez was being investigated. (Dkt. No. 91-30 at 6). He told his investigators that they needed to document the facts and submit their investigation to the DA's Office. (Dkt. No. 91 at 28); (Dkt. No. 97 at 2); (*see also* Dkt. No. 91-28 at 37 ("[Sheriff Fuentes] will be like, 'Okay. Or just make sure you talk to the DA, okay, or that the DA's office knows what's going on.'").

Before the investigation packet was submitted to the DA's Office, ADA Barrera spoke with the Sheriff's Office about the case several times. (Dkt. No. 91 at 13–14, 17, 19); (Dkt. No. 91-27 at 20); (Dkt. No. 96 at 2). ADA Barrera directed Investigator Muniz to "take pictures of the ashes," (Dkt. No. 79-21 at 27–28), and instructed Investigator Aguirre to interview "that lady that gave her the drugs" before pursuing an arrest warrant, (*id.* at 24). (*See also* Dkt. No. 96 at 2). On occasion, ADA Barrera provided legal advice to the Sheriff's Office about the investigation. (*See, e.g.*, Dkt. No. 91-22 at 40, 79); (Dkt. No. 79-21 at 26); (Dkt. No. 91-28 at 64–65); (Dkt. No. 91-24 at 41–42).

ADA Barrera also had at least two conversations with DA Ramirez about the case. (Dkt. No. 95 at 3); (Dkt. No. 91 at 14). In one conversation around February 1, 2022, DA Ramirez said that the case could go to the grand jury. (Dkt. No. 91 at 20); (Dkt. No. 96 at 2). In a later conversation in "March maybe," ADA Barrera told DA Ramirez that she was going to present the case to the grand jury, at which point he said he would be in a different county during the presentation. (Dkt. No. 91-24 at 65). And ultimately DA Ramirez did not attend. (Dkt. No. 79 at 10).

On March 17, 2022, Investigator Muniz finished preparing the packet summarizing the Sheriff's Office's investigation and dropped it off with the DA's Office. (Dkt. No. 91-4 at 11–13).

On March 25, 2022, ADA Barrera presented the case to the grand jury. (Dkt. No. 91 at 20). She then drafted the indictment, filed it with the court on March 30, 2022, and automatically triggered the issuance of an arrest warrant. (*Id.* at 21).

On April 7, 2022, an investigator with the District Attorney's Office gave Investigator Muniz a closed envelope containing the sealed indictment, directed her to find Gonzalez, bring her back to the Sheriff's Office, and read to her what was contained in the envelope. (*Id.*). Investigator Muniz informed Gonzalez she had been indicted for murder, and she was booked into the Starr County Jail. (*Id.* at 22). Shortly thereafter, Gonzalez "bonded out" after Sheriff Fuentes approved the bond posted by a bail bond company. (*Id.* at 24).

On April 11, 2022, DA Ramirez filed a motion to dismiss the criminal case after determining that Texas Penal Code Section 19.06[3] applied, and a judge dismissed the indictment later that morning. (*Id.* at 25). DA Ramirez apologized to Gonzalez. (Dkt. No. 95 at 5). DA Ramirez was later investigated by the Texas State Bar Grievance Committee and entered into an Agreed Judgment of Probated Suspension in connection with the prosecution of Gonzalez. (Dkt. No. 91 at 27); (*see also* Dkt. No. 79-21 at 67–71).

---

[3]   Section 19.06 provides "[t]his chapter [criminalizing homicide] does not apply to the death of an unborn child if the conduct charged is . . . conduct committed by the mother of the unborn child."

Gonzalez filed suit against DA Ramirez, ADA Barrera, Sheriff Fuentes, and Starr County. (Dkt. No. 7). She asserted claims under 42 U.S.C. § 1983 for alleged Fourth and Fourteenth Amendment violations, specifically citing false arrest, malicious prosecution, and conspiracy. (*Id.*). Defendants have moved for summary judgment on all claims asserted against them in an individual capacity. (Dkt. Nos. 79, 81, 88). Gonzalez responded to the Movants' Motions jointly. (Dkt. No. 91). Defendants replied. (Dkt. Nos. 95, 96, 97). Defendants also moved to strike certain evidence from Gonzalez's Response. (Dkt. No. 94). Gonzalez responded. (Dkt. No. 98). And finally, Gonzalez provided supplemental summary-judgment evidence after discovery concluded. (Dkt. No. 114). Defendants responded. (Dkt. No. 117).

## II.     LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the suit's outcome under governing law. *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). And "[a] dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *TIG Ins. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the record evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548,

5

2553, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, LLC v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)). "The nonmovant must 'identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim.'" *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). If evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citing *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511).

In reviewing a motion for summary judgment, the district court views the evidence in the light most favorable to the nonmovant. *Carr*, 866 F.3d at 601. This means that courts must resolve factual controversies in the nonmovant's favor, "but only

when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

## III.   DISCUSSION

### A.   EVIDENTIARY RULINGS

In its Motion to Strike, (Dkt. No. 94), Defendants ask the Court to strike five pieces of Gonzalez's summary-judgment evidence: (1) the affidavit of Bernice Garza, (Dkt. No. 91-11); (2) the deposition of Rosita Rocha, (Dkt. No. 91-25) (SEALED); (3) the text messages provided by Rosita Rocha, (Dkt. No. 91-13) (SEALED); (4) the deposition of Becky Rocha, (Dkt. No. 91-26) (SEALED); and (5) the text messages provided by Becky Rocha, (Dkt. No. 91-14) (SEALED).  These are discussed in turn.

### 1.   Bernice Garza's Affidavit (Dkt. No. 91-11)

Defendants argue that the affidavit of Garza, the Crime Victim's Unit Coordinator in the DA's Office, should be struck because Gonzalez did not disclose her as a witness until after the summary-judgment motions were pending and, in any event, Garza's statements are inadmissible.  (Dkt. No. 94 at 4–6).  Gonzalez responds that Defendants failed to identify the portions of the affidavit that they challenge.  (Dkt. No. 98 at 17).  Gonzalez also argues that she properly disclosed the affidavit and that it contains relevant, admissible testimony based on personal knowledge.  (*Id.* at 18–19).

The Court overrules the objection to Garza's affidavit.  It does not contain hearsay and is based on personal knowledge.  Fed. R. Civ. P. 56(c)(4).  Gonzalez also disclosed Garza before relying on the affidavit as summary-judgment evidence.  (Dkt. No. 98 at 18–

7

19, 21).  Defendants cite no authority supporting their request to strike evidence that a party disclosed before using it or while discovery remained open.

Even if Gonzalez did not properly disclose Garza, it was harmless.  *See* Fed. R. Civ. P. 37(c) ("If a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless.").  To determine whether a failure to comply is substantially justified or harmless, courts consider: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *United States v. Grigsby*, 86 F.4th 602, 615 (5th Cir. 2023).

Here, the evidence is important.  If taken as true, it describes ADA Barrera's and DA Ramirez's role in the investigation of Gonzalez—facts that could defeat absolute-prosecutorial immunity.  *See Buckley v. Fitzsimmons*, 509 U.S. 259, 274, 113 S.Ct. 2606, 2616, 125 L.Ed.2d 209 (1993).  The prejudice to Defendants is minimal.  Defendants were better positioned to know about Garza because ADA Barrera worked with her.  (Dkt. No. 98 at 19–20).  Gonzalez supplemented her disclosures to identify Garza as a witness.  (*Id.* at 18).  And Garza was ultimately deposed.  (*See* Dkt. No. 114-1).  Defendants' claimed prejudice—additional delays and "tabloid drama"—is negligible.  (Dkt. No. 94 at 5).  Gonzalez also explained that the delay occurred because Garza's attorney did not allow her to speak until early July 2025.  (Dkt. No. 98 at 21).  On balance, the factors weigh

against striking Garza's affidavit.  For these reasons, the Court overrules Defendants' objection to Garza's affidavit.

### 2. Rosita and Becky Rocha's Deposition Testimony (Dkt. Nos. 91-25 and 91-26)

Defendants next object to the depositions of Rosita and Becky Rocha and assert that they should be excluded for purposes of evaluating the dispositive motions in this case.  Defendants argue that the depositions do not contain a first-hand account of DA Ramirez's conduct during the investigation and indictment of Gonzalez—the conduct relevant to the immunity analysis. (Dkt. No. 94 at 6).  Gonzalez responds that Defendants did not identify the portions of the depositions that are objectionable. (Dkt. No. 98 at 14).  Gonzalez also argues that the testimony is relevant because it shows DA Ramirez's involvement in investigating and prosecuting Gonzalez and his knowledge about whether abortion could be charged as murder.  (*Id.* at 15).

The Court sustains the objection to Becky's deposition.  (Dkt. No. 91-26).  Gonzalez cites the deposition only to argue that DA Ramirez knew abortion wasn't a crime because he paid for one in 1996 or 1997.  (Dkt. No. 91 at 19, 29, 34).  But that happened nearly 30 years ago and has no bearing on DA Ramirez's conduct during the 2022 investigation and prosecution of Gonzalez.  Further, Section 19.06 did not become law until 2003—well after DA Ramirez allegedly paid for Becky's abortion.

The Court also sustains the objection to Rosita's deposition, (Dkt. No. 91-25) (SEALED), except for page seven, which describes how (1) Rosita told DA Ramirez that

9

"the laws have not changed" since she had an abortion[4] and (2) DA Ramirez told Rosita that ADA Barrera and ADA Villareal were "on top of everything, and they're advising everything that's going on."   The remaining cited pages—6, 124–27,[5] 136–37, and 144— describe the relationship between Rosita and DA Ramirez that frequently involved sex; DA Ramirez calling Rosita to ask about how she felt during her abortion; DA Ramirez telling Rosita that Gonzalez was in jail; and DA Ramirez asking Rosita's sister Becky to obtain an abortion.  As with Becky's testimony, these assertions have no bearing on the immunity question.   The Court therefore strikes Becky's deposition and Rosita's deposition except for page seven.[6]

### 3.   Rosita and Becky Rocha's Text Messages (Dkt. No. 91-13 and 91-14)

Defendants next argue that Rosita and Becky Rocha's text messages [7] are irrelevant because they do not show Defendants' conduct during the Gonzalez investigation or indictment.  (Dkt. No. 94 at 8).  Gonzalez argues that Defendants again did not identify the portions of the text messages that are objectionable.  (Dkt. No. 98 at 6, 9).  Gonzalez also argues that the text messages "demonstrate the significance of the longstanding intimate relationships" DA Ramirez had with Rosita and Becky; "support [Becky's]

---

[4]    The record does not reflect when Rosita had her abortion.

[5]    Pages 124–27 aren't included in the deposition excerpts but are nevertheless cited to.

[6]    The Court's ruling striking this evidence is limited to the pending summary-judgment motions.  (Dkt. Nos. 79, 81, 88).  The Court expresses no opinion on the evidence's admissibility for other purposes, and this ruling does not preclude Gonzalez from seeking to introduce the evidence in future motions or proceedings.

[7]    However, Defendants concede that a single text message between DA Ramirez and Becky Rocha is relevant and do not object to it.  (Dkt. No. 94 at 8).

testimony that she had a romantic relationship with DA Ramirez that resulted in an unwanted pregnancy;" and "demonstrate various instances where DA Ramirez's deposition testimony is belied by documentary proof." (*Id.* at 17).

The Court sustains Defendants' objections. At summary judgment, the Court may not weigh evidence or make credibility determinations. *See MAN Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000)). Gonzalez's arguments regarding the relevancy of the messages all have to do with credibility—either of the Rochas or DA Ramirez. The messages do not assist the Court in deciding whether Defendants are entitled to immunity. The Court therefore strikes the text-message exhibits.[8]

## B.   MOTIONS FOR SUMMARY JUDGMENT

Gonzalez sued each Defendant individually under Section 1983 for false arrest, malicious prosecution, and conspiracy. (Dkt. No. 7). To establish a claim under Section 1983, a plaintiff must show (1) the violation of "a right secured by the Constitution" or federal law, and (2) "a person acting under color of state law" committed the violation. *Perdomo v. City of League City*, 765 F.Supp.3d 613, 620 (S.D. Tex. 2025) (citing *Petersen v. Johnson*, 57 F.4th 225, 231 (5th Cir. 2023)).

---

[8]   Again, the Court's ruling striking this evidence is limited to the pending summary-judgment motions. (Dkt. Nos. 79, 81, 88). The Court expresses no opinion on the evidence's admissibility for other purposes, and this ruling does not preclude Gonzalez from seeking to introduce the evidence in future motions or proceedings.

DA Ramirez and ADA Barrera assert absolute-prosecutorial immunity against Gonzalez's false-arrest and malicious-prosecution claims.  (Dkt. No. 79 at 20); (Dkt. No. 81 at 20).  Prosecutors are absolutely immune from Section 1983 suits in their individual capacities for conduct within the scope of their prosecutorial duties.  *Brooks v. George Cnty.*, 84 F.3d 157, 168 (5th Cir. 1996).  To determine whether prosecutorial immunity applies, courts ask (1) whether the practical function of the conduct at issue historically merited absolute immunity at the time Section 1983 was enacted, and (2) whether granting absolute immunity advances the policy interests that justified the common-law immunity.  *Lampton v. Diaz*, 639 F.3d 223, 226 (5th Cir. 2011).

At Section 1983's enactment, common-law prosecutorial immunity extended only to conduct that was "intimately associated with the judicial phase of the criminal process."  *Id.* (quoting *Hoog–Watson v. Guadalupe Cnty.*, 591 F.3d 431, 438 (5th Cir. 2009)); *see also Cousin v. Small*, 325 F.3d 627, 632–33 (5th Cir. 2003) (per curiam); *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976).  Thus, prosecutorial immunity protects conduct related to initiating, investigating, and pursuing a criminal prosecution.  *Quinn v. Roach,* 326 F.App'x 280, 292 (5th Cir. 2009); *Oliver v. Collins,* 904 F.2d 278, 281 (5th Cir. 1990)).  Courts apply a functional analysis to determine whether absolute immunity attaches to a particular activity.  *Van de Kamp v. Goldstein,* 555 U.S. 335, 342, 129 S.Ct. 855, 861, 172 L.Ed.2d 706 (2009).  Typical protected activities include, but are not limited to, initiating prosecutions, appearing in court, and performing actions taken in the prosecutor's role as an advocate for the State.  *Id.* at 343, 129 S.Ct. at 861.

DA Ramirez, ADA Barrera, and Sheriff Fuentes also invoke qualified immunity. (Dkt. No. 79 at 24); (Dkt. No. 81 at 24); (Dkt. No. 88 at 16). Qualified immunity shields government officials from civil liability when their conduct is objectively reasonable in light of clearly established law. *Crostley v. Lamar Cnty.*, 717 F.3d 410, 422 (5th Cir. 2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). The doctrine "protects all but the plainly incompetent or those who knowingly violate the law." *Davidson v. City of Stafford*, 848 F.3d 384, 391 (5th Cir. 2017) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546, 132 S.Ct. 1235, 1244, 182 L.Ed.2d 47 (2012)).

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Once an official raises the defense, the burden shifts to the plaintiff to show a genuine dispute of material fact on whether the official violated clearly established law. *Id.*

To overcome qualified immunity, a plaintiff must show that (1) the official violated a statutory or constitutional right and (2) the right was so "clearly established" at the time of the challenged conduct that a reasonable officer would be on notice that their conduct was against the law. *Ramirez v. Killian*, 113 F.4th 415, 421 (5th Cir. 2024) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011)); *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002) ("Officers sued in a civil action for damages under 42 U.S.C. § 1983 have the same right to fair notice as do defendants charged with the criminal offense defined in 18 U.S.C. § 242."); *see also Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

A plaintiff cannot satisfy these elements at summary judgment "with conclusory allegations or unsubstantiated assertions of wrongdoing." *Burke v. Masters*, No. 4:23-CV-00361, 2024 WL 1703085, at \*7 (S.D. Tex. Apr. 14, 2024) (first citing *Mitchell v. Mills*, 895 F.3d 365, 370 (5th Cir. 2018); and then citing *Williams-Boldware v. Denton Cnty.*, 741 F.3d 635, 643–44 (5th Cir. 2014)).  Instead, a plaintiff "must point to specific evidence in the record demonstrating a material fact issue concerning each element of his claim." *Mitchell*, 895 F.3d at 370.  The Court addresses each Defendant and the claims against them in turn.

### 1.        Sheriff Fuentes

As discussed below, Sheriff Fuentes is entitled to judgment as a matter of law. Gonzalez fails to raise a genuine dispute of material fact that Sheriff Fuentes violated her constitutional right to be free from false arrest, malicious prosecution, or conspiracy. Further, Gonzalez has failed to show that Sheriff Fuentes is not entitled to qualified immunity on the false-arrest and malicious-prosecution claims.  Because Sheriff Fuentes is entitled to qualified immunity on those underlying claims, he is likewise entitled to immunity on the conspiracy claim.

#### a.        False Arrest

Gonzalez alleges that Sheriff Fuentes violated her right to be free from false arrest by directly participating in the alleged constitutional violation and by enabling it through his supervisory role.  (Dkt. No. 91 at 51–52).  The Court finds that Gonzalez has not established any false-arrest claim against Sheriff Fuentes and even if she had, Sheriff

14

Fuentes is entitled to qualified immunity, and the independent-intermediary doctrine applies.

### i.     Direct Participation

Gonzalez alleges that Sheriff Fuentes "personally took action that led to" her false arrest. (Dkt. No. 91 at 51). Specifically, Sheriff Fuentes "directed his staff to involve the DA's office in the criminal investigation of Ms. Gonzalez and instructed them to follow the [DA's] instructions even though he did not believe that Ms. Gonzalez had committed a crime." (*Id.* at 52). In Gonzalez's view, Defendants need not personally arrest her to incur liability because their conduct allowed the investigation to proceed and ultimately led to her arrest. (*Id.*). Defendants argue that the evidence shows that Sheriff Fuentes merely received occasional updates and instructed Captain Fuentes to ensure the case was reviewed by the DA's office. (Dkt. No. 88 at 15). The Court agrees with Sheriff Fuentes.

To establish a direct participation false-arrest claim under Section 1983, an arrestee must show either that an arresting officer made an arrest while lacking probable cause to make the arrest, *Green v. Thomas*, 129 F.4th 877, 886-87 (5th Cir. 2025), or that an investigative officer "knowingly provided false information to secure the arrest warrants," *Freeman v. Bexar Cnty.*, 210 F.3d 550, 553 (5th Cir. 2000) (citing *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978)).

Gonzalez has not presented evidence that Sheriff Fuentes directly participated in violating her right to be free from false arrest. It is undisputed that Sheriff Fuentes did not personally arrest Gonzalez, (Dkt. No. 91 at 52), or direct her arrest, (Dkt. No. 88-15 at

8–9). The record also shows that Sheriff Fuentes did not personally investigate Gonzalez. (*See* Dkt. No. 91 at 11–20). Investigator Muniz and Sergeant Aguirre gathered the evidence, conducted interviews, obtained the grand-jury subpoenas, and submitted the case to the DA's Office. (*See id.*). The evidence establishes that Sheriff Fuentes never spoke with Investigator Muniz and Sergeant Aguirre about the investigation at all, let alone told them how to perform the investigation. (*See* Dkt. No. 88-15 at 16–17); (*see* Dkt. No. 88-16 at 6, 7, 8, 10); (*see* Dkt. No. 88-18 at 4, 6, 22). Indeed, the only guidance Sheriff Fuentes gave investigators was to document the facts and submit their investigation to the DA's office. (*See* Dkt. No. 88-15 at 16–17); (*see* Dkt. No. 88-16 at 6, 7, 8, 10); (*see* Dkt. No. 88-18 at 4, 6, 22). Therefore, Gonzalez fails to establish a prima facie case for direct-participation false arrest against Sheriff Fuentes.

Even if she had met her burden, Sheriff Fuentes is entitled to qualified immunity because Gonzalez has not satisfied the "clearly established" prong. *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 753 (5th Cir. 2001) (quoting *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 343 (5th Cir. 2001) (per curiam)). It is obviously beyond debate that the right to be free from false arrest is clearly established. *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994). But "that is not enough." *Morrow v. Meachum*, 917 F.3d 870, 875 (5th Cir. 2019) (quoting *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001)).

A right is "clearly established" only when existing precedent makes it clear to every reasonable official that the conduct at issue violates the Constitution or a federal law. *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (citing *Mullenix v. Luna*, 577 U.S. 7, 11, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam)). This standard is met only if "the

state of the law at the time of the incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional." *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (per curiam) (alteration in original) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014) (per curiam)). Consequently, a plaintiff must identify precedent that "'squarely govern[s]' the specific facts at issue." *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 337 (5th Cir. 2020) (quoting *Mullenix*, 577 U.S. at 15, 136 S.Ct. at 310). Courts must ask "whether the violative nature of *particular* conduct is clearly established." *Mullenix*, 577 U.S. at 12, 136 S.Ct. at 308 (emphasis in original) (quoting *al-Kidd*, 563 U.S. at 742, 131 S.Ct. at 2084). This constitutional question must be framed "'with specificity and granularity.'" *Cunningham v. Castloo*, 983 F.3d 185, 193 (5th Cir. 2020) (quoting *Morrow*, 917 F.3d at 874–75). In other words, a plaintiff generally must "'identify a case in which an officer acting under similar circumstances was held to have violated the Constitution' and explain 'why the case clearly proscribed the conduct of that individual officer.'" *Cope*, 3 F.4th at 205 (quoting *Bartlett*, 981 F.3d at 345 (cleaned up)). "While an exact case on point is not required," the specifics of the officers' violation must be "'beyond debate.'" *Id.* (quoting *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020)). Specifically, "'the right's contours [must be] sufficiently definite that any reasonable official in the officer's shoes would have understood that he was violating it.'" *Baker v. Coburn*, 68 F.4th 240, 245–46 (5th Cir. 2023) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778–799, 134 S.Ct. 2012, 2023, 188 L.Ed.2d 1056 (2014) (cleaned up)). Broad legal principles do not suffice. *Cope*, 3 F.4th at 205; *al-Kidd*, 563 U.S. at 742, 131 S.Ct. at 2084

17

("We have repeatedly told courts . . . not to define clearly established law at a high level of generality.").

Gonzalez identifies no authority establishing Sheriff Fuentes's alleged conduct—i.e., directing his staff to follow the DA office's instructions, despite not believing that probable cause existed[9]—violated clearly established law.  (Dkt. No. 91 at 52); *see also Mullenix*, 577 U.S. at 12, 136 S.Ct. at 308.  Nor has Gonzalez shown that Sheriff Fuentes had a clearly established duty to stop the investigation.  (Dkt. No. 91 at 51 ("But for the conduct of each of the Defendants, Ms. Gonzalez's investigation would not have proceeded, and she would not have been arrested.")).  Sheriff Fuentes is therefore entitled to qualified immunity, and summary judgment is appropriate on Gonzalez's direct-participation false-arrest claim against him.

### ii. Supervisor Participation

Gonzalez also alleges that Sheriff Fuentes is liable because he supervised the investigators who pursued the case and, "by both action and inaction, [he] demonstrated deliberate indifference to [his] employees violating" Gonzalez's constitutional rights.  (Dkt. No. 91 at 52).

"Under section 1983, 'supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability.'"  *Hicks v. LeBlanc*, 81 F.4th 497, 504 (5th

---

[9]     It is disputed whether Sheriff Fuentes believed that there was probable cause to arrest Gonzalez.  (*Compare* Dkt. No. 91-30 at 34, *with* Dkt. No. 88-18 at 28, 46).  However, because the Court is required to view the evidence in the light most favorable to the nonmovant, *Carr*, 866 F.3d at 601, the Court presumes that Sheriff Fuentes did not subjectively believe there was probable cause to arrest Gonzalez.

Cir. 2023) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)).  Indeed, "the term 'supervisory liability' is a misnomer" because each government official "is only liable for his or her own misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).   A supervisor who is not personally involved in the alleged constitutional deprivation may be held liable only if there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  *Thompkins*, 828 F.2d at 303–04.  The Fifth Circuit evaluates supervisory-officer claims using the same standard as municipal-liability claims.  *Rios v. City of Del Rio*, 444 F.3d 417, 426 (5th Cir. 2006); *see also Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc) ("The legal elements of an individual's supervisory liability and a political subdivision's liability . . . are similar enough that the same standards of fault and causation should govern.").

Generally, a supervisor may be liable under Section 1983 if: (1) the supervisor instituted or ratified a policy or custom "so deficient that the policy itself is a repudiation of constitutional rights;" or (2) the supervisor failed to supervise his subordinates.  *Brown*, 623 F.3d at 253–54 (quoting *Cozzo v. Tangipahoa Par. Council*, 279 F.3d 273, 289 (5th Cir. 2002)).

A failure to supervise claim arises when the plaintiff shows that (1) the defendant failed to supervise the alleged bad actor, (2) there is a causal connection between the infringement of the plaintiff's constitutional rights and the lack of supervision, and (3) the failure to supervise exhibited deliberate indifference to the plaintiff's constitutional rights.  *Parker v. Blackwell*, 23 F.4th 517, 525 (5th Cir. 2022).  "The infringement of the

19

plaintiff's constitutional rights must be an 'obvious' and 'highly predictable' consequence of the failure to" supervise. *Id.* (quoting *Culbertson v. Lykos*, 790 F.3d 608, 625 (5th Cir. 2015)).

"[R]elief will not typically be available absent a showing of a pattern of constitutional violations, as opposed to a single incident." *Id.* That is because "[d]eliberate indifference is a 'high standard' that requires 'a complete disregard of the risk that a violation of a particular constitutional right would follow the decision'" not to adequately train or supervise. *Edwards v. City of Balch Springs*, 70 F.4th 302, 312 (5th Cir. 2023) (quoting *Liggins v. Duncanville*, 52 F.4th 953, 955 (5th Cir. 2022)). Thus, to "show deliberate indifference, a plaintiff normally must allege a pattern of similar constitutional violations" by the subordinate so as to put his supervisors on notice of the risk he poses. *Id.* (quoting *Henderson v. Harris Cnty.*, 51 F.4th 125, 131 (5th Cir. 2022) (per curiam)). "A pattern requires similarity and specificity; prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Id.* (emphasis omitted) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009)).

Gonzalez failed to demonstrate that Sheriff Fuentes was deliberately indifferent to the Sheriff's Office violating her right to be free from false arrest. To be sure, Gonzalez spends only four sentences attempting to justify why Sheriff Fuentes *and* DA Ramirez— officials in separate offices with distinct employees and functions—should be liable in a supervisory capacity for her arrest. (Dkt. No. 91 at 52). But she never mentions (let alone provides evidence of) any policy or "pattern of similar constitutional violations" by the

20

Sheriff's Office employees. *Edwards*, 70 F.4th at 312 (quoting *Henderson*, 51 F.4th at 131). The summary-judgment record contains no evidence that Sheriff Fuentes directed investigators to arrest Gonzalez without probable cause. The evidence instead shows that he instructed investigators to document the facts and submit the case to the DA's Office for review. (*See* Dkt. No. 88-15 at 16–17); (*see* Dkt. No. 88-16 at 6, 7, 8, 10); (*see* Dkt. No. 88-18 at 4, 6, 22). That instruction does not amount to unconstitutional conduct. Even if Gonzalez had established a constitutional violation, Sheriff Fuentes is nevertheless entitled to qualified immunity for the same reasons discussed above. *See supra* III(B)(1)(a)(i). Accordingly, the Court finds that summary judgment is appropriate on Gonzalez's supervisory false-arrest claim against Sheriff Fuentes.

Because Gonzalez did not meet her burden to show that Sheriff Fuentes, as a supervisor, violated her constitutional right to be free from false arrest, or that he was not entitled to qualified immunity, the Court grants summary judgment on Sheriff Fuentes's supervisory false-arrest claim.

### iii. Independent-Intermediary Doctrine

Even if Gonzalez could establish a false-arrest constitutional violation against Sheriff Fuentes, the independent-intermediary doctrine would bar her claim. "[I]f facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Wilson v. Stroman*, 33 F.4th 202, 208 (5th Cir. 2022) (quoting *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017)). "Thus, a properly secured arrest

warrant or grand jury indictment will shield a defendant who has committed or initiated a false arrest." *Wilson*, 33 F.4th at 208.

Here, the Parties do not dispute that Gonzalez was indicted by the grand jury, (Dkt. No. 79-1) (SEALED), which Sheriff Fuentes did not participate in, (Dkt. No. 88 at 18–19); (Dkt. No. 91 at 53–55). The Parties dispute, however, whether Sheriff Fuentes's actions "tainted the grand jury." (Dkt. No. 88 at 18–19); (Dkt. No. 91 at 53–55). Specifically, Gonzalez argues that Sheriff Fuentes "directed his investigators to follow whatever the DA's Office told them to do, even though he too did not believe that Ms. Gonzalez had committed a crime. . . . The investigative reports created by his office were then integral to securing the faulty indictment." (Dkt. No. 91 at 55).

The "taint exception" to the independent-intermediary doctrine arises where the intermediary's deliberations "were in some way *tainted* by the actions of the defendant."[10] *Wilson*, 33 F.4th at 208 (emphasis in original) (quoting *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (per curiam)). Gonzalez cites three pieces of deposition testimony as evidence that Sheriff Fuentes misled the jury by directing his investigators to "follow whatever" the DA's Office told them to do even though he did not believe Gonzalez committed a crime. (Dkt. No. 91 at 55). But Gonzalez mischaracterizes the evidence. Captain Fuentes's testimony indicates that usually Sheriff Fuentes would direct the

_____

[10] Gonzalez notes that an officer not in the grand jury room may taint deliberations "for example, if they 'helped prepare the [presentation] by providing information for use in it' and the information provided is false or incomplete." (Dkt. No. 91 at 53 (quoting *Terwilliger v. Reyna*, 4 F.4th 270, 283 (5th Cir. 2021))). But that example clearly does not apply, because Gonzalez does not suggest or provide any evidence that Sheriff Fuentes prepared any grand-jury materials. (*See generally* Dkt. No. 91 at 55).

22

Sheriff's Office to talk with the DA and keep the DA informed.  (Dkt. No. 91-28 at 37).

But here, Captain Fuentes contends that he never received any guidance from Sheriff

Fuentes about the Gonzalez investigation at all, contradicting Gonzalez's assertion that

Sheriff Fuentes instructed the investigators to "follow whatever" the DA's Office told

them.    (*Id.*).    And nothing in Sheriff Fuentes's cited testimony supports that

characterization either.  (Dkt. No.  91 at 55 (citing Dkt. No. 91-30 at 34, 36)).

At best, the Court is persuaded that Sheriff Fuentes was aware of the investigation.

Yet simply being an aware of Gonzalez's investigation is not enough to meet the "taint

exception" to the independent-intermediary doctrine.  *See Terwilliger v. Reyna*, 4 F.4th 270,

284 (5th Cir. 2021).  Because the independent-intermediary doctrine applies, the Court

grants summary judgment on Gonzalez's direct and supervisory false-arrest claims

against Sheriff Fuentes.

b.    Malicious Prosecution

Gonzalez alleges that Sheriff Fuentes violated her clearly established right to be

free from malicious prosecution.[11]  (Dkt. No. 91 at 55–63).  The Court finds that Gonzalez

failed to establish a malicious-prosecution claim against Sheriff Fuentes, and even if she

had, Sheriff Fuentes is entitled to qualified immunity.

---

[11]    The Court construes Gonzalez's argument that she was wrongfully framed for murder as an argument in support of her Section 1983 malicious-prosecution claim.  In her Response, Gonzalez asserts a right to be free from "being unlawfully charged with a crime," which includes both a "right to be free from malicious prosecution," (Dkt. No. 91 at 57), and "a right to be free from being framed for a crime," (*id.* at 61).  However, Gonzalez's First Amended Complaint contains no claims or factual allegations related to being framed.  (*See generally* Dkt. No. 7).  To the extent Gonzalez is attempting to assert a new claim here, the Court declines to consider it.  *See Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (explaining that a plaintiff cannot raise new claims in a response to a summary-judgment motion).

23

To establish a malicious-prosecution claim under Section 1983, a plaintiff must show that the defendant caused a criminal proceeding's commencement or continuance, the proceeding ended in the plaintiff's favor, there was no probable cause, the defendant acted with malice, the plaintiff suffered damages, and the plaintiff was unlawfully seized. *Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023) (citing first *Gordy v. Burns*, 294 F.3d 722, 727 (5th Cir. 2002); and then citing *Thompson v. Clark*, 596 U.S. 36, 43 n.2, 142 S. Ct. 1332, 1337 n.2, 212 L.Ed.2d 382 (2022)).

Sheriff Fuentes argues that Gonzalez does not have any evidence of his malice. (Dkt No. 88 at 17).  Gonzalez argues that because Sheriff Fuentes did not believe there was probable cause, his conduct "necessarily was motivated by some other purpose than to bring Ms. Gonzalez to justice."  (Dkt. No. 91 at 59 (citing *Armstrong*, 60 F.4th at 278)). The Court is unpersuaded.

The Fifth Circuit recently clarified the malice requirement for malicious-prosecution claims.  As the court explained, the United States Supreme Court has observed that malice means a suit was instituted "without probable cause and for a purpose other than bringing the defendant to justice."  *Armstrong*, 60 F.4th at 278 (discussing *Thompson*, 596 U.S. at  44, 142 S.Ct. at 1338).  However, the Supreme Court explicitly "declined to decide 'whether a plaintiff bringing a Fourth Amendment claim under § 1983 for malicious prosecution must establish malice (or some other *mens rea*) in addition to the absence of probable cause.'"  *Armstrong*, 60 F.4th at 278 (discussing *Thompson*, 596 U.S. at 44 n.3, 142 S.Ct. at 1338 n.3).  The Fifth Circuit then affirmatively

24

resolved the ambiguity, definitively separating "the absence of probable cause" and "malice" into two distinct requirements. *Id.* at 279.

With this understanding in mind, Gonzalez is inappropriately attempting to bootstrap the lack of probable cause into the existence of malice. In other words, by claiming that Sheriff Fuentes's supposed lack of belief in probable cause automatically established an improper purpose, Gonzalez is collapsing the two distinct elements into one. Gonzalez has offered no evidence of Sheriff Fuentes's actual motive beyond her own circular reasoning regarding probable cause. (*See generally* Dkt. No. 91). As such, there is no genuine dispute of a material fact as to whether Gonzalez was deprived of her right to be free from malicious prosecution. *See Morris*, 277 F.3d at 753.

Even if Gonzalez had presented evidence to make out a prima facie case, Sheriff Fuentes is entitled to qualified immunity. The Fifth Circuit recently faced a similar case. *See Santander v. Salazar*, 133 F.4th 471 (5th Cir. 2025). There, in July 2022, a bar-patron was arrested for public intoxication by an off-duty police officer. *Id.* at 476. The charges were later dismissed, and the bar-patron sued the officer for malicious prosecution under Section 1983 (among other things). *Id.* at 477. The officer asserted qualified immunity. *Id.* The Court held that qualified immunity protected the officer, reasoning:

> Before 2022, our court did not recognize a federal claim for malicious prosecution at all. *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003) (en banc) (holding that "'malicious prosecution' standing alone is no violation of the United States Constitution") . . . . In April 2022, however, the Supreme Court expressly recognized a § 1983 malicious prosecution claim in *Thompson v. Clark*, 596 U.S. 36, 42, 142 S.Ct. 1332, 212 L.Ed.2d 382 (2022), effectively abrogating *Castellano*.

25

> But *Thompson* did not "lay out a comprehensive list of the elements for a Fourth Amendment malicious prosecution claim, and largely left the question of elements to the lower courts." *Armstrong*, 60 F.4th at 278. Only in February 2023 did this court articulate the elements of a post-*Thompson* malicious prosecution claim. *Id.* at 279. The alleged incident in this case occurred in July 2022, after *Thompson*, but months before *Armstrong*. Therefore, with regard to [plaintiff's] § 1983 malicious prosecution claim, [the officer] could not have violated clearly established law because, at the time, there was no clearly established law in this circuit to violate. [Plaintiff's] malicious prosecution claim thus fails to overcome [the officer's] assertion of qualified immunity.

*Santander*, 133 F.4th at 482–43. If there was no clearly-established law in July 2022, there certainly was no clearly-established law before April 11, 2022, when the charges against Gonzalez were dismissed. (Dkt. No. 79-2) (SEALED). And, as with the plaintiff in *Santander*, Gonzalez's malicious-prosecution claim fails to overcome Sheriff Fuentes's assertion of qualified immunity. The Court therefore grants summary judgment on Gonzalez's malicious-prosecution claim against Sheriff Fuentes.

c.    Conspiracy

Gonzalez alleges that Sheriff Fuentes violated her clearly established right to be free of a conspiracy to violate her civil rights. (Dkt. No. 91 at 64). The Court disagrees and finds that Sheriff Fuentes is entitled to qualified immunity on the conspiracy claim. To establish a conspiracy claim under Section 1983, a plaintiff must show that the alleged conspirators agreed to deprive the plaintiff of a constitutional right and that a deprivation occurred. *Montgomery v. Walton*, 759 F.App'x 312, 314 (5th Cir. 2019) (per curiam).

Gonzalez's conspiracy claim fails for three reasons. First, Gonzalez failed to cite any evidence to support her argument that Sheriff Fuentes participated in a conspiracy

26

to deprive her of her constitutional rights. (*See* Dkt. No. 91 at 64). The Court has no duty "to scour the record in search of evidence to defeat a motion for summary judgment; we rely on the nonmoving party to identify with reasonable particularity the evidence upon which he relies." *Buehler v. City of Austin*, 824 F.3d 548, 555 n.7 (5th Cir. 2016) (quoting *Bombard v. Fort Wayne Newsp., Inc.*, 92 F.3d 560, 562 (7th Cir. 1996)); *see also Carr*, 866 F.3d at 601 ("The nonmovant must 'identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim.'" (quoting *Ragas*, 136 F.3d at 458)). Because Gonzalez identifies no evidence supporting a conspiracy and because the Court has not identified any such evidence, summary judgment is appropriate.

Second, because Sheriff Fuentes is entitled to qualified immunity from the underlying Section 1983 claims, *see supra* III(B)(1)(a), (b), he is entitled to qualified immunity on the Section 1983 conspiracy claim. *See Morales v. Carrillo*, 625 F.Supp.3d 587, 607 (W.D. Tex. 2022) ("[W]hen a defendant faces conspiracy claims under § 1983, the qualified immunity analysis that applies to the underlying § 1983 claims resolves the qualified immunity analysis for the conspiracy.") (citing *Bevill v. Fletcher*, 26 F.4th 270, 283 (5th Cir. 2022)).

Third, the intracorporate-conspiracy doctrine independently defeats Gonzalez's claim. *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994) ("[A] 'corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.'" (quoting *Nelson Radio & Supp. Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952))) (analyzing in the context of 42 U.S.C.

27

§ 1985(3)).  Gonzalez alleges that the co-conspirators were Defendants.[12]  (Dkt. No. 91 at 64 ("[T]he evidence shows that Defendants worked together in furtherance of each constitutional violation. . . . .  The three Defendants thus worked in concert to wrongly charge and arrest Ms. Gonzalez.")).  Defendants all work for Starr County.  Starr County (and its employees) constitute a single entity that cannot form a conspiracy.  *Konan v. U.S. Postal Serv.*, 96 F.4th 799, 805 (5th Cir. 2024) (recognizing that the intracorporate-conspiracy doctrine barred Section 1985 claims "against multiple defendants employed by the same governmental entity"), *vacated and remanded on other grounds by U.S. Postal Serv. v. Konan*, 607 U.S. ____, 146 S.Ct. 736, ____ L.Ed.2d ____ (2026); *see also Bright v. City of Killeen*, 532 F.Supp.3d 389, 402 (W.D. Tex. 2021) (explaining that the intracorporate-conspiracy doctrine generally bars a Section 1983 conspiracy claim against multiple defendants employed by the same governmental entity); *Thompson v. City of Galveston*, 979 F.Supp. 504, 511 (S.D. Tex. 1997) (collecting cases); *see also Jacobs v. Port Neches Police Dep't*, 915 F.Supp. 842, 844 (E.D. Tex. 1996) (finding that sheriff's departments and district attorney's offices in Texas are not separate legal entities).

For these reasons, the Court therefore grants summary judgment on Gonzalez's conspiracy claim against Sheriff Fuentes.

---

12    Sheriff Fuentes asserts that Gonzalez originally took the position that the conspiracy was the coordinated effort of the DA's Office, the Sheriff's Office, and the Starr County Memorial Hospital. (Dkt. No. 7 at 5).  The Court does not see any allegation that the Starr County Memorial Hospital was involved in the conspiracy. (Dkt. No. 7 at 15–16).  Gonzalez does not argue in her Response that the Starr County Memorial Hospital was somehow involved in the alleged conspiracy. (Dkt. No. 91 at 64).

### 2.    DA Ramirez

As explained below, DA Ramirez is entitled to judgment as a matter of law. Gonzalez fails to raise a genuine dispute of material fact that DA Ramirez violated her constitutional right to be free from false arrest, malicious prosecution, or conspiracy. DA Ramirez meets his burden to show that he is entitled to absolute-prosecutorial immunity, barring the false-arrest and malicious-prosecution claims. Gonzalez does not meet her burden of showing that those claims overcome qualified immunity. Because DA Ramirez is entitled to immunity on those underlying claims, he is likewise entitled to immunity on the conspiracy claim.

#### a.    False Arrest

Gonzalez alleges that DA Ramirez violated her right to be free from false arrest by both directly participating in a constitutional violation and acting in a supervisory capacity that enabled it. (Dkt. No. 91 at 51–52). The Court finds that Gonzalez has failed to establish any false-arrest claim against DA Ramirez. Even if she had, DA Ramirez is entitled to absolute-prosecutorial and qualified immunity, and the independent-intermediary doctrine applies.

##### i.    Direct Participation

Gonzalez alleges that DA Ramirez "personally took action that led to" her false arrest. (Dkt. No. 91 at 51). Gonzalez alleges only one direct action: that DA Ramirez "consulted with ADA Barrera about the criminal investigation and directed her to present Ms. Gonzalez's case to the grand jury." (*Id.*). In Gonzalez's view, "[b]ut for the conduct of each of the Defendants, Ms. Gonzalez's investigation would not have proceeded, and

29

she would not have been arrested." (*Id.* at 52). Defendants respond that the evidence shows that DA Ramirez instructed that the case go to the grand jury. (Dkt. No. 95 at 9). They contend that DA Ramirez did not direct or participate in the arrest or investigation. (*Id.*).

To establish a direct participation false-arrest claim under Section 1983, an arrestee must show that an arresting officer made an arrest while lacking probable cause to make the arrest, *Green*, 129 F.4th at 886-87, or an investigative officer "knowingly provided false information to secure the arrest warrants or gave false information in reckless disregard of the truth," *Freeman*, 210 F.3d at 553 (citing *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684).

Gonzalez fails to present sufficient evidence that DA Ramirez directly participated in violating her constitutional right to be free from false arrest. It is undisputed that DA Ramirez did not personally arrest or investigate Gonzalez. (Dkt. No. 91 at 52); *see also supra* III(B)(1)(a)(i). To the extent that Gonzalez argues that DA Ramirez caused subordinates to investigate or arrest her, that theory concerns supervisory — not direct — liability. Gonzalez therefore fails to establish a prima facie case of direct-participation false arrest.

Even if she had carried her burden, DA Ramirez is entitled to absolute-prosecutorial immunity. Gonzalez asserts that DA Ramirez participated in the investigation and thus falls outside that protection under *Terwilliger*. (Dkt. No. 91 at 45).[13]

---

[13]   In her Response, Gonzalez argues that DA Ramirez was not entitled to absolute-prosecutorial immunity globally and did not articulate, for instance, whether some evidence related only to some of her claims. (Dkt. No. 91 at 43–47). Accordingly, the Court conducts its
(continue)

In *Terwilliger*, the Fifth Circuit denied absolute immunity to a prosecutor.  4 F.4th at 281.

Because he had "investigated the scene within hours of the incident, took photographs of

the scene, reviewed information as it became known," and been continuously updated

by investigators about the case, the prosecutor had "in all respects inserted himself in the

role of an investigator."  *Id.* at 280.

DA Ramirez's conduct bears little resemblance to the prosecutor's conduct in

*Terwilliger*.  None of Gonzalez's cited evidence supports the view that DA Ramirez acted

in the role of investigator.  DA Ramirez submitted competent evidence that he never

communicated with any investigators about the Gonzalez investigation, and Gonzalez

does not rebut that testimony.  (*Compare* Dkt. No. 79-15 at 2, 23–24, Dkt. No. 79-16 at 6–9,

Dkt. No. 79-17 at 12, Dkt. No. 79-18 at 7–8, Dkt. No. 79-22 at 7, *with* Dkt. No. 91 at 43–47).

Instead, Gonzalez cites to DA Ramirez's campaign video promising to work closely with

law enforcement, (Dkt. No. 91-3), and Captain Fuentes's deposition testimony that if the

Captain needed to speak with the DA's Office, he would "for the most part" call DA

Ramirez directly, (Dkt. No. 91-28 at 28, 32, 59).  (*See* Dkt. No. 91 at 44–45).  Neither item

concerns the Gonzalez investigation; neither sheds light on DA Ramirez's role in this

matter.

The Court struggles to see how Gonzalez's other evidence moves the needle under

*Terwilliger* but will nevertheless address it.  First, Gonzalez points to evidence that DA

Ramirez met twice with "ADA Barrera during the investigation to 'discuss what evidence

---

absolute-prosecutorial-immunity analysis holistically and finds that it applies to all of Gonzalez's
false-arrest and malicious-prosecution claims against DA Ramirez.

had been collected in this investigation' and 'to ask ADA Barrera if there was enough legal basis to prosecute this case.'" (Dkt. No. 91 at 44 (citing Dkt. No. 91-11 at 3)). Nothing suggests that he was directing or instructing anyone on how to conduct the investigation; DA Ramirez was merely reviewing the evidence gathered. "[S]upplying legal advice based on the investigators' facts . . . fall[s] comfortably within the protection of absolute immunity." *Terwilliger*, 4 F.4th at 280.

Second, Gonzalez points to a text message from ADA Barrera to Investigator Muniz on February 1, 2022, that said: "So spoke to [DA Ramirez]. Just submit for grand jury review. No arrest warrant." (Dkt. No. 91 at 44 (citing Dkt. No. 79-21 at 76, Dkt. No. 79-21 at 32, Dkt. No. 91-24 at 55)). Gonzalez argues that this message shows that DA Ramirez ordered the case to be presented to a grand jury despite a lack of probable cause. (*Id.*). But DA Ramirez testified that "submit for grand jury review" meant that the DA's office would evaluate whether the case should be presented to the grand jury *after* the Sheriff's Office completed its investigation. (Dkt. No. 91-24 at 57). What's more, the message also predates the grand-jury presentation by nearly two months. (Dkt. No. 79 at 10). Even drawing all inferences in Gonzalez's favor, the Court is not convinced that this evidence shows DA Ramirez instructed ADA Barrera to present to the grand jury without probable cause.

Lastly, Gonzalez submitted evidence about a text message to Rosita Rocha from DA Ramirez, stating that the ADAs were "advising [him about] everything that's going on." (Dkt. No. 91-25 at 7) (SEALED). Gonzalez argues the text message demonstrates that DA Ramirez "had been aware of the investigation *while it was going on*." (Dkt. No.

32

91 at 44 (emphasis added)).  Gonzalez is once again taking a comment out of context. That text message was sent after Gonzalez was already in jail, (Dkt. No. 91-25 at 7) (SEALED), so no earlier than April 7, 2022, (Dkt. No. 91 at 21–22).  Meanwhile, the Sheriff's Office's investigation packet was submitted to the DA's Office on March 17, 2022.  (Dkt. No. 91-4 at 11–13).  No evidence has been submitted to show that either the Sheriff's Office continued its investigation after March 17, 2022 or that the DA's Office conducted its own investigation after that point.  *See Cousin*, 325 F.3d at 636 ("[T]he timing of events, while not determinative, can be highly relevant to the inquiry into [a prosecutor's] function." (citing *Buckley*, 509 U.S. at 274, 113 S.Ct. at 2616)).  Drawing all inferences in Gonzalez's favor, it defies logic to conclude that DA Ramirez was being informed about the Sheriff Office's investigation *while it was going on* if it had been completed three weeks earlier and when the prosecution of Gonzalez had already commenced.  *See id.* ("The pendency of a judicial proceeding is logically related to the determination whether a prosecutor's 'activities [are] intimately associated with the judicial phase of the criminal process, and thus [are] functions to which the reasons for absolute immunity apply with full force." (quoting *Imbler*, 424 U.S. at 430, 96 S.Ct. at 995)).

That DA Ramirez later apologized to Gonzalez is of no moment.  (Dkt. No. 91 at 46).  The relevant question for absolute-prosecutorial immunity is whether the prosecutor acted within the scope of his prosecutorial duties.  *Brooks*, 84 F.3d at 168.  Far from admitting any direct or supervisory involvement in the investigation, DA Ramirez told Gonzalez "that it had been a mistake.  It had fallen out of his hands, and he didn't know what happened."   (Dkt. No. 91-20 at 8).   At best, these admissions are either

33

"(1) connected to the administrative functioning of the office" or "(2) connected to the judicial process," both of which are entitled to absolute-prosecutorial immunity. *See Wooten v. Roach*, 964 F.3d 395, 410 (5th Cir. 2020) (citing first *Van de Kamp*, 555 U.S. at 344, 129 S.Ct. at 861–62; and then citing *Imbler*, 424 U.S. at 431, 96 S.Ct. at 995).

DA Ramirez submitted competent evidence that he was only acting in a prosecutorial role and not as an investigator. He did not initiate the investigation. (*See* Dkt. No. 79-5) (SEALED). He never communicated with any investigators about Gonzalez's investigation. (Dkt. No. 79-15 at 2, 23–24); (Dkt. No. 79-16 at 6–9); (Dkt. No. 79-17 at 12); (Dkt. No. 79-18 at 7–8); (Dkt. No. 79-22 at 7). DA Ramirez therefore meets his burden of showing that he is entitled to absolute prosecutorial immunity. *See Wearry v. Foster*, 33 F.4th 260, 269 (5th Cir. 2022). Because Gonzalez fails to show that DA Ramirez directly violated her constitutional right, she has not carried her burden to overcome DA Ramirez's qualified-immunity defense to the direct-participation false-arrest claim. *Brown*, 623 F.3d at 253. For these reasons, the Court grants summary judgment on Gonzalez's direct-participation false-arrest claim.

### ii.    Supervisor Participation

Gonzalez also alleges that DA Ramirez is liable as a supervisor because he was aware of his "subordinates' conduct and, by both action and inaction, [he] demonstrated deliberate indifference to [his] employees violating" Gonzalez's constitutional rights. (Dkt. No. 91 at 52). Gonzalez further asserts that DA Ramirez knew that ADA Barrera was pursuing an indictment unsupported by probable cause and failed to intervene. (*Id.*).

34

Gonzalez failed to demonstrate deliberate indifference. Supervisory liability under Section 1983 requires proof of a pattern of similar constitutional violations. *See Edwards*, 70 F.4th at 312; s*ee supra* III(B)(1)(ii) (explaining that the standard to establish supervisory liability under Section 1983 claims requires proving deliberate indifference). Gonzalez devotes only four sentences to attempting to justify why DA Ramirez *and* Sheriff Fuentes—officials in separate offices with distinct employees and functions— should be liable in a supervisory capacity for her arrest. (Dkt. No. 91 at 52). But she never mentions (let alone provides evidence of) any "pattern of similar constitutional violations" by the DA's Office employees.[14] *Edwards*, 70 F.4th at 312 (quoting *Henderson*, 51 F.4th at 131). As such, the Court finds that summary judgment is appropriate on Gonzalez's supervisory false-arrest claim against DA Ramirez.

Even if Gonzalez had shown a constitutional violation, DA Ramirez is still entitled to absolute-prosecutorial immunity on Gonzalez's supervisory false-arrest claim. *See supra* III(B)(1)(a)(i). Further, by failing to show that DA Ramirez directly violated her constitutional right in the first place, Gonzalez does not overcome DA Ramirez's qualified-immunity defense to the supervisory false-arrest claim. *Brown*, 623 F.3d at 253.

---

[14] To be sure, without a pattern, a plaintiff "may proceed [] under the 'single-incident exception'—a narrow and rarely successful theory that applies where the specific constitutional violation at issue was the highly predictable result of complete lack of training." *Thompson ex rel. Neveah T. v. Martinez*, 789 F.Supp.3d 491, 531 (W.D. Tex. 2025) (citing *Connick v. Thompson*, 563 U.S. 51, 63–64, 131 S.Ct. 1350, 1360–61, 179 L.Ed.2d 417 (2011)). However, Gonzalez did not argue that the single-incident exception applied. (*See generally* Dkt. No. 91). Therefore, the Court will not address whether the exception applies here.

The Court therefore grants summary judgment on Gonzalez's supervisory false-arrest claim.

### iii.    Independent-Intermediary Doctrine

Even if Gonzalez's direct-participation and supervisory false-arrest claims against DA Ramirez were otherwise viable, the independent-intermediary doctrine bars those claims. *See supra* III(B)(1)(a)(iii) (explaining the independent-intermediary doctrine).

The Parties agree that Gonzalez was indicted by the grand jury. (Dkt. No. 79-1) (SEALED). The Parties also agree that DA Ramirez neither attended nor participated in the grand-jury proceeding. (Dkt. No. 91 at 53–55). The Parties disagree, however, over whether DA Ramirez's actions "tainted the grand jury." (Dkt. No. 79 at 27); (Dkt. No. 91 at 53–55). Gonzalez argues that DA Ramirez directed "ADA Barrera to present to the grand jury, knowing that she would be pursuing a murder charge despite the absence of probable cause for any crime." (Dkt. No. 91 at 55). And by "agreeing that he violated Texas Disciplinary Rules [sic] of Professional Conduct 3.09, DA Ramirez conceded that the grand jury had been tainted because this rule is not violated unless 'the prosecutor believes that material inculpatory information presented to the grand jury was false.'" (*Id.* (citing Tex. Disciplinary Rules of Prof. Conduct, cmt. 2 to Rule 3.09)).

But that's not what happened. In the Agreed Judgment of Probated Suspension, (Dkt. No. 79-21 at 67–71), DA Ramirez agreed to certain findings of fact, none of which discussed Rule 3.09. Then, based on those "agreed foregoing findings of fact," the investigatory panel *found* that DA Ramirez violated Rule 3.09. Put differently, DA

36

Ramirez never agreed that he violated Rule 3.09.  Nor did he concede that the grand jury had been tainted.

Indeed, Gonzalez has submitted nothing to show that DA Ramirez tainted the grand jury's deliberations.  She offers no evidence that DA Ramirez "deceived the grand jury or withheld material information from it."  *Curtis v. Sowell*, 761 F.App'x 302, 305 (5th Cir. 2019) (per curiam).  She likewise presents no evidence that DA Ramirez encouraged ADA Barrera to do so.  Fifth Circuit precedent confirms that a mere allegation that a district attorney "persuaded the grand jury to indict . . . even though [the district attorney] knew there was no factual or legal basis for the charge" does not meet the "taint exception" to the independent-intermediary doctrine.  *Id.* (affirming dismissal under Rule 12(b)(6)).  If a prosecutor who personally presents a case to a grand jury without probable cause is protected, then surely a prosecutor who merely allows such a case to be presented without probable cause (assuming there was not probable cause, *see infra* III(B)(3)(a), is protected as well.  Accordingly, the Court finds that the independent-intermediary doctrine applies and grants summary judgment on Gonzalez's direct and supervisory false-arrest claims against DA Ramirez.

### b.    Malicious Prosecution

Gonzalez alleges that DA Ramirez violated her clearly established right to be free from malicious prosecution.[15]  (Dkt. No. 91 at 55–63).  The Court finds that Gonzalez has

---

[15]    The Court construes Gonzalez's argument that she was wrongfully framed for murder as an argument in support of her Section 1983 malicious-prosecution claim and rejects the assertion of any new claim based on "being framed."  *See supra* n.5.

failed to establish a malicious-prosecution claim.  Even if she had, DA Ramirez is entitled to absolute and qualified immunity.

Similar to Sheriff Fuentes, DA Ramirez argues that Gonzalez does not have any evidence of his malice.  (Dkt No. 79 at 26); *see also supra* III(B)(1)(b).  And similar to the arguments raised in response to Sheriff Fuentes, Gonzalez asserts that, because DA Ramirez did not believe there was probable cause, his conduct "necessarily was motivated by some other purpose than to bring Ms. Gonzalez to justice."  (Dkt. No. 91 at 59 (citing *Armstrong*, 60 F.4th at 278)).  Further, "DA Ramirez did not believe Ms. Gonzalez could be charged with 'anything' but pursued the prosecution anyway based on his personal opinions[16] about the alleged facts."  (*Id.* at 60).

Context matters.  The statement at issue arose when DA Ramirez was asked about a text message from ADA Barrera to Investigator Muniz on February 1, 2022.  (Dkt. No. 91-24 at 55–56).  It said: "So spoke to [DA Ramirez].  Just submit for grand jury review.  No arrest warrant."  (*Id.* at 55).  DA Ramirez explained that this meant there were not

---

[16]   Gonzalez does not explain what she means by "personal opinions," and her cited evidence does not reference DA Ramirez's "personal opinions" either.  (*See* Dkt. No. 91 (citing Dkt No. 91-23 at 37, 39, 82, 85); (Dkt. No. 91-24 at 57); (Dkt. No. 91-11 at 4)).  Nor does Gonzalez explain how the evidence supports that DA Ramirez was "motivated to pursue the prosecution and arrest of Ms. Gonzalez to help ADA Solis in her representation of Ms. Gonzalez's then-husband in his divorce proceeding."  (Dkt. No. 91 at 60 (citing (Dkt. No. 91-6 at 2); (Dkt. No. 79-22 at 59))).  As such, the Court declines to consider Gonzalez's unsubstantiated assertions about DA Ramirez's personal opinions or motivations in a separate divorce proceeding in its malice assessment.  *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (explaining that the non-movant's summary-judgment burden "will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, [or] by unsubstantiated assertions'") (quoting *Little*, 37 F.3d at 1075).

enough facts to charge "anything" under an arrest warrant and to instead "submit for grand jury review" after the Sheriff's Office completed its investigation. (*Id.* at 57).

Drawing all inferences in favor of Gonzalez, the Court struggles to see how this constitutes malice. If anything, it suggests that DA Ramirez sought to avoid a premature arrest. DA Ramirez's instruction—to wait until the Sheriff's Office completed its investigation to obtain a "clear picture of what had happened" before "decid[ing] whether to present it to a grand jury or not," (*id.* at 58)—shows a commitment to a full and fair vetting of the facts. There is no other evidence of DA Ramirez's malice. As such, there is no genuine dispute of a material fact as to whether DA Ramirez deprived Gonzalez of her right to be free from malicious prosecution. *See Morris*, 277 F.3d at 753.

Even if Gonzalez established her malicious-prosecution claim, DA Ramirez is still entitled to absolute-prosecutorial immunity. *See supra* III(B)(1)(a)(i)(a). DA Ramirez is also entitled to qualified immunity as well. *See supra* III(B)(1)(a)(b).

Because Gonzalez did not demonstrate that DA Ramirez violated her constitutional right to be free from malicious prosecution, and because DA Ramirez is entitled to absolute-prosecutorial and qualified immunity, the Court grants summary judgment on Gonzalez's malicious-prosecution claim.

c.      Conspiracy

Gonzalez alleges that DA Ramirez violated her clearly established right to be free of a conspiracy to violate her civil rights. (Dkt. No. 91 at 64). As with Sheriff Fuentes, *see supra* III(B)(1)(c), Gonzalez did not cite any evidence to demonstrate that DA Ramirez participated in a conspiracy to deprive her of her constitutional rights. (*See* Dkt. No. 91

at 64).  A court is not required to search the record for evidence to prevent summary judgment.  *Buehler*, 824 F.3d at 555 n.7.  The Court instead relies on the nonmovant to identify with reasonable particularity the evidence supporting the claim.  *See Carr*, 866 F.3d at 601.  Gonzalez identifies none, and summary judgment is therefore appropriate.

Second, because DA Ramirez is entitled to absolute immunity from the underlying Section 1983 claims, *see supra*  III(B)(2)(a), (b), he is entitled to absolute immunity on the conspiracy claim.  *See Darden v. Vines*, No. 6:22-CV-00404, No. 6:22-CV-01398, 2023 WL 11830304, at *6 (W.D. La. Mar. 10, 2023) (citing *Armstrong*, 60 F.4th at 280) (holding that plaintiff's conspiracy claim was not actionable where defendants were entitled to absolute immunity for the constitutional claims against them).  He is also entitled to qualified immunity on the underlying claims and, in turn, the conspiracy claim.  *See Morales*, 625 F.Supp.3d at 607.

And finally, just as with Sheriff Fuentes, *see supra* III(B)(a)(c), the intracorporate-conspiracy doctrine defeats Gonzalez's conspiracy claim, *Hilliard*, 30 F.3d at 653.  Gonzalez alleges that the co-conspirators were Defendants, (Dkt. No. 91 at 64), but they all work for Starr County.  Starr County (and its employees) cannot conspire with itself as a matter of law.  For these reasons, the Court therefore grants summary judgment on Gonzalez's conspiracy claim against DA Ramirez.

### 3.    ADA Barrera

For reasons discussed below, ADA Barrera is entitled to judgment as a matter of law.  ADA Barrera is not entitled to absolute-prosecutorial immunity from the false-arrest and malicious-prosecution claims.  Nevertheless, Gonzalez did not satisfy her burden to

show that ADA Barrera is not entitled to qualified immunity on the false-arrest and malicious-prosecution claims.  Because ADA Barrera is entitled to qualified immunity on those underlying claims, she is equally entitled to immunity on the conspiracy claim.

a.    False Arrest

ADA Barrera does not seem to dispute that she violated Gonzalez's constitutional right to be free from false arrest, instead invoking absolute-prosecutorial immunity, qualified immunity, and the independent-intermediary doctrine.  (*See* Dkt. No. 96 at 7). The Court finds that she is entitled to qualified immunity on the false-arrest claim.

Turning to the issue of absolute immunity, Gonzalez first argues that ADA Barrera worked closely with the Sheriff's Office throughout the investigation and advised them on what steps they should take to investigate Gonzalez.  (Dkt. No. 91 at 38–40).  In support, Gonzalez provides evidence including that ADA Barrera directed Investigator Muniz to "take pictures of the ashes," (Dkt. No. 79-21 at 27–28), instructed Investigator Aguirre to interview "that lady that gave her the drugs" before pursuing an arrest warrant, (*id.* at 24), and spoke with a doctor and two other employees at the Starr County Hospital about the case, (Dkt. No. 91-11 at 2).  This evidence raises a genuine dispute of material fact as to whether ADA Barrera acted in an investigative, rather than prosecutorial, capacity.

To be sure, the Court can see how the above-cited evidence could be construed as providing legal advice to the investigators, which is different than simply acting as an investigator.  However, that is a distinction without a difference here, because "a prosecutor's absolute immunity does not extend to 'advising the police in the

41

investigative phase of a criminal case.'"  *Terwilliger*, 4 F.4th at 280.  And Gonzalez provided additional evidence to show that ADA Barrera provided legal advice to the Sheriff's Office in connection with the Gonzalez investigation.  (*See, e.g.,* Dkt. No. 91-22 at 40, 79); (Dkt. No. 79-21 at 26); (Dkt. No. 91-28 at 64–65).

ADA Barrera argues that Gonzalez "fails to point the Court to a single case . . . addressing whether a prosecutor with these communications . . . [was] converted to a pseudo investigator." (Dkt. No. 96 at 3).  While that gap might be fatal in the context of qualified of immunity, *see Cope*, 3 F.4th at 205, it is not for absolute-prosecutorial immunity.  That is because the absolute-prosecutorial immunity analysis is functional. *See Wearry*, 33 F.4th at 265; *see also Rehberg v. Paulk*, 566 U.S. 356, 363–64, 132 S.Ct. 1497, 1503, 182 L.Ed.2d 593 (2012) (listing Supreme Court cases applying the functional approach).  Under this framework, a court should assess the nature of the specific conduct at issue, regardless of the existence of a prior indistinguishable case.  *Wearry*, 33 F.4th at 265–66.  Accordingly, the Court finds that ADA Barrera is not entitled to absolute-prosecutorial immunity and her "immunity is limited to that of a law enforcement officer." *See Terwilliger*, 4 F.4th at 281.

Turning to whether ADA Barrera is entitled to qualified immunity, the Court finds that she is.  Gonzalez fails to satisfy the "clearly established" prong of qualified immunity.  *Morris*, 277 F.3d at 753 (quoting *Chiu*, 260 F.3d at 343); *see supra* III(B)(1)(a)(i) (discussing qualified-immunity standard).

Gonzalez argues that the law is clearly established that an officer cannot arrest an individual without probable cause and the inquiry is "whether an objectively reasonable

42

actor would believe there was probable cause of the crime." (Dkt. No. 91 at 48). She contends Section 19.06 "'clearly and plainly' excepts[17] Ms. Gonzalez's conduct from the homicide statutes." (*Id.* at 49). In support, Gonzalez cobbles together several Texas state-court cases for the proposition that the "provision prohibits the prosecution of the pregnant person for her own conduct that causes harm to her fetus," with a Fifth Circuit case from 2007 for the proposition that where "a criminal statute excepts a person's alleged conduct, no reasonable actor could believe that there is probable cause." (Dkt. No. 91 at 49–50).

As an initial matter, Gonzalez's general claim—that an arrest must be based on probable cause—"is precisely the type of 'general proposition' that the Supreme Court has rejected. *See Gonzalez v. Huerta*, 826 F.3d 854, 857–58 (5th Cir. 2016) (quoting *al-Kidd*, 563 U.S. at 742, 131 S.Ct. at 2084). "With the more specific inquiry the Court requires, the

---

[17] Section 19.06 is a defense, not an exception. *State v. Hunter*, 624 S.W.3d 589, 590 (Tex. Crim. App. 2021) (Keller, P.J., concurring in denial of review). What may seem like a subtle distinction between a defense and an exception is, in reality, a critical dividing line with significant procedural and substantive implications:

> [W]hen a penal statute includes an exception as part of the statute itself, the state must negate the existence of the exception in the indictment of the offense and prove beyond a reasonable doubt that the . . . defendant's conduct does not fall within the exception . . . . On the other hand, the issue of the existence of a defense, including an affirmative defense, is not submitted to the jury unless evidence is admitted supporting the defense. The burden of proof with respect to affirmative defenses rests on the defendant, although proof is not required beyond a reasonable doubt. While the Government must prove beyond a reasonable doubt every fact necessary to constitute the crime with which the defendant is charged, proof of the nonexistence of all affirmative defenses has never been constitutionally required.

24A Tex. Jur. 3d Criminal Procedure: Trial § 533 (internal footnotes omitted).

question becomes whether there is either 'directly controlling authority . . . establishing the illegality of such conduct' or 'a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.'" *Id.* (emphasis omitted) (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 328–29 (5th Cir. 2002)); *see also Mullenix*, 577 U.S. at 12, 136 S.Ct. at 308 (noting courts must ask "whether the violative nature of *particular* conduct is clearly established") (quoting *al-Kidd*, 563 U.S. at 742, 131 S.Ct. at 2084) (emphasis in original).

The Texas state-court cases do not close the distance between the general proposition and the more particularized showing required here. Only two cited Texas state-court cases[18] create controlling authority in Starr County. *See State ex rel. Vance v. Clawson*, 465 S.W.2d 164, 168 (Tex. Crim. App. 1971) (explaining that the Texas Court of Criminal Appeals is binding on all other courts in Texas); Tex. Gov't Code § 22.201(e) (providing that Starr County is under the jurisdiction of the Fourth Court of Appeals in San Antonio); *Kleinman v. State*, 703 S.W.3d 813, 822 (Tex. App.—Austin 2024, pet. withdrawn) (explaining that courts of appeals are not binding authority outside their jurisdiction) (citing *HWY 3 MHP, LLC v. ERCOT*, 462 S.W.3d 204, 211 n.4 (Tex. App.—Austin 2015, no pet.). In *Lawrence v. State*, the Texas Court of Criminal Appeals affirmed a capital-murder conviction of a man who shot and killed a woman and her unborn child. 240 S.W.3d 912, 914–15 (Tex. Crim. App. 2007). The court mentioned that the Texas murder statute excuses conduct committed by a woman who chooses to terminate her

---

[18]   *See Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007); *Flores v. State*, 245 S.W.3d 432, 436 (Tex. Crim. App. 2008).

own pregnancy. *Id.* at 915 n.9. The case, however, did not actually involve an abortion, so the court's observation about Section 19.06 was dicta. *See Morrow,* 917 F.3d at 875–76 (collecting cases to show that dicta cannot be used to show a law is clearly established for qualified-immunity purposes). The same is true of *Flores v. State*, which affirmed the conviction of a man for murdering his pregnant girlfriend's twin fetuses. 245 S.W.3d 432, 434–36 (Tex. Crim. App. 2008). In sum, there is no "directly controlling authority" holding that ADA Barrera could not prosecute Gonzalez. *See Gonzalez*, 826 F.3d at 858 (quoting *McClendon*, 305 F.3d at 329).

As for the non-binding Texas appellate-court cases, the same problem arises. *See Eguia v. State*, 288 S.W.3d 1, 3 (Tex. App.—Houston [1st. Dist.] 2008, no. pet.) (involving the conviction of a man who murdered a mother and her unborn child); *Brown v. State*, 303 S.W.3d 310, 312 (Tex. App.—Tyler 2009, pet. ref'd) (upholding manslaughter convictions for causing the death of a mother and unborn child); *Kiss. v. State*, 316 S.W.3d 665, 667 (Tex. App.—Dallas 2009, pet. ref'd) (involving intoxicated manslaughter for the death of an unborn child); *State v. Hunter*, 606 S.W.3d 836, 837 (Tex. App.—Austin 2020, pet. ref'd) (affirming dismissal of charges against a man for soliciting a mother to cause the death of her unborn child). Those decisions do not create a "consensus of cases of persuasive authority" that would have warned ADA Barrera not to prosecute Gonzalez. *Gonzalez*, 826 F.3d at 858 (quoting *McClendon*, 305 F.3d at 329).

The last Texas case—*State v. Hunter*, 624 S.W.3d 589 (Tex. Crim. App. 2021)—does Gonzalez more harm than good. There, the intermediate appellate court affirmed the dismissal of an indictment against a man for soliciting a mother to abort her unborn child,

45

and the State sought review before the Texas Court of Criminal Appeals. *Id.* at 594. While the Court of Criminal Appeals refused the petition for discretionary review, that refusal in itself has no precedential value. *See State v. Garcia*, 861 S.W.2d 386, 387 n.1 (Tex. Crim. App. 1993) ("It is well settled that refusal of a petition for discretionary review by this Court has no precedential value.").

But more crucially, the fractured opinion—consisting of two concurrences and a dissent from the court's refusal to grant review—underscores the lack of clarity over the interpretation of Section 19.06. A concurrence to the refusal reasoned that "a mother choosing to abort her unborn child is not a crime." *Hunter*, 624 S.W.3d at 589. Thus, the indictment did not contain an "object crime." *Id.* This implies that because no crime exists, a prosecutor cannot bring charges against a mother who aborts her unborn child. *See id.* A dissent to the refusal reasoned that the court below (and by extension, the majority) inappropriately treated Section 19.06 as an exception rather than a defense. *Id.* at 596. In the dissent's view, it would be permissible for a prosecutor to charge a mother with murder and require her to raise Section 19.06 in defense. *See id.* at 599 ("[W]hen Section 19.06(1) explains that our State's homicide laws 'do[] not apply,' it only means that they may not be enforced to impose criminal responsibility against the mother of an unborn child, should she be charged with engaging in conduct that causes the death of her own unborn child.") (emphases omitted).

For qualified-immunity purposes, it is immaterial which interpretation of Section 19.06 is ultimately correct; it is, however, material that the interpretation of Section 19.06 is subject to reasonable debate. *See Craig v. Martin*, 49 F.4th 404, 417 (5th Cir. 2022) ("For

a right to be clearly established, 'existing precedent must have placed the . . . constitutional question beyond debate.'") (quoting *al-Kidd*, 563 U.S. at 741, 131 S.Ct. at 2083). Between *Hunter*, 624 S.W.3d 589, and the other cited Texas state-court cases, the Court cannot conclude that ADA Barrera's decision to pursue charges despite Section 19.06 was "objectively unreasonable."[19] *See Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007).

Gonzalez further argues that *Freeman* proscribes ADA Barrera's conduct. (Dkt. No. 91 at 49 (citing *Freeman*, 483 F.3d at 415)). In *Freeman*, officers were attempting to serve an arrest warrant on a man at his home. 483 F.3d at 408. When officers couldn't find him, they asked his mother — who happened to live next door at an address not in the arrest warrant — whether they could search her home for the man. *Id.* She refused "unless they had a search warrant for her address." *Id.* The officers then handcuffed the mother and placed her in a patrol car. *Id.* at 408–09. The mother later sued the officers alleging false arrest. *Id.* at 409. As relevant here, the officers argued that they had probable cause to arrest the mother under Texas Penal Code § 38.15, which prohibits interference with public duties. *Id.* at 413. The court found there was no probable cause because the conduct fell squarely within a "speech exception" to the statute. *Id.* at 414.

---

[19]   As Gonzalez notes, "the subjective understanding of the particular officer involved" does not factor into whether the conduct was objectively reasonable. (Dkt. No. 91 at 48 (citing *Heien v. North Carolina*, 574 U.S. 54, 66, 135 S.Ct. 530, 539, 190 L.Ed.2d 475 (2014))). Therefore, for purposes of qualified immunity, the Court will not consider whether ADA Barrera thought that there was, in fact, probable cause to charge Gonzalez. (*See* Dkt. No. 91 at 51).

*Freeman* is not on point.   It involved different conduct, a different statute, a different defense, and no grand jury or prosecutor.   Nor did *Freeman* involve a prosecutor allegedly "directing the Sheriff's [Office] to conduct a criminal investigation," "instruct[ing] the Sheriff's [Office] to classify the crime as murder in their reports," "draft[ing] and fil[ing] the indictment, which triggered the issuance of an arrest warrant," "pursuing an indictment not supported by probable cause, " or "knowingly omitting a material portion of the law, leading directly to a murder charge for conduct that is not a crime."   (Dkt. No. 91 at 51–52, 55).   Thus, *Freeman* does not meet the "sufficiently high level of specificity" needed to put ADA Barrera on notice that her conduct was "definitively unlawful."   *Gonzalez,* 826 F.3d at 858 (quoting *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015)).

Recent Fifth Circuit authority also casts doubt on whether *Freeman* clearly establishes that a statutory defense negates probable cause.   In 2022—over 15 years after *Freeman* was decided—the Fifth Circuit noted that it "has repeatedly refused to opine on" whether the existence of a defense (like Section 19.06) is "relevant to the determination of probable cause.'"   *Loftin v. City of Prentiss*, 33 F.4th 774, 781 n.2 (5th Cir. 2022) (quoting *Piazza v. Mayne*, 217 F.3d 239, 246–47 (5th Cir. 2000) (per curiam)).   If one Fifth Circuit decision says a defense can vitiate probable cause, while another more recent decision says it is unsettled whether a defense even bears on probable cause, the Court cannot comfortably say that the law is clearly established.

In short, Gonzalez bears the burden to show that qualified immunity does not apply, and she has not.   Standing alone, the cases cited by Gonzalez simply do not work

in her favor. And taken together, a collection of non-binding, factually distinct, and inconclusive authority cannot be aggregated to create clearly established law. Because the record does not show that her conduct was objectively unreasonable in light of clearly established law, ADA Barrera is entitled to qualified immunity. The Court therefore grants summary judgment on the false-arrest claim against her.[20]

b.        <u>Malicious Prosecution</u>

ADA Barrera does not seem to dispute that she violated Gonzalez's constitutional right to be free from malicious prosecution, instead arguing that she is entitled to summary judgment due to absolute-prosecutorial and qualified immunity. (*See* Dkt. No. 96 at 7–8).

---

[20] Because it is no longer necessary to the resolution of her Motion, the Court declines to decide whether ADA Barrera is entitled to application of the independent-intermediary doctrine. (Dkt. No. 96 at 7). Gonzalez argued she was not because ADA Barrera "knowingly omitt[ed] a material portion of the law, leading directly to a murder charge for conduct that is not a crime." (Dkt. No. 91. at 55). Gonzalez has presented sufficient evidence to demonstrate a fact issue as to whether ADA Barrera knew about Section 19.06 of the Texas Penal Code. (*See* Dkt. No. 91-23 at 140); (Dkt. No. 91-22 at 68–69, 87–88). Nevertheless, the Court is not persuaded that withholding this knowledge alone would satisfy the taint exception. *Wilson*, 33 F.4th at 213 (explaining the information withheld must be material to whether *probable cause* existed).

The Fifth Circuit "has repeatedly refused to opine on" whether the existence of a defense is "relevant to the determination of probable cause.'" *Loftin*, 33 F.4th at 781 n.2 (quoting *Piazza*, 217 F.3d 239, 246–47). So, the omission of a defense like Section 19.06 from a grand-jury presentation is not clearly material to the probable-cause determination. Further, Texas Code of Criminal Procedure Article 20A.151 reinforces the absence of a proactive disclosure duty by providing that the "grand jury may send for the attorney representing the state and ask the attorney's advice on any matter of law." By framing the exchange of legal advice as a discretionary request initiated by the grand jury, the statute supports the conclusion that a prosecutor is not required to volunteer defenses—like Section 19.06—unless specifically asked. And in any event, under well-established precedent, the State has no duty to present exculpatory evidence to a grand jury. *United States v. Williams*, 504 U.S. 36, 52, 112 S.Ct. 1735, 1745, 118 L.Ed.2d 352 (1992); *see also* Tex. Att'y Gen. Op. No. GA-0765 (2010) (articulating the principle that the existence of a viable defense is not a bar to prosecution); *see also* Tex. Penal Code § 2.03(b) ("The prosecuting attorney is not required to negate the existence of a defense in the accusation charging commission of the offense.").

As discussed, ADA Barrera is not entitled to absolute-prosecutorial immunity. *See supra* III(B)(3)(a). She is, however, entitled to qualified immunity, because there was no clearly established malicious-prosecution claim in the Fifth Circuit at the time of her conduct. *See supra* III(B)(1)(a), (b). The Court therefore grants summary judgment on Gonzalez's malicious-prosecution claim against ADA Barrera.

c.        Conspiracy

Gonzalez alleges that ADA Barerra violated her clearly established right to be free of a conspiracy to violate her civil rights. (Dkt. No. 91 at 64). The same reasons that foreclosed Gonzalez's conspiracy claims against Sheriff Fuentes, *see supra* III(B)(1)(c), and DA Ramirez, *see supra* III(B)(2)(c), apply with equal force to her claim against ADA Barrera. Namely, Gonzalez did not cite any evidence demonstrating that ADA Barrera conspired to deprive her of her constitutional rights, (*see* Dkt. No. 91 at 64), and the Court has no duty to search the summary judgment record for that evidence. *Buehler*, 824 F.3d at 555 n.7. Additionally, because ADA Barrera is entitled to qualified immunity from the underlying Section 1983 claims, *see supra* III(B)(3)(a), (b), she is entitled to qualified immunity on the conspiracy claim. *See Morales*, 625 F.Supp.3d at 607 ("[W]hen a defendant faces conspiracy claims under § 1983, the qualified immunity analysis that applies to the underlying § 1983 claims resolves the qualified immunity analysis for the conspiracy.") (citing *Bevill*, 26 F.4th at 283). And lastly, the intracorporate-conspiracy doctrine defeats Gonzalez's conspiracy claim, because Defendants—all employees of Starr County—cannot conspire together as a matter of law. *Hilliard*, 30 F.3d at 653. For

50

these reasons, the Court grants summary judgment on Gonzalez's conspiracy claim against ADA Barrera.

## IV.    CONCLUSION

Considering the foregoing analysis, the Court **GRANTS in part** and **DENIES in part** Defendants' Objections and Motions to Strike Certain Evidence Submitted in Response to Defendants' Summary Judgment Motion, (Dkt. No. 94); **GRANTS** DA Ramirez's Motion for Summary Judgment, (Dkt. No. 79); **GRANTS** ADA Barrera's Motion for Summary Judgment, (Dkt. No. 81); and **GRANTS** Sheriff Fuentes's Motion for Summary Judgment, (Dkt. No. 88).

It is SO ORDERED.

Signed on March 31, 2026.

_____
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**

51