**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| **LIZELLE GONZALEZ,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 7:24-cv-00132** |
| | § | |
| **GOCHA ALLEN RAMIREZ,** | § | **JURY DEMANDED** |
| **ALEXANDRIA LYNN BARRERA,** | § | |
| **STARR COUNTY, and** | § | |
| **RENE FUENTES,** | § | |
| *Defendants* | | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE DREW B. TIPTON:

**COMES NOW LIZELLE GONZALEZ**, Plaintiff herein, by and through counsel, and files this civil rights action against Gocha Allen Ramirez, Individually; Alexandria Lynn Barrera, Individually; Rene Fuentes, Individually; and Starr County and for such causes of action alleges as follows:

**I.**

**NATURE OF THE ACTION**

1.1    Plaintiff brings forth causes of action pursuant to 42 U.S.C § 1983 for violations of the United States Constitution and the laws of the United States as a result of the unfounded and unlawful indictment presented against Plaintiff by the Starr County District Attorney and his office, and her subsequent unlawful arrest by the Starr County Sheriff and his office.

**II.**

**PARTIES**

2.1   Plaintiff Lizelle Gonzalez, a/k/a Lizelle Herrera, Plaintiff's legal name at the time of her arrest, is a resident of Starr County, Texas.

2.2   Defendant Gocha Allen Ramirez is the elected District Attorney for Starr County, Texas. Ramirez is employed by the County of Starr as its elected district attorney who, at all times relevant to this action, was acting under the color of law and within the scope of his employment. Defendant Ramirez is the policymaker for the Starr County District Attorney's Office. Defendant Ramirez is sued in his individual capacity. Defendant Ramirez may be served by serving his attorney via electronic mail.

2.3   Defendant Alexandria Lynn Barrera is employed as an Assistant District Attorney for Starr County, Texas, who, at all times relevant to this action, was acting under the color of law and within the scope of her employment. Defendant Barrera is sued in her individual capacity. Defendant Barrera may be served by serving her attorney via electronic mail.

2.4   Defendant Starr County, Texas, is a governmental unit existing under the laws of the State of Texas. Defendant Starr County may be served by serving its attorney via electronic mail.

2.5   Defendant Rene Fuentes is the elected Sheriff of Starr County, Texas. Fuentes is employed by the County of Starr as its elected sheriff who, at all times relevant to this action, was acting under the color of law and within the scope of his employment. Defendant Fuentes is the policymaker for the Starr County Sheriff's Office and is the final policymaker for the county in the area of law enforcement. Defendant Rene Fuentes is sued in his individual capacity and may be served with this amended Complaint by electronic service upon his attorney using the CM/ECF system.

### III.
### JURISDICTION AND VENUE

3.1   This action is brought pursuant to 42 U.S.C. § 1983. The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

3.2   Venue is proper in this Court under 28 U.S.C. § 1391(b), as the Southern District of Texas - McAllen Division is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

### IV.

### FACTUAL ALLEGATIONS

4.1   On January 7, 2022, at approximately 7:18 p.m., Plaintiff Lizelle Gonzalez presented to the Starr County Memorial Hospital Emergency Department after using Cytotec Icetrogen 400 mcg purportedly to induce an abortion.  Plaintiff was treated by Dr. Rodolfo Lozano, M.D. and Norma Aguirre RN. After obstetrical examination revealed no contractions and positive fetal heart rate, Plaintiff was discharged home on January 8, 2022, at approximately 12:00 p.m. with a diagnosis of abdominal pain and instructions to follow up with Dr. Lozano on January 12, 2022.

4.2   Shortly after discharge, at approximately 12:40 p.m. on January 8, 2022, Plaintiff was taken to Starr County Memorial Hospital via EMS with complaints of abdominal pain and vaginal bleeding.  Examination in the emergency department revealed no fetal cardiac activity and "incomplete spontaneous abortion." Plaintiff was admitted to obstetrics for a repeat classical cesarean section by Dr. Luis Ramirez for the delivery of her stillborn child.

4.3   As established by deposition testimony and documentary evidence, during or after

Plaintiff's hospitalizations, employees, agents and/or representatives of Starr County Memorial Hospital, in violation of federal privacy laws, reported Plaintiff to the Starr County District Attorney's Office and/or the Starr County Sheriff's Office and shared protected medical records with such individuals/agencies.

4.4    Deposition testimony established that at no time, either before or after this incident, has the Sheriff's Office provided training to its employees about investigating alleged abortions or complaints received from hospitals. The totality of training for investigators at the Sheriff's Office consists of being given a policy book upon hire and periodic updates on the law provided by a third-party instructor. Defendant Fuentes testified that he did not attend any of these trainings. On the first day of the job, investigators are given a caseload and told to "Run with it." They are primarily expected to learn how to do their jobs within the confines of the law "by working cases."

4.5    Upon information and belief, prior to Plaintiff's arrest, Sheriff's Office employees had conducted arrests knowing they lacked probable cause at the direction of either their supervisors or prosecutors. Per Sheriff's Office policy and practice, the Sheriff is informed of all arrests, and Defendant Fuentes was aware that his investigators had previously and knowingly made unlawful arrests when they were following orders from supervisors or prosecutors.

4.6    In one prior instance, Sheriff's Office supervisors, including Major Carlos Delgado, instructed a Sheriff's Deputy to "find probable cause" in order to stop, detain, and arrest a motorist wanted for questioning. The Deputy testified that even if the motorist was driving perfectly, he was told at a briefing by his supervisors to stop, detain, and bring him in. After the motorist was pulled over for an alleged traffic violation, the Sheriff's Deputy

handcuffed and transported him back to the police station despite knowing that there was no probable cause or reasonable suspicion to continue the detention after the traffic stop had ended. The Deputy testified that if the motorist had requested to be let go, he would not have released him but would have instead checked with his supervisors. The Texas Court of Appeals found that the Sheriff's Deputy conducted an arrest without probable cause in violation of the constitution.

4.7    Deposition testimony established that the District Attorney's Office provides no training to its attorneys. The District Attorney's Office also has no written policies or procedures for its attorneys.

4.8    Upon information and belief, the District Attorney's Office has previously obtained warrants knowing that they lacked probable cause in order to effectuate an unlawful search or seizure.

4.9    In one such instance, an investigator from the Starr County District Attorney's Office drafted a search warrant affidavit that was so deficient and lacking in probable cause that a federal district court held that if any officer who conducted the search had read the affidavit "they would have known that the search of Defendant's residence was based on insufficient evidence of probable cause and therefore was a violation of his Fourth Amendment rights[.]"

4.10    At the time of Plaintiff's hospitalization, Texas had recently enacted S.B. 8, which banned abortion after detection of a fetal heartbeat. This law is enforced solely through private civil actions. S.B. 8 did not add crimes to the Penal Code or change the Code in any way. In addition to expressly prohibiting public enforcement, S.B. 8 stated that it did not "authorize the initiation of a cause of action against or the prosecution of a woman on

whom an abortion is performed or induced." Indeed, since 2003, Section 19.06 of the Texas Penal Code has explicitly exempted mothers from criminal prosecution for their own abortions. The enactment of S.B. 8 consumed the Texas news media in the months leading up to Plaintiff's arrest. Yet, according to deposition testimony, even though supervisors were aware of the new law, neither the Sheriff's Office nor the District Attorney's Office provided any training on S.B. 8's application to the Penal Code.

4.11    Deposition testimony and written office policies establish that Defendant Fuentes delegated his authority as final policymaker for the County in the area of law enforcement concerning criminal investigations to the District Attorney's Office. Testimony revealed that it is the "practice" of the Sheriff's Office that the Sheriff does not supervise investigations or provide any guidance about investigations conducted by his office. Rather, it is Sheriff's Office "procedure" that investigators affirmatively contact the District Attorney's Office for guidance any time his office is investigating a serious case. If the Sheriff is told about an investigation being handled by his office, he immediately instructs his staff to talk to the District Attorney's Office about it. If the Sheriff is asked a question about what to do during an investigation, he instructs his employees to ask the District Attorney's Office. And if investigators have a question, supervisors will instruct the investigators to call the District Attorney's Office. Supervisors do not seek guidance on investigations from the Sheriff. Deposition testimony established that "at the end of the day, the prosecutors have the say" about how investigations should be conducted, including whether there is probable cause of a crime.

4.12    According to deposition testimony, per policy, custom, and practice, the Sheriff's Office investigates any complaint that is called into the office, regardless of whether any law has

been broken. The District Attorney's Office makes the determination whether there is probable cause that the allegations constitute a crime. Defendant Fuentes never makes that determination.

4.13    Per policy, custom, and practice, Sheriff's Office employees follow the directions given by the District Attorney's Office even when doing so is in violation of the law and written office policy.

4.14    From January through March of 2022, Defendant Fuentes and his office, in connection with and/or under the joint supervision of Defendants Barrera and Ramirez of the Starr County District Attorney's Office, investigated Plaintiff because of her abortion, knowing that Plaintiff's conduct was exempt from homicide as per Section 19.06(1) of the Texas Penal Code. Defendant Barrera provided direction and legal advice throughout the investigation to the Sheriff's Office investigators executing the investigation.

4.15    Deposition testimony and documentary evidence establish that Captain Lenard Fuentes of the Sheriff's Office assigned Investigator Esmeralda Muniz as the office's lead investigator concerning Plaintiff's abortion. Investigator Muniz testified that she knew that Plaintiff had a constitutional right to obtain an abortion. She also knew that Penal Code Section 19.06 exempted Plaintiff from prosecution. Investigator Muniz alerted her supervisors, Captain Fuentes and Sergeant Rafael Aguirre, to Section 19.06(1) and the constitutional right to abortion. Captain Fuentes did not do any research or look at the Penal Code to determine whether the allegations amounted to a crime. Per office policy and practice, he told Investigator Muniz to contact the District Attorney's Office.

4.16    Per office policy and practice, Investigator Muniz and Captain Fuentes spoke to Defendant Barrera to obtain instructions for the investigation of Plaintiff. During this call, Defendant

Barrera was informed about Section 19.06. Defendant Barrera said she was "going to look into it." Despite knowing about Section 19.06, Defendant Barrera instructed Investigator Muniz to proceed with the investigation into Plaintiff's abortion. Deposition testimony indicates that Defendant Barrera intended to charge Plaintiff with murder as early as this conversation. Per office policy, custom, and practice, Sheriff's Office investigators followed the directions of the District Attorney's Office to investigate Plaintiff despite knowing that Plaintiff did not commit any crime. Captain Fuentes affirmed that if the District Attorney's Office had told them to "Let it go," then they would have stopped the investigation.

4.17    Defendant Fuentes and Major Delgado were informed about the investigation into Plaintiff's abortion around the time that the investigation was initiated. When Captain Fuentes told Defendant Fuentes about the investigation, per office policy, practice, and custom, it was "expected" that he would have already spoken to the District Attorney's Office about the case. He made sure to tell the Sheriff that they had "already contacted the DA's office, so they're on board." Captain Fuentes also told Major Delgado that his investigators had reached out to the District Attorney's Office about Plaintiff's investigation.

4.18    Defendant Fuentes testified that although his employees were investigating, Plaintiff had committed "no crime." Although he did not believe that Plaintiff had committed a crime, he instructed his staff, consistent with policy, practice, and custom, to follow the District Attorney's Office's instructions. He was kept informed about the investigation and knew his employees were "working on a complaint."

4.19    Per District Attorney's Office policy, custom, and practice, Defendant Barrera consulted

with Defendant Ramirez regarding the investigation. As established through deposition testimony and documentary evidence, Defendant Barrera discussed Plaintiff's case with Defendant Ramirez prior to the investigation and presentation of the case before the grand jury. Defendant Ramirez did not believe Plaintiff had committed any crime. Nonetheless, he instructed Defendant Barrera to present the case to the grand jury, knowing she would be seeking a homicide charge.

4.20    Throughout the investigation of Plaintiff, Defendants Barrera and/or Ramirez were in direct communication with Starr County Sheriff's Office investigators providing legal advice in coordinating and/or directing the "murder" investigation. Plaintiff was interviewed by Defendant Fuentes's investigators on January 31, 2022; however, she was neither charged nor arrested following the interview. Sheriff's Office supervisors believed there was "no probable cause" to conduct an arrest.

4.21    Prior to the submission of the investigation file to the District Attorney's Office, Defendant Barrera directed Investigator Muniz to write "Murder" as the applicable crime on her police reports. Although Investigator Muniz did not believe that Plaintiff committed murder, per office policy, custom, and practice, she complied with the District Attorney's Office instructions. These investigation reports were used by Defendant Barrera in her presentation to the grand jury.

4.22    At all relevant times, Defendants Ramirez and Barrera, and Starr County Sheriff's officers were aware that Section 19.06 of the Texas Penal Code exempted the death of an unborn child from the statute pertaining to murder "if the conduct charged is: (1) conduct committed by the mother of the unborn child."

4.23    At all relevant times, Defendant Fuentes did not believe there was probable cause to arrest

Plaintiff.

4.24    On March 30, 2022, at the direction of Defendant Ramirez, and pursuant to office policy, custom, and practice, Defendant Barrera provided the Grand Jury of Starr County, Texas with false and misleading information and omissions in order to secure an Indictment against Plaintiff. This Indictment, which was drafted by Defendant Barrera, alleged that Plaintiff "on or about the 7th day of January 2022, and before the presentment of this indictment, in Starr County, Texas, did then and there intentionally and knowingly cause the death of an individual J.A.H. by a self-induced abortion."

4.25    Defendants conspired to, and did, investigate and present false information, recklessly misrepresenting facts and law in order to pursue a bogus murder charge against Plaintiff for acts clearly not criminal under the Texas Penal Code.

4.26    As established by deposition testimony, following the indictment, on April 7, 2022, an investigator who reports directly to Defendant Ramirez handed Investigator Muniz a sealed envelope, without telling her what was inside, and directed her to arrest Plaintiff. Investigator Muniz drove around Starr County with several other Sheriff's Office employees searching for Plaintiff. When the officers found her, Plaintiff asked if she was going to be arrested. Investigator Muniz responded, "You need to go with me to the Sheriff's Office." Investigator Muniz then got into Plaintiff's car while Plaintiff drove them to the Sheriff's Office, accompanied by other Sheriff vehicles.

4.27    At the time of Plaintiff's arrest, Investigator Muniz knew that there was no probable cause for the arrest because she was aware of Section 19.06. Nonetheless, pursuant to County policy and custom, she obeyed the instructions from the District Attorney's Office, even if those orders were unlawful.

4.28   Once at the Sheriff's Office, Investigator Muniz opened the envelope and discovered that it contained a Capias and an indictment of Plaintiff for murder. Plaintiff was booked and detained in the Starr County jail. On April 8, 2022, while incarcerated, Plaintiff was taken to Starr County Memorial Hospital after suffering anxiety-induced dyspnea caused by the stress of the unconstitutional murder indictment and false arrest. After spending three days in jail, Plaintiff was released on April 9, 2022, after the $500,000 bond was posted. Defendant Fuentes personally signed off on her release once bond was posted.

4.29   According to documentary evidence and deposition testimony, after Plaintiff's arrest, Major Carlos Delgado received an email from a reporter asking which Texas law Plaintiff was charged with. Major Delgado discussed how to respond to press inquiries concerning Plaintiff's case with Defendant Fuentes. After consultation with Defendant Fuentes, Major Delgado affirmed in an email that Plaintiff had been arrested for murder after intentionally causing the death of an individual by self-induced abortion and that her case remained under investigation.

4.30   On April 11, 2022, Defendant Ramirez dismissed the unfounded charges against Plaintiff, conceding in a news release: "[i]n reviewing the applicable Texas law, it is clear that Ms. Herrera cannot and should not be prosecuted for the allegation against her." Defendant Ramirez further stated that it was "clear that Ms. Herrera did not commit a criminal act under the laws of the State of Texas." In the same press release, the District Attorney ratified actions of the Sheriff's Office, stating that the Sheriff's Office "did their duty in investigating" Plaintiff's abortion.

4.31   On April 20, 2022, Major Delgado texted Investigator Muniz and instructed her to send him all written communications she had with the District Attorney's Office about

Plaintiff's case.

4.32   The fallout from Defendants' illegal and unconstitutional actions has forever changed Plaintiff's life. In statements issued by Defendant Ramirez, which were reported by the local, national, and international press, he acknowledged that "[a]lthough with this dismissal Ms. Herrera will not face prosecution for this incident, it is clear to me that the events leading up to this indictment have taken a toll on Ms. Herrera and her family."

4.33   Plaintiff's mugshot could be seen all over the news, through television, print, and social media. Immediately following her arrest, a local social media site posted details of her arrest, initiating rumors within the close-knit community. Plaintiff was identified by name. Within hours national headlines read "Woman in Texas Charged with Murder in Connection with 'Self-Induced Abortion.'" The unfounded charges against Plaintiff gained the attention of the Associated Press, were televised nationally, and can still be found through numerous news sites on the internet. Furthermore, because the charges stemmed from abortion – a hot button political topic – the dismissal of the charges did not result in any less media attention. Rather, the media attention was heightened after the dismissal due to the fact that the prosecution was unlawful.

4.34   On January 25, 2024, Defendant Ramirez agreed to an Agreed Judgement of Probated Suspension with the Investigatory Panel 12-2 District 12 Grievance Committee of the State Bar of Texas due to his violations of 8.01(a), 3.09(a), 5.01(a), and 5.01(b) of the Texas Disciplinary Rules of Professional Conduct for his knowing conduct in prosecuting Plaintiff for acts clearly not criminal under existing state law. Following the issuance of the probated suspension, Defendant Ramirez remains the Starr County District Attorney and continues to direct investigation and prosecution efforts for the 229th Judicial District,

which includes Starr, Duval, and Jim Hogg counties.

4.35 Following the dismissal of Plaintiff's indictment and the acknowledgment by the District Attorney's Office that Plaintiff committed no crime and should never have been prosecuted, the Sheriff's Office did not update any of their policies or procedures concerning the investigation of any crime—let alone the investigation of abortions. No training was subsequently provided concerning whether a woman could commit a crime for terminating her own pregnancy. Captain Fuentes at the Sheriff's Office confirmed that if they receive another complaint concerning a pregnant woman who induced her own abortion, his Office will pursue an investigation in the same manner as they had against Plaintiff, including conducting interviews, collecting all information, and consulting with the District Attorney's office. No employee from the Sheriff's Office was disciplined for their involvement in Plaintiff's investigation or prosecution.

4.36 The District Attorney's Office has also not implemented any new policies or introduced new training since Plaintiff's wrongful prosecution. In particular, no changes were made concerning how attorneys present their cases to the grand jury. Defendant Barrera was not disciplined by the Office.

4.37 As a result of the Defendants' unconstitutional actions, Plaintiff was subjected to the humiliation of a highly publicized indictment and arrest, which has permanently affected her standing in the community. But for Defendants' conduct, Plaintiff would not have suffered these harms.

4.38 Lizelle Gonzalez files this lawsuit against Gocha Allen Ramirez, Alexandria Lynn Barrera, Rene Fuentes, and Starr County, for depriving Plaintiff of rights secured under the Constitution and Laws of the United States. She brings this case not only to vindicate her

rights but also to hold accountable the government officials who violated them.

## V.

## APPLICABLE AUTHORITY

5.1    **The Fourth Amendment to the Constitution of the United States of America**

provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

**The Fourteenth Amendment to the Constitution of the United States of America**

provides, in pertinent part:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; *nor shall any State deprive any person of life, liberty, or property, without due process of law;* nor deny to any person within its jurisdiction the equal protection of the laws.

5.2    **42 U.S. Code §1983 – Civil Action for Deprivation of Rights**

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

5.3    **Section 19.01 of the Texas Penal Code** provided in pertinent part:

> (a)    A person commits criminal homicide if he intentionally,

knowingly,  recklessly, or with criminal negligence causes the death of an individual.

(b)      Criminal homicide is murder, capital murder, manslaughter, or criminally negligent homicide.

5.4      **Section 19.06 of the Texas Penal Code** plainly states:

This chapter does not apply to the death of an unborn child if the conduct charged is:

(1) Conduct committed by a mother of the unborn child[.]

## VI.

### DEFENDANTS RAMIREZ AND BARRERA ARE NOT ENTITLED TO ABSOLUTE IMMUNITY

6.1      Generally, prosecutors possess absolute immunity from civil liability, "[b]ut immunity is not automatic." *Wooten v. Roach*, 964 F.3d 395, 407 (5th Cir. 2020). "[A] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (citing *Burns v. Reed*, 500 U.S. 478 at 494-496, (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)).

6.2      Prosecutors are absolutely immune only "for their conduct in 'initiating a prosecution and in presenting the State's case' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" *Burns*, 500 U.S. 478 at 494-496, (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)).  Providing legal advice to the police is not a function "intimately associated with the judicial phase of the criminal process." See *Id.* "In sum, prosecutors are not entitled to absolute immunity when 'functioning as the equivalent of a detective rather than as an advocate preparing for trial.'" *Wooten v. Roach*, 964 F.3d at 407. (quoting *Cousin v. Small*, 325 F.3d 627, 632–33 (5th

Cir. 2003) (per curiam).

6.3     Based upon information and belief, the Starr County Sheriff's Department and the District Attorney's Office coordinated in the investigation phase of the charges against the Plaintiff. Such investigatory actions by Defendants Barrera and Ramirez forfeit the protection of absolute prosecutorial immunity. *See Burns*, 500 U.S. at 482, 111 S.Ct. 1934.

6.4     Additionally, an investigating law enforcement officer who lies to grand jury waives immunity. See *Wilson v. Stroman*, 33 F.4th 202 (5th Cir. 2022).

6.5     Section 19.06 of the Texas Penal Code exempts the death of an unborn child from the statute pertaining to murder "if the conduct charged is: (1) conduct committed by the mother of the unborn child." Based upon information and belief, Defendants Ramirez and Barrera provided the grand jury with false and misleading information and omissions in order to secure an indictment against Plaintiff.

6.6     As such, Defendants Ramirez and Barrera are not entitled to absolute immunity because they either submitted or directed the presentation of grand jury "evidence" blatantly lacking in legal basis as to render their belief in its existence unreasonable.

## VII.

## CLAIMS FOR RELIEF

### A. 42 U.S.C. § 1983 Violations of Plaintiff's Rights Guaranteed by the Fourteenth Amendment – Malicious Prosecution

7.1     Plaintiff incorporates all preceding paragraphs by reference.

7.2     Plaintiff asserts a violation of her Due Process rights under the Fourteenth Amendment to be free from unlawful indictment.

7.3     The Due Process Clause of the Fourteenth Amendment was intended to prevent the government from abusing its power or employing it as an instrument of oppression.

Plaintiff has rights guaranteed by the Fourteenth Amendment not to have law enforcement deliberately fabricate facts, evidence and the law. More specifically, Plaintiff has rights against intentional misrepresentations made to a grand jury that self-induced abortion is a criminal act in the State of Texas to secure an unlawful indictment.

7.4    Based upon information and belief, Defendants Fuentes, Barrera and Ramirez, conspired to, and did, investigate and present false information, recklessly misrepresenting facts in order to pursue a bogus murder charge against Plaintiff for acts clearly not criminal under the Texas Penal Code.

7.5    Based upon information and belief, Defendants Fuentes, Ramirez and Barrera conspired to, and did, mislead the grand jury by failing to provide the statutory language contained within Section 19.06 of the Texas Penal Code, in order to secure an illegal indictment in violation of Plaintiff's constitutional protections.

7.6    Based upon information and belief, policy, procedure, and practice in the Starr County District Attorney's Office require that every decision in every high-profile case, including the investigation phase, must go through Defendant Ramirez. There is no doubt that the first ever murder charge for a self-induced abortion in Starr County, quite possibly the State of Texas, is considered high-profile, especially in light of the media attention surrounding the State's abortion laws at the time of the events giving rise to Plaintiff's causes of action.

7.7    In his defense during his disciplinary proceedings Defendant Ramirez claimed not to be involved in the investigation or prosecution of this case. Defendant Ramirez acted as though he delegated authority to his co-conspirator Assistant District Attorney, Defendant Barrera. However, Defendant Ramirez did not, and does not, delegate his

authority based on his policies, procedures, and practices.

7.8    Furthermore, although he claimed he did not participate in the grand jury presentation of Plaintiff's case, upon information and belief, Defendant Ramirez directed his co-conspirator, Assistant District Attorney Defendant Barrera, to provide false information to and conceal the plain statutory language contained within Texas Penal Code 19.06 from the grand jury. Defendant Barrera dutifully complied.

7.9    By failing to provide the statutory language contained within Section 19.06 of the Texas Penal Code, District Attorney Ramirez himself, or through instruction to co-conspirator Defendant Barrera, knowingly provided false information to a grand jury to secure an unjust indictment and proceed with the malicious prosecution against Plaintiff.

7.10    As a result of her indictment and subsequent unlawful arrest for charges that Defendants maintained against her—long after they were aware that they lacked any legal or statutory basis to charge and arrest Plaintiff for Murder— Plaintiff was deprived of her fundamental rights to privacy and liberty. More specifically, Plaintiff was involuntarily and detrimentally thrust into the public eye, causing intrusion upon her seclusion or solitude and private affairs. Additionally, Plaintiff was placed in a false light which caused her to suffer reputational and actual harm that impinged upon her fundamental right to personal liberty.

### B. False Arrest in Violation of The Fourth and Fourteenth Amendments – Defendants Barrera and Ramirez

7.11    Plaintiff incorporates the preceding paragraphs herein by reference.

7.12    Plaintiff has a clearly established constitutional right under the Fourth Amendment to be secure in her person, home, and property against unreasonable seizure. U.S. Const. amend. IV (emphasis added). As the Supreme Court of the United States has plainly

stated, "[w]here the standard is probable cause, a . . . seizure of a person must be supported by probable cause particularized with respect to that person." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979).

7.13 The Fourteenth Amendment also protects against the deprivation of liberty without due process of law.

7.14 Plaintiff was falsely indicted, and arrested for murder, despite the plain and concise language of the statute excluding Plaintiff from criminal responsibility as a direct result of Defendants' conduct. Defendants' conduct, as set forth in detail above, deprived Plaintiff of her rights to be secure in her persons against unreasonable seizure, in violation of the Fourth Amendment of the Constitution of the United States and 42 U.S.C. Section 1983.

7.15 Defendants Ramirez and Barrera, while acting under the color of law and within the scope of their employment, knowingly and intentionally, or with reckless disregard for the truth, caused the presentation of a facially deficient indictment with no legal basis, resulting in a false arrest.

7.16 Defendants Ramirez and Barrera deliberately or recklessly made knowing and intentional omissions that resulted in the indictment of Plaintiff and subsequent warrant for Plaintiff's arrest.

7.17 Defendants, jointly and severally, deprived Plaintiff of her rights under the Fourth Amendment as incorporated and applied to the states through the Fourteenth Amendment. Defendants also jointly and severally, deprived Plaintiff of due process in violation of the Fourteenth Amendment. Furthermore, Defendants Ramirez and Barrera conspired with coconspirators, known and unknown, to violate Plaintiff's constitutional rights.

7.18    Pursuant to 42 U.S.C. § 1983, every person who, under color of any statute, ordinance, regulation, custom or usage of any State, subjects, or causes to be subjected, any citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the parties injured in an action for redress. Each Defendant is a "person" within the meaning of 42 U.S.C. § 1983.

7.19    As a direct result of Defendants' conduct, Plaintiff was indicted for murder and falsely arrested, despite the unambiguous language of the penal code exempting her from a criminal act and absence of probable cause to establish that she had committed a crime. Defendants' conduct, as described above, deprived Plaintiff of her right to be secure in her persons against unreasonable seizure, in violation of the Fourth Amendment of the Constitution of the United States and 42 U.S.C. § 1983. As such, pursuant to 42 U.S.C. § 1983, Defendants Ramirez and Barrera shall be liable to Plaintiff for their unlawful actions.

### C. *False Arrest in Violation of The Fourth and Fourteenth Amendments – Defendant Fuentes*

7.20    Plaintiff incorporates the preceding paragraphs herein by reference.

7.21    Plaintiff has a clearly established constitutional right under the Fourth Amendment to be secure in her person, home, and property against unreasonable seizure. U.S. Const. amend. IV (emphasis added). As the Supreme Court of the United States has plainly stated, "[w]here the standard is probable cause, a . . . seizure of a person must be supported by probable cause particularized with respect to that person." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979).

7.22    The Fourteenth Amendment also protects against the deprivation of liberty without due process of law.

7.23    Defendant Fuentes arrested Plaintiff for murder, despite the plain and concise language of the statute excluding Plaintiff from criminal responsibility. Therefore, no probable cause existed for Plaintiff's arrest. Defendants' conduct, as set forth in detail above, deprived Plaintiff of her rights to be secure in her persons against unreasonable seizure, in violation of the Fourth Amendment of the Constitution of the United States and 42 U.S.C. Section 1983..

7.24    Qualified immunity does not apply to the "plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (Tex. 1986). "Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Id.*

7.25    Generally, a grand jury's indictment breaks the chain of causation for any false arrest claims based on a defective affidavit and arrest warrant pursuant to the independent intermediary doctrine. *Wilson v. Stroman*, 33 F.4th 202, 208, (5th Cir. 2022). However, only a "properly secured . . . grand jury indictment will shield a defendant who has committed or initiated a false arrest." *Id.* (citing *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 553-54 (5th Cir. 2016).

7.26    Upon information and belief, the grand jury presentation suffered from a complete lack of additional investigation. Defendants Barrera, Ramirez and Fuentes conspired to, and misled, the grand jury.

7.27    Defendant Fuentes, while acting under the color of law and within the scope of his employment, knowingly and intentionally, or with reckless disregard for the truth, caused the arrest of Plaintiff based on a facially deficient indictment with no legal basis as Section 19.06 of the Texas Penal Code is clear and unambiguous. Therefore, the grand

jury indictment was not "properly secured" and it is obvious that no reasonably competent officer would have concluded that an arrest warrant as to Plaintiff should issue.

7.28    As such, Defendant Fuentes deprived Plaintiff of her rights under the Fourth Amendment as incorporated and applied to the states through the Fourteenth Amendment. Defendant also deprived Plaintiff of due process in violation of the Fourteenth Amendment. Furthermore, based upon information and belief, Defendant Fuentes conspired with coconspirators, known and unknown, to violate Plaintiff's constitutional rights.

7.29    Pursuant to 42 U.S.C. § 1983, every person who, under color of any statute, ordinance, regulation, custom or usage of any State, subjects, or causes to be subjected, any citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the parties injured in an action for redress. Each Defendant is a "person" within the meaning of 42 U.S.C. § 1983.

7.30    As a direct result of Defendants' conduct, Plaintiff was falsely arrested for murder, despite the absence of probable cause to establish that her actions were in violation of the Texas Penal Code. Defendants' conduct, as described above, deprived Plaintiff of her right to be secure in her persons against unreasonable seizure, in violation of the Fourth Amendment of the Constitution of the United States and 42 U.S.C. § 1983. As such, pursuant to 42 U.S.C. § 1983, Defendant Fuentes shall be liable to Plaintiff for such unlawful actions.

### D.    Conspiracy To Violate Constitutional Rights

7.31    Plaintiff incorporates the preceding paragraphs herein by reference.

7.32    Defendant Ramirez and his co-conspirators, Defendants Barrera and Fuentes, agreed to violate Starr County residents', including Plaintiff's, civil rights in violation of Section 1983, as detailed in the preceding causes of action.

7.33    Specifically, Defendant Ramirez, and his co-conspirators, assistant district attorney Defendant Barrera and Defendant Fuentes, agreed to violate Starr County residents' (including Plaintiff's) Fourth Amendment Rights to be free from unreasonable searches, seizures, and arrests but for warrants based on probable cause untainted by misleading and false information.

7.34    Furthermore, Defendant Ramirez, and his co-conspirator, assistant district attorney Defendant Barrera, agreed to violate Starr County residents' (including Plaintiff's) Fourteenth Amendment Rights to Due Process by abusing his grand jury powers and presenting false and misleading information to the grand jury in order to secure indictments against citizens when probable cause did not exist.

7.35    Defendants Ramirez and/or at least one of the co-conspirators knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose.

7.36    Defendant Ramirez and/or at least one of the co-conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the counts above, in order to accomplish some object or purpose of the conspiracy.

### E.    42 U.S.C. § 1983 – County Liability

#### 1. Fourth Amendment 42 U.S.C. § 1983: false arrest – Starr County

7.37    Plaintiff incorporates the preceding paragraphs herein by reference.

7.38    The Fourth Amendment is violated when a person is arrested without probable cause.

7.39    As alleged above, during the time period pertinent to this action, Defendant Starr County

permitted, tolerated, and was deliberately indifferent to a policy, custom, and/or practice of making arrests that clearly lacked probable cause, in violation of the Fourth Amendment.

7.40   Under Texas state law, Defendant Fuentes is the final policymaker for Starr County when it comes to law enforcement. However, Defendant Fuentes delegated his policymaking authority over the lawfulness of arrests to individuals at the District Attorney's Office as a matter of policy, practice, and/or custom.

7.41   Subsequently, following the advice and direction of the District Attorney's Office, Sheriff's Office investigators made wrongful arrests, including Plaintiff's, despite knowledge of a clear lack of probable cause. Defendants Fuentes and Ramirez were aware of these arrests but did not make any attempt to correct the pattern. Starr County thus tolerated, permitted, and was deliberately indifferent to its Sheriff's investigators making unlawful arrests without probable cause at the direction of the District Attorney's Office.

7.42   As alleged above, at all times pertinent to this action, Defendant Starr County acted through its final policymakers to endorse and ratify the unlawful acts of its investigators and prosecutors that caused the violation of Plaintiff's constitutional rights.

7.43   The ratification by the County of the wrongful arrest of Plaintiff provides evidence of Starr County's policy, practice, or custom that County employees obey orders to arrest from the District Attorney's Office even when they know the orders lack probable cause.

7.44   This policy, practice, and/or custom was the moving force behind the violation of Plaintiff's constitutional rights to be free from false arrest.

### 2. Fourth Amendment 42 U.S.C. § 1983: malicious prosecution – Starr County

7.45   Plaintiff incorporates the preceding paragraphs herein by reference.

7.46   The Fourth Amendment is violated when a criminal proceeding is commenced against a

person without probable cause, the proceeding was commenced with malice, and the prosecution is terminated in favor of the accused.

7.47    As alleged above, during the time period pertinent to this action, Defendant Starr County permitted, tolerated, and was deliberately indifferent to a policy, custom, and/or practice of maliciously bringing criminal proceedings against individuals that clearly lacked probable cause, in violation of the Fourth Amendment.

7.48    Under Texas state law, Defendant Fuentes is the final policymaker for Starr County when it comes to law enforcement. However, Defendant Fuentes delegated his policymaking authority over the lawfulness of initiating criminal proceedings to individuals at the District Attorney's Office as a matter of policy, practice, and/or custom.

7.49    Subsequently, following the advice and direction of the District Attorney's Office, Sheriff's Office investigators maliciously prosecuted individuals including Plaintiff despite a clear lack of probable cause. Defendants Fuentes and Ramirez were aware of these prosecutions but did not make any attempt to correct the pattern. Starr County thus tolerated, permitted, and was deliberately indifferent to its Sheriff's Office investigators making unlawful arrests without probable cause at the direction of the District Attorney's Office.

7.50    As alleged above, at all times pertinent to this action, Defendant Starr County acted through its final policymakers to endorse and ratify the unlawful acts of its investigators and prosecutors that caused the violation of Plaintiff's constitutional rights.

7.51    The ratification by the County of the malicious prosecution of Plaintiff provides evidence of Starr County's policy, practice, or custom that County employees obey orders from the District Attorney's Office even when they know doing so would be unlawful.

7.52   This policy, practice, and/or custom was the moving force behind the violation of Plaintiff's constitutional rights to be free from malicious prosecution.

### 3. Fourteenth Amendment 42 U.S.C. § 1983: due process violation – Starr County

7.53   Plaintiff incorporates the preceding paragraphs herein by reference.

7.54   The Due Process Clause of the Fourteenth Amendment is violated when a person is framed for a crime they did not commit.

7.55   As alleged above, during the time period pertinent to this action, Defendant Starr County, permitted, tolerated, and was deliberately indifferent to a policy, custom, and/or practice of deliberately manipulating the law and facts in order to accuse someone of a crime despite knowing that they were innocent.

7.56   Under Texas state law, Defendant Fuentes is the final policymaker for Starr County when it comes to law enforcement. However, Defendant Fuentes delegated his policymaking authority over the lawfulness of investigations to the District Attorney's Office as a matter of policy, practice, and/or custom.

7.57   Subsequently, following the direction of the District Attorney's Office, Sheriff's Office investigators wrongfully investigated and conspired to charge individuals, including the Plaintiff, even when no crime had been committed. Defendants Fuentes and Ramirez were aware of these charges but did not make any attempt to correct the pattern. Starr County thus tolerated, permitted, and was deliberately indifferent to its Sheriff's investigators unlawfully accusing people of crimes at the direction of the District Attorney's Office.

7.58   As alleged above, at all times pertinent to this action, Defendant Starr County acted through its final policymakers to order, endorse, and ratify the unlawful conduct of its investigators and prosecutors that caused the violation of Plaintiff's constitutional rights.

7.59    The ratification by the County of the wrongful charging of Plaintiff provides evidence of Starr County's policy, practice, or custom that County employees obey orders from the District Attorney's Office even when they know doing so would be unlawful.

7.60    This policy, practice, and/or custom was the moving force behind the violation of Plaintiff's constitutional rights to be free from being framed for a crime she did not commit.

## VIII.

## <u>DAMAGES</u>

8.1     Defendants' actions, jointly and severally, deprived Plaintiff of her protected rights under the United States Constitution and federal law. As a proximate result of Defendants' actions, Plaintiff has suffered the deprivation of liberty, reputational harm, public humiliation, distress, pain, and suffering for which she is entitled to compensatory damages, including damages for mental and emotional distress.

8.2     As a result of Defendants' actions and/or inactions, Plaintiff seeks the following damages, which in the aggregate exceed $1,000,000.00:

- Actual damages;

- Compensatory damages;

- Past and future mental anguish;

- Past and future reputational damages;

- Past and future lost wages;

- Past and future loss of earning capacity;

- Attorney's fees as set forth below;

- Exemplary damages; and

- All other damages, both general and special, at law and in equity, to which

Plaintiff may be justly entitled.

## IX.

## PUNITIVE DAMAGES

9.1    Plaintiff incorporates the preceding paragraphs by reference.

9.2    Punitive damages may be awarded in Section 1983 cases when the defendant's conduct involves reckless or callous indifference to the federally protected rights of others. The widespread and persistent practice of Defendants Starr County, Defendant District Attorney Gocha Allen Ramirez, Defendant Alexandria Lynn Barrera and Defendant Rene Fuentes to intentionally misrepresent evidence to a grand jury demonstrates a callous and reckless disregard to the constitutional rights of residents of Starr County, Texas.

9.3    Defendants Ramirez, Barrera, and Fuentes acted with malice and with intentional disregard for Plaintiff's constitutional rights for which Plaintiff is entitled to punitive damages. Such damages would assist in deterring and preventing similar conduct in the future.

## X.

## ATTORNEY'S FEES

10.1    Plaintiff has retained the services of the undersigned counsel, and claims entitlement to an award of reasonable and necessary attorney's fees under 42 U.S.C. § 1983 and § 1988.

## XI.

## JURY DEMAND

11.1    Plaintiff hereby requests a jury trial tenders the appropriate jury fee herewith.

## PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiff respectfully prays that Defendants

be cited to appear and answer herein, that upon the trial of this matter, judgment be entered for

Plaintiff against Defendants jointly and severally for the damages described above.

Respectfully submitted,

By: _____

I. Cecilia Garza
TX State Bar No. 24041627
USDTX Federal Admission No.: 578825
202 E. Sprague Street
Edinburg, Texas 78539
Telephone No.: 956-335-4900
Telecopier No.: 956-338-5700
cecilia@garzamartinezlaw.com
*Attorney in charge for Plaintiff*

Veronica Sepulveda Martinez
TX State Bar No. 24081144
USDTX Federal Admission No.: 3048499
202 E. Sprague Street
Edinburg, Texas 78539
Telephone No.: 956-335-4900
Telecopier No.: 956-338-5700
veronica@garzamartinezlaw.com

Lauren Alicia Johnson
DC Bar No.: 1011382*
American Civil Liberties Union Foundation
915 15th Street NW
Washington DC 20005
Telephone No.: 202-731-5567
ljohnson@aclu.org

Nancy Rosenbloom,
NY Bar No.  2168425*
Mariana Kovel
NY Bar No.: 4512000*
Elizabeth Cheryl Jarit
NY Bar No.: 5005020*
American Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
Telephone No:  202-393-4930
nrosenbloom@aclu.org
mkovel@aclu.org
ljarit@aclu.org

David A. Donatti

Texas Bar No. 24097612
Adriana Piñon
Texas Bar No. 24089768
Ashley Harris
Texas Bar No.: 24123238
Sarah F. Corning
Texas Bar No. 24144442*
American Civil Liberties Union of Texas
P.O. Box 12905
Austin, TX 78711-2905
Telephone No.: 713-942-8146
Facsimile: 713-942-8966
ddonatti@aclutx.org
apinon@aclutx.org
aharris@aclutx.org
scorning@aclutx.org

**ATTORNEYS FOR PLAINTIFF**

\*      Admitted *pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of this amended complaint was served by agreement and in accordance with the Federal Rules of Civil Procedure by electronic transmission to all registered ECF users appearing in the case on May 15, 2026.

I. Cecilia Garza